IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| TERRENCE P. COLLINGSWORTH, individually and as agent of Conrad & Scherer, LLP; and CONRAD & SCHERER, LLP, | ) CIVIL ACTION NO. _____ |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Drummond Company, Inc. (hereinafter "Drummond"), by and through the undersigned counsel, and hereby files this Complaint against the Defendants, Terrence P. Collingsworth and Conrad & Scherer, LLP.

## PARTIES

1. Plaintiff Drummond is a for profit Alabama corporation with its principal place of business in Birmingham, Alabama.

2. Defendant Terrence P. Collingsworth is an individual who, upon information and belief, is domiciled in the District of Columbia. Collingsworth is sued both individually and as an agent of Conrad & Scherer, LLP. Collingsworth

is a partner at Conrad & Scherer, LLP. During the time relevant to this Complaint, Terrence P. Collingsworth has conducted business in Birmingham, Alabama.

3. Defendant Conrad & Scherer, LLP is a limited liability partnership with its principal place of business in Fort Lauderdale, Florida. During the time relevant to this Complaint, Conrad & Scherer, LLP has conducted business by agent in Birmingham, Alabama.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, including compensatory and punitive damages, exceeds $75,000.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because Defendants' libelous statements were, and are currently being, circulated within this judicial district, and the Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

6. Collingsworth is a partner of Conrad & Scherer, LLP who, since 2009, has been admitted *pro hac vice* in Alabama relating to two lawsuits he has filed against Drummond in which he alleges Drummond has ties to paramilitaries in Colombia, specifically the United Self-Defense Forces of Colombia ("AUC"). Between 2002 and 2007, Collingsworth was also admitted *pro hac vice* in Alabama

relating to a similar lawsuit, which resulted in a dismissal in favor of Drummond and a jury verdict in favor of the remaining defendants.

7. Collingsworth also has a financial arrangement with Llanos Oil Exploration Limited ("Llanos Oil") and its two principals, Hendrik Van Bilderbeek and Albert Van Bilderbeek. Hendrik Van Bilderbeek is currently in prison in Colombia based on allegations of money laundering and involvement with Colombian drug-traffickers.

8. Llanos Oil purports to be an oil exploration company, and has made wild allegations that the Colombian government conspired with Drummond to "steal" certain mineral rights in Colombia leased by Llanos Oil.

9. On January 18, 2011, subsequent to entering into a financial arrangement with Llanos Oil, Collingsworth wrote a letter to the Prime Minister of the Netherlands, as well as to other Dutch government officials, urging the government of the Netherlands to stop any business relationship it has with Drummond.

10. In the January 18, 2011 letter, Collingsworth characterized as "objective facts" numerous false and defamatory statements about Drummond. For example, Collingsworth stated:

    a. that "hundreds of Colombian citizens . . . had a family member murdered by paramilitary forces working on behalf of Drummond;"

{B1342630}

b. that Drummond "has an atrocious human rights record;"

c. that Drummond "made an alliance with the United Self Defense Forces of Colombia ('AUC'), the umbrella paramilitary group in Colombia;"

d. that the "AUC was designated a terrorist organization by the U.S. government in 2001, yet Drummond continued its unlawful alliance until 2006, when the AUC demobilized as part of the Justice and Peace program in Colombia;"

e. that "[a]s a matter of objective fact, with Drummond's support," a particular Front of the AUC "went from a small band of 20 thugs to a fighting force of 150 well equipped and trained soldiers;" and

f. that "Drummond's mandate to the AUC led to the violent slaughter of hundreds of innocent civilians."

11. Not one of these statements—or any of Collingsworth's other statements in the January 18, 2011 letter accusing Drummond of human rights crimes and complicity with a terrorist organization—is true. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests.

12. The January 18, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On January 19, 2011, the day after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

13. On February 4, 2011, Collingsworth wrote another letter to Dutch government officials. This time, Collingsworth had apparently been given access to and reviewed weblogs from Llanos Oil's website, and based on these weblogs he accused Dutch government officials of participating in a conference call with Drummond and its attorneys to discuss the January 18, 2011 letter.

