FILED

2012 Feb-29  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DRUMMOND COMPANY, INC.,           }
                                  }
        Plaintiff,                }
                                  }       CIVIL ACTION NO.
v.                                }
                                  }       11-AR-3695-S
TERRENCE P. COLLINGSWORTH, et     }
al.,                              }
                                  }
        Defendants.               }

**<u>MEMORANDUM OPINION</u>**

Pursuant to Rule 12(b)(2), F.R.Civ.P., defendants, Terrence P. Collingsworth ("Collingsworth"), and Conrad & Scherer, LLP ("Conrad"), have moved to dismiss the above-entitled action brought against them by plaintiff, Drummond Company, Inc. ("Drummond"). Defendants challenge the "long-arm" jurisdiction of this court. Drummond relies upon Rule 4.2(b), Alabama Rules of Civil Procedure, which, under appropriate circumstances, provides *in personam* jurisdiction under a theory of **specific** jurisdiction or a theory of **general** jurisdiction, or both.  Defendants deny that plaintiff has made factual allegations in its complaint upon which either of these theories of jurisdiction can be established.

For the purposes of determining the length of its "long-arm", the court is obligated to accept as true all allegations in the complaint, together with all reasonable inferences that can be drawn from them.  Rule 4.2(b) provides that a non-resident of the State of Alabama can be sued in an Alabama court to the extent the

Alabama proceeding "**is not inconsistent with the constitution of this state, or the Constitution of the United States . . .**" (emphasis added).  Before Alabama's long-arm statute was amended in 2004, it contained a "laundry list" of situations that provided sufficient Alabama contacts to form a basis for *in personam* jurisdiction.   The rule, as now amended, simplifies, but nevertheless confirms, the earlier clear holding of the Supreme Court of Alabama in *Martin v. Robbins*, 628 S.2d 614, 617 (Ala. 1993), that Alabama courts have *in personam* jurisdiction as long as the "due process", guaranteed by the Fourteenth Amendment, will allow.  In other words, it is, under Rule 4.2(b) a purely federal constitutional question.  In the instant case, no party is relying upon some difference between the Alabama constitution and the United States Constitution.  The Supreme Court of Alabama can, of course, interpret the United States Constitution in the first instance, but after the Supreme Court of the United States has preemptively spoken on a federal constitutional issue, it has spoken the final word.  Rule 4.2(b) expressly adopts the Fourteenth Amendment's reach, and delegates all questions regarding Alabama's long-arm reach to the Supreme Court of the United States.

The pertinent facts, undisputed for the purposes of this jurisdictional inquiry, are these:

(1)  Collingsworth was at all relevant times a resident of the District of Columbia.  He was a partner of defendant, Conrad, which

is a partnership of lawyers with its principal place of business in the State of Florida.  Drummond is an Alabama corporation with its principal place of business in the State of Alabama.  It does business in many domestic and foreign locations outside of Alabama. It has done business with, or sought to do business with, entities in The Netherlands, the access to which depends upon the good-will and cooperation of The Netherlands.  Drummond has also sought to do business, or has done business with, Itochu Corporation, a Japanese business entity.

(2)   Drummond, predominantly a coal mining company, has one of its largest mining operations in Colombia.

(3)   Prior to January 18, 2011, Collingsworth sought and obtained *pro hac vice* admission to represent numerous plaintiffs in seven separate cases, all against Drummond, and all filed in the United States District Court for the Northern District of Alabama. He has represented and/or now represents multiple plaintiffs, all of whom are not residents of the State of Alabama.  Most, if not all, of Collingsworth's clients are Colombians.  This court takes judicial notice of the fact that Collingsworth's said representations in this court have been, and they remain, contentious.  The litigation might be fairly described as "mean", "ugly", and "nasty".

(4)   On January 18, 2011, Collingsworth wrote a letter to Dutch government officials.  Its contents facially constitute

defamation of Drummond, that is, unless what Collingsworth says about Drummond is true.  The letter was written on the letterhead of Conrad.  On February 4, 2011, Collingsworth wrote another letter to Dutch government officials.  He referred to his previous letter and again complained about what can only be described as criminal conduct by Drummond in Colombia.  Again, the letter contains facially libelous material.  On September 19, 2011, Collingsworth wrote a third facially defamatory letter to the president of Itochu Corporation.  This letter describes conduct, which, if not true, is libelous and could reasonably be calculated to interfere with any on-going or future business relationship between Drummond and Itochu.

