IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-CV-3695-RDP |
| | ) |
| TERRENCE P. COLLINGSWORTH, individually and as an agent of Conrad & Scherer, LLP; and CONRAD & SCHERER, LLP, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF TERRENCE P. COLLINGSWORTH IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

I, Terrence P. Collingsworth, declare under penalty of perjury of the laws of the United States of America and the State of Alabama, that:

1. I am a partner in Conrad & Scherer, LLP and lead counsel for the Plaintiffs in *Balcero v. Drummond Company, Inc.*, No. 2:09-cv-1041-RDP (N.D. Ala.). I am also a Defendant in *Drummond Company Inc. v. Terrence P. Collingsworth, et al.*, No. 2:11-cv-3695-RDP (N.D. Ala.). I provide this declaration based on my personal knowledge and can testify under oath to all of the facts herein.

2. I have reviewed numerous articles and statements that predate the letters at issue in Drummond's lawsuit against me for libel that assert in one way or another that there is credible evidence of Drummond's role in participating in human rights violations with the AUC. These articles and statements will be part of our defense against Drummond's frivolous case. One example is the June 28, 2007 statement of Rep. Eliot L. Engel, at that time Chair of the House Foreign Affairs Committee. At a hearing on the role of U.S. multinationals financing the AUC in Colombia, he stated, "in Colombia we have very credible allegations of a US-owned company, Drummond Coal, having paid a terrorist group to kill 3 prominent trade union leaders in 2001." *See* 2007 WLNR 12299306 (June 28, 2007). I have researched using all available public sources and was unable to find any indication that Drummond has sued anyone but me for libel relating to statements about Drummond's human rights violations in Colombia.

3. Attached hereto as Exhibit 1 is a true and correct copy of the original Spanish and an English translation of a full page ad Drummond placed in several important newspapers in Colombia, including *El Tiempo*, attacking me personally with false assertions. This ad also put my life in danger as it used the same coded language that the paramilitaries used when targeting leftist guerillas by accusing them of damaging business interests.

4. Among the documents we provided to the Drummond Defendants as part of the extensive discovery in the *Balcero* case, as Drummond notes in its Motion to Compel, we produced the following documents regarding funds for security provided to Jesus Charris Castro and Libardo Duarte, both witnesses in the *Balcero* case: PLS00005028-00005043; PLS00005018-00005021 and PLS00005024-00005025. We also provided documents showing that security funds were provided to alias "Halcon" even though Halcon is not a witness in the *Balcero* case, has not provided any evidence that will be used in the *Balcero* case, and has not performed any services for the case. PLS00004592-00004649. Drummond provided these documents as exhibits to its Motion to Compel. As is detailed with references to the testimony in Defendants' Opposition to the Motion to Compel, these security funds were provided because the family members of Charris and Duarte received concrete death threats and our team did the only thing we could do and moved the families to a safe haven.

5. Without waiving any privilege, including work product or attorney-client, the sole promise I made to any witness in the *Balcero* case was that if they testified and they or a family member received a credible death threat, we would do whatever we could to provide security or to provide a safe haven until such time as the danger had subsided. I described how in the United

States, in a similar situation, when prosecutors pursue Mafia figures, the people willing to testify against them are in grave danger, and the prosecutors often put the witnesses in witness protection programs to keep them alive.

6. Attached hereto as Exhibit 2 is the April 6, 2011 Declaration of Libardo Duarte.

7. Oscar Jose Ospino Pacheco, alias Tolemeida, is the sole AUC witness in the Balcero case to provide Drummond with a Declaration that denies there was a relationship between Drummond and the AUC. As established in ¶¶ 8-12 below, there is substantial evidence that Drummond paid Tolemeida to bribe and/or threaten various AUC witnesses to keep quiet about Drummond's relationship to the AUC.

8. Attached hereto as Exhibit 3 is the February 28, 2012 Declaration of Javier Ernesto Ochoa Quiñonez (alias "El Mecanico"). He states at ¶ 5: "The day after I executed my declaration, on May 29, 2007, I was visited by Alexander Pianeta. He said that he was there on behalf of my AUC Commander, alias "Tolemaida", and that if I valued my family, I would not speak about Drummond. He also said that if I retracted my statement, Tolemaida would take care of me financially. The threat against my family was a serious one. As I stated in my May 28, 2007 statement, I was

constantly concerned about whether I could say the wrong thing and endanger my family."; at ¶ 8: "In 2010, my commander, Tolemaida, was arrested and was in La Picota prison in Bogota. I was taken, along with another AUC colleague, "JJ," by bus to La Picota and we met with Tolemaida. He said to us both that he was going to meet with Garry Drummond to make sure that we were all well provided for because we did not talk about Drummond. Tolemaida promised me 200 million Colombian pesos if I remained quiet about Drummond. Tolemaida also told us we had nothing to worry about because our good friend from Drummond, Alfredo Araujo, now had a son working as the Secretary to the Attorney General. Tolemaida showed me a letter from Araujo's son telling Tolemaida that he could count on his collaboration and support."; at ¶ 9: "It is common knowledge and I personally heard from several sources that Tolemaida received over one million U.S. dollars from Drummond to keep us all quiet, however, he never sent me or my family any money."

