IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., )<br>)<br>Plaintiff , )<br>)<br>)<br>vs. )<br>)<br>TERRENCE P. COLLINGSWORTH, )<br>individually and as agent of Conrad & Scherer, )<br>LLP; and CONRAD & SCHERER, LLP, )<br>)<br>)<br>Defendants . )<br>) | Case No. 2:11-cv-3695-RDP<br><br>**OPPOSED** |

# DRUMMOND COMPANY, INC.'S REPLY SUPPORTING MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS, AND MOTION TO EXTEND LIMITATION ON REQUESTS FOR PRODUCTION[1]

William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G St. NW, Suite 800
Washington, DC 20001
(202) 627-6900

*Attorneys for Drummond Company, Inc.*

---

[1] Drummond Company, Inc. ("Drummond") relies on the arguments in its principal motion as to why the limitation on requests for production should be extended.

{B1628806}

**TABLE OF CONTENTS**

I. THE INFORMATION DRUMMOND SEEKS IS NEITHER PRIVILEGED NOR PROTECTED FROM DISCOVERY. ..................................................................................................2

    A. Defendants Have Not Satisfied Their Burden of Showing That The Material Is Privileged. ..................................................................................................3

    B. The Documents Withheld by the Defendants Are Not Protected from Disclosure by the Work-Product Doctrine. ...................................................4

        1. The work-product doctrine does not shield the discovery of facts. ..................4

        2. The work-product doctrine does not apply to unethical conduct. .....................5

        3. Defendants waived the protection of the work-product doctrine .....................7

        4. Drummond has a substantial need for these documents. ..................................9

II. THE INFORMATION PERTAINING TO LLANOS OIL IS DISCOVERABLE. ...................................10

III. THE INFORMATION PERTAINING TO FINANCING IS DISCOVERABLE. ....................................11

IV. THE INFORMATION PERTAINING TO PERSONAL JURISDICTION AND PRIOR MISCONDUCT IS DISCOVERABLE. .....................................................................................12

Certificate of Service .......................................................................................................13

Defendants have missed the point of this case and of this motion. In fact, the bulk of Defendants' opposition consists not of responses to the merits of the motion to compel, but of ad hominem attacks against Drummond.[2] The critical issue here—not addressed by a single case cited by Defendants—is that a lawyer sent facially defamatory letters to Drummond's customers and business partners urging them to terminate all business relationships with Drummond, and had these letters immediately published onto the internet, most likely before they even reached their intended recipients. That lawyer, not surprisingly, now finds himself as a defendant to a defamation suit. The facts known by and mental impressions of that lawyer are the central issue in the case: i.e., whether he knew or had reason to believe that the statements he published about Drummond were false. Also at issue is what motivated that lawyer to make such false and defamatory statements, and then provide them to a business competitor of Drummond for publication onto the internet.

Defendants contend—wrongly—that this case "has no chance of succeeding" because Mr. Collingsworth has declarations from Colombian prisoners which purportedly support his statements. What Drummond intends to prove, however, is that Mr. Collingsworth either knew or recklessly disregarded the fact that these declarations were untrue and unreliable. One aspect of this proof is that at least some (if not all) of these witnesses have been paid or provided some

---

[2] Drummond will endeavor herein to correct the record on these points, without responding in kind. For example, Mr. Collingsworth contends that after the Court denied a motion for protective order prohibiting Mr. Collingsworth from publishing further defamatory statements about Drummond, Drummond responded by suing him. Defs.' Opp. to Mot. to Compel (Doc. 46) at 2 (hereinafter "Defs.' Opp."). This ignores the *fact* that after the Court warned against further publicity of the case, Mar. 8, 2011 Hrg. Tr. at 48-49, Mr. Collingsworth nevertheless sent *another* letter to one of Drummond's business partners making the same defamatory statements and had it immediately published onto the internet by Llanos Oil. *See* Ex. C to Drummond's Mot., Sept. 19, 2011 Letter.

