IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., <br><br> Plaintiff , <br><br> vs. <br><br> TERRENCE P. COLLINGSWORTH, individually and as agent of Conrad & Scherer, LLP; and CONRAD & SCHERER, LLP, <br><br> Defendants . | Case No. 2:11-cv-3695-RDP <br><br> **OPPOSED** |

**DRUMMOND COMPANY, INC.'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO INTERROGATORIES
AND PRODUCTION OF DOCUMENTS**

William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL 35259
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G St. NW, Suite 800
Washington, DC 20001
(202) 627-6900

*Attorneys for Drummond Company, Inc.*

## TABLE OF CONTENTS

I. DEFENDANTS HAVE NEITHER SEARCHED FOR NOR LOGGED ENTIRE CATEGORIES OF DOCUMENTS THAT ARE CRUCIAL TO THE CLAIMS AND DEFENSES IN THIS ACTION. ...................................................................................................................5

    A. Financing of litigation against Drummond ...............................................6

    B. Legal research regarding payments to witnesses ......................................8

    C. Internal communications and documents regarding the Defendants' investigation of facts, witness credibility and the payment of witnesses in the underlying litigation ...............................................................................9

II. DOCUMENTS PERTAINING TO LLANOS OIL ARE DISCOVERABLE .........................10

III. COMMUNICATIONS AND DOCUMENTS WITH IVAN OTERO ARE NOT PRIVILEGED ................14

Conclusion ........................................................................................................................17

Certificate of Service .........................................................................................................18

Drummond filed this lawsuit alleging that Mr. Collingsworth—in concert with Llanos Oil and in furtherance of a campaign against Drummond designed to harm its business interests—publicly disseminated three defamatory letters stating as "objective facts" that Drummond collaborated with a Colombian terrorist organization to commit scores of murders. Despite Defendants' efforts to obscure the facts, these allegations are being borne out by the evidence. Defendants' recent privilege log and production of documents make clear that not only was Llanos Oil directly involved in publishing the letters at issue, but it was also directly involved in securing litigation funding for Mr. Collingsworth, instructing that the letters be written, and revising the letters. This was all part of a "campaign" designed to "close down Drummond." *See* pages 10-12, *infra*.

Defendants have made repeated false statements during discovery in an attempt to obstruct Drummond's discovery of the facts. For example, in response to Drummond's Interrogatory No. 1 seeking the identities of all drafters, reviewers and editors of the defamatory letters at issue, Mr. Collingsworth stated, under oath, that he "was the sole author, reviewer, and editor of the referenced letters." Doc 43-9, Am. Ans. to Interrog. No. 1. It is now clear that this was untrue. Defendants' privilege log entries 57-59 and 61-63 reference drafts of the letters, and reveal that at least *six* other people reviewed, drafted or edited the defamatory letters. One of the six who participated in the review and editing process is Albert van Bilderbeek of Llanos Oil.

Similarly, when Drummond asked for all drafts of the letters, Defendants responded that they did "not have the requested documents in their possession, custody or control." Doc 43-6, Resp. to Req. for Prod. Nos. 48-50. This, too, is apparently false. Entries 57, 58, 59, and 61 of the privilege log describe drafts of each of the letters at issue, one of which was edited by Albert van Bilderbeek. Despite raising no work product or privilege objection when originally

1

representing they had no such drafts, Defendants have now withheld these drafts as work product.[1]

Defendants are also obstructing discovery requests issued to non-parties based on misrepresentations. As the Court knows, Drummond served several non-party subpoenas seeking documents reflecting payments to witnesses, and Defendants have moved to quash every single one. In attempting to paint the subpoena to Daniel Kovalik[2] as harassment, Mr. Collingsworth *testified* that Mr. Kovalik was co-counsel in *Drummond I* "until the appeal concluded in 2008," but "[h]e has not had any involvement at all in the subsequent *Balcero* litigation." Ex. OO, Collingsworth Decl. at ¶4.[3] As demonstrated by the numerous entries on Defendants' privilege log reflecting communications with Kovalik regarding the *Balcero* case

---

[1] The work product objection is completely without merit. Work product protection is only available for documents or things that are "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). As noted by this Court, in determining the scope of the work-product privilege "the critical issue is the purpose for which the documents were created." *Regions Financial Corp.*, 2008 WL 2139008, at *5 (N.D. Ala. May 8, 2008). There is no conceivable explanation of how these letters could possibly have been prepared in anticipation of litigation. Where "[b]usiness imperatives, not the press of litigation, *call these documents into being*," there is no work-product protection. *Id.* (emphasis in original) (quoting approvingly *United States v. El Paso Co.*, 682 F.2d 530, 543 (5th Cir. 1982)). As explained on pages 10-12 *infra*, these letters were written and published not for purposes of litigation, but rather at the behest of Llanos Oil as part of a "campaign" to "close down Drummond."

