# Exhibit RR

## **Declaration of Paul David Wolf**

I, Paul David Wolf, hereby declare as follows:

1. My name is Paul David Wolf. I am over the age of nineteen (19) years and have personal knowledge of all facts stated herein.

## **Chiquita Litigation**

2. I am a human rights attorney and have worked alongside Terry Collingsworth in litigation against Chiquita Brands International

3. Mr. Collingsworth and I filed a complaint against Chiquita in the federal district court in the District of Columbia on behalf of over 100 plaintiffs. The complaint alleges that Chiquita paid Colombian paramilitaries to torture and kill Colombian citizens who lived near Chiquita's banana farms.

4. This complaint was later transferred, along with other cases, to the Southern District of Florida through the multidistrict litigation (MDL) procedure. It is currently pending before Judge Kenneth A. Marra in the United States District Court for the Southern District of Florida, and also on interlocutory appeal in the Eleventh Circuit.

5. In the MDL case against Chiquita, several plaintiffs' firms are involved. No lead counsel has yet been chosen among the plaintiffs' firms. I am a member of the plaintiffs' steering committee along with several other lawyers and

1

firms. Two members of the steering committee are Parker Waichman LLP and Conrad & Scherer.

6. I do not consider any of the conversations or emails among the plaintiffs' steering committee about payments to witnesses to be privileged or protected by work product.

**Contacting Counsel for Drummond**

7. On August 19, 2013, I saw a media article referencing Terry Collingsworth and a dispute over discovery regarding payments in Colombia. I contacted counsel for Drummond Company, Inc. to tell them that I had information about Mr. Collingsworth's payment of witnesses.

**Conversations about Payment of Witnesses**

8. I have been a party to at least four conversations where Mr. Collingsworth's payment of witnesses was discussed.

9. The first conversation was on May 3, 2011. Michael Hugo, who was a partner with the law firm Parker Waichman, contacted me by telephone. He said he saw my name on retainer agreements in the Chiquita case and wanted to call me to see who I was because he thought that Parker Waichman represented those clients. I was surprised by this since I had never heard of Parker Waichman and had always considered those individuals to be my clients.

2

10. The conversation lasted approximately two hours. The primary topic of conversation was Mr. Collingsworth and his work with Parker Waichman.

11. Mr. Hugo told me that that Parker Waichman was paying some or all of the litigation costs for Mr. Collingsworth in the Chiquita case as well as other cases. One of Mr. Hugo's responsibilities was to approve Mr. Collingsworth's litigation expenses in these cases on behalf of Parker Waichman.

12. During that conversation, Mr. Hugo told me that he had a concern with Mr. Collingsworth's payments to a security company. Mr. Hugo related to me the substance of a conversation Mr. Hugo had with Mr. Collingsworth.

13. At some point earlier, Mr. Hugo had traveled to Colombia with Mr. Collingsworth to interview a witness. While in Colombia, Mr. Hugo realized that there was no security for Mr. Hugo or Mr. Collingsworth. Mr. Hugo asked Mr. Collingsworth why there was no security. Mr. Collingsworth told Mr. Hugo that Mr. Hugo did not need security and that Mr. Collingsworth had been to Colombia many times without it.

14. Mr. Hugo then asked Mr. Collingsworth why there were large payments to a security company as part of Mr. Collingsworth's litigation expenses submitted to Parker Waichman, if Mr. Collingsworth was not in fact using this company for security. Mr. Collingsworth responded that he paid the security

3

company first and then the security company would send the money to the lawyers for the witnesses who were Colombian paramilitaries.

15. I recall that Mr. Hugo mentioned a single payment of $50,000, which is a large amount of money in Colombia.

16. I do not recall the name of the security company that Mr. Collingsworth used but Mr. Hugo should know the name or have it in his files.

17. The second important conversation I recall was on June 14, 2011. This was an in-person meeting with Mr. Hugo, myself and several other lawyers from Parker Waichman in their office in Port Washington, New York. I do not recall the names of all of the lawyers who were there but I do recall that Gary Falkowitz was there. I also recall that a paralegal from Parker Waichman named Monica Mora was there as well.

