FILED

2013 Nov-07  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-CV-3695-RDP |
| | ) |
| TERRENCE P. COLLINGSWORTH, individually | ) |
| and as an agent of Conrad & Scherer, LLP; and | ) |
| CONRAD & SCHERER, LLP, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF STEVEN H. HOBBS IN FURTHER SUPPORT OF DEFENDANTS'
SUPPLEMENTAL BRIEF IN OPPOSITION
TO DRUMMOND'S MOTION TO COMPEL**

I, Steven H. Hobbs, declare as follows:

1.      I am Steven H. Hobbs, the Tom Bevill Chairholder of Law at the University of Alabama School of Law.  I make this declaration based on my experience and knowledge of legal ethics.

2.      I have been retained by Mr. Bradley J. Smith, of the law firm Clark, Hair & Smith, PC in Birmingham, Alabama to provide an expert opinion on professional responsibility in a matter pertaining to his clients, Mr. Terrence P. Collingsworth and Conrad & Scherer, LLP.

QUALIFICATIONS

3.      I have taught legal ethics for thirty-two (32) years.  From 1981 to 1997, I taught at Washington and Lee University School of Law, holding, in seriatim, the rank of Assistant Professor, Associate Professor and Full Professor. From 1997 to present I have taught at the University of Alabama School of Law as the Tom Bevill Chairholder of Law and Professor of Law.  I have also served as a Visiting Professor at Florida State University College of Law, the Willamette University School of Law and the University of Louisville, Louis D. Brandeis School of Law.  I have taught the required course on Professional Responsibility, courses in the area of Family Law, and courses in the area of Business Law, especially those focusing on Entrepreneurial Law.  Prior to entering teaching, I served as the Assistant Deputy Public Advocate in the New Jersey Department of the Public Advocate from 1979 to 1981.

4.      A partial list of my professional experience relating to legal ethics and professional responsibility includes:

- Alabama Law Institute Drafting Committee for Alabama Collaborative Law Act, 2013 and Alabama Supreme Court Collaborative Rules Committee, 2013.

- National Conference of Bar Examiners, Drafting Committee for the Multistate Professional Responsibility Examination, 1999 – 2011.

- Planning Committee Member for various Alabama Law Institute Continuing Legal Education programs.

- Panel Participant for ABA Professional Responsibility Conference, 2000 and 2011.

- Association of American Law Schools Section on Professional Responsibility, Executive Committee Member, 1999 – 2001 and Section Chair, 2001.

- Virginia State Bar Committee on Professionalism developing a required professionalism course, 1988 – 1989.

- Authored articles and book chapters on various topics in legal ethics and professional responsibility.

DESCRIPTION OF CASE AND ETHICAL SITUATION

5.   Mr. Smith represents Mr. Terrence P. Collingsworth and his firm, Conrad and Scherer, LLP.  They are presently in litigation with Drummond Company, Inc.  Mr. Collingsworth is the lead counsel in various international human rights cases against several multination corporations, including Drummond Company, Inc., which has instituted a libel action against Mr. Collingsworth.

6.   The specific details of Mr. Collingsworth's suits involving Drummond Company, Inc. are beyond the parameters of this opinion, except for the ethical issues presented in Mr. Collingsworth's declaration dated November 7, 2013, that will be filed with the Court in conjunction with supplemental briefing over privilege issues in the libel action.

7.   As described in Mr. Collingsworth's Declaration in paragraph 1, the key human rights case in which there is an issue of protecting witnesses from retaliation is *Balcero v. Drummond Company, Inc.*, which involves issues of human rights in Colombia.

8.   Mr. Collingsworth declared that because of the situation in Columbia, persons who participate in such international human rights cases are threatened with violence against them personally and against their families.   Collingsworth Decl. ¶¶ 27-54. Mr. Collingsworth declares that he himself has been threatened with violence. *Id*. ¶ 33.

9.   In his declaration, Mr. Collingsworth named several witnesses who are or will be key witnesses in his case and who have "received concrete death threats, and our team did the only thing we could by moving the families to a safe haven." Collingsworth Decl. ¶¶ 34-44.  Mr. Collingsworth further declared that because of the credible risks to these potential witnesses and their families, he offered "to provide security or to provide a safe haven until such time as the danger has subsided."  *Id*. ¶ 36.

10.   I was retained to offer an opinion on the ethical implications of a lawyer providing security and/or a safe haven for witnesses threatened with violence as a collateral consequence of agreeing to testify in an international human rights case in Colombia, given the dangerous circumstances that exist in that country.

11.   No opinion is offered as to the particulars of the cases involved.  Assuming the facts as given in Mr. Collingsworth's declaration as true, this opinion considers a lawyer's ethical obligation given this set of facts.

