IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., | ) |
| | ) |
| Plaintiff , | ) |
| | ) |
| vs. | ) |
| | ) |
| TERRENCE P. COLLINGSWORTH, | )  CASE NO. 2:11-cv-3695-RDP |
| individually and as agent of Conrad & | ) |
| Scherer, LLP; and CONRAD & | ) |
| SCHERER, LLP, | ) |
| | ) |
| Defendants . | ) |

## **FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiff, Drummond Company, Inc. (hereinafter "Drummond"), by and through the undersigned counsel, and hereby files this Amended Complaint against the Defendants, Terrence P. Collingsworth and Conrad & Scherer, LLP.

## PARTIES

1.  Plaintiff Drummond is a for profit Alabama corporation with its principal place of business in Birmingham, Alabama.

2.  Defendant Terrence P. Collingsworth is an individual who, upon information and belief, is domiciled in the District of Columbia.  Collingsworth is sued both individually and as an agent of Conrad & Scherer, LLP.  Collingsworth

is a partner at Conrad & Scherer, LLP.  During the time relevant to this Complaint, Terrence P. Collingsworth has conducted business in Birmingham, Alabama.

3. Defendant Conrad & Scherer, LLP is a limited liability partnership with its principal place of business in Fort Lauderdale, Florida.  During the time relevant to this Complaint, Conrad & Scherer, LLP has conducted business by agent in Birmingham, Alabama.  With the exception of Collingsworth—who is a citizen of the District of Columbia—and Lee Bialstock—who is a citizen of New York, all of the partners of Conrad & Scherer, LLP are citizens of Florida.  No partner of Conrad & Scherer, LLP is a citizen of Alabama.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, including compensatory and punitive damages, exceeds $75,000.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because Defendants' libelous statements were, and are currently being, circulated within this judicial district, and the Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

6. Collingsworth is a partner of Conrad & Scherer, LLP who, since 2009, has been admitted *pro hac vice* in Alabama relating to three lawsuits he has

filed against Drummond in which he alleges Drummond has ties to paramilitaries in Colombia, specifically the United Self-Defense Forces of Colombia ("AUC"). Between 2002 and 2009, Collingsworth was also admitted *pro hac vice* in Alabama relating to a similar lawsuit, which resulted in a dismissal in favor of Drummond, a jury verdict in favor of the remaining defendants, and an affirmance by the Eleventh Circuit Court of Appeals.

7. Collingsworth also has a financial arrangement with Llanos Oil Exploration Limited ("Llanos Oil") and its two principals, Hendrik Van Bilderbeek and Albert Van Bilderbeek. Hendrik Van Bilderbeek served time in prison in Colombia based on allegations of money laundering and involvement with Colombian drug-traffickers.

8. Llanos Oil purports to be an oil exploration company, and has made wild allegations that the Colombian government conspired with Drummond to "steal" certain mineral rights in Colombia leased by Llanos Oil.

9. Collingsworth, in concert with Llanos Oil, has embarked on a calculated and continuous campaign to publicly defame Drummond. It is currently unknown precisely when this plan was hatched, but on June 29, 2010, Collingsworth wrote Albert van Bilderbeek and stated that he was "look[ing] forward to meeting and together closing down Drummond."

10. Around this time, Collingsworth was receiving assistance from Llanos Oil in arranging meetings with potential financiers for his litigation against Drummond. For example, on August 24, 2010, Collingsworth corresponded with Albert van Bilderbeek regarding meeting with litigation funders and stated that "we will be jumping full bore into the (very expensive) Drummond discovery process, so I'm quite anxious about this and want to be as prepared as possible so that the meeting has a good result."

11. On December 14, 2010, Albert van Bilderbeek requested that Collingsworth "email me a letter (with letterhead and signed) addressed to the persons below" so that he can deliver the letter to Dutch government officials. As explained below, the resulting letter was replete with false and defamatory statements about Drummond.

12. On December 21, 2010, Albert van Bilderbeek again asked about sending a letter to Dutch government officials, but Collingsworth suggested that they wait until after the New Year so the letter receives more attention and is "not ignored in the midst of the [holiday] celebrations."

13. On January 18, 2011, consistent with the stated plan of "together closing down Drummond," Collingsworth sent a letter to Albert van Bilderbeek of Llanos Oil to hand-deliver to the Prime Minister of the Netherlands, as well as to

other Dutch government officials, urging the government of the Netherlands to stop any business relationship it has with Drummond.

