FILED
2013 Dec-06 PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DRUMMOND COMPANY, INC.,                )
                                       )
      Plaintiff ,                     )
                                       )
                                       )
vs.                                    )
                                       )    Case No. 2:11-cv-3695-RDP-TMP
                                       )
TERRENCE P. COLLINGSWORTH,             )
individually and as agent of Conrad & Scherer,   )    **OPPOSED**
LLP; and CONRAD & SCHERER, LLP,        )
                                       )
                                       )
      Defendants .                    )


**DRUMMOND COMPANY, INC.'S SUPPLEMENTAL BRIEF
PURSUANT TO THE COURT'S DIRECTIONS AT THE OCTOBER 10, 2013 HEARING**

William Anthony Davis, III (ASB-5657-D65W)    Sara E. Kropf
H. Thomas Wells, III (ASB-4318-H62W)    LAW OFFICE OF SARA KROPF PLLC
Benjamin T. Presley (ASB-0136-I71P)    1001 G St. NW, Suite 800
STARNES DAVIS FLORIE LLP    Washington, DC 20001
P.O. Box 59812    (202) 627-6900
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099


*Attorneys for Drummond Company, Inc.*

{B1694130}

# TABLE OF CONTENTS

I.    DEFENDANTS' INTERNAL COMMUNICATIONS RELATING TO FACT GATHERING AND WITNESS CREDIBILITY ARE DISCOVERABLE.....................................................................1

    A.    Defendants waived work-product protection for documents regarding witness credibility and their investigation of the "facts" that support their defamatory letters.....................................................................................2

    B.    This is precisely the type of extraordinary case where a substantial and compelling need exists to overcome work product protection. ..............................7

II.    DOCUMENTS RELATED TO LEGAL ANALYSES OF WITNESS PAYMENTS ARE DISCOVERABLE. ..................................................................................................12

    A.    The July 15, 2011 Memorandum. ........................................................12

    B.    Defendants Have Waived Work Product Protection Over Any Other Legal Analyses of Witness Payments ...........................................................16

III.    THERE IS NO SUBSTANTIAL NEED SUFFICIENT TO PERMIT DISCOVERY OF DRUMMOND'S FACTUAL WORK PRODUCT IN THE UNDERLYING LITIGATION. ..................18

Conclusion ................................................................................................................21

Certificate of Service ...............................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Montgomery*,
  282 F.R.D. 627 (M.D. Ala. 2012)...................................................................................20

*American Dental Ass'n v. Khorrami*,
  2003 WL 24141019 (C.D. Cal. July 14, 2003).............................................................10

*Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
  771 F. Supp. 149 (S.D. W. Va. 1991)............................................................................19

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
  276 F. Supp. 2d 1084 (D. Nev. 2003)..............................................................................7

*Bose Corp. v. Consumers Union*,
  466 U.S. 485 (1984)..........................................................................................................8

*Cabble v. Claire's Stores, Inc.*,
  919 F. Supp. 397 (M.D. Ala. 1996) .................................................................................2

*Castle v. Sangamo Weston, Inc.*,
  744 F.2d 1464 (11th Cir. 1984) .....................................................................................20

*Chao v. Tyson Foods, Inc.*,
  568 F. Supp. 2d 1300 (N.D. Ala. 2008)............................................................................3

*Cottrell v. National Collegiate Athletic Ass'n*,
  975 So. 2d 306 (Ala. 2007)...........................................................................................8, 9

*Handgards, Inc. v. Johnson & Johnson*,
  413 F. Supp. 926 (D.C. Cal. 1976) ..................................................................................7

*Harte–Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)..........................................................................................................8

*Hartman v. Banks*,
  164 F.R.D. 167 (E.D. Pa. 1995)....................................................................................10

*Herbert v. Lando*,
  441 U.S. 153, 99 S.Ct. 1635 (1979)................................................................................3

*Hickman v. Taylor*,
  329 U.S. 495, 67 S.Ct. 385 (1947).................................................................................20

*Hilbron v. Metropolitan Group Property and Cas. Ins. Co.*,
No. 2:12-cv-00636-BLW, 2013 WL 6055215 (D. Idaho Nov. 15, 2013) ........................10

*Holland v. Bank of New York Mellon Corp.*,
No. 08-civ-6060(RMB)(RLE), 2009 WL 1834489 (S.D.N.Y. June 22, 2009) ................20

*In re Hingle*,
717 So. 2d 636 (La. 1998) ................................................................................17

*Joiner v. Hercules, Inc.*,
169 F.R.D. 695 (S.D. Ga. 1996) ......................................................................19

*Lexecon, Inc. v. Miilberg Weiss Bershad Specthrie & Lerach*,
No. 92-C-7768, 1993 WL 179789 (N.D. Ill. May 24, 1993) ..............................10

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962) ........................................................................................11

*McFarlane v. Sheridan Square Press, Inc.*,
91 F.3d 1501 (C.A.D.C. 1996) ..........................................................................8

*Meisler v. Gannett Co., Inc.*,
Civ. A. s1. 91-0687-AH-M, 1992 WL 475765 (S.D. Ala. Oct. 27, 1992) ........................6

*Moody v. Internal Revenue Service*,
654 F.2d 795 (D.C. Cir. 1981) ...............................................................16, 17

*National Union Fire Ins. Co. of Pittsburgh, Pa.*,
967 F.2d 980 (4th Cir. 1992) ..........................................................................20