14. In the February 4, 2011 letter, Collingsworth made additional false and defamatory statements about Drummond, including, but not limited to, accusing it of being able to "get away with murder" and stating that there were "hundreds of Colombian victims of Drummond's human rights violations."

15. Again, Collingsworth's accusations of murder and human rights violations are completely false. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests.

5 of 10
{B1342630}

16. The February 4, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On February 7, 2011, three days after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

17. On September 19, 2011, Collingsworth wrote another letter, this time to the President and Chief Executive Officer of Itochu Corporation, which has entered into an agreement with Drummond to acquire a 20% stake in Drummond's Colombian mining operation. In this letter, Collingsworth continues his campaign of defamation against Drummond.

18. In the September 19, 2011 letter, Collingsworth states as fact that Drummond "has a record of major human rights crimes." He further professes to provide "the facts about Drummond's direct involvement in war crimes and other major human rights violations in Colombia" He states that "Drummond will no doubt continue to deny its crimes" but that "[l]ike many companies operating in Colombia during the civil conflict, Drummond joined forces with the AUC, a terrorist organization." These are but a few examples of the numerous false and defamatory statements contained in the September 19, 2011 letter.

19. Again, these accusations are completely false. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with

6 of 10
{B1342630}

reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests.

20. The September 19, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On September 20, 2011, the day after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

21. Each of the three letters discussed above were written on Conrad & Scherer, LLP letterhead and with the actual and/or apparent authority of Conrad & Scherer, LLP and/or in the line and scope of Collingsworth's employment with Conrad & Scherer, LLP.

22. On September 29, 2011, Drummond demanded that Collingsworth and his firm, Conrad & Scherer, LLP, publish a public retraction of the defamatory statements contained in the January 18, February 4, and September 19, 2011 letters. To date, Collingsworth and Conrad & Scherer, LLP have failed and/or refused to publish a retraction.

23. At the time the above letters were written, Defendants knew that Drummond was an Alabama corporation with its principal place of business in Birmingham, Alabama.

{B1342630}

24. Defendants expressly aimed their campaign of defamation at Drummond knowing that it was an Alabama resident and knowing that the brunt of the harm from their campaign of defamation would be felt by Drummond in Alabama.

25. None of the recipients of the above letters have any connection to any litigation filed by Collingsworth against Drummond. The letters were not written in furtherance of any legitimate legal proceeding, but rather were written and published on Llanos Oil's website in furtherance of Collingsworth's plan to publicly defame Drummond and harm its business interests.

## COUNT I
## DEFAMATION

26. Drummond realleges and incorporates by reference paragraphs 1-25, inclusive, as if fully set forth herein.

27. Defendants intentionally, maliciously and/or recklessly published and caused to be published false and defamatory statements about Drummond.

28. Defendants did so knowing that the statements were false and/or acting in reckless disregard to whether they were false or not.

29. Defendants acted with the intent to prejudice Drummond in the public perception, to injure its business reputation, to deter others from conducting business with Drummond, and to otherwise damage Drummond.

{B1342630}

30. Drummond has been damaged as a result of Defendants' defamation and hereby demands judgment against the Defendants for general, compensatory and punitive damages as to be determined by a jury, as well as costs and such other relief as the Court or jury deems just.

## AD DAMNUM

Based on the allegations as set forth above, Drummond avers that Defendants are liable for compensatory damages, punitive damages, interest, costs and expenses incurred in pursuing this litigation. Drummond further avers that punitive damages should be assessed in an amount sufficient to punish the wrongful conduct of Defendants, to deter similar conduct in the future and to serve as an example to deter others from engaging in similar wrongful conduct.

WHEREFORE, Drummond demands judgment for general, compensatory and punitive damages in an amount to be determined by a jury, as well as interest, costs and expenses, and such other relief as the Court and/or jury deem just.

## JURY DEMAND

**DRUMMOND DEMANDS TRIAL BY JURY ON ALL OF THE ISSUES TRIABLE BY A JURY IN THE COMPLAINT**

{B1342630}

_____
William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL 35259
(205) 868-6000
fax: (205) 868-6099

*Attorneys for Drummond Company, Inc.*

{B1342630}