(5)  Promptly after the mailing of each letter, the letter was published on the internet website of Llanos Oil Exploration Ltd. ("Llanos"), a Colombian entity with which Hollingsworth and Conrad had an ongoing business relationship.  By internet these letters were promptly transmitted by Llanos worldwide, including to the Northern District of Alabama, where they were available to anyone with internet access. According to Drummond's present allegations, the publication by Llanos was in accordance with a plan between defendants and Llanos.  Two of the letters were referenced by Drummond itself in one of the lawsuits against it in the Northern District of Alabama, giving the allegedly defamatory materials public exposure they might not otherwise have had.  This fact may

4

be a matter of mitigation or defense on the merits of Drummond's current action, but for present purposes its relevance is only the reach of the long-arm.  A consideration of the merits is premature.

(6)  Llanos, like defendants, has accused Drummond of serious wrongdoing in Colombia.  A rational jury could draw the inference that when defendants sent copies of their letters to Llanos, and Llanos promptly published them on the internet, there was intent to cause harm to Drummond.  A retaliatory motive by defendants can reasonably be deduced from the stridency of defendants' advocacy in the cases against Drummond in this court in which Collingsworth has regularly appeared as counsel.

(7)  Accompanying its claim of libel, and necessary to the cause of action, Drummond denies all of the facially scandalous material in Collingsworth's letters.

(8) Whether defendants' letters amounted to torts that could be pursued by Drummond in Colombia, and/or in The Netherlands, and/or in Japan, and/or in the District of Columbia, and/or in Florida, are not matters for this court.  The only question now before this court is: Do the facts alleged by Drummond describe conduct by defendants which creates jurisdiction in this court?

## Discussion

Because in its Rule 4.2(b) Alabama delegates to the Supreme Court of the United States the right to express binding opinions as to the limits of "long-arm" jurisdiction in Alabama, this court, as

a court sitting in diversity, is bound by *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), in which the long-arm of a court in the State of California was held by the Supreme Court to reach a Florida resident who had never been present in California, but who intentionally libeled a California plaintiff. In *Calder*, the libelous statements were published in Florida and not in California, but defendants anticipated them to become publicly available in California. They were colorably designed to harm the California plaintiff. In *Calder*, the allegations were enough to subject the Florida libeler to the jurisdiction of the California court. The *Calder* opinion, which was unanimous, ended with the following clear messages, now heard and applied by this court:

> We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California.

There is no realistic way to distinguish the jurisdictional facts in *Calder* from those in this case. The *Calder* principle, if it applies in the State of California, applies in the State of Alabama. Key words in *Calder* are "intent", "effects", and "targeting". *Calder* makes it clear to this court that it has *in personam* jurisdiction over these defendants, because the United States Constitution, according to *Calder*, permits it. Collingsworth and Conrad, the two non-resident defendants, could readily have expected that their accusatory letters would reach Alabama and would cause harm to their target in Alabama, its home

state.

The *Calder* opinion does not deal with the concept of **general** jurisdiction, and this court does not treat it as doing so. Drummond, alternatively, invokes this court's **general** jurisdiction. *Calder* is controlling authority only as to **specific** jurisdiction, but requires the denial of defendants' motion to dismiss.

This court has reached the opinion that it also has **general** jurisdiction, arising out of the serial appearances by Collingsworth as counsel in seven cases in this court, all aimed at Drummond.  The appearances by Collingsworth, with Drummond as the constant defendant, is unique to this case.  This court has found nothing like it.  Defendants cite authorities for the proposition that a *pro hac vice* appearance cannot form the basis for **general** jurisdiction over the lawyer, but in this instance Collingsworth has appeared *pro hac vice* in seven cases, all against Drummond. Collingsworth's clients in these cases charge Drummond with the same kind of misconduct that is contained in the letters. Accordingly, this court, sitting on an Alabama court of general jurisdiction, finds that it has **general** jurisdiction over Collingsworth and Conrad.  A colorable motivation by defendants to defame Drummond where it lives comes not from casual *pro hac vice* appearances by Collingsworth in other cases, but in seven cases all against Drummond and brought in Alabama.  Drummond could reasonably argue that defendants took the fight outside the borders of

Alabama, but with an intent for the fight to make its way back to Alabama, if by a circuitous route.

Under the totality of the circumstances, traditional notions of fair play are not violated by calling upon defendants to defend in this court.  Therefore, defendants' motion will be denied by separate order.

DONE this 29th day of February, 2012.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

8