9. Attached hereto as Exhibit 4 is the March 1, 2012 Declaration of Jose Aristides Peinado Martinez. He states at ¶ 28:"Tolemaida was captured much later than the rest of us in 2010. Under the pretense of requesting that I testify with him under the Justice and Peace process because he was my former commander, Tolemaida has requested that I be brought to Bogota to

5

testify three times. The last time was about six or seven months ago. On each of these occasions he told me that Drummond was willing and ready to pay me if I kept quiet about what I know. Recently, lawyers for Drummond have requested a meeting with me, but I have declined to meet them."

10. Attached hereto as Exhibit 5 is the December 4, 2009 Declaration of Alcides Mattos Tabares. He states at ¶ 20: "I understand that Drummond wanted to hide the truth of what had happened, having testimonies that excluded the company's participation in the homicides of the unionists. To that end, Alexander Pianeta, alias "Reyes," an army official and member of the Front, was taken to Bogotá in order to testify that all the actions had been carried out due to the fact that the unionists had been members of the guerrillas. Initially, they had me in mind. "Tolemaida" had offered me, through alias "Cebolla," a huge sum of money so that I testified to that extent, that the deaths were a product of their militancy in subversion. Sometime later, the lawyer José Daza Ortíz, who attended to the business interests of "Tolemaida" and of the Front, confirmed the offer of money that was made to me."

11. At the Deposition of Alcides Mattos Tabares, *Balcero* Doc. 396, Ex I at 123:6-16, he testified: "Q. Have you spoken with Tolemaida? A. Yes, in Barranquilla. Q. And did Mr. -- did you discuss with Tolemaida the murder

of the Drummond union leaders? A. Yes. We had our differences because he did not want me to testify. Moreover he threatened me. He told me that he had enough money to buy all of the witnesses. Exactly he told me that Drummond had given him money to fix the process. Q. This is something he told you supposedly? A. Supposedly, no. He did tell me."

12. At the Deposition of Alcides Mattos Tabares, *Balcero* Doc. 396, Ex. I, at 160:7-164:8, he further testified: "Q. Let me break it down so we don't have a problem. On the April 29th -- April 23rd, 2009 testimony for Charris what did you tell the prosecutor and the judge about your testimony? A. The safety of my family because they had been threatened. Q. Did the prosecutor or judge respond to your concern? A. Well, before then, before the prosecutor number 12, before the human rights Court, I had denounced that situation. Q. What situation are you referring to? A. To death threats. I made -- I denounced this, you know, all the way from Barranquilla during one of the free versions before I believe Judge Daisy Jaramillo. I denounced the fact that an attorney hired by Tolemaida had gone -- I think his name was Cesar Vaca -- to the model penitentiary to threaten me. And that I remember this was something that happened to an extent that the guards had to react because I got very angry when I received these threats from Tolemaida. Q. And what was the nature of the threat? A. The testimony. You know, the

7

testimony that I was beginning to provide during the justice and peace process and this was way before this. Q. Was there something that either Tolemaida himself or his lawyer Vagas or Vaca told you not to say? A. Yes. They didn't want me to testify. You know, they just didn't want me to provide testimony during the entire justice and peace process. Q. Testimony about what? A. Anything that pertained to the relationship between society and the AUC; anything pertaining to the death of the woman judge; anything pertaining to the link between the military and the AUC; anything pertaining to the deaths of the Drummond union leaders; anything pertaining to the politics, the relationship between politics and the front; anything pertaining to the creation of a political group for the front. Q. And you told Mr. Jeffress earlier that when you were in the jail in Barranquilla the same time as Tolemaida he offered you money; is that correct? A. (Speaking Spanish). Q. Let me ask another question then. A. Yes, and also – Q. What did he tell you exactly? A. Well, in Barranquilla Tolemaida offered all of us who were there in Barranquilla, all of the members of the front, money. He even proposed that I retract all of the statements that I had previously given because he had received monies -- and he told me just like this, he had received monies from Drummond and that he was going to give everyone some money. And then after this apparently he had problems with everyone

at the front because apparently he didn't give money to anyone. And in spite of this he was taking luxuries inside the jail and, of course, people got angry. Like, for example, building a door for the cell that costs 2 or 3 million pesos. Q. Did Tolemaida ever threaten you directly about the Drummond testimony? A. Yes, of course. Q. Can you tell me what he said? A. I remember that after a collective free version that was invalid legally for the reasons that I gave before, we had a small skirmish, you know, with me and one of the other candidates. And, you know, he practically told us that we had families outside and that he had money to -- with which to do whatever he wanted. And, you know, that free version that was shown on the video lasted 6 or 12 weeks, but I was only there twice. And other candidates were only in attendance two or three days. Q. Were you present when Tolemaida either offered money to or threatened any of the other members of the Juan Andrés Álvarez Front besides you? A. Yes, of course. Q. Can you tell me who? A. Francisco Gaviria. Q. Anybody else? A. No. I only remember Francisco Gaviria and he denounced this."