Mr. Collingsworth also paints the picture that the Florida office of Conrad & Scherer has had no involvement with the litigation against Drummond, or Mr. Collingsworth's conduct in connection therewith. Collingsworth Decl. at ¶20; Defs.' Opp. at 22. This attempt to exculpate Conrad & Scherer's home office is difficult to square with the facts that the vast majority of the payments to Halcon were made by Conrad & Scherer employees in Florida, Drummond's Mot., Wells Decl. at ¶11, the payments to Duarte appear to have originated from Conrad & Scherer's Florida office, Exs. BB & DD to Drummond's Mot., and William Scherer—a named partner in Conrad & Scherer's Florida office—is counsel of record in *Balcero*.

other inducement by Mr. Collingsworth. Other crucial pieces of evidence are the facts that Mr. Collingsworth possessed at the time he published the letters which cast doubt upon the veracity of the witnesses relied upon, and which he has withheld on claims of privilege or work-product. If a defamation defendant were allowed to only produce evidence supporting his statements, and withhold everything else known to the defendant which tends to contradict those statements, every defamation action would have "no chance of succeeding."

I. **THE INFORMATION DRUMMOND SEEKS IS NEITHER PRIVILEGED NOR PROTECTED FROM DISCOVERY.**[3]

Despite Defendants' conflation of the two protections—and almost wholesale reliance on cases involving the attorney-client privilege—the attorney-client privilege and work-product doctrine are two distinct concepts. "The attorney-client privilege applies to 'confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.'" *Miccosukee Tribe of Indians of Florida v. U.S.*, 516 F.3d 1235, 1262-63 (11th Cir. 2008). The work-product doctrine protects from disclosure materials prepared by an attorney acting for his client in anticipation of litigation or trial. *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947).[4] Drummond has no interest in Mr. Collingsworth's

---

[3] With respect to Defendants' half-hearted argument that the motion should be denied because it does not specify the requests at issue, Defs' Opp. at 11, Drummond *did* identify all requests for which privilege and work-product had been improperly claimed. Drummond's Mot. at 6 n.5. Due to the sheer number of requests to which Defendants have refused to respond (over 50 in all), Drummond sought to group the requests by subject matter to efficiently present the issues to the Court. Drummond has requested oral argument and, if such is granted, is prepared to delve into every request individually.

[4] "'Fact' work product, which reflects information received by the lawyer, receives less protection than 'opinion' work product, which reflects the lawyer's 'mental impressions, opinions, conclusions, judgments, or legal theories.'" *Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002). Defendants' motion repeatedly emphasizes the sanctity of an attorney's opinion work product, arguing that it can never be waived or produced. As an initial matter, this contention is wrong as a matter of law, as explained *infra* in Section I-B. Equally important, however, is the fact the Drummond is not interested in Mr. Collingsworth's legal theories in the underlying litigation. Drummond needs discovery into the *facts* known to Mr. Collingsworth at the time he published the defamatory letters, as well as what methods he used to obtain testimony. The only arguable "opinion" that Drummond seeks would be information reflecting Mr. Collingsworth's belief in the credibility of the witnesses on whose testimony he explicitly relies to defend himself in this case.

communications with his clients in *Balcero*. Indeed, from what Drummond has been able to ascertain from the few plaintiffs that have been deposed in *Balcero*, Mr. Collingsworth does not communicate with his clients and some do not even know who he is. *See* Ex. KK, *Balcero* Dep. Excerpts. The only communications between attorney and client at issue would be those between Mr. Collingsworth and Llanos Oil and its principals.[5]

### A. Defendants Have Not Satisfied Their Burden of Showing That The Material Is Privileged.

"[T]he burden rests with a party claiming privilege to demonstrate the applicability of the asserted privilege to a particular communication or item." *Harvey v. Standard Ins. Co.*, 275 F.R.D. 629, 631 (N.D. Ala. 2011) (citing *Solis v. Food Employees Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011)). If that burden is not met, as here, the burden does not shift to the requesting party to argue against the applicability of the claimed protection. *See, e.g., Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, 2001 WL 605199, at *2 (E.D. Pa. 2001) ("the burden does not shift to the party seeking discovery until the party asserting the privilege demonstrates the existence of the privilege").