Even if the letters could be reasonably characterized as attorney work-product – which they cannot – Drummond has a substantial need to discover them, as they are drafts of the very letters giving rise to this litigation. Because the letters go to the ultimate issue of Defendants' actual malice, their discoverability presents "an exceptional case" overcoming any claim of work product because the "Defendant attorney's subjective mental state—his or her opinion about the truth or validity of a concept—is directly at issue in the action." *American Dental Ass'n v. Khorrami*, No. cv-02-3853-DT(CTX), 2003 WL 24141019, at *8 n.5 (C.D. Cal. July 14, 2003).

[2] Again, Mr. Kovalik was counsel of record in *Drummond I*, and the evidence shows he is involved in payments to Jose Joaquin Pinzon, the intermediary for paramilitary "Halcon."

[3] Exhibits OO through AAA cited herein are those attached to the declaration of H. Thomas Wells, III filed contemporaneously herewith. Previously filed exhibits, as well as documents from the *Balcero* record, are cited as they have been in Drummond's previous briefing.

between 2009 and December 2012 (entries 1-16), this statement cannot be true. Furthermore, an email recently produced by Defendants reveals that Mr. Kovalik was still receiving emails from Jose Joaquin Pinzon regarding "support" payments for Halcon as late as February 17, 2009. Ex. PP, CS000809.

Defendants have repeatedly contended in opposition to all of the third-party subpoenas that all documents pertaining to payments to witnesses were already requested and produced in *Balcero*, and Drummond's subpoena requests on this issue are simply harassment.[4] As the Court knows, after the close of discovery in *Balcero*, and after all of the paramilitary witnesses had been deposed, Defendants produced a series of documents in August 2012 and January 2013 revealing that several of those witnesses had been paid substantial sums of money. Yet just last week, Defendants produced over 400 *additional* pages of documents pertaining to their payments to Halcon and Charris, the vast majority of which pre-date Defendants' January 2013 production in *Balcero*. Wells Decl. at ¶ 3.[5] Defendants have offered no explanation as to why these documents were withheld in *Balcero*, or how their repeated contention that these documents had already been produced can possibly be true.

Now, after this Court ordered the Defendants to produce a comprehensive privilege log to

---

[4] For example, in their motion to quash the subpoena to International Rights Advocates, filed in District of Columbia federal court on August 16, 2013, Defendants stated that "Defendants have already produced all responsive, non-privileged documents regarding security provided to Drummond witnesses in the *Balcero* litigation." *Drummond Company, Inc. v. Collingsworth*, No. 1:13-mc-00877-ABJ-DAR (D.D.C.), Defs.' Mot. to Quash (Doc. 1) at 15. In their motion to quash the subpoena to Parker Waichman, LLP, Defendants similarly argued that requests concerning payments to witnesses were for purposes of harassment, and represented that "all responsive, non-privileged requested documents have *already been produced* to Drummond in this defamation suit and in the *Balcero* litigation." *Drummond Company, Inc. v. Collingsworth*, No. 1:13-mc-00690-JBW (E.D.N.Y.), Defs.' Mot. to Quash (Doc. 1) at 9 (emphasis in original).

[5] Virtually all of these documents are in Spanish, and due to their late production Drummond has been unable to complete the translation and review process for the entire production.

3

Drummond and the Court, Defendants provided a log containing only 165 entries, nearly all of which are emails, along with a six page letter explaining the broad categories of documents Defendants have refused to search and therefore have not logged.[6] On October 3, Defendants produced more than 1,000 pages of additional documents (more than 400 of which relate to witness payments, as noted above).