18. During that meeting, many subjects were discussed. One subject was Mr. Collingsworth's payment of witnesses through the security company.

19. The third conversation I recall occurred at the Washington, DC offices of one of the members of the plaintiffs' steering committee on June 22, 2011. The meeting was among the plaintiffs' steering committee members and approximately 15 people attended the meeting.

20. I invited Mr. Hugo to attend the meeting, although he had not been invited initially. Jack Scarola, one of the members of the steering committee, led

the meeting. During the meeting, Mr. Scarola asked Mr. Collingsworth whether he had paid witnesses in other cases. I do not recall how Mr. Collingsworth responded exactly but I do recall that he did not deny having done so.

21. Mr. Collingsworth responded to the group that it was permissible to pay witnesses in some circumstances and that Mr. Collingsworth had an "ethics opinion" about it.

22. When Mr. Collingsworth said he had an "ethics opinion," I understood that he had a written opinion from bar counsel justifying his payments to witnesses.

23. The fourth conversation occurred after the meeting in Washington, DC on June 22, 2011. About eight members of the steering committee, including myself, were having lunch at Reagan National Airport. I recall that Jack Scarola, William King, John Hopkins and Mark Millard attended. Mr. Collingsworth was not there. Mr. Hugo told the group what Mr. Collingsworth had told him about making payments to witnesses through a security company in Colombia.

24. Mr. Scarola, from the plaintiffs' steering committee, sent an email a few weeks after the meeting as a "follow up reminder" to Mr. Collingsworth and William Scherer to "provide us with a copy of the ethics opinion you received regarding compensation to witnesses and members of their families as well as

5

details of the expenses incurred to date that have directly or indirectly benefited potential witnesses."

25. A true and correct copy of Mr. Scarola's email and Mr. Collingsworth's response is attached as Exhibit A to this declaration.

26. Mr. Collingsworth never circulated an ethics opinion that allowed payment to witnesses. He only circulated a memorandum written by a Conrad & Scherer associate about payments to witnesses.

27. It is my understanding that Mr. Hugo also wrote Jerry Parker a detailed letter about the issues surrounding Mr. Hugo's departure from the firm. I have not seen a copy of this letter, however.

28. Mr. Hugo is no longer a partner at Parker Waichman.

29. After these four conversations, I became very concerned about Mr. Collingsworth's conduct and believed it may negatively affect my representation of my clients in the Chiquita case. I also believed that it was unethical to pay witnesses, particularly since no bar counsel had approved of the method in any way.

I hereby state under penalty of perjury that the statements above are true and correct.

Date: September 6, 2013.

_____
Paul David Wolf

# EXHIBIT A

| | |
|---|---|
| From: | "Terrence Collingsworth" <TCollingsworth@conradscherer.com> |
| Subject: | [Chiquita-ATS-all] RE: Rule 26 meet and confer |
| Date: | Tue, July 5, 2011 10:17 am |
| To: | "Jack Scarola" <JSX@SearcyLaw.com>,"tc@iradvocates.org" <tc@iradvocates.org>,"William R. Scherer" <WScherer@conradscherer.com> |
| Cc: | "chiquita-ats-all@googlegroups.com" <chiquita-ats-all@googlegroups.com> |

Jack, we are working on this -- converting informal memo and oral advice to a memo for the group

**From:** Jack Scarola [JSX@SearcyLaw.com]
**Sent:** Tuesday, July 05, 2011 9:44 AM
**To:** Terrence Collingsworth; tc@iradvocates.org; William R. Scherer
**Cc:** chiquita-ats-all@googlegroups.com
**Subject:** Re: Rule 26 meet and confer

Bill and Terry-
You agreed at our meeting to provide us with a copy of the ethics opinion you received regarding compensation to witnesses and members of their families as well as details of the expenses incurred to date that have directly or indirectly benefited potential witnesses. This is a follow-up reminder.

-----Original Message-----