FAIRNESS OF THE TRIAL PROCESS

12.   This matter involves the obligation of an attorney to the administration of justice under the Model Rules of Professional Conduct (hereinafter, Model Rules). I will principally address the issue of proper relationship with a fact witness in a case.  In general, Model Rule 3.4 does not permit an attorney to pay for a fact witness's testimony, nor pay certain expenses of a fact witness unless they are reasonably related to the actual cost borne by the witness, nor obstruct the opposing party's access to the witness.  In this circumstance the question is whether providing security and a safe haven for a witness threatened with violence is permitted by the Model Rules.

13.   The American Bar Association's version of the Model Rules of Professional Responsibility is as follows:

Model Rule 3.4 – Fairness to Opposing Party and Counsel
A lawyer shall not:

(a)  unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.  A lawyer shall not counsel or assist another person to do any such act;

(b)  falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c)  knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;

(d)  in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(e)  in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f)  request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client; and
(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

3

14.     The comment to Rule 3.4 describes the intent of the rule as supporting the adversary system in Comment 1 as follows: "The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." In this case, the challenge is to determine whether the rules permit an attorney to cover the expenses for fact witnesses in a lawsuit who are in need of security and a safe haven because of their willingness to provide testimony in an environment fraught with danger to them and their families.

15.     For the purpose of this opinion, Rule 3.4 sets the standards for fair treatment of witnesses and their testimonial evidence. On the one hand, a lawyer may not attempt to improperly influence the testimony of a witness by improper inducements, and on the other, a lawyer may ensure that the financial and economic costs that the witness may incur in order to participate in a court proceeding are appropriately reimbursed. Comment 3 of Rule 3.4 states: ". . . with regard to paragraph (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee." The distinction being made by the comment is that one can pay expenses to a witness, but a witness may not charge for the very act of testifying.

16.     The focus of my opinion on paying the security expenses of fact witnesses is grounded in the intent of the rule to ensure the integrity of the judicial system by establishing a process where evidence and witnesses are presented truthfully, honestly and without corrupting influences such as improper financial inducements, or making evidence or witnesses unavailable to the opposing parties. Hence, the intent of the rule forms an ethical framework upon which to measure the conduct of an attorney. When the rules do not address a specific issue directly, one can infer a response by analogy and by considering the intent of the rule within its ethical framework. A Practice Guide published by Bloomberg BNA entitled "Fairness to Opposing Party and Counsel" declares the purpose of Model Rule 3.4: To foster the truth-seeking function of the litigation process, Model Rule 3.4, under the umbrella title "Fairness to Opposing Party and Counsel," places specific limitations on an advocate's conduct regarding access to evidence, witnesses, obedience to the tribunal, discovery, and statements at trial. These limitations are intended to secure fair competition in the adversary system. 61 ABA/BNA Lawyers' Manual on Professional Conduct 701.

17.     To better articulate the ethical framework for Model Rule 3.4, I reviewed the Annotated Model Rules of Professional Conduct (6th ed. 2007) [hereinafter, "Annotated Rules"]

published by the American Bar Association Center for Professional Responsibility.  This reference provides notes on cases, commentaries and ethical opinions that present a basic ethical framework for all of the Model Rules.

18.     In discussing Model Rule 3.4, the annotation begins with an emphasis on Comment (1) of the Model Rule, which focuses on "fair competition in the adversary system," Annotated Rules at 322, and notes that the rule is directed towards "abusive litigation tactics."  *Id.* Thus, the annotation to Rule 3.4 considers the alteration, destruction, concealment and falsification of evidence and the offering of unlawful inducements to witnesses. Accordingly, "a lawyer may not advise or assist a witness – whether a client or not – to give false testimony." Annotated Rules at 326. The lawyer is prohibited from telling a witness to testify falsely, from allowing a witness to give testimony that the lawyer knows is false without correcting it, or from altering given testimony "to reflect the lawyer's interpretation of the facts."  *Id.*

19.     Further, under Model Rule 3.4(a), the lawyer may not advise or assist a witness in becoming unavailable to opposing parties.  The annotation presents the following case summary in part:

> Procuring the absence of witnesses also constitutes the obstruction of evidence in violation of Rule 3.4(a).  *See, e.g.*, *Harlan v. Lewis*, 982 F. 2d 1255 (8th Cir. 1993) (defense lawyer in medical malpractice case suggested to other treating physician that he too could be sued by plaintiffs, but that suit would be unsuccessful if he did not testify); . . . *In re Geisler*, 614 N.E.2d 939 (Ind. 1993) (lawyer obstructed prosecutor's access to evidence by helping witness become unavailable for service and trial); *Harrison v. Miss. Bar*, 637 So. 2d 204 (Miss. 1994) (lawyer disciplined for assisting mothers in hiding children from fathers, failing to disclose whereabouts of children to fathers or to court, and allowing witnesses to testify falsely about children's whereabouts).

Annotated Rules at 324.