  14. In the January 18, 2011 letter, Collingsworth characterized as "objective facts" numerous false and defamatory statements about Drummond. For example, Collingsworth stated:

  a. that "hundreds of Colombian citizens . . . had a family member murdered by paramilitary forces working on behalf of Drummond;"

  b. that Drummond "has an atrocious human rights record;"

  c. that Drummond "made an alliance with the United Self Defense Forces of Colombia ('AUC'), the umbrella paramilitary group in Colombia;"

  d. that the "AUC was designated a terrorist organization by the U.S. government in 2001, yet Drummond continued its unlawful alliance until 2006, when the AUC demobilized as part of the Justice and Peace program in Colombia;"

  e. that "[a]s a matter of objective fact, with Drummond's support," a particular Front of the AUC "went from a small band of 20 thugs to a fighting force of 150 well equipped and trained soldiers;" and

  f. that "Drummond's mandate to the AUC led to the violent slaughter of hundreds of innocent civilians."

15. Not one of these statements—or any of Collingsworth's other statements in the January 18, 2011 letter accusing Drummond of human rights crimes and complicity with a terrorist organization—is true. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests, and with the ultimate goal of "closing down Drummond."

16. The January 18, 2011 letter was, upon information and belief, provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On January 19, 2011, the day after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

17. Shortly after the first defamatory letter was published on the Llanos Oil website, Collingsworth and Llanos Oil began working on a second defamatory letter to Dutch government officials, which was ultimately sent February 4, 2011.

18. On February 2, 2011, two days prior to the publication of the second defamatory letter to Dutch government officials, Albert van Bilderbeek of Llanos Oil provided his own editorial comments to the defamatory letter.

19. The next day, Albert van Bilderbeek emailed Collingsworth "regarding campaign case strategy." On the same day, Collingsworth emailed Victoria Ryan at Conrad & Scherer, LLP, and asked that she "finalize this [letter] as is, including Albert's changes" and send "a new final to Albert with exhibits."

20. On February 4, 2011, Collingsworth's second defamatory letter to Dutch government officials was sent. This time, Collingsworth had apparently been given access to and reviewed weblogs from Llanos Oil's website, and based on these weblogs he accused Dutch government officials of participating in a conference call with Drummond and its attorneys to discuss the January 18, 2011 letter.

21. In the February 4, 2011 letter, Collingsworth made additional false and defamatory statements about Drummond, including, but not limited to, accusing it of being able to "get away with murder" and stating that there were "hundreds of Colombian victims of Drummond's human rights violations."

22. Also in the February 4, 2011 letter, Collingsworth accused the Dutch government officials of conspiring with Drummond against the interests of Collingsworth's clients, "the hundreds of Colombian victims of Drummond's human rights violation." In that letter, Collingsworth misrepresented his connection to Llanos Oil (and Llanos Oil's involvement in drafting the letter): "While it is not my direct concern, it also appears you are acting in concert against

the interests of Llanos Oil and its two principals, the Dutch nationals Hendrik and Albert van Bilderbeek."

23. Again, Collingsworth's accusations of murder and human rights violations are completely false. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not. It had been over three years since Drummond was acquitted in court on these allegations in a case where Collingsworth was lead counsel. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests, and with the ultimate goal of "closing down Drummond."

24. The February 4, 2011 letter was, upon information and belief, provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On February 7, 2011, three days after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

25. On June 17, 2011, Albert van Bilderbeek sent Collingsworth an article regarding Itochu Corp.'s potential purchase of an interest in Drummond's Colombian mining operation and directed Collingsworth to "have your office write Itochu Corp. to inform them of your lawsuit."

26. On September 19, 2011, consistent with the direction of Llanos Oil and before the deal with Itochu Corp. had closed, Collingsworth wrote a letter to the President and Chief Executive Officer of Itochu. In this letter, Collingsworth continued his campaign of defamation against Drummond.

27. In the September 19, 2011 letter, Collingsworth states as fact that Drummond "has a record of major human rights crimes." He further professes to provide "the facts about Drummond's direct involvement in war crimes and other major human rights violations in Colombia." He states that "Drummond will no doubt continue to deny its crimes" but that "[l]ike many companies operating in Colombia during the civil conflict, Drummond joined forces with the AUC, a terrorist organization." These are but a few examples of the numerous false and defamatory statements contained in the September 19, 2011 letter.

28. Again, these accusations are completely false. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests, and with the ultimate goal of "closing down Drummond."

29. The September 19, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with

knowledge that it would be published on Llanos Oil's website. On September 20, 2011, the day after it was written (and likely before it even reached Itochu, the letter's purported recipient), the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

30. Each of the three letters discussed above were written on Conrad & Scherer, LLP letterhead and with the actual and/or apparent authority of Conrad & Scherer, LLP and/or in the line and scope of Collingsworth's employment with Conrad & Scherer, LLP.