*Nelson v. Lapeyrouse Grain Corp.*,
534 So. 2d 1085 (Ala. 1988) ..............................................................................2

*Nutramax Laboratories, Inc. v. Twin Laboratories Inc.*,
183 F.R.D. 458 (D. Md. 1998)............................................................................7

*Otto v. Box Group U.S.A., Inc.*,
177 F.R.D. 698 (N.D. Ga. 1997) ......................................................................16

*Parrott v. Wilson*,
707 F.2d 1262 (11th Cir. 1983) ......................................................................16

*Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*,
No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D. Fla. Oct. 3, 2011) ..................11

*Ripps v. Gannett Co., Inc.*,
  No. CV-91-B-1954-S, 1993 WL 209617 (N.D. Ala. Mar. 03, 1993) ................................. 8

*Secord v. Cockburn*,
  747 F. Supp. 779 (D.D.C. 1990) ...................................................................................... 8

*Shipes v. BIC Corp.*,
  154 F.R.D. 301 (M.D. Ga. 1994) ................................................................................... 19

*Small v. Hunt*,
  152 F.R.D. 509 (E.D.N.C. 1994) ..................................................................................... 3

*Smith v. Huntsville Times Co.*,
  888 So. 2d 492 (Ala. 2004) ............................................................................................. 8

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ..................................................................................................... 6, 8

*Stern v. O'Quinn*,
  253 F.R.D. 663 (S.D. Fla. 2008) .......................................................................... 3, 4, 5, 6, 10

*United States v. Nobles*,
  422 U.S. 225 (1975) ........................................................................................................ 7

*Volpe v. U.S. Airways, Inc.*,
  184 F.R.D. 672 (M.D. Fla. 1998) ................................................................................... 6

*Welch v. Regis Corp.*,
  No. 4:CV-09-2437, 2011 WL 1485970 (M.D. Pa. April 19, 2011) ................................. 20

*Williamson v. Moore*,
  221 F.3d 1177 (11th Cir. 2000) ...................................................................................... 9

**Statutes and Rules**

Alabama Rule of Professional Conduct 3.4(b) ....................................................... 14, 17

Fed. R. Civ. P. 26(b)(3)(A)(ii) ................................................................................... 9, 18

**Other Authorities**

8 Wright & Miller, *Federal Practice & Procedure* § 2016.6 n.8 (3d ed.) ...................... 6

8 Wright & Miller, *Federal Practice & Procedure* § 2026 (Supp. 1994) ..................... 10

50 Am. Jur. 2d *Libel and Slander* § 455 (1970) ......................................................... 3

Moore's Federal Practice, § 26.64 (2d ed. 1986).........................................................................10

Moore's Federal Practice § 26.70(6)(c) .......................................................................................3

Pursuant to this Court's Order (Doc. 64) and its verbal instructions in the October 10, 2013 hearing, Drummond hereby files this brief and addresses the specific discovery issues identified by this Court for supplemental briefing.

**I.**     **DEFENDANTS' INTERNAL COMMUNICATIONS RELATING TO FACT GATHERING AND WITNESS CREDIBILITY ARE DISCOVERABLE.**

In its October 15, 2013 Order, this Court reserved its ruling on Drummond's written discovery requests directed towards "fact gathering (and specifically subjective beliefs as to the truth of the facts gathered) and how Mr. Collingsworth's team evaluated the credibility of witnesses (including internal communications about credibility)," stating that the production of this information could present some work product concerns in the underlying litigation filed by the Defendants against Drummond in this Court.  (Doc. 64 at 3).  Defendants are withholding all of these documents on the basis that they constitute work product.  And despite this Court's October 15 Order compelling Defendants to produce several categories of documents along with a privilege log of all documents withheld, Defendants have yet to produce either a privilege log or a single document responsive to the Court's Order.  As such, Drummond is again relegated to arguing the work product issue in the abstract.  Nevertheless, Defendants' work product claim is legally untenable and, if allowed, will deprive Drummond of a crucial source of evidence available to prove a necessary element of its claim—Defendants' subjective belief in the veracity of the statements at issue.

This case is rather unique.  The Defendants – an attorney and his law firm – have repeatedly sued Drummond in Alabama federal court for over a decade.  They also sent a series of defamatory letters to Drummond's business partners urging them to sever all business connections with Drummond and accusing Drummond of murder and complicity with a terrorist organization.  Defendants have not claimed that the letters were written as a legitimate part of

any legal proceeding.  To the contrary, the evidence shows that the letters were written as part of a joint "campaign" between Llanos Oil and the Defendants to "clos[e] down Drummond."  (Doc. 62 at 13-14).

Defendants do not deny that their mental impressions and internal communications pertaining to witness credibility are relevant.  Indeed, these documents go directly to the ultimate issue in this case:  whether Mr. Collingsworth, at the time he wrote the defamatory letters, believed (or recklessly ignored) that the statements in those letters were false.  Defendants also cannot deny that the accusations in their defamatory letters are, in fact, defamatory.  Indeed, accusing someone of murder and complicity with a terrorist organization is defamation *per se*. *Cabble v. Claire's Stores, Inc.*, 919 F. Supp. 397, 402 (M.D. Ala. 1996) (citing *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1092 (Ala. 1988) (imputations of indictable criminal offenses are defamatory *per se*)).

Whether Mr. Collingsworth subjectively believed the testimony by these "fact witnesses" and the "facts" upon which he based his defamatory letters is critical in this case.  Drummond should be allowed to discover Mr. Collingsworth's state of mind at the time he published the defamatory letters, and the Defendants' internal documents regarding witness credibility and their subjective belief as to the truth of the "facts" gathered in their investigation are the source of this information.