13. Hendrik van Bilderbeek was arrested on charges of money laundering during the Presidency of Alvaro Uribe. Hendrik has always maintained these charges were false and were the result of the illegal collaboration between Drummond and Uribe to steal the Llanos Oil concession in Colombia and

9

transfer it to Drummond. I have seen documentation of the objective fact that when the oil concession was seized from Llanos, it was immediately transferred to Drummond. Once Uribe's term concluded and President Santos took office, the Colombian government released Hendrik. Llanos Oil is in discussions with the Colombian government regarding the implications of these events.

14. Without waiving any privilege, including work product or attorney-client, I can say that I have had an attorney-client relationship with Hendrik van Bilderbeek and his brother, Albert van Bilderbeek. The nature of the representation is that I agreed to investigate and explore the options for them to bring a case against Drummond based on Drummond's role in the false imprisonment of Hendrik and the theft of the Llanos oil concession. The representation was solely based on a contingency fee agreement, and I was never otherwise compensated by Llanos. In my opinion, this work for the van Bilderbeek brothers had an obvious and substantial overlap with my work for the *Balcero* Plaintiffs as both cases require evidence of Drummond's unlawful acts and improper relationship with the Colombian government during the Uribe administration.

15. Attached hereto as Exhibit 6 is an excerpt of the January 25, 2013 Sentencing Decision by the Colombian Court for Jaime Blanco Maya, and an English translation of the original Spanish version.

16. Attached hereto as Exhibit 7 is the March 19, 2007 Factual Proffer of Chiquita Brands International in the criminal case of *United States of America v. Chiquita Brands International*, 07-055 (D.D.C.).

17. I met with three representatives of the Colombian government's prosecutor's office from the *Fiscalia 118 Especializada de Derechos Humanos* (Prosecutor's Office Unit 118 Specialized in Human Rights) for the purpose of their investigation into the role of various Drummond officials, including Garry Drummond, in the murder of the Drummond union leaders. As far as I know, the investigation is ongoing.

18. In addition to having cases against Drummond for human rights violations in Colombia, I have cases against Dole Food Company and Chiquita Brands International based on allegations similar to those made against Drummond, that they are responsible for war crimes and extrajudicial killings because they joined with the AUC in the Colombian civil conflict. During the course of my interviews with various AUC members, a common theme was that it was standard operating procedure in Colombia that multinational firms, as well as local companies, joined with the AUC if they had land or other

property in guerilla controlled territory. In September, 2012, I interviewed the last top commander of the AUC, Salvatore Mancuso, who is in prison in Virginia on drug trafficking charges. He appeared with me in a 2007 episode of *60 Minutes* and first stated there that Chiquita, Dole and many other multinational firms supported the AUC. When I interviewed him, he confirmed that Drummond was one of the other companies that had provided substantial support to the AUC, and that most of that support was provided to Mancuso's subordinate, Jorge 40.

19. At the present time, I have 15 major international human rights cases that I am handling as lead counsel. These include a 2001 case against Exxon Mobil for human rights violations in Indonesia, which could possibly get to trial this year, a 2005 case against Daimler for human rights violations in Argentina that is currently pending before the U.S. Supreme Court, a total of eight cases based in Colombia including those against Drummond, Dole, Chiquita, British Petroleum, Occidental Petroleum and Cerrejon, and a case against Nestle for using child slaves in the Ivory Coast to harvest cocoa.

20. Before I joined Conrad & Scherer, I litigated all of my human rights cases as the General Counsel of the International Labor Rights Forum and then as Director of the International Rights Advocates. Without waiving any privilege, I will say that after joining Conrad & Scherer in 2008, our

understanding was that I would manage all of the human rights cases in the firm's Washington, D.C. office, and later the firm's Quito, Ecuador office. Other than discussing the cases and providing updates to my partners in Conrad & Scherer's main office in Fort Lauderdale, Florida, no one in the Florida office has been involved in litigating the human rights cases or making strategic decisions in those cases, including my decision to write and send the letters that are the subject of Drummond's libel suit.

Executed this 18th day of July, 2013 in Washington, D.C.,

_____
Terrence P. Collingsworth