In order to meet their burden, Defendants are required to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Defendants have not even attempted to satisfy their burden in this regard. They have not produced a privilege log, engaged in any detailed discussion about specific documents during the meet and confer process, or provided any helpful description of the documents being withheld in their

---

[5] The requests seeking documents relating to Llanos Oil are not objectionable based on either the attorney-client privilege or the work-product doctrine, as explained *infra* in Sections I-A, I-B, & II.

opposition brief to this Court. *See Alabama Educ. Ass'n v. Bentley*, 2013 WL 246417, at *5 (N.D. Ala. Jan. 22, 2013) (the assertion of privilege in "vague, nonspecific terms . . . fell far short of providing particulars usually contained in a privilege log"); *Solis*, 644 F.3d at 231 (finding no privilege where the defendant "did not specify the individual communications to which the privilege applied or submit a privilege log for the district court's assessment"); *In re Clemente*, 17 F. App'x 968 (Fed. Cir. 2001) (third party waived his right to withhold documents based on privilege where it failed to produce a privilege log).[6] Defendants have failed to produce a privilege log explaining what documents have been withheld and why, and therefore the parties and this Court can only consider the issues of privilege and work-product in the abstract. As such, Drummond's motion to compel should be granted.

B. **The Documents Withheld by the Defendants Are Not Protected from Disclosure by the Work-Product Doctrine.**

Even if the documents withheld by the Defendants could be fairly described as attorney work-product, and even if the Defendants had offered sufficient information justifying their claim of work product as to each specific document, the information sought is still discoverable.

1. **The work-product doctrine does not shield the discovery of facts.**

"[T]he underlying facts learned by the party or its representative are not protected by the work product privilege just because they are reflected in a document subject to Rule 26(b)(3), and these facts remain discoverable." *Doe v. Autauga County Bd. of Educ.*, 2006 WL 1223831, at *2 (M.D. Ala. 2006). Drummond's discovery requests are reasonably calculated to uncover

---

[6] *See also United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 2012 WL 2370637, at *7 (W.D. Okla. 2012) ("the party must describe in detail the 'documents or information sought to be protected.' To satisfy that burden, the party must 'provide sufficient information to enable the court to determine whether *each element*' of the privilege is satisfied.") (citations omitted); *Sauer v. Exelon Generation Co., LLC*, 2011 WL 3584780, at *6-7 (N.D. Ill. 2011) ("Privilege logs are an essential part of the litigation process that allow the court and the requesting party to determine the nature of each document being withheld and to assess the claim of privilege.").

*facts* known by Mr. Collingsworth at the time he wrote the defamatory letters. As such, the Defendants' claim of work-product protection is inapposite.

### 2. The work-product doctrine does not apply to unethical conduct.

For all documents and information that have any bearing on payments, or other inducements, to fact witnesses, there can be no work product protection. "[T]he purpose of the work product privilege is to protect the integrity of the adversary process; therefore, it would be improper to allow an attorney to exploit the privilege for ends that are antithetical to that process." *Parrott v. Wilson,* 707 F.2d 1262, 1271 (11th Cir. 1983), *cert. denied,* 464 U.S. 936, 104 S. Ct. 344 (1983). In *Parrott*, an attorney secretly taped conversations with witnesses, and claimed the tapes were protected as work-product. Although the clandestine recordings violated no law, the Eleventh Circuit found they did violate the attorney's ethical responsibilities. *Id.* Recognizing that "'in some circumstances, a lawyer's unprofessional conduct may vitiate the work product privilege,'" the Court held "that whatever work product privilege might have existed was vitiated by counsel's clandestine recording of conversations with witnesses." *Id.* at 1271-72 (quoting *Moody v. IRS,* 654 F.2d 795, 799-801 (D.C. Cir. 1981)); *see also Otto v. Box U.S.A. Group, Inc.*, 177 F.R.D. 698, 699-700 (N.D. Ga. 1997) ("Since *Parrott,* cases facing similar facts have prohibited attorneys from profiting from ethically questionable behavior . . . ."); *State of N.Y. v. Solvent Chemical Co., Inc.*, 166 F.R.D. 284, 289-90 (W.D.N.Y. 1996) (the impropriety in hiring and compensating a fact witness as a "litigation consultant" dictated "that the company must forfeit any protection that it might otherwise claim to such information").