Defendants' refusal to even search for and log documents of critical relevance should not be permitted. For example, Defendants refused to search for documents pertaining to financing of litigation against Drummond, yet Drummond knows that certain financiers have raised questions about Mr. Collingsworth's payments to witnesses. Defendants refused to search for legal research regarding the payment of witnesses, but Drummond knows that a legal memorandum specifically devoted to the subject was created to respond to concerns raised to Mr. Collingsworth by other lawyers over such payments.

For the documents Defendants *did* search for and log, there can be no legitimate claim of protection from discovery. Defendants have withheld communications with Llanos Oil, when it is clear that Llanos Oil was involved in the financing of litigation against Drummond, and apparently masterminded the writing of the defamatory letters at issue in this case. Almost two-thirds of the documents on Defendants' privilege log pertain to communications with Ivan Otero—a Colombian attorney who has represented nearly all of the major paramilitary witnesses against Drummond (El Tigre, Samario, Charris, and Jaime Blanco) and to whom Mr. Collingsworth has promised a contingency fee in the event of a recovery from Drummond. Drummond has been unable to locate any authority recognizing that communications with and remuneration of an attorney for critical fact witnesses falls within any recognized privilege.

---

[6] In the event Defendants did not provide the letter to this Court, it is attached hereto as Exhibit QQ.

4

Defendants should be ordered to produce unredacted copies of all of these documents.[7]

I.  **DEFENDANTS HAVE NEITHER SEARCHED FOR NOR LOGGED ENTIRE CATEGORIES OF DOCUMENTS THAT ARE CRUCIAL TO THE CLAIMS AND DEFENSES IN THIS ACTION.**

Despite this Court's Order requiring the production of a privilege log to aid in the analysis of their claims of privilege in this case, Defendants have refused to search for, or log, several categories of documents. In their October 2 letter enclosing the privilege log, Defendants contend that they did not need to log certain documents and therefore did not search for them. Defendants declined to search for communications and internal documents regarding fact gathering, witness testimony, and witness credibility, because Drummond's request for these documents is "broad." Ex. QQ, Defs.' Oct. 2, 2013 Letter at 3. Defendants similarly refused to search for or log documents pertaining to the financing of litigation against Drummond, arguing that these requests are "extremely broad and burdensome." *Id.* at 4. Finally, Defendants flatly refused to either search for or log internal documents pertaining to the propriety of payments to fact witnesses, contending that they "understood this Court's limitation [not requiring production of legal research] to apply to internal attorney communications analyzing the research concerning security payments or otherwise providing attorney commentary or analysis about such payments." *Id.* at 2.

As explained below, the relevance of all of these categories of documents is unquestionable, and Defendants' failure, after a Court order, to produce a privilege log regarding these documents waives any claim of privilege. As a result of their refusal to comply with this

---

[7] At the very least, the circumstances warrant an *in camera* review of the 165 documents in question. "It is settled that in camera proceedings are an appropriate means to resolve disputed issues of privilege." *Application of Eisenberg*, 654 F.2d 1107, 1112 n.7 (5th Cir. Sep. 4, 1981) (citing *Kerr v. United States District Court*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). In this case, where the subjective state of mind of a defendant attorney is the central issue, the dispute over what Defendants are entitled to withhold from discovery based on claims of privilege and work product is of critical importance.

5

Court's order to log all of the documents they contend are privileged, Defendants "deprived [Drummond] of the opportunity to contest, and this court of a basis to evaluate, their privilege claims," and have therefore waived any claim of privilege for all non-logged documents. *Alabama Educ. Ass'n v. Bentley*, No. cv-11-S-761-NE, 2013 WL 246417, at *5 (N.D. Ala. Jan. 22, 2013); *In re Clemente*, 17 F. App'x 968 (Fed. Cir. 2001) (third party waived his right to withhold documents based on privilege where it failed to produce a privilege log). Drummond therefore requests that should the Court agree that these documents are otherwise discoverable, the Court order they be produced irrespective of any claim of privilege or work product protection.