20.     The annotation to Rule 3.4(b) states that "Rule 3.4(b) also forbids a lawyer from offering to a witness an inducement that is prohibited by law." Annotated Rules at 327.  An improper inducement could include paying a witness for truthful testimony, for false testimony, or for promising to improve the witness's position or circumstance in another civil or criminal case.  Fundamentally, a lawyer may not bribe a witness in exchange for favorable testimony.  The annotation presents the following case summary, in part:

*See, e.g.*, *People v. Attorney A.*, 861 P.2d 705 (Colo. 1993) (lawyer improperly offered to have client plead guilty to original charge of driving under influence of alcohol, rather than lesser charge of driving while ability impaired, if arresting officer would fail to appear at license revocation hearing stemming from client's refusal to take blood-alcohol test); *Fla. Bar v. Wohl*, 842 So. 2d 811 (Fla. 2003) (lawyer drafted agreement for witness to receive up to $1 million "bonus" if information she provided proved useful); *In re Hingle*, 717 So. 2d 636 (La. 1998) (lawyer convicted of bribing witness disbarred, notwithstanding lawyer's contention that inducement to get witness to testify truthfully was akin to prosecutor offering immunity in exchange for testimony); *In re Geoghan*, 686 N.Y.S.2d 839 (App. Div. 1999) (lawyer offered to have client testify falsely in criminal matter in exchange for defendant's settlement of civil matter).

Annotated Rules at 327.

21.   As suggested above, the annotation considers the concealment of evidence or obstructing a party's access to evidence, including a witness. *Id.* at 324. "Using an illegal inducement to procure the absence of a witness may also constitute a violation of Rule 3.4(a)." *Id.* at 327.   In this present matter, Attorney Collingsworth is not attempting to secure the absence of witnesses by providing security or a safe haven. (See discussion below.)

22.   The ABA annotation directly addresses the issue of paying a witness's expenses, stating: "Most jurisdictions permit occurrence witnesses to be paid for time and expense incurred as witnesses, provided such payments do not amount to inducements to testify in particular ways." *Id.*   Hence, Rule 3.4(b) allows for compensation for the value of a witness's time spent preparing, traveling and testifying in a court proceeding.   The compensation so paid is a reflection of the value of the witness's time and can be measured by lost wages, if employed, or if not employed, the reasonable value paid for time expended.   Additionally, the witness may be reimbursed for the costs expended by reason of being called to testify.   The witness cannot be paid for "telling the truth" or paid based on the outcome of the case. Annotated Rules at 328.   The Annotation explains this ethical framework for paying the expenses of an occurrence witness as follows:

. . . Ala. Ethics Op. 93-2 (1993)sic.[RO-97-2 (1997), corrected cite] (lawyer may reimburse witness for expenses and lost time, but compensation must be reasonable relative to witness's occupation and normal wages); Ariz. Ethics Op. 97-7 (1998) (lawyer may compensate former employee of corporate client for time spent preparing and testifying at depositions and trial); Cal. Ethics Op. 1997-149 (1997)

(lawyer may pay nonexpert witness for preparing for – or testifying at – deposition or trial, provided compensation is reasonable in conformance with Rule 5-310(B), does not violate applicable law, and is not contingent upon content of witness's testimony or outcome of case; compensation may be paid regardless of witness's employment status); Colo. Ethics Op. 103 (1998) (lawyer may compensate nonexpert witness in civil matter for reasonable value of time and expenses if payment not contingent upon witness's testimony or outcome of case, and not prohibited by law); Conn. Ethics Op. 92-30 (1992) (lawyer who drafted will for testator and testified as witness – without representing any party – in subsequent will contest may be compensated for time lost to testify); N.H. Ethics Op. 1992-93/10 (1993) (lawyer may reimburse fact or opinion witness for attorney's fees that witness incurred defending contempt action arising out of litigation). *But see* Pa. Op. 95-126 (1995) (Pennsylvania ethics rule on lawyers' payment to witnesses does not expressly forbid, but may be interpreted to prohibit, compensating nonexpert fact witnesses for time spent reviewing documents in advance of testimony).

Annotated Rules at 327-28.

23.   The American Bar Association Ethics Formal Opinion 96-402 presents the ethical framework for Model Rule 3.4 in the same fashion as does Annotated Model Rule 3.4 when it comes to compensating "a witness for the reasonable value of the time expended by the witness while preparing for or giving testimony at a deposition." To explain the intent of the Rule, ABA Formal Opinion 96-402 cites Comment 3 of Model Rule 3.4 as applied to part (b) of the Rule (presented in paragraph 15, *supra*).  Portions of the opinion are presented herewith:

Reading Comment 3 literally, compensating a witness for loss of time which he could have devoted to other pursuits does not constitute payment of an "expense" incurred by the witness. Nor, on the other hand, does compensating a witness for his loss of time amount to paying him a "fee for testifying."  Indeed, the precursor of Model Rule 3.4, DR 7-109 of the Model Code of Professional Responsibility, expressly permitted "[r]easonable compensation to a witness for his loss of time in attending or testifying," and there is nothing in the history of Rule 3.4 to indicate that the drafters of the Model Rules intended to negate this concept by using the language that they did.  In addition, such compensation is implicitly authorized by certain statutes and court decisions.  See, for example, 18 U.S.C. Section 201(j), which provides that payment to lay witnesses for "the reasonable value of time lost in attendance at any such

7

trial, hearing or proceeding" do not violate federal bribery statutes. The Committee therefore concludes that payment for loss of time is not prohibited by Model Rule 3.4.