31. None of the recipients of the above letters have any connection to any litigation filed by Collingsworth against Drummond. The letters were not written in furtherance of any legitimate legal proceeding, but rather were written and published on Llanos Oil's website in furtherance of Collingsworth's plan to publicly defame Drummond and harm its business interests, and with the ultimate goal of "closing down Drummond."

32. On September 29, 2011, Drummond demanded that Collingsworth and his firm, Conrad & Scherer, LLP, publish a public retraction of the defamatory statements contained in the January 18, February 4, and September 19, 2011 letters. To date, Collingsworth and Conrad & Scherer, LLP have failed and/or refused to publish a retraction.

33.    Rather, the campaign of defamation continues.  On or about August 26, 2013, Collingsworth was interviewed on Alternativa Latina on 88.7 FM Radio at Hofstra University.  A recording of this interview was also published on the internet.  In the interview, Collingsworth made numerous false and defamatory statements regarding Drummond's complicity in murder and collaboration with a terrorist organization.  For example, when discussing an ongoing union strike in Colombia, Collingsworth stated: "after they killed, after the union leaders were killed in 2001, eventually obviously new leadership did come forward with much better security.  And I think it would be very difficult for Drummond to solve their problems with the union again by having the union leaders assassinated."

34.    Like his defamatory letters, Collingsworth's accusations in the August 26, 2013 radio interview are completely false.  In fact, Collingsworth previously sued Drummond for the murder of these union leaders in *Estate of Rodriguez, et al. v. Drummond Co., Inc., et al.*, CV-02-BE-0665-W (N.D. Ala.).  That case resulted in a dismissal in favor of Drummond and a jury verdict in favor of the remaining defendants.  At the time of the radio interview, Collingsworth knew his statements were false and/or acted with reckless disregard to whether they were false or not.

35.    On October 17, 2013, Drummond demanded that Collingsworth and his firm, Conrad & Scherer, LLP, publish a public retraction of the defamatory statements in Collingsworth's August 26, 2013, radio interview.  To date,

Collingsworth and Conrad & Scherer, LLP have failed and/or refused to publish a retraction.

36. At the time the above letters were written and radio interview conducted, Defendants knew that Drummond was an Alabama corporation with its principal place of business in Birmingham, Alabama.

37. Defendants have expressly aimed their ongoing campaign of defamation at Drummond knowing that it was an Alabama resident and knowing that the brunt of the harm from their campaign of defamation would be felt by Drummond in Alabama.

COUNT I

DEFAMATION

38. Drummond realleges and incorporates by reference paragraphs 1-37, inclusive, as if fully set forth herein.

39. Defendants intentionally, maliciously and/or recklessly published and caused to be published false and defamatory statements about Drummond.

40. Defendants did so knowing that the statements were false and/or acting in reckless disregard to whether they were false or not.

41. Defendants acted with the intent to prejudice Drummond in the public perception, to injure its business reputation, to deter others from conducting business with Drummond, and to otherwise damage Drummond.

42. Drummond has been damaged as a result of Defendants' defamation and hereby demands judgment against the Defendants for general, compensatory and punitive damages as to be determined by a jury, as well as costs and such other relief as the Court or jury deems just.

## AD DAMNUM

Based on the allegations as set forth above, Drummond avers that Defendants are liable for compensatory damages, punitive damages, interest, costs and expenses incurred in pursuing this litigation. Drummond further avers that punitive damages should be assessed in an amount sufficient to punish the wrongful conduct of Defendants, to deter similar conduct in the future and to serve as an example to deter others from engaging in similar wrongful conduct.

WHEREFORE, Drummond demands judgment for general, compensatory and punitive damages in an amount to be determined by a jury, as well as interest, costs and expenses, and such other relief as the Court and/or jury deem just.

## JURY DEMAND

**DRUMMOND DEMANDS TRIAL BY JURY ON ALL OF THE ISSUES TRIABLE BY A JURY IN THE COMPLAINT**

*s/ William Anthony Davis, III*
William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

*s/ Sara E. Kropf*
Sara E. Kropf
LAW OFFICE OF SARA KROPF, PLLC
101 G St. NW, Suite 800
Washington, D.C. 20001
(205) 627-6900

*Attorneys for Drummond Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on **November 22, 2013**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John W. Clark, Jr., Esq.
Bradley J. Smith, Esq.
Eric D. Bonner, Esq.
Clark, Hair & Smith, P.C.
1000 Urban Center Drive
Suite 125
Birmingham, Alabama 35242

*s/ William Anthony Davis, III*
William Anthony Davis, III (ASB-5657-D65W)