> **A.    Defendants waived work-product protection for documents regarding witness credibility and their investigation of the "facts" that support their defamatory letters.**

Drummond has already acknowledged that it must prove *Sullivan* actual malice to prevail

in this case. Ex. D, Hearing Transcript at 75.[1]   "It is axiomatic that evidence relating to an alleged defamer's knowledge and thought process at the time of the statements at issue bears on the issue of actual malice."  *Stern v. O'Quinn*, 253 F.R.D. 663, 671 (S.D. Fla. 2008) (citing *Herbert v. Lando*, 441 U.S. 153, 160-65, 99 S.Ct. 1635 (1979)).  One of the ways that a plaintiff can show actual malice is by presenting evidence that the "defendant had failed to make a proper investigation before publication of the statement in question."  *Herbert*, 441 U.S. at 164 n.12 (quoting 50 Am. Jur. 2d *Libel and Slander* § 455 (1970)).  Therefore, it is crucial for Drummond to discover all information at Mr. Collingsworth's disposal at the time he wrote the letters.  This includes information that supports the defamatory statements, which, as a practical matter, has likely already been disclosed as "evidence" in Mr. Collingsworth's litigation against Drummond. But it also includes information which tends to disprove or cast doubt upon the statements, which Mr. Collingsworth has every incentive to withhold on a claim of privilege.

"A party . . . impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue."  *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1328 n.29 (N.D. Ala. 2008) (quoting Moore's Federal Practice § 26.70(6)(c)). The theory of implied waiver applies to both the work-product doctrine and the attorney-client privilege and provides that

> [A] party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense [or claim].

*Stern*, 253 F.R.D. at 676; *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C. 1994) (same).  The

---

[1] Unless otherwise indicated, "Ex." refers to the exhibits to the declaration of H. Thomas Wells, III, filed herewith.

reason for the doctrine "is the idea that it is simply not fair to allow a party to wield the work-product protection as a sword to cut out the heart of an opposing party's case while simultaneously brandishing it as a shield from disclosure of any Achilles heels." *Stern*, 253 F.R.D. at 677 (collecting cases). Here, Defendants placed their state of mind directly at issue by writing and distributing the defamatory letters and cannot both rely on their investigation to support their belief in the truth of the statements while at the same time withhold what they knew at the time they made the statements.

*Stern v. O'Quinn* is the only case cited by any of the parties to squarely address these unique circumstances. In *Stern*, the plaintiff filed suit against an attorney (O'Quinn) and his law firm alleging defamation based on O'Quinn's statements that the plaintiff murdered Anna Nicole Smith and her son for financial gain. 253 F.R.D. 666. Drummond has already discussed this case at length, and will not repeat that discussion here. In sum, the turning point in *Stern* was that the attorney's subjective state of mind was the central issue in the case, and thereby overcame any claim of work product:

> [I]n the absence of disclosure of the work-product protected materials, Plaintiff has no means to combat or otherwise test the veracity of Defendants' defenses that O'Quinn acted in good faith and did not entertain serious doubts as to the veracity of the matters allegedly stated or purposefully avoided learning the truth. That is because Defendants base this defense, in significant part, on Defendants' investigation, and knowledge concerning these matters falls uniquely within the province of Defendants.

*Id.* at 677. The court also noted that this investigation material "would reflect exactly the non-public information at O'Quinn's fingertips at the time he made the alleged statements." *Id.* at 686.

The need to delve into Mr. Collingsworth's subjective beliefs at the time of the defamatory statements at issue is what distinguishes this case from every case heretofore cited by

Defendants wherein a claim of work product was upheld.  Although the internal communications and investigatory materials are relevant to the truth, it is not discovery into the truth of the statements that merits disclosure here.  In fact, the "truth" is at issue in every case. Even in a simple car wreck case, the truth of the defendant's statement that the traffic light was green versus the truth of the plaintiff's statement that it was red would be a key issue of the case.  But these circumstances do not warrant disclosure of work product materials bearing on this issue.

Indeed, the *Stern* court recognized that the need to prove the objective truth or falsity of a statement, standing alone, is not sufficient to overcome the work product doctrine.  While the court allowed discovery into O'Quinn's investigations made *prior* to the time of making the defamatory statements—which would inherently bear on his subjective belief at the time he made them—the court nonetheless denied discovery into investigations made *after* the last defamatory statements, which could only prove objective truth or falsity. *Stern*, 253 F.RD. at 686. Specifically, the court explained that

> Plaintiff argues that he needs the post-statement information from the investigation in order to address the truth or falsity of the statements attributed to O'Quinn. He further argues that he needs the post-statement O'Quinn Materials and Investigation Materials to demonstrate that O'Quinn continued to investigate the truth or falsity of his statements even after he made them, suggesting that O'Quinn acted with actual malice at the time he made the alleged statements. Finally, Plaintiff asserts that he cannot otherwise obtain these materials because "only Defendants know the persons they have spoken with and the facts they have gathered. . . .The Court finds that Plaintiff has failed to demonstrate the requisite substantial need and undue burden necessary to sustain a breach of the work-product protection. As to post-statement O'Quinn Materials and Investigation Materials bearing on the truth or falsity of the statements, . . .  Plaintiff can employ interrogatories to learn the identities of all individuals with any information regarding the truth or falsity of the particular allegations contained within the alleged statements. He can then conduct his own interviews and other discovery as it relates to those people. Allowing Plaintiff to review Defendants' post-statement investigation simply to provide a short-cut for Plaintiff to prepare his case does not amount to "substantial need." Indeed, *Hickman v. Taylor, supra,* stands for precisely this point.