Defendants do not deny that they have paid more than $90,000 to witnesses (or witnesses' families) in Colombia. Rather, they liken themselves to federal prosecutors using the witness protection program in pursuing mafia figures, and maintain that these payments were

required in order to ensure the safety of these witnesses and their families. Defs.' Opp. at 3-5; Collingsworth Decl. at ¶5. Defendants are not federal prosecutors. They are civil plaintiffs' attorneys. And despite their adamant accusations that Drummond's discussion of these payments is "outrageous," they fail to cite any legal authority that allows for these types of payments. To the contrary, payments to fact witnesses, unless limited to the witnesses' actual expenses incurred or time lost in testifying, are unethical and prohibited by law.[7] *See* Alabama State Bar Opinion 1997-02, Ex. LL (interpreting Rule 3.4 of the Alabama Rules of Professional Conduct to allow payment of fact witnesses only for "actual expenses, including loss of time or income"); *see also* Ala. R. Prof. Cond. 3.4, comment ("[t]he common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying").

For example, in *Golden Door Jewelry Creations, Inc. v. Lloyd's Underwriters Non-Marine Assoc.*, 865 F. Supp. 1516 (S.D. Fla. 1994), *aff'd in relevant part*, 117 F.3d 1328 (11th Cir. 1997), the court found that payments to fact witnesses, regardless of whether they were to secure false testimony, violated the Rules of Professional Conduct. *Id.* at 1525-26 ("*The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true.*") (emphasis by the court and quoting *In re Robinson,* 151 A.D. 589, 600, 136 N.Y.S. 548, 445 (1912)). And claiming, without citation to any authority, that the payments were for "protection" does not render them proper.[8]

---

[7] The witnesses at issue are imprisoned in Colombia, and therefore have no expenses or lost income from testifying.

[8] Moreover, the claim that the witnesses needed "protection" from Drummond, in addition to being false, is belied by the evidence. For example, Charris requested, and was promised, payment for his family's moving expenses, not because of any claimed threat, but because of a potential prison transfer to be near Charris' ill mother-in-law. Exs. Y & W to Drummond's Mot. Charris also references a "business proposal" solicited by Mr. Collingsworth's team. *Id.* Moreover, the monthly payments to Charris began in July 2009, *before* the September 3, 2009 declaration against Drummond was signed, and months before Charris was first mentioned as a potential witness in the First Amended Complaint filed in *Balcero* on December 4, 2009. *See* Exs. N & V to Drummond's Mot.; *Balcero* Doc. 35.

As aptly explained by one court:

> If large sums may be paid or promised to an ordinary witness, and that in itself not be condemned, then in every case where it appears that money was so paid or promised the court will be confronted with the difficult, if not impossible, task of probing into the brain of the promisor to determine whether such promise was to induce the witness to testify to the truth or to a falsehood. It is contrary to the presumptions of law that a witness must be hired to speak the truth, and, although there may be cases where a witness refuses to testify to the truth without an inducement, if the rule be established that such inducement be permissible, the floodgates of fraud and bribery will be thrown wide.

*In re O'Keefe*, 142 P. 638, 641 (Mont. 1914); *see also Dyll v. Adams*, 1997 WL 222918, at *2 (M.D. Tex. 1997) (an offer to settle claims against a witness in exchange for the witness to provide testimony, even if rejected, is an ethical violation). Defendants' admitted, improper payments to witnesses vitiate any protection afforded by the work-product doctrine as to any documents pertaining to the testimony of, or payments to, those witnesses, or any other witness who has received or been offered payment or other inducement.

### 3. Defendants waived the protection of the work-product doctrine.

Defendants argue that implied waiver "does not extend to materials protected by the work-product doctrine," and thus Drummond's motion should be denied. Defs' Opp. at 13 (citing *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994)). That argument is a red herring. In *Cox*, the Eleventh Circuit held that "subject-matter waiver" of the work-product privilege does not extend to opinion work product where a party relied on the legal

---

There is *no* evidence of any threats against Halcon. In fact, Drummond has never even been advised of "Halcon's" real name. Ex. MM, *Balcero* Pls.' Am. Resp. to 2d Interrog. #1. Defendants' claim that Halcon has nothing to do with the case and the payments are therefore irrelevant holds no water in light of the fact that Halcon was identified by Defendants as having relevant knowledge regarding the alleged relationship between Drummond and the AUC. *Id.* Nevertheless, Defendants have paid this person, whose real name they claim not to know, more than $50,000 since 2008. Wells Decl. at ¶¶10-11. This begs the question: why?