### A. Financing of litigation against Drummond.

By their own admission, Defendants have neither searched for nor logged documents pertaining to the financing of litigation against Drummond. Ex. QQ, Defs.' Oct. 2, 2013 Letter at 4. These documents are not only relevant to Mr. Collingsworth's motivations for defaming Drummond, but are also critical to Drummond's efforts to discover the full scope of payments to the witnesses on whom Mr. Collingsworth relies for the "truth" of his statements. A complete production of documents reflecting the funding of Mr. Collingsworth's evidence gathering activities will reveal the extent to which there are unexplained withdrawals or expense descriptions, and will provide the basis on which a forensic accounting can be done to ascertain the full scope of Mr. Collingsworth's payments to witnesses. Based on what Drummond has learned, Defendants' refusal to search for or log documents pertaining to financing is likely due more to concerns over what such evidence would reveal than the stated objections of burden or overbreadth.

As this Court knows, Drummond served several non-party subpoenas requesting documents pertaining to the payment of witnesses in Colombia. After the subject of one of the subpoenas was reported in a legal blog article, Drummond's counsel was contacted by an attorney named Paul Wolf who served as co-counsel with Mr. Collingsworth in an ATS case filed against Chiquita. Ex. RR, Wolf Decl. ¶¶ 3 & 7. Mr. Wolf revealed that Parker Waichman, LLP—which briefly served as counsel of record in the *Balcero* case—provided substantial financing for Mr. Collingsworth's ATS cases arising in Colombia. *Id.* at ¶ 11. Mike Hugo, a former attorney with Parker Waichman, was responsible for reviewing and approving all expense requests submitted by Mr. Collingsworth. *Id.* Mr. Collingsworth had apparently requested and received from Parker Waichman large amounts of money purportedly for "security" in Colombia. *Id.* at ¶¶ 12-14. When Mr. Hugo accompanied Mr. Collingsworth on a trip to Colombia, and inquired as to the lack of security, Mr. Collingsworth informed him that the funds earmarked for "security" were actually being used to pay the lawyers of paramilitary witnesses in Colombia. *Id.* at ¶¶ 13-14.[8]

Clearly, Defendants have financed their "fact gathering" from outside sources who, like any financiers, require documentation to substantiate expense requests or other draws from litigation funds. At least one of these financiers discovered that its funds were being used to provide benefits to paramilitary witnesses, and raised concerns over these issues to Mr. Collingsworth.[9] Drummond must be able to discover the identities and documents relating to all

---

[8] Drummond has served a subpoena on Parker Waichman LLP for documents related to witness payments. Defendants filed a motion to quash. This motion is expected to be fully briefed by October 31, 2013.

[9] As discussed more fully on pages 10-13 *infra*, Llanos Oil also played a central role in financing litigation against Drummond and there is evidence that Hendrik van Bilderbeek of Llanos Oil offered money to imprisoned former paramilitaries for false testimony against Drummond.

financiers of Mr. Collingsworth's litigation against Drummond in order to uncover the full extent of payments to witnesses against Drummond. In fact, Defendants should be volunteering to produce such documents, as they have yet to produce a single document supporting their naked claim that the payments were for "security."

### B. Legal research regarding payments to witnesses.

Defendants also refused to search for or log documents pertaining to legal research regarding payments to witnesses in *Balcero* or other cases, based on a skewed interpretation of the Court's, and Drummond's, clarification that Drummond is not seeking purely legal research, such as the impact of the *Kiobel* decision on ATS cases.[10] Drummond intends to prove that Mr. Collingsworth knowingly or recklessly disregarded the falsity of the letters at issue in part because the evidence he bases them on was paid for. Mr. Collingsworth has stated his intention to argue that he was justified in making such payments. If there are documents discussing or analyzing the propriety of such payments, Drummond is entitled to discover them.

As revealed by the declaration of Paul Wolf, it is clear at least one such document exists. Ex. RR, Wolf Decl. ¶¶ 24-26. When Mr. Collingsworth was understandably challenged by other attorneys regarding his payments directly or indirectly benefitting witnesses in Colombia, Mr. Collingsworth represented he had an "ethics opinion" on the issue. *Id.* at ¶¶ 20-21. Instead of producing an opinion from any Bar, Mr. Collingsworth commissioned a legal memorandum on

---

[10] Defendants' letter contends that this Court's order did not obligate them to search for, produce or log these documents. Ex. QQ, Defs' Oct. 2, 2013 Letter at 2. One page later, Defendants confusingly acknowledge that Drummond specifically requested that the Defendants log any internal communications or documents related to payments to witnesses (including legal research) which Defendants contend are privileged. *Id.* at 3. Whatever their position, suffice it to say that the Defendants' "understanding" of this Court's August 28, 2013 text order (Doc 55) is dramatically different than Drummond's. Drummond understood this Court's order to require Defendants to produce a comprehensive privilege log, and that all documents relating to payments of witnesses were "fair game."