The Committee also sees no reason to draw a distinction between (a) compensating a witness for time spent in actually attending a deposition or a trial and (b) compensating the witness for time spent in pretrial interviews with the lawyer in preparation for testifying, so long as the lawyer makes it clear to the witness that the payment is not being made for the substance (or efficacy) of the witness's testimony or as an inducement to "tell the truth." The committee is further of the view that the witness may also be compensated for time spent in reviewing and researching records that are germane to his or her testimony, provided, of course, that such compensation is not barred by local law. [Portions omitted.]

. . . So long as it is made clear to the witness that the payment is not being made for the substance or efficacy of the witness's testimony. What is a reasonable amount is relatively easy to determine in situations where the witness can demonstrate to the lawyer that he has sustained a direct loss of income because of his time away from work – as, for example, loss of hourly wages or professional fees. In situations, however, where the witness has not sustained any direct loss of income in connection with giving, or preparing to give, testimony – as, for example, where the witness is retired or unemployed – the lawyer must determine the reasonable value of the witness's time based on all relevant circumstances. Once that determination has been made, nothing in the Model Rules prohibits a lawyer from making payments to an occurrence witness as discussed herein.

24.   Thus, under ABA Formal Opinion 96-402, paying the expenses of a witness for such things as the value of lost time is not paying the witness a fee for testifying. Nor is such expenditure to be viewed as a bribe or other improper inducement prohibited by law. The key point is that the witness is aware that the reimbursement of expenses incurred as a result of being available to testify is being made for the substance of the testimony and that it must be reasonable in light of the circumstances.

25.   The Restatement (Third) of the Law Governing Lawyers (2000) [hereinafter "Restatement"] also outlines the ethical framework for the proper payment of expenses of a fact or occurrence witness in Section 117:

§ 117. Compensating a Witness

8

A lawyer may not offer or pay to a witness any consideration:

> (1) in excess of the reasonable expenses of the witness incurred and the reasonable value of the witness's time spent in providing evidence, except that an expert witness may be offered and paid a noncontingent fee;

> (2) contingent on the content of the witness's testimony or the outcome of the litigation; or

> (3) otherwise prohibited by law.

26.    The essential aspect of the Restatement §117 is that it is permissible to pay the expenses of a witness as long as the expenses are reasonable and not violative of a law. In the comment to the section, the Restatement declares, "A lawyer may pay a witness or prospective witness the reasonable expenses incurred by the witness in providing evidence. Such expenses may include the witness's reasonable expenses of travel to the place of a deposition or hearing or to the place of consultation with lawyer and for reasonable out-of-pocket expenses, such as for hotel, meals, or child care. Under Subsection (1), a lawyer may also compensate a witness for the reasonable value of the witness's time or for expenses actually incurred in preparation for and giving testimony, such as lost wages caused by the witness's absence from employment." Restatement at 213.

27.    Like the Annotation, the Restatement permits the payment of expenses incurred by the witness as a result of being called to present testimony in a court proceeding. In discussing reasonableness, the Restatement notes in comment (b) to § 117, "The question of reasonable witness compensation may arise in a number of contexts, including lawyer discipline, judicial sanctions, and in some circumstances, civil liability. Motive and reasonableness of compensation are usually relevant and usually are questions of fact." Restatement at 213.

28.    The Model Rules and the Restatement both point out that any expenses paid may not be "prohibited by law." The Restatement specifically addresses this in the Reporter's Note to § 117, *comment b. reasonable payments to a witness*. "In some jurisdictions, witness payments may be prohibited by law. Prohibited, of course, is a payment that constitutes witness bribery, an offense that may turn on the (quite variable) wording of local statutes and on an interpretation of motive from disputed facts." Restatement at 214-15. Similar statements are found in Bloomberg BNA's Practice Guide, "Fairness to Opposing Party and Counsel," which finds: "Rule 3.4(b) also makes it unprofessional for a lawyer to offer an inducement to a witness that is 'prohibited by law.' The criminal law in every jurisdiction prohibits bribery and subornation of perjury, and decisional law supplies additional prohibitions. In general, witnesses may not be paid for telling the truth and

may not be paid a fee contingent on the outcome of the case.  Fact witnesses may be compensated for their actual expenses incurred to testify, for time lost in testifying, and according to most ethics committees, for preparation time."  61 ABA/BNA Lawyers' Manual on Professional Conduct 702.