*Id.* (internal citations omitted).

As in *Stern*, Drummond is entitled to fully explore the Defendants' subjective belief as to the "truth" of their letters, including the Defendants' specific efforts to ascertain the "truth" and the information they uncovered in their investigation. *See Meisler v. Gannett Co., Inc.*, 1992 WL 475765, at *3 (S.D. Ala. Oct. 27, 1992) ("A jury may find recklessness 'where there are obvious reasons to doubt the veracity of the' information relied upon.") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); *see also Volpe v. U.S. Airways, Inc.*, 184 F.R.D. 672, 673 (M.D. Fla. 1998) ("[I]f defendant intends to rely on the investigation as a defense, plaintiff is entitled to test the *bona fides* of the investigation.").[2]  Drummond will agree to limit the requests calling for such information to documents created on or before September 19, 2011—the date the last defamatory letter was sent.

But there is still another reason documents showing Mr. Collingsworth's subjective beliefs cannot be withheld on a claim of work product.  By making the defamatory statements at issue, Mr. Collingsworth made himself a key witness in this case, and thus waived work product protection.  Unless Defendants stipulate to the contrary, Mr. Collingsworth will be a witness and will presumably testify that he subjectively believed in the truth of his defamatory statements when he made them.  The fact that he will so testify waives work product protection over any

---

[2] *See also* 8 Wright & Miller Fed. Prac. & Proc., § 2016.6 n.8 (3d ed.) (citing *Stern v. O'Quinn* for the proposition that "[u]nder implied waiver doctrine, a party waives work–product or privilege protection when by its affirmative act the party asserting the privilege puts the protected information at issue in making it relevant to the case, and application of the privilege would deny the opposing party access to information vital to its position. Accordingly, attorney who was sued for defamation due to statements asserting that plaintiff murdered his mother for financial gain waived work–product protection regarding materials obtained up until the last alleged defamatory statement was made. The attorney had affirmatively put the materials at issue by indicating his intention to rely on information he obtained through his investigations to justify the statements he had made.").

materials bearing on his subjective belief. *See United States v. Nobles,* 422 U.S. 225, 239 (1975); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1094 (D. Nev. 2003) ("[A]lthough attorneys' work-product is ordinarily protected, once a client decides to call the attorneys as witnesses, the work-product protection must give way to full disclosure on any issue to which they will testify. Anything less would permit manipulation of the truth.").

In finding work product protection had been waived in *Nobles*, the Supreme Court specifically noted that "Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver. But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." *Id.* at 239 n.4. Accordingly, the Court held that "Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination."  *Id.* at 239-40; *see also Nutramax Laboratories, Inc. v. Twin Laboratories Inc.*, 183 F.R.D. 458, 463 (D. Md. 1998) (same); *Handgards, Inc. v. Johnson & Johnson,* 413 F. Supp. 926, 931 (D.C. Cal. 1976) ("Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of the relevant work product of these attorneys.").

      **B.**      **This is precisely the type of extraordinary case where a substantial and compelling need exists to overcome work product protection.**

Even without a waiver, Drummond is entitled to this discovery because it has a substantial and compelling need for this information.  As noted above, a defamation plaintiff can show actual malice "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."  *Ripps v. Gannett Co., Inc.*, No. CV-91-B-1954-S, 1993 WL 209617, at *6 (N.D. Ala. Mar. 03, 1993) (citing *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) and *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968)).  Stated differently, "[a] defendant acts with 'reckless disregard' if, at the time of publication, the defendant 'entertained *serious doubts* as to the truth of [its] publication' or acted 'with a *high degree of awareness* of ... [its] probable falsity.'"  *Cottrell v. National Collegiate Athletic Ass'n*, 975 So. 2d 306, 349 (Ala. 2007) (quoting *St. Amant*, 390 U.S. at 731) (emphasis in the original).

Crucially, "because the actual malice inquiry is subjective—that is, concerned with the defendant's state of mind when he acted—the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication."  *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (C.A.D.C. 1996) (citing *Bose Corp. v. Consumers Union,* 466 U.S. 485, 498 (1984)).[3] Furthermore,

> Although this fact may be proved by circumstantial rather than direct evidence, "the plaintiff must establish that even in relying upon an otherwise questionable source the defendant actually possessed subjective doubt." *Secord v. Cockburn,* 747 F. Supp. 779, 794 (D.D.C. 1990) (plaintiff cannot survive summary judgment merely by showing that some of defendant's sources were convicted felons); *see St. Amant,* 390 U.S. at 730, 88 S.Ct. at 1325 (when defendant had implicated sheriff and union leader in alleged wrongdoing, actual malice could not be inferred from defendant's having relied solely upon affidavit of union dissident of unknown veracity and having failed to verify allegations with sources who might have known).

---

[3] McFarlane has been cited approvingly by the Alabama Supreme Court in discussing the actual malice standard. *See Cottrell*, 975 So. 2d at 349; *Smith v. Huntsville Times Co.,* 888 So. 2d 492, 499-500 (Ala. 2004).

*Id.* at 1508.