Additionally, the claims of "threats" are again premised on unsubstantiated claims of imprisoned paramilitaries. There is testimony from other imprisoned paramilitaries that members of Mr. Collingsworth's team have offered money for declarations against Drummond. Ex. NN, Decl. of Tolemaida. Indeed, Tolemaida describes an offer from Francisco Ramirez of a payment scheme strikingly similar to the one Defendants now admit is in place between Mr. Ramirez and Charris. *Id.* at ¶9. Mr. Ramirez is a member of Mr. Collingsworth's team that has appeared on behalf of the *Balcero* plaintiffs at depositions both in Birmingham and in Colombia.

advice of counsel as an element of his defense. *Id.* That is not the situation presented here. Rather, it is the *lawyer* who is the defendant; it is the *lawyer* who made the defamatory statements; and it is the facts known to and mental impressions of that *lawyer* which are central to this case: whether that lawyer knew or had reason to believe his statements were false.[9]

Despite their contentions to the contrary, and as clearly contemplated by both the Federal Rules of Evidence and federal case law, the implied waiver doctrine was created for situations precisely like this one. "[S]ubject matter waiver (of either privilege or work product) is reserved for those situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a), Advisory Committee Notes. Mr. Collingsworth claims that he cannot lose this case because he has produced declarations of paramilitary witnesses, but he is withholding as work-product all information reflecting how that testimony was procured, his views on the credibility of those witnesses, and information gained through his investigation that tends to cast doubt on the veracity of those declarations.

---

[9] The arguments and case law cited in the Defendants' opposition exhibit the failure to grasp this concept. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1423 (11th Cir. 1994) ("Where a party asserts that he believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions"); *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 13 (D.D.C. 2010) (examining whether disclosure to a third party constituted waiver and whether the party had placed the material at issue, ultimately concluding that no waiver had occurred because "plaintiffs have not asserted a claim or defense based on [counsel's] advice"); *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (finding no waiver because "Petitioners here do not rely upon the advice of counsel in the assertion of their defense in this action"); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("As Rhone-Poulenc and Armour have not interjected the advice of counsel as an essential element of a claim in this case, the district court erred in affirming the magistrate judge's decision and in finding they must disclose documents relating to the AIDS-related evaluation that would otherwise be protected from disclosure by the attorney client privilege.").

The others cases that the Defendants cite are totally inapposite. *QBE Ins. Corp. v. Griffin*, 2009 WL 2913478 (M.D. Ala. 2009) addressed whether a litigant could waive the attorney-client or work-product privilege by failing to object to written discovery within 30 days. *Ex parte State Farm Fire & Cas. Co.*, 794 So. 2d 368, 376 (Ala. 2001) examined whether a litigant waived the attorney-client privilege by claiming damages for attorneys' fees incurred in a previous action. *Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. 1997) actually found a waiver. There, the court held that "UJB cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny the Trustee access to the advice given by counsel where that advice, based upon this deposition testimony, played a substantial and significant role in formulating the actions taken by UJB." *Id.*

The simple truth is that this case presents a unique situation and that the analysis in *Stern v. O'Quinn*, 253 F.R.D. 663 (S.D. Fla. 2008) is directly on point. Without citation to a single case, Defendants dismiss *Stern* as "widely criticized and expressly rejected by several appellate courts." Defs.' Opp. at 14. Drummond's research uncovered no appellate or district case criticizing or rejecting *Stern*.[10] To the contrary, other federal courts have cited *Stern* and followed its reasoning. For example, in *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, the court relied on *Stern* to find that the plaintiff waived any protection of his attorney's fact and opinion work-product by placing his attorney's state of mind at issue. 2011 WL 3918597, at *6-8 (S.D. Fla. 2011).[11] *See also Sann v. Mastrain*, 280 F.R.D. 437, 440 (S.D. Ind. 2011) (citing *Stern* and finding an at-issue waiver of both fact and opinion work product).