8

the issue by one of his associates at Conrad & Scherer. *Id.* at ¶ 26.  Yet, Defendants have neither produced nor logged this document, or any others which surely exist analyzing the propriety of paying witnesses, attorneys for witnesses, or witnesses' families when such was clearly occurring.  Defendants have now waived any claimed privilege or work product.  Moreover, no work product could possibly exist to protect documents touching on the Defendants' admitted conduct of making payments for the benefit of witnesses.  *See* Drummond's Reply Supporting Mot. to Compel (Doc. 50) at 5-7.

      **C.**    **Internal communications and documents regarding the Defendants' investigation of facts, witness credibility and the payment of witnesses in the underlying litigation.**

Despite Drummond's efforts to limit requests calling for internal communications to documents bearing on Defendants' subjective beliefs as to the credibility of witnesses, including any improprieties in securing such testimony, Defendants have also wholly failed to either search for or log *any* internal communications or documents pertaining to their "fact investigation" in the underlying litigation, arguing that the limitation is vague and they "would be forced with the burden of logging communications regarding case strategy that span 10 years since the requests began in 2003." Ex. QQ, Defs' Oct. 2, 2013 Letter at 3.  Again, by failing to log any such documents they contend are privileged, after being ordered to do so by this Court, Defendants waived any privilege or work product objection.  Without such a log, neither Drummond nor the Court can consider whether, for example, communications regarding payments to witnesses can be protected by any recognized privilege.  Absent a log, there can be no analysis of whether the documents at issue are opinion work product or fact work product (which enjoys much less protection than opinion work product).  And without knowing the types of documents at issue,

Drummond is prejudiced in its attempt to demonstrate substantial need which would overcome any claim of work product protection.

Because Defendants have failed to even log the documents they contend are privileged, this Court should order Defendants to produce, without regard to privilege or work product, all internal communications (1) relating to the payment of witnesses, influencing of witnesses, payments to witnesses families, payments to AUC members, payments to informants (both confidential and non-confidential) or payments to witnesses' lawyers (whether or not any such payments are funneled through a "security" company or other intermediary), and/or (2) relating the Defendants' investigation of the facts underlying their allegations against Drummond in Colombia.

## II. DOCUMENTS PERTAINING TO LLANOS OIL ARE DISCOVERABLE.

The privilege log and documents recently produced by the Defendants affirm Drummond's allegations that Llanos Oil was directly involved in a scheme with the Defendants to defame Drummond. Llanos Oil both encouraged and participated in the drafting and publication of the letters that form the basis of this lawsuit. If, as the evidence suggests, the letters were written at the behest of a business competitor of Drummond, documents related to Llanos Oil's involvement are clearly relevant to the issue of actual and common law malice.

One of Drummond's allegations in this lawsuit is that Llanos Oil and its principals, Hendrik van Bilderbeek and Albert van Bilderbeek, entered into a financial arrangement with the Defendants and published the defamatory letters as part of a "campaign of defamation against Drummond" and a plan "to publicly defame Drummond and harm its business interests." Compl. (Doc 1) at ¶¶ 7-20, 24. The timeline beginning to be filled in by Defendants' production and privilege log confirms these allegations:

- On June 29, 2010, Collingsworth and Albert van Bilderbeek discuss media coverage of Drummond and setting up meetings to garner additional media coverage with the Dutch press. Ex. SS, CS 000907-909. Collingsworth writes Albert van Bilderbeek and states that he is "look[ing] forward to meeting and **together closing down Drummond**." *Id.* at CS 000907 (emphasis added).

- On August 24, 2010, Mr. Collingsworth corresponded with Albert van Bilderbeek regarding meeting with litigation funders and stated that "we will be jumping full bore into the (very expensive) Drummond discovery process, so I'm quite anxious about this and want to be as prepared as possible so that the meeting has a good result." Ex. TT, CS 000979-980.

- On September 15 and September 28, 2010, Albert van Bilderbeek communicated with the Defendants regarding "bank funding," "sending materials for bank funders," a "litigation budget," and "case assessment." Ex. UU, Defs.' Privilege Log, Entries 34 & 35.