29.     Generally the law makes a distinction between prohibited bribes for favorable testimony and the making of payments or offers of plea agreements to cooperating witnesses in prosecution cases.  The federal law usually cited for the proposition that it is not prohibited for a witness to be offered immunity, leniency, and non-prosecution when there is a claim of bribery is 18 U.S.C. §201(c)(20), which provides:

> Whoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon trial, hearing, or other proceeding, before any court . . . shall be fined under this title or imprisoned for not more than two years, or both.

30.     An example of a case that deals with improper inducements to testify is *Shuttlesworth v. Housing Opportunities Made Equal*, 873 F. Supp. 1069 (S.D. Ohio 1994).  In that case, the plaintiff brought an action under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961, *et seq.*), claiming that the "defendants conspired among themselves and others to injure Plaintiff's reputation by falsely accusing him of sexually harassing female tenants of certain rental properties he owned."  While the particulars of the case regarding a criminal conspiracy are beyond our purposes here, it is noted that at the heart of this RICO action is the claim the defendants solicited tenants of the apartments owned by plaintiff by offering to pay rent and other inducements.  The Court found that under the anti-bribery statute, 18 U.S.C. § 201(c)(2), the plaintiff had enough evidence of improper witness inducement to survive a motion to dismiss, finding:

> Plaintiff's complaint, coupled with his memorandum opposing the motions to dismiss and his supporting affidavits, contends that Defendants offered rent allowances or other material incentives to induce Plaintiff's tenants to make false accusations against Plaintiff.  Although Plaintiff does not explicitly so state, the materials he has produced are sufficient to imply that such inducements were to evoke testimony before federal agencies (e.g., HUD) and/or state or federal courts, where various harassment complaints against Plaintiff in fact were brought.  Moreover, although Plaintiff's existing allegations arguably could be insufficient to suggest that Defendants ought to elicit *false* testimony against Plaintiff, under 18 U.S.C. § 201(c)(2), Defendants apparently could commit an offense even if they offered rental assistance only to secure *truthful*

10

testimony against Plaintiff.  Plaintiff's bribery contentions therefore allege a RICO predicate act sufficient to survive a motion to dismiss.

*Shuttlesworth*, 873 F. Supp. 1069, 1078.  This case is representative of the ethical framework that one cannot pay for the testimony of a fact witness for whatever purpose.

31.    An example of a case that applies 18 U.S.C. § 201(c)(2) to proper payments of expenses for a witness is *United States v. Medina*, 41 F. Supp. 2d 38 (D. Mass. 1999).  In that case, a criminal defendant was convicted on drug distribution charges in part based on the testimony of a cooperating witness.  The defendant sought to overturn his conviction based on the fact that the government offered a witness improper inducements for her testimony and as such, it should be thrown out.  The witness was identified in the case as CW in part because her life was in danger.  As a general proposition, the Court stated:  "I find that deals for immunity, leniency, and non-prosecution in exchange for testimony are exempt from coverage under § 201(c)(2)."  *Medina*, 41 F. Supp. 2d at 41.  The CW in this case assisted the government in gathering information used to indict and prosecute the defendant.  In return, the CW also received cash payments and "was permitted to live in subsidized housing and receive benefits for her children.  Finally, although a deportable alien, she received immigration assistance for herself, not to mention professional assistance in dealing with her outstanding tax liability."  *Id.*  The question for the Court was whether this was an improper inducement to testify since "§ 201 (c)(2) is meant to protect the reliability of testimony by criminalizing the giving of gratuities that have an obvious potential to corrupt testimony.  Prosecutors giving gratuities have the same potential to corrupt testimony as anyone else (if not more, given their other powers to dispense things of value to cooperating witnesses)."  *Id.* at 47.  The Court found that the CW was paid for her information and not for her testimony, and therefore that there was no violation of the anti-bribery statute.  For a brief discussion of the extended analysis used to achieve that conclusion, *see* 61 ABA/BNA Lawyers' Manual of Professional Conduct 717.  This analysis is also presented in an opinion by an expert on ethics, Professor George M. Cohen, provided as Exhibit 3637 to the Declaration of Randy M. Mastro in Opposition to Defendants' Motion to Strike Document, *Chevron Corp. v. Donziger*, 1:11-cv-00691-LAK-JCF (S.D.N.Y. Apr. 4, 2013), ECF No. 977-6.  A true and correct copy of the Declaration of Professor George M. Cohen is attached as Exhibit A to this declaration.