In this case, evidence of Mr. Collingsworth's actual malice "must necessarily be drawn solely upon the basis of the information that was available to and considered by [him] prior to publication" of his defamatory letters. *Id.*  The Defendants' internal documents discussing their "fact" witnesses' credibility and their subjective belief of the "facts" gathered in Colombia are precisely the type of evidence that Drummond must have to meet its burden of proving actual malice.  For example, if the Defendants have documents showing that they did not believe a witness, or had serious reason to doubt the veracity of his testimony, Drummond has a compelling and direct need for those documents.  Furthermore, Drummond cannot obtain this information from any other source, because the inquiry is *subjective*.  *Cottrell*, 975 So. 2d at 349. Thus, this is a rare and extraordinary case in which Drummond has a compelling need for this discovery which overcomes any work product protection.  FED. R. CIV. P. 26(b)(3)(A)(ii); *Williamson v. Moore*, 221 F.3d 1177, 1182-83 (11th Cir. 2000) (opinion work product is discoverable in extraordinary circumstances).

The Defendants' prior briefing belies their failure to grasp the concept that Collingsworth's subjective state of mind is directly at issue.  For example, Defendants point out that they have been suing Drummond "for years," and therefore Drummond should be able to prove the falsity of the defamatory letters through "deposition or its own investigations."  (Doc. 46 at 26).   This argument misses the point.  While Drummond can show (and has shown) through its own investigations that the statements at issue are false, Mr. Collingsworth is in exclusive possession of documents revealing his *subjective* state of mind at the time he wrote and published the defamatory letters.  This is one of the few extraordinary circumstances where it is recognized that work product must be disclosed.  8 Charles A. Wright & Arthur R. Miller,

Federal Practice and Procedure § 2026 (Supp. 1994) ("Documents that would otherwise be protected must be produced if the knowledge, mental impressions, opinions, and advice of a lawyer or law firm are at issue in a litigation to which the lawyer or law firm is a party.").

The federal cases to have addressed this issue are in accord in holding that work product gives way when the mental impressions of a party, who is also an attorney, are the central issue in the case.  *See Stern v. O'Quinn*, 253 F.R.D. 663, 677 (S.D. Fla. 2008); *American Dental Ass'n v. Khorrami*, 2003 WL 24141019, at *8 n.5 (C.D. Cal. July 14, 2003) ("Plaintiff's claim presents an exceptional case whereby Defendant attorney's subjective mental state—his or her opinion about the truth or validity of a concept—is directly at issue in the action, [and thus] permitted discovery of Defendant's opinion work product."); *Hartman v. Banks*, 164 F.R.D. 167, 169-70 (E.D. Pa. 1995) (same); *Lexecon, Inc. v. Miilberg Weiss Bershad Specthrie & Lerach*, No. 92-C-7768, 1993 WL 179789, at *6 (N.D. Ill. May 24, 1993) ("Work product is subject to discovery when the activities of counsel are directly at issue in a lawsuit.  *See* Moore's Federal Practice, ¶ 26.64, p. 26–385 (2d ed. 1986).  When someone sues a lawyer for malicious prosecution or filing bad faith lawsuits, it is the lawyer's impressions, conclusions, opinions and legal theories that are in issue.") (internal citation omitted).

In fact, even when an attorney is not a party to a lawsuit, courts recognize that opinion work product may be subject to disclosure where an attorney's mental thought process is at issue. *Hilbron v. Metropolitan Group Property and Cas. Ins. Co.*, No. 2:12-cv-00636-BLW, 2013 WL 6055215, at *3-4 (D. Idaho Nov. 15, 2013) (noting that "opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling" and allowing discovery of attorneys' opinion work product where the attorneys' mental impressions were directly at issue and the defendant was in sole possession of

the information); *Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060, at *4 (M.D. Fla. Oct. 3, 2011) ("[t]his Court holds that the mental impressions of State Farm's counsel are directly at issue here, and thus, exceptional circumstances justify invading the opinion work product.").

Drummond is cognizant of this Court's stated concern of allowing discovery of information in this case that would otherwise be prohibited in the underlying litigation. However, this is an extraordinary case, and but for the Defendants' actions it would never have been filed. The Defendants, a lawyer and his law firm, wrote and published their defamatory letters accusing Drummond of murder not as part of their repeated lawsuits against Drummond, but rather as part of a calculated "campaign" with Llanos Oil to harm Drummond's business interests and with the ultimate goal of "closing down Drummond." (Doc. 62-6 at 2). They are now relying on their investigation of the "facts" in the underlying litigation, as well as the testimony of witnesses to whom they have paid over $90,000, to support the truth of their defamatory letters. Simply stated, Drummond should not be precluded from conducting full discovery on its claim because the Defendants were too short-sighted to anticipate the consequences of their defamatory letters and their "campaign" to "clos[e] down Drummond." *Id.* Drummond has a direct, compelling and indisputable need for this discovery that overcomes any work product protection, rendering Defendants' objections meritless.[4]

---

[4] As the United States Supreme Court has recognized, counsel's actions may do great harm to his client's case. Yet, this does not excuse the consequences of counsel's conduct from being attributed to his client. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 n.10 (1962):

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his

## II.  DOCUMENTS RELATED TO LEGAL ANALYSES OF WITNESS PAYMENTS ARE DISCOVERABLE.

Another matter on which discovery is needed is legal analyses of the propriety of payments, or any other potential inducements or benefits, provided to witnesses.  These documents are relevant for many reasons.  For example, if there are documents counseling against providing certain benefits to witnesses, and they were ignored, it would go to the issues of recklessness and malice.  Additionally, these documents will reveal the fact of payments to witnesses, or other beneficial arrangements that are not direct monetary payments.  This Court has already ruled that "[t]he fact of payments to witnesses are not subject to work product objections," and "[i]nterrogatories and requests for production on **research regarding payments to witnesses** are not overbroad and are properly within the scope of discovery." Oct. 15, 2013 Order (Doc. 64) at 3-4.