### 4. Drummond has a substantial need for these documents.

Finally, even if Defendants had made the requisite, specific showing of work-product, and even if they have not waived the doctrine's protections, Drummond is nevertheless entitled to discovery of these documents because it has a substantial need for them and it is unable to otherwise obtain the information without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Defendants do not dispute, nor could they, that Mr. Collingsworth's subjective state of mind is squarely at issue given the claims and defenses in this lawsuit. And a full picture of the facts known to Mr. Collingsworth at the time he published the defamatory statements is unquestionably uniquely within his possession and control. It is in precisely such circumstances

---

[10] In fact, the focus of Defendants' attack is not on *Stern*, but on *Hearn v. Rhay,* 68 F.R.D. 574 (E.D. Wash. 1975), a case cited by the *Stern* court once, in a parenthetical, as part of a string cite, with no further discussion. *Stern*, 253 F.R.D. at 676; *see also* Defs.' Opp. at 14-17.

[11] Significantly, the *Maplewood* court also recognized that the analysis of waiver in *Cox* was limited: "In *Cox* the withheld documents pertained to an element of a party's defense based on the *client's* thoughts and mental impressions. Thus, *Cox* recognizes the protection of an attorney's opinion work product from at-issue waiver where the issue injected into the heart of the litigation is a client's own thoughts and mental impressions. […] Unlike in *Cox*, in *Tolz* and *Stern* the issue injected into the heart of the litigation concerned an *attorney's* thoughts and mental impressions." *Maplewood Partners*, 2011 WL 3918597, at *7 (emphasis in the original) (citations omitted).

that courts recognize substantial need that overcomes even a claim of opinion work-product. *See American Dental Ass'n v. Khorrami*, 2003 WL 24141019, at *8 n.5 (C.D. Cal. July 14, 2003) ("Plaintiff's claim presents an exceptional case whereby Defendant attorney's subjective mental state—his or her opinion about the truth or validity of a concept—is directly at issue in the action, [and thus] permitted discovery of Defendant's opinion work product."); 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2026 (Supp. 1994) ("Documents that would otherwise be protected must be produced if the knowledge, mental impressions, opinions, and advice of a lawyer or law firm are at issue in a litigation to which the lawyer or law firm is a party."); *Hartman v. Banks*, 164 F.R.D. 167, 169-70 (E.D. Pa. 1995) (same).

## II. THE INFORMATION PERTAINING TO LLANOS OIL IS DISCOVERABLE.

Defendants primarily contend the requests relating to Llanos Oil are improper because of the attorney-client privilege, the work-product doctrine, and the common-interest privilege.[12] This Court has already held that the common-interest privilege only applies as between co-parties to the same litigation, *Giraldo v. Drummond Co., Inc.*, 2012 WL 1340068, at *3 (N.D. Ala. 2012), and Llanos Oil is not a co-party with any of Mr. Collingsworth's other clients. For a similar reason, and in addition to the reasons discussed above, the work-product doctrine does not apply because Llanos Oil is not a party to this suit. *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 284-85 (11th Cir. 2009) ("'[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3)'").

---

[12] Defendants cannot in good faith contest the relevancy of this information. It is alleged in this case that the defamation was part of a plan with Llanos Oil, a business antagonistic to Drummond, and it is an undisputed fact that the internet publication was accomplished through Llanos Oil. This information is further relevant to motive and malice. Although Mr. Collingsworth somehow contests the use of the term "financial arrangement," he admits he has a contingency fee arrangement with Llanos Oil for a case seeking to hold Drummond liable for taking billions of dollars worth of mineral rights. This Court has already expressed concern over Mr. Collingsworth's relationship with Llanos Oil, admonishing Mr. Collingsworth "that you're going to open yourself up at a minimum to questions about your approach to this case and what your interests are." *Balcero* Doc. 339, Mar. 8, 2012 Hrg. Tr. at 8-10, 68.

Furthermore, Defendants have not established the attorney-client privilege with respect to any documents withheld. Not every communication between a lawyer and client is subject to the privilege. For example, Mr. Collingsworth does not explain how the forwarding of the defamatory letters to Llanos Oil somehow constitutes a communication, relating to a fact which the attorney was informed by his client, "made for the purpose of securing legal advice." *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990). Moreover, Drummond has requested documents sent to *third parties* by Defendants on behalf of Llanos Oil, which clearly are not privileged. *See* Ex. I to Drummond's Mot., Am. Resp. to 1st Req. for Prod. #45. Defendants have not met their burden of proving that any of the requested documents relating to Llanos Oil are privileged.