- On December 9, 2010, Mr. Collingsworth forwards Albert van Bilderbeek a letter from Drummond's counsel regarding depositions in *Balcero*, stating that "[w]e are rolling now" and that "[f]unding is crucial." Ex. VV, CS 001011-001012. In that same email chain, Collingsworth, obviously concerned about funding, asks "DO I NEED TO BRING ANYTHING MORE (DOCUMENTS) TO MEET THE FUNDERS?" *Id.* (emphasis in the original).

- On December 14, 2010, approximately one month prior to the date of the Defendants' first defamatory letter to the Dutch government, Albert van Bilderbeek requests that Collingsworth "email me a letter (with letterhead and signed) addressed to the persons below" so that he can deliver the letter to Dutch government officials. Ex. WW, CS 001028-001030.

- On January 18, 2011, Collingsworth asks Victoria Ryan to proofread the first letter and states that "Albert is going to hand deliver in Amsterdam." Ex. XX, CS 001246.

- On February 2, 2011, two days prior to the publication of the second letter to Dutch government officials, Albert van Bilderbeek provides "edits" to the Defendants' "draft of Feb. 4, 2011 letter." Ex. UU, Defs.' Privilege Log, Entry 58.

- On February 3, 2011, Albert van Bilderbeek emails Collingsworth "regarding campaign case strategy." Ex. UU, Defs.' Privilege Log, Entry 60.

- Also on February 3, 2011, Collingsworth emails Victoria Ryan at Conrad & Scherer, LLP, asking that she "finalize this [letter] as is, including Albert's changes" and send "a new final to Albert with exhibits." Ex. YY, CS 001247.

11

- On February 4, 2011, the second letter to the Dutch government was sent, accusing Dutch government officials of conspiring with Drummond against the interests of Collingsworth's clients, "the hundreds of Colombian victims of Drummond's human rights violation." Doc. 43-3. In that letter, Mr. Collingsworth misrepresents his connection to Llanos Oil (and Llanos Oil's involvement in drafting the letter): "While it is not my direct concern, it also appears you are acting in concert against the interests of Llanos Oil and its two principals, the Dutch nationals Hendrik and Albert van Bilderbeek." *Id.* at 2.

- On June 17, 2011—three months before the final defamatory letter was sent to Itochu Corp.—Albert van Bilderbeek sends Mr. Collingsworth an article regarding Itochu's purchase of an interest in Drummond Ltd. and directs Mr. Collingsworth to "have your office write Itochu Corp. to inform them of your lawsuit." Ex. ZZ, CS001034.

- On September 19, 2011, the defamatory letter to Itochu was sent. Doc. 43-4.

The above timeline reveals that Llanos Oil was intimately involved in drafting, editing and publishing the defamatory letters as part of a joint campaign to hurt Drummond's business and destroy its reputation, which clearly goes to the issue of malice. These documents are also relevant to the issue of financing, the importance of which Drummond has already discussed. Moreover, Drummond should be permitted to explore in discovery whether any funding provided or secured by Llanos Oil was used to pay witnesses. At least one former paramilitary testified that Hendrik van Bilderbeek offered money to Colombian prisoners to offer false testimony against Drummond. *Balcero* Doc. 26-2 at 6-7, 13-14; *see also* Doc 44-5.

These documents and privilege log entries corroborate Drummond's allegations that the Defendants, in concert with Llanos Oil and its principals, embarked on a calculated "campaign" to publicly defame Drummond with the ultimate aim of "closing down Drummond," and they show that Drummond's discovery requests seeking communications and documents with Llanos Oil are reasonably calculated to lead to the discovery of admissible evidence.