32.    The *Medina* case also considered whether providing security and a safe haven for a witness is an exception to 18 U.S.C. § 201(c)(2).  Because such assistance mitigates the costs and the severe inconvenience of being a witness in a case, the Court found that there was legislation designed to address possible threats of harm to a witness, declaring:

11

> The witness Relocation and Protection Act 18 U.S.C. § 3521(b)(1) and
> (d)(1)(A) entitles the Attorney General, and through her the U.S.
> Attorneys, to bestow an extensive series of things of value upon witnesses
> and potential witnesses ostensibly in exchange for their agreement to
> testify.  But this Act is addressed to a very limited situation – witnesses
> facing serious threats if they testify.  To meet this problem, prosecutors are
> authorized to give such witnesses and their immediate families a new
> location, set them up with a new identify, and offer them a laundry list of
> valuable things to minimize the risks they would otherwise face because
> of their testimony.  This Act lacks the grand historic pedigree of offers of
> immunity and leniency, but insofar as it allows payment for testimony, it
> provides a clear, specific, and limited exception to § 201(c)(2).

*Medina*, 41 F. Supp. 2d at 52.

33.   Ethics opinions issued by states are comparable to the ethical framework set out by the
ABA Annotated Model Rules, the Restatement, and ABA Formal Opinion 96-402.
These opinions mirror the historical and theoretical analysis on the permissibility of
paying expenses for fact witnesses.  They address such issues as lost employment time
and wages, time spent preparing to testify, travel, lodging and other out-of-pocket
expenses. Alabama Ethics Opinion RO-97-02 (10/29/97) states, "A lawyer may not pay a
fact or lay witness anything of value in exchange for his or her testimony, but may
reimburse the witness for actual expenses, including loss of time or income."  Colorado
Ethics Opinion 103 (12/19/98) concluded that paying for expenses goes beyond such
items like mileage, but also observed the following:

> Furthermore, compensating a witness for a reasonable amount of time spent
> preparing to testify, such as time spent reviewing and researching records
> that are germane to his or her testimony or time spent in pretrial interviews,
> is not prohibited by Rule 3.4, so long as it is made clear to the witness that
> the compensation is not for the substance or efficacy of the witness's
> testimony, but solely to compensate witness for the time he or she
> expended in order to testify. Colorado Ethics Handbook 4-310.

34.   The Kentucky Bar Association similarly permits the payment of expenses of a fact
witness in Ethics Opinion KBA E-400 (June 1997).  Citing ABA Formal Opinion 96-402
and Kentucky law, the opinion does not define paying expenses as a prohibited
transaction, such as bribery, and concludes:

> In the opinion of the Committee, KRPC 3.4(b) allows the lawyer, but does
> not compel the lawyer, to compensate a witness for reasonable out of
> pocket expenses and reasonable lost income that will actually be incurred

> by the witness while testifying at a trial, hearing, or deposition, or while
> engaging in necessary preparation with the attorney.  The Committee is of
> the opinion that additional payments are imprudent, and may be
> questioned as being unethical or even illegal.  Obviously, no payment may
> be made for the substance or efficacy of the witness's testimony.

35.   Moreover, some opinions review the payment of expenses that had not been considered
      by ethics committees in the past.  For example, in South Carolina, Ethics Opinion 08-05
      (7/28/08) found that a lawyer was permitted to pay the attorney's fees of a fact witness
      who was reluctant to be interviewed by the lawyer without having advice of counsel.  The
      witness had factual information that was material to the case.  The opinion found that this
      did not violate Rule 3.4(b) or the rules for third-party payment of attorney fees of another
      party, noting that "SC Rule of Professional Conduct 1.8(e) provides for the advancement
      of expenses of litigation and Rule 1.8(f) provides that a lawyer may accept compensation
      for representing a client from another as long as: (1) the client consents, (2) there is no
      interference with the lawyer's independence of professional judgment or with the client-
      lawyer relationship; and (3) information relating to the client is protected as required by
      Rule 1.6."

36.   Delaware has also favorably considered whether its version of Rule 3.4 would permit the
      payment of legal fees as an expense incurred by a fact witness. The Delaware State Bar
      Association Committee on Ethics, in Opinion 1994-1 (2/14/94) concluded that such
      expenses could be paid.  As background, it is instructive to consider a later Delaware
      ethics opinion, Opinion 2003-3 (8/14/03), which traces the adoption of the Model Rules
      of Conduct in Delaware.  In Delaware, the current Rule 3.4(b), adopted July 1, 2003, is
      exactly like the ABA version of Rule 3.4(b).  Delaware originally adopted the Delaware
      Lawyers' Code of Professional Responsibility, which paralleled the ABA's Code of
      Professional Responsibility.  Under the Code, Delaware's DR 7-109 stated:

> A lawyer shall not pay, offer to pay, or acquiesce in the payment of
> compensation, or participate in offering any inducement to a witness
> contingent upon the content of his testimony or the outcome of the case.
> But a lawyer may advance, guarantee, or acquiesce in the payment of: (1)
> expenses reasonably incurred by a witness in attending or testifying; (2)
> reasonable compensation for his loss of time in attending or testifying; or
> (3) a reasonable fee for the professional services of an expert witness.