### A.  The July 15, 2011 Memorandum.

Drummond has discovered one such document, which reveals yet another method of providing financial benefits to imprisoned Colombian paramilitaries that has heretofore not been discussed—payment of the legal fees incurred by paramilitaries *to defend them in their criminal prosecutions*.  As the Court is aware, one of Mr. Collingsworth's co-counsel in the *Chiquita* ATS litigation, Paul Wolf, has testified that Mr. Collingsworth's payments to witnesses was an issue discussed among the lawyers involved in the *Chiquita* case. Wolf Decl. (Doc. 62-5).  When Mr.

---

lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney. . . . And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant. Moreover, this Court's own practice is in keeping with this general principle. For example, if counsel files a petition for certiorari out of time, we attribute the delay to the petitioner and do not request an explanation from the petitioner before acting on the petition.

Collingsworth was challenged about the propriety of such payments on June 22, 2011, he claimed to have an ethics opinion about it, but instead provided the group with a memorandum written by a Conrad & Scherer associate. *Id.* at ¶¶ 19-26.  Mr. Collingsworth has now provided a declaration claiming that the context of these discussions was that he informed the *Chiquita* plaintiffs' lawyers about having to provide "security" to witnesses in the Drummond cases in order to "allow the group to thoroughly review the legal, ethical and practical issues of addressing the need for security when a witness is threatened with death or other violent retaliation." Decl. of Collingsworth (Doc. 69) ¶ 64.

Mr. Wolf has voluntarily provided to Drummond's counsel a copy of the legal memorandum referenced in his declaration. Wells Decl., ¶ 2.  The memorandum is dated July 15, 2011 and bears the subject line: "███████████████████████████████████████" Ex. A, Piper Hendricks Memorandum.  The memorandum was written by someone named "Piper" and is addressed to Mr. Collingsworth and his colleague at Conrad & Scherer, Christian Levesque.[5]

Before reviewing the document, counsel for Drummond contacted the Alabama Bar to determine whether such would be appropriate, given its voluntary disclosure by Mr. Wolf. The Alabama Bar provided an informal opinion that it was appropriate to do so. Ex. C, Email from Mark Moody dated 10/8/2013.  And as made abundantly clear by Mr. Collingsworth's most recent declaration, at the time Mr. Collingsworth provided the memorandum to Mr. Wolf, Mr. Collingsworth had absolutely no expectation of confidentiality in anything disclosed to Mr. Wolf.  *See* Decl. of Collingsworth (Doc. 69) ¶¶ 57-65.

---

[5] "Piper" is presumably Piper Hendricks, who apparently used to work at Conrad & Scherer. *See* Ex. B, Conrad & Scherer press release identifying Piper Hendricks as an "associate at Conrad & Scherer, LLP."

The memorandum does not discuss the propriety of making "security" payments for witnesses—indeed, the word "security" does not even appear in the document. Ex. A, Piper Hendricks Memorandum; *see also* Ex. F, Screen Capture of "Security" Word Search.  Rather, the question analyzed by the memorandum is: "████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████?" Ex. A, Piper Hendricks Memorandum at 1.  Had Ms. Hendricks had the benefit of Defendants' expert report on ethics at the time, she would have known the answer is, "Yes." Decl. of Steven H. Hobbs (Doc. 70) ¶ 20 (including among improper inducements prohibited by Rule 3.4(b) "promising to improve the witness's position or circumstance in another civil or criminal case").  Instead, the memorandum advises that ████████████████ ████████" and offers six specific steps that should be followed:

████ ████████████████████████████████████████████ ████ ██████████████████████████ ████ ████████████████████████████████████████████ ████ ████████████████████████ ████ ████████████████████████████████████████████ ████ ██████████████████████████

*Id.* at 2.

Considering Mr. Collingsworth now contends this memorandum was evaluating circumstances that could arise in the *Chiquita* case based on his prior experience in the Drummond cases, it is reasonable to suspect that payment of the fees of witnesses' criminal lawyers has occurred in the Drummond cases.  This suspicion is all the more reasonable in light of Mr. Collingsworth's relationship with Ivan Otero—the criminal lawyer who at one time or

another served as counsel for virtually every paramilitary witness in *Balcero*.  Otero apparently

joined Mr. Collingsworth's legal team in 2008, and was promised 17% of any contingency fee

recovered in *Balcero*.  Decl. of Collingsworth (Doc. 69) at ¶ 51.  Otero's clients—who include El

Tigre, Samario, Charris and Jaime Blanco—then began providing declarations to Mr.

Collingsworth in 2009.  Otero has been implicated in bribery schemes involving imprisoned

paramilitaries, as well as attempts to threaten or intimidate victims and other paramilitary

witnesses.  Exs. F & G.  Charris testified that Otero's legal fees were paid by Francisco Ramirez

of Mr. Collingsworth's legal team. Ex. 54 to *Balcero* Doc. 411, Charris Dep. at 161-62, 165-66.