## III. THE INFORMATION PERTAINING TO FINANCING IS DISCOVERABLE.

Defendants object to disclosing the details of the financing of their litigation, and their gathering of "evidence," against Drummond, including the identity of the financiers, on the grounds that it is irrelevant and privileged. Defendants cite no authority for their proposition that agreements with third party financiers are privileged. Defs.' Opp. at 22. The Eleventh Circuit has "consistently held that information regarding a fee arrangement and the identity of the person paying the fee falls outside the protection of the attorney-client privilege." *In re Grand Jury Proceedings in Matter of Freeman*, 708 F.2d 1571, 1575 (11th Cir. 1983). Nor are the Defendants' communications with litigation financiers privileged. *Leader Technologies, Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010).[13]

This financing information is also clearly relevant. First, it bears on the Defendants'

---

[13] Defendants' conclusory contention that producing this information would be overly burdensome, Defs.' Opp. at 22, is supported by no evidence and should be rejected. "Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012).

motive in writing and publishing the defamatory statements, as it will presumably reflect the amount of money expended by the Defendants and/or third parties in their lengthy and unsuccessful pursuit of litigation against Drummond. Additionally, the requests are reasonably calculated to lead to facts regarding the payment of witnesses, including the sources of those payments. *See* Ex. GG (asking Halcon to be patient this month because the money "is coming from another source"). To fully explore and trace the payments, Drummond must know where the money originally came from, who the intended recipient(s) was/were, and the purpose(s) of the payments as explained by the Defendants to any third parties.

IV. **THE INFORMATION PERTAINING TO PERSONAL JURISDICTION AND PRIOR MISCONDUCT IS DISCOVERABLE.**

Defendants also contend, again without citation to authority, that none of Drummond's requests relating to the issue of personal jurisdiction seek relevant information. These requests *are* reasonably calculated to lead to admissible evidence. *Melech v. Life Ins. Co. of N. Am.*, 2011 WL 1047716, at *6 (S.D. Ala. 2011) (whether a defendant has "entered into any contracts in Alabama" is relevant to the personal jurisdiction inquiry); *Cox Enterprises, Inc. v. Holt*, 678 F.2d 936, 938 (11th Cir. 1982) (time spent in the forum state is a relevant factor); *Fraser v. Smith*, 594 F.2d 842, 847 (11th Cir. 2010) (although insufficient, standing alone, defendant's purchases in forum state are relevant to the inquiry).

With respect to discovery into prior misconduct or ethical complaints, Defendants' propensities for unethical conduct and truthfulness are squarely at issue in this case, and Drummond's requests will uncover evidence that will illuminate both. *See Parson & Whittemore Enterprises Corp. v. Cello Energy LLC*, 2010 WL 1994857, at *2 (S.D. Ala. 2010) ("[t]he term 'relevant' should be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.'").

Respectfully submitted,

| | |
|---|---|
| /s/ H. Thomas Wells, III | /s/ Sara E. Kropf |
| William Anthony Davis, III (ASB-5657-D65W) | Sara E. Kropf |
| H. Thomas Wells, III (ASB-4318-H62W) | LAW OFFICE OF SARA KROPF PLLC |
| Benjamin T. Presley (ASB-0136-I71P) | 1001 G St. NW, Suite 800 |
| STARNES DAVIS FLORIE LLP | Washington, DC 20001 |
| P.O. Box 59812 | (202) 627-6900 |
| Birmingham, AL  35259 | |
| (205) 868-6000 | |
| fax: (205) 868-6099 | |

*Attorneys for Drummond Company, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on **July 29, 2013**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John W. Clark, Jr., Esq.
Bradley J. Smith, Esq.
Clark, Hair & Smith, P.C.
1000 Urban Center Drive
Suite 125
Birmingham, Alabama 35242

/s/ H. Thomas Wells, III
H. Thomas Wells, III (ASB-4318-H62W)