These documents are also not subject to a legitimate claim of privilege. "The attorney-client privilege applies to 'confidential communications between an attorney and his client

relating to a legal matter for which the client has sought professional advice.'" *Miccosukee Tribe of Indians of Florida v. U.S.*, 516 F.3d 1235, 1262-63 (11th Cir. 2008). To the extent any communications with Llanos Oil and/or its principals concerned witnesses, claims, or other facts in the *Balcero* case, these communications were not for the "purpose of facilitating the rendition of professional legal services," because they pertain to a separate action in which neither Llanos Oil nor its principals are parties. *See* Ala. R. Evid. 502.[11]

Work product also does not apply. Indeed, to the extent any of these communications or documents relate to the payment of witnesses, witnesses' families, or witnesses' lawyers, there can be no privilege. Doc. 50 at 7-9. Defendants have cited no authority to the contrary. To the extent they relate to the Defendants' fact investigation in Colombia, including the credibility and testimony of "fact" witnesses, the documents and communications are likewise discoverable because the Defendants have waived any such protection. Doc. 43 at 11-17. Finally, Mr. Collingsworth's subjective state of mind is squarely at issue in this litigation and Drummond therefore has a clear and substantial need for these documents. Fed. R. Civ. P. 26(b)(3)(A)(ii); 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2026 (Supp. 1994) ("Documents that would otherwise be protected must be produced if the knowledge, mental impressions, opinions, and advice of a lawyer or law firm are at issue in a litigation to which the lawyer or law firm is a party."); *Hartman v. Banks*, 164 F.R.D. 167, 169-70 (E.D. Pa. 1995) (same).

---

[11] In diversity cases, the substantive scope of the attorney-client privilege is a matter of state law. *E.g.*, *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1219 (N.D. Ala. 2012).

## III. COMMUNICATIONS AND DOCUMENTS WITH IVAN OTERO ARE NOT PRIVILEGED.

Of the 165 documents listed on Defendants' privilege log, 95 of them are communications with Colombian attorney Ivan Otero. Ex. UU, Defs.' Privilege Log, Entries 60-166. Defendants describe Mr. Otero as a "cooperating counsel" and claim that all communications with him are work product and covered by the common interest privilege.[12] *Id.* It is difficult to imagine how Mr. Otero could possibly be considered a part of Defendants' legal team in light of the fact that he has represented all of the primary fact witnesses in the *Balcero* litigation, on whose testimony Mr. Collingsworth now relies as supporting the truth of his defamatory statements. As detailed below, Mr. Otero has represented El Tigre, Samario, Charris and Jaime Blanco. Defendants therefore cannot legitimately claim that communications with Mr. Otero are privileged.[13]

Mr. Otero appeared as counsel on behalf of Charris at his deposition in *Balcero*. Ex. 54 to *Balcero* Doc. 411, Charris Dep. at 129, 164-66. During the course his testimony, Charris admitted Mr. Otero's fees were being paid by the law firm of Francisco Ramirez—a member of Mr. Collingsworth's legal team who has been involved in the payments to Charris's family. *Id.* at 161-62, 165-66; *see also* Drummond's Mot. to Compel, Doc. 43 at 15-16. Charris claimed he had no knowledge of the original source of the money for the payments of Mr. Otero's fees, but made clear that he was not paying the fees. Ex. 54 to *Balcero* Doc. 411, Charris Dep. at 165-66.

Mr. Otero also appeared as counsel on behalf of Jaime Blanco during his deposition in *Balcero*. *Balcero* Doc. 396-15, Blanco Dep. at 2. Blanco gave his declaration to Mr. Collingsworth on February 15, 2012. *Id.* at 15. Defendants' privilege log lists two emails with

---

[12] Research has not uncovered any legal significance to Defendants' description of Otero as "cooperating counsel."

[13] Drummond has been unable to locate any authority supporting a claim of privilege over communications with a critical fact witness's attorney.

14

Otero on this date regarding "case strategy" and "fact gathering." Ex. UU, Defs.' Privilege Log, Entries 121-122.

Mr. Otero also represented Samario during the time he testified before the Fiscalia that he had no knowledge whatsoever of Drummond's involvement in the killings of union leaders. *Balcero* Doc. 396-10, Samario Dep. at 83-96, 154-56. Two weeks later, Samario gave a declaration to Collingsworth and Otero stating the exact opposite. *Id.* Samario was ultimately deposed in *Balcero* on March 12, 2012. Six days prior to the deposition, Defendants emailed Otero regarding "preparing witness for deposition" and "**funds to attorney for security and logistics**." Ex. UU, Defs.' Privilege Log, Entry 127 (emphasis added).