37.   When Delaware adopted the Model Rules on October 1, 1985, its version of Model Rule
      3.4 contained the language of DR 7-109 concerning expenses and compensation for
      witnesses.  Delaware Opinion 2003-3 contains the history of this adoption and finds that
      as to paying the expenses of fact witnesses (the situation addressed in the opinion dealt
      with compensation for time spent in preparation), the ethical framework has not changed

as the rules were re-written.  ABA Formal Opinion 96-402 also noted a similar evolution on paying expenses of fact witnesses as the Model Code of Professional Responsibility was replaced by the Model Rules of Conduct.  Returning to Delaware Opinion 1994-1, it explains the core reason for the ethical framework permitting the payment of a witness's expenses.  Noting that the payment of attorney's fees as an expense of a fact witness cannot be an "impermissible contingent compensation or an impermissible inducement" for the testimony, Delaware Opinion 1994-3 states (emphasis added):

> Applying this analysis to Rule 3.4(b), it seems clear that it is reasonably foreseeable that one of the expenses that a witness could incur in "attending" or "testifying" in a legal proceeding is the fees of retaining an attorney to represent the witness' interests.  **Given the apparent purpose of the second sentence of Rule 3.4(b) to remove the financial burden on a witness from giving testimony (without creating an incentive to testify in a particular manner), it would be odd to interpret Rule 3.4(b) so as to leave the witness responsible for a substantial expense that might be incurred in giving testimony.**  Moreover, such a rule would discourage a witness from retaining independent counsel to represent his interests.

38.   Model Rule 3.4 permits the payment of expenses incurred by a fact witness.  Like Delaware Opinion 1994-3, I believe that the meaning of the Rule is to encourage persons to participate in the justice system without incurring a financial burden.  In expressing this opinion about paying for the security or a safe haven for witnesses involved in this case, I start from the ethical framework which supports paying for expenses incurred by a witness that are necessary for that witness to testify in a court proceeding.  The amount paid for the security or safe haven must be reasonable and reflect the actual costs of these expenditures.  The expenses are not otherwise prohibited by law.  And finally, the witness understands that the payment for security or a safe haven is not contingent on the content of the testimony or the outcome of the case and is not compensation for the act of testifying.  In reading the Declaration of Mr. Collingsworth, there is nothing that would lead me to conclude that this ethical framework has not been followed.

39.   A fact witness may not be compensated for the act of providing testimony in a case.  The witness can be reimbursed for the cost of attending a court proceeding, the time it takes preparing for the testimony, such as gathering documents, and the amount, if any, of wages or salary lost while testifying at a court proceeding.  Any payments to or on behalf of a fact witness must reflect the actual costs and should not be calculated to circumvent the rule of non-payment for fact witnesses.  Here, court proceeding is used to denote any process calling for a witness to appear as ordered by a court to give testimony whether in the form of an interrogatory, deposition, hearing or other court process.

40.     As stated by Mr. Collingsworth in his declaration, there is precedent for providing
        security or a safe haven as demonstrated by the witness protection program of the federal
        government.  The theory of such programs was captured in the case of *United States v.
        Ihnatenko*, 482 F. 3d 1097 (9th Cir. 2007), where a criminal defendant, convicted of drug
        offenses on the basis that the key witnesses' testimony was violative of the federal anti-
        bribery law, 18 U.S.C. § 201(c)(b).  The Court explained as follows:

> Recognizing the important contribution of cooperating witnesses and
> informants in our criminal justice system – and the substantial danger that
> such persons face from retaliation – Congress authorized in the Witness
> Security Reform Act multiple forms of government assistance, including
> relocation, housing, and payments to meet basic living expenses.  *See* 18
> U.S.C. § 3521(b)(1).  Such compensation is necessary to assure the safety
> of those who turn against their former compatriots in the underworld.

*Ihnatenko*, 482 F.3d at 1100.

41.     While the cases refer to a federal program available to prosecutors, there are no identical
        programs for witnesses who are cooperating with non-governmental lawyers.  However,
        the witnesses can still be at risk of harm following the same theory used in the federal
        witness protection program.  They are making valuable contributions to the justice
        system at the risk of their lives and those of their families.  Accordingly, it behooves
        counsel to provide for their protection as a necessary part of imposing on them the task of
        giving testimony in an important judicial proceeding.

42.     The intent of the rule is to prohibit improper inducements to a fact witness and yet be
        able to meet the necessary costs incurred by the witness in testifying in a court
        proceeding.  In this circumstance, the attorney has made arrangements to provide for
        security or a safe haven for witnesses after they have been threatened with violence
        because of their participation in certain court proceedings.  As discussed above, referring
        to the *Medina* case, this is not an improper inducement or payment for testimony in a
        manner intended to shape the testimony of the witness.  In *United States v. Librach*, 536
        F.2d 1228 (8th Cir. 1976), a case involving issues similar to *Medina*, a defendant
        convicted of criminal fraud sought to overturn his conviction based on the use of
        testimony of a key prosecution witness who received leniency for his own possible
        offense and protective custody because of receiving threats on his life.  The Court noted
        the payments for these expenses were authorized under a federal provision, 28 U.S.C. §
        524, which states in part:

> Appropriations for the Department of Justice are available for payment of
>
> . . . .