Drummond seeks discovery into whether the recommended steps for "ethically" paying

the criminal legal fees of paramilitary witnesses were actually followed.  Drummond knows at

least one of these steps was ignored: ███████████████████████████████

███████████████████████████████   Drummond seeks

documents related to whether Defendants followed any of the other steps suggested in the

memorandum.  In other words, Defendants should be ordered to produce (1) ████████████

███████████████████████████████ (2)

████████████████████; (3) ███████████████

█████████████; (4) ██████████████████████

███████████████████████████████ and

(5) █████████████████████████████

███████

If Defendants ignored these steps, then it is more likely that Defendants maliciously or

recklessly relied on tainted paramilitary witness testimony when they wrote and published the

defamatory letters. Furthermore, if Defendants disregarded their own research as to the propriety

of those payments, it is more likely that their conduct was a deliberate violation of the ethical rules and justifies sanction, such as exclusion of the witnesses' testimony from evidence. Drummond is entitled to explore these issues in discovery.

The documents identified in categories (1) through (4) above are not protected by the work product doctrine. None of those documents would reveal the mental impressions of counsel. With respect to the documents responsive to category (5), any responsive documents should be placed on Defendants' privilege log for a determination by the magistrate judge assigned to this case.

### B.   Defendants Have Waived Work Product Protection Over Any Other Legal Analyses of Witness Payments.

The July 15 memorandum was not included on Defendants' initial privilege log, nor were any other documents that appear to be legal analyses of witness payments. To the extent additional documents exist discussing or analyzing the propriety of providing any form of benefit to paramilitary witnesses, claims of privilege and work product have been waived.

Case law in the Eleventh Circuit makes clear that when counsel has engaged in unethical conduct, "whatever work product privilege might have existed [is] vitiated" by the conduct. *Parrott v. Wilson*, 707 F.2d 1262, 1271–72 (11th Cir. 1983) (affirming grant of motion to compel where party sought disclosure of secretly taped conversations of witness and holding that disclosure would not "traumatize[] the adversary process more than the underlying legal misbehavior"); *see also Otto v. Box Group U.S.A., Inc.*, 177 F.R.D. 698, 699 (N.D. Ga. 1997) (same).

The D.C. Circuit agrees. In *Moody v. Internal Revenue Service*, 654 F.2d 795, 800 (D.C. Cir. 1981), the court held that "in some circumstances, a lawyer's unprofessional behavior may vitiate the work product privilege." It explained that "[i]t would indeed be perverse . . . to allow a

lawyer to claim an evidentiary privilege to prevent disclosure of work product generated by those very activities the privilege was meant to prevent." *Id*.

Defendants have made large payments to four potential paramilitary witnesses. This conduct may violate Alabama Rule of Professional Conduct 3.4(b) which prohibits a lawyer from "offer[ing] an inducement to a witness that is prohibited by law." The comment to rule 3.4(b) allows only for payment of an expert witness's fees or a fact witness's "expenses . . . on terms permitted by law."

Given that some of these paramilitary witnesses were incarcerated when they testified in the underlying *Balcero* litigation, it is hard to imagine why they needed to be compensated for any time spent testifying. They were not missing time from a job or losing out on another professional opportunity to testify. Defendants have not produced any documents showing that the paramilitaries used the money for payment of travel or other expenses incurred by the paramilitaries. In addition, some of the payments were on-going payments, not a one-time payment to cover the expenses of testifying.  Defendants contend that the payments to these witnesses were used for "security" purposes, yet have not produced a single contemporaneous document supporting this claim. Moreover, Drummond is unaware of any federal or Alabama law that "permits" a party in private civil litigation to pay for the security of a witness, as required by the comment to Rule 3.4(b).[6]

---

[6] Defendants have offered the argument that they should be compared to the federal government's witness protection program. However, no case in this Circuit has ever adopted this argument.  *See also In re Hingle*, 717 So. 2d 636 (La. 1998) (lawyer convicted of bribing witness disbarred, notwithstanding lawyer's contention that inducement to get witness to testify truthfully was akin to prosecutor offering immunity in exchange for testimony)

As a result of their conduct, Defendants have waived any work product protection over all documents related to witness payments, including legal analyses of the propriety of such payments.

**III.    THERE IS NO SUBSTANTIAL NEED SUFFICIENT TO PERMIT DISCOVERY OF DRUMMOND'S FACTUAL WORK PRODUCT IN THE UNDERLYING LITIGATION.**

This Court also asked the parties to brief whether Drummond's "documents that contain facts that would go to truth but don't contain mental impressions of any particular lawyer representing Drummond" would be discoverable, questioning whether such documents are relevant to proving the Defendants' affirmative defense of truth.  Ex. D, Hearing Transcript at 68.  For the reasons that follow, these documents are not discoverable.

Put simply, the truth is at issue in every case, and the fact that a defamation defendant pleads the affirmative defense of "truth" does not entitle him to discover the factual work product of the opposing party. *See supra*, Section I.A.  Rather, to be entitled to Drummond's factual work product, the Defendants must demonstrate that they have a substantial need for this information and that they could not obtain the substantial equivalent without undue hardship. FED. R. CIV. P. 26(b)(3)(A)(ii).  As explained above, and as recognized in *Stern*, the "truth" does not constitute a compelling need sufficient to merit discovery into work product (whether it is Drummond's or Defendants').  Defendants' own briefing shows exactly why they cannot carry their burden in this regard, and they cite the typical cases wherein work product is *not* discoverable because the subjective state of mind of an attorney is *not* at issue.

As noted *supra*, Defendants eagerly point out that they have been suing Drummond "for years," and therefore Drummond should be able to prove the falsity of the defamatory letters through "deposition or its own investigations."  (Doc. 46 at 26).  Although this argument is plainly inapplicable to the subjective question of Defendants' actual malice, it is directly

applicable to the question whether Defendants are entitled to discover Drummond's factual work product.  Indeed, Defendants have "years" of investigatory material which should – at least in theory – demonstrate the truth of their defamatory letters.  As a result, they can obtain the evidence of the "truth" of their defamatory statements without undue hardship.

Case law is in accord.  For example, in *Joiner v. Hercules, Inc.*, the plaintiff sought discovery of documents prepared by the defendant that were created in anticipation of litigation, asserting that they had a "substantial need" for those documents and that they could not obtain the "substantial equivalent" of them.  169 F.R.D. 695, 696 (S.D. Ga. 1996).  The court found that the plaintiff was not entitled to discovery of these documents, holding that the plaintiff failed to "'show that he cannot obtain the substantial equivalent of the work-product through other efforts, such as conducting his own investigations, and that he has a substantial need for the materials in prosecuting his case.'" *Id.*  at 698 (quoting *Shipes v. BIC Corp.*, 154 F.R.D. 301, 305 (M.D. Ga. 1994)).

Similarly, in *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, the movant sought "documents relating to correspondence and notes of meetings with counsel, witness interviews and statements, internal memoranda by Murray officials and expert documents including medical reports for Murray employees and PCB test results."  771 F. Supp. 149, 150 (S.D. W. Va. 1991).  After finding that these documents were prepared in anticipation of litigation, the court held as follows:

> National Union has failed to establish a substantial need for the documents in which Murray asserts the privilege. Moreover, National Union has failed to demonstrate that it is unable without undue hardship to obtain the substantial equivalent of the materials by other means. National Union may exercise its rights under the Federal Rules of Civil Procedure to obtain discovery from Arkwright through interrogatories, depositions and requests for admission. National Union can also obtain information from General Electric and through its own

> investigation of the incident. National Union has failed to demonstrate that these
> avenues of discovery have been unduly burdensome.

*Id.* at 151.  *See also Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984) (appellee failed to demonstrated substantial need or undue hardship where he had ample opportunity, through his own investigation, to obtain the information contained in the appellant's work product material); *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.2d 980, 985 (4th Cir. 1992) (a party can demonstrate "substantial need" by showing that he was "disabled from making his own investigation"); *Welch v. Regis Corp.*, No. 4:CV-09-2437, 2011 WL 1485970, at *5 (M.D. Pa. April 19, 2011) (refusing to order the production of factual work product where the party seeking discovery "should be able to obtain much of the information in Regis' Claim Notes from other means, including their own investigations and interviews with witnesses"); *Holland v. Bank of New York Mellon Corp.*, No. 08-civ-6060(RMB)(RLE), 2009 WL 1834489, at *1 (S.D.N.Y. June 22, 2009) (finding no substantial need where "Plaintiffs have had a fair opportunity to conduct their own investigation"); *Adams v. City of Montgomery*, 282 F.R.D. 627, 634 (M.D. Ala. 2012) (plaintiff failed to demonstrate substantial need for the defendant's investigation file because the plaintiff was "free to ask the other witnesses at trial about their internal affairs interview" and otherwise depose witnesses).

"Discovery was hardly intended to enable a learned profession to perform its function either without wits or on wits borrowed from the adversary."  *Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385 (1947) (Jackson, J., concurring).  In tacit acknowledgement of this principle, the Defendants have already set forth in their opposition to Drummond's motion to compel why they are not entitled to Drummond's work product:

> [A]s to any fact work product, Drummond already is in possession of an
> enormous trove of documents that are relevant to the claims and defenses in this
> case. Moreover, Defendants have been litigating the various Colombian

allegations for a number of years. Drummond has conducted numerous investigations and been present when individuals have provided testimony in support of the letters that are the subject of the lawsuit. Third, Drummond has not demonstrated that it cannot obtain the information from depositions or its own investigations.

(Doc. 46 at 26).  Like Drummond, the Defendants have had ample opportunity to obtain the substantial equivalent of the information in Drummond's factual work product in the eleven years of underlying litigation.  By their own reasoning, therefore, they should have "an enormous trove of documents" showing the "truth" of their defamatory letters.  (*Id.*)  Thus, unlike the Defendants' work product, which reveals Mr. Collingsworth's *subjective* state of mind and is not available elsewhere, Drummond's work product is not a unique source of information that the Defendants must have to prove the "truth" of their defamatory letters.  Accordingly, Defendants cannot demonstrate that they are unable to obtain the substantial equivalent of the information in Drummond's factual work product without undue hardship, and they are not entitled to discovery of this material.

## Conclusion

For the above stated reasons, Drummond respectfully requests that its Motion to Compel (Doc. 43) be granted in full.

Respectfully submitted,

/s/ H. Thomas Wells, III
William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

/s/ Sara E. Kropf
Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G St. NW, Suite 800
Washington, DC 20001
(202) 627-6900

*Attorneys for Drummond Company, Inc.*

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on **December 6, 2013**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John W. Clark, Jr., Esq.
Bradley J. Smith, Esq.
Eric D. Bonner, Esq.
Clark, Hair & Smith, P.C.
1000 Urban Center Drive
Suite 125
Birmingham, Alabama 35242

/s/ H. Thomas Wells, III
H. Thomas Wells, III (ASB-4318-H62W)