Mr. Otero has also represented El Tigre. *Balcero* Doc. 396-11, El Tigre Dep. at 63, 74, 87-106, 194-95. El Tigre provided a declaration to Mr. Collingsworth in December 2009 claiming to have knowledge of Drummond's links to the AUC. *Id.* at 87-112. A few months later in February 2010, El Tigre testified before the Fiscalia that he had no knowledge of Drummond having any connection to the AUC. *Id.* He was then approached by Otero in July 2011 about retracting the statement to the Fiscalia, resulting in another declaration provided to Mr. Collingsworth wherein El Tigre claimed his testimony to the Fiscalia was false. *Id.*

Now, within the past few days, Defendants produced a document revealing that Mr. Collingsworth has promised Mr. Otero 16% of any recovery from Drummond in the *Baloco* case. Ex. AAA, CS 001251.[14]

---

[14] This agreement is alarming proof that the Colombian attorney who represented Mr. Collingsworth's "fact" witnesses and ostensibly assisted in "gathering evidence" has a significant and direct financial interest in providing "facts" and "evidence" that corroborate Defendants' allegations against Drummond. A contingency fee agreement with a critical witness's lawyer certainly encourages the witness (who now doesn't have to pay his lawyer's fees) to testify more favorably for the party that is paying the fees.

Rule 26(b)(3) only protects attorney "work product" where the documents sought to be discovered were prepared "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The rule, then, "limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *In re California Public Utilities Commission,* 892 F.2d 778, 781 (9th Cir. 1989). The language "another party or its representative" in Rule 26(b)(3) "clearly means another party to the litigation in which discovery is being attempted." Wright & Miller § 2024. Because neither Otero nor his clients were parties to the *Balcero* litigation, documents submitted to or received from Otero are not work product. *See also Samad Bros., Inc. v. Bokara Rug Co., Inc.*, 2010 WL 5095356, at *3 (S.D.N.Y. Dec. 13, 2010) ("To the extent the disputed emails contain any attorney mental impressions or litigation strategy, the work product protection was waived by disclosing them to Mr. Kapoor, who is a third party witness.").

Defendants' reliance on a "common interest" privilege is also misplaced. The common-interest doctrine applies only to parties:

> [M]any courts have held that the attorney-client privilege gives rise to a concomitant "joint defense privilege" which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Schwimmer,* 892 F.2d at 243. As the Second Circuit observed, "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." *Id.* at 243-44 (citation and quotation marks omitted).

*U.S. v. Almeida*, 341 F.3d 1318, 1324-25 (11th Cir. 2003). In *Balcero*, this Court confirmed that the common-interest privilege does not extend to communications with non-parties. *Giraldo v. Drummond Co., Inc.*, No. 2:09-cv-1041-RDP, 2012 WL 1340068, at *3 (N.D. Ala. April 17, 2012). Neither Otero nor his clients have ever been parties in any of Mr. Collingsworth's cases

16

against Drummond. Accordingly, the Defendants' communications with Otero cannot be protected by the common-interest privilege.

Finally, Drummond has a substantial need for any documents pertaining to attempts to shape the testimony of witnesses against Drummond, which would include the numerous communications with Mr. Otero regarding the fact witnesses he represents. Drummond's need for these documents is even more pronounced considering Mr. Collingsworth's team has paid at least some of Otero's legal fees in representing the witnesses and Otero has a contingency fee interest in Drummond being held liable based on Defendants' allegations. Even if Defendants could legitimately claim the communications with Otero are protected work product, Drummond's substantial need for these documents overcomes any such protection.

## Conclusion

The evidence is continuing to mount that the defamatory letters at issue were written at the behest of Llanos Oil, Drummond's business competitor, and are based on testimony that was, directly or indirectly, paid for. Defendants should not be permitted to use to attorney-client privilege or the work product doctrine to conceal the evidence of this course of conduct. Drummond requests that its motion to compel be granted in full.

Respectfully submitted,

/s/ H. Thomas Wells, III
William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

/s/ Sara E. Kropf
Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G St. NW, Suite 800
Washington, DC 20001
(202) 627-6900

*Attorneys for Drummond Company, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on **October 8, 2013**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John W. Clark, Jr., Esq.
Bradley J. Smith, Esq.
Clark, Hair & Smith, P.C.
1000 Urban Center Drive
Suite 125
Birmingham, Alabama 35242

/s/ H. Thomas Wells, III
H. Thomas Wells, III (ASB-4318-H62W)