15

> (1) ***expenses of witnesses and information, all at the rates authorized or approved by the Attorney General or the Assistant Attorney General for Administration.

*Librach*, 536 F.2d at 1231.

The Court in *Librach* concluded that not only were the payments for security allowable, and stated:

> There is no basis upon which an inference can be made that the testimony of Fowler was purchased. Indeed, while protection from threats was contemplated before Fowler testified before the grand jury, mention of money payments was not made until after that testimony was given. The evidence of protective custody and support payments was put before the jury. The appellant had full opportunity to develop the implications thereof, and the jury allowed to judge the credibility of Fowler in light of the circumstances.

*Id.* at 1231.

43.   States have also created a legislative system to protect the location of a victim of domestic violence, since even with a protective order, an abuser can search for and find the victim. Our society is concerned about the safety and security of victims and their families and strives to afford as much protection as is humanly possible in a variety of settings. *See* Kristen M. Driskell, *Identity Confidentiality for Women Fleeing Domestic Violence*, 20 Hastings L.J. 129 (2009). In Alabama there is legislation that is designed to provide some measure of security or a safe haven for victims of domestic violence. Alabama Code Annotated Section 30-5-5(e)(1) provides, "The following shall not be contained on any court document made available to the public and the defendant by the circuit clerk's office: The Plaintiff's home address and, if applicable, business address; a plaintiff's home telephone number and, if applicable business telephone number; the home or business address or telephone number of any member of the plaintiff's family or household; or an address that would reveal the confidential location of a shelter for victims of domestic violence as defined in Section 30-6-1." Because the intent is not to prevent access to a victim for court proceedings, the statutory scheme does provide for an alternative method of contacting the witness. This is done by using an alternative address or the lawyer's office as the place of contact for the court or opposing parties. *See* Ala. Code § 30-5-5(e)(3) (2013).

44.   In the Declaration of Mr. Collingsworth, he has disclosed the fact that he offered to provide security or a safe haven for certain witnesses pending the outcome of the case. He has also declared that past events led him to the conclusion that such protection was vitally necessary. The witnesses have provided various declarations and these have also

been disclosed by Mr. Collingsworth.  The provision of security or a safe haven was done to safeguard a witness whose participation in a case was needed, but for whom such participation caused threats of violence by persons known or unknown.

45.     I am assuming that any payments made for security are the actual costs of that security. I have not had access to the actual receipts for obtaining the security. I have also assumed that this is a contingent fee matter and any costs of providing security would come from any recovery or be borne by the attorney, his firm, or by a third party connected to advocating for international human rights.

46.     The overarching concern of Rule 3.4(b) is that any assistance to the witness cannot "influence" his testimony.  This concern is no longer present if the witness was already on record with his testimony when the security assistance was provided.  Based on my review of paragraphs 37-40 and 42-44 of the Collingsworth Declaration, assuming the facts therein to be true, it appears that the three witnesses who received security assistance were already on record with their testimony at the time security assistance was provided.  This largely eliminates any concerns that the security assistance influenced the testimony.

47.     Using the examples of the federal witness protection program and the domestic violence protection system as examples of attorneys assisting in the protection of their witnesses, the current situation is analogous.  In my opinion, this situation follows the intent of the ethical rules on not providing anything of value to fact witness in exchange for testimony and to ensure the availability of witnesses for opposing parties.

48.     In rendering this opinion, I have considered the opinions of Professors George M. Cohen, cited in paragraph 31, *supra*, and Erwin Chemerinsky that were presented in the case of *Chevron Corp. v. Donziger*, 1:11-cv-00691-LAK-JCF (S.D.N.Y. filed Feb. 1, 2011).  I am in substantial agreement with the conclusions offered in their expert opinions in the *Chevron* case.  Attached hereto as Exhibit B is a true and correct copy of the July 26, 2013 Declaration of Professor Erwin Chemerinsky, provided to the court as Exhibit 2 to the Declaration of Steven R. Donziger in Support of Motion for Sanctions, *Chevron Corp. v. Donziger*, 1:11-cv-006910-LAK-JCF (S.D.N.Y. Sept. 12, 2013), ECF No. 1423-2.  Attached hereto as Exhibit C is a true and correct copy of the Chevron Court's October 31, 2013 Order denying the defendant's motion to strike the testimony of the witness who was provided security assistance by Chevron.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed November 7th, 2013

Steven H. Hobbs

18