FILED
2013 Dec-19 AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC. | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:11-CV-3695-RDP |
| TERRENCE P. COLLINGSWORTH, individually and as an agent of Conrad & Scherer, LLP; and CONRAD & SCHERER, LLP, | ) |
| Defendants. | ) |

**DEFENDANTS, BAEZA ACOSTA, AND TORO LOPEZ'S REPLY IN SUPPORT OF MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**

I.     **Introduction**

On September 16, 2013, Drummond Company, Inc. ("Drummond") served a Rule 45 subpoena to nonparty Microsoft Corporation ("Microsoft") seeking identity information and over ten years of detailed computer "IP log-in" data associated with five email addresses. Three email addresses belong to the family members of witnesses who testified against Drummond in the underlying human rights suit, *Balcero, et al. v. Drummond Co., Inc.*, No. 2:09-cv-1041-RDP (N.D. Ala. filed May 27, 2009) ("*Balcero*"), and who have been forced to move to undisclosed locations after receiving death threats. The other two belong to Movants Yineth Baeza, a member of Defendants' legal team and Carlos Toro, a human rights lawyer; both of whom live and work in Colombia. Toro and Baeza filed a timely motion to quash the subpoena on November 25, 2013, joined by Defendants (collectively referred to as "Movants"). Because Drummond's subpoena is overbroad, duplicative and seeks irrelevant, protected information this subpoena is no more than a witch-hunt intended to harass Defendants. Even more concerning, Drummond has extended their harassment with this subpoena to the very individuals who have faced threats and attempts on their lives that they attribute to their family members having testified to Drummond's human rights violations in Colombia. These subpoenas are due to be quashed in their entirety.

II.    **Subpoenas are Timely**

In their Opposition to Movants' Motion to Quash, Drummond misleadingly refers to all Movants collectively as "Defendants" despite the fact that Movants Baeza and Toro are not Defendants in the underlying libel suit. By lumping Toro and Baeza in with Defendants, Drummond ignores the undeniable fact that neither Toro nor Baeza received notice of this subpoena until November 11, 2013, at which time both were informed by Microsoft that "[i]f

notice of a legal challenge is not received by Microsoft by November 25, 2013, it will be required to respond to the Subpoena." Doc. 75-3, Notice of Subpoena; 74-2, Declaration of Carlos Toro, ¶ 4; 74-3, Declaration of Yineth Baeza ¶ 3. Email account holders Baeza and Toro, subsequently filed their timely motion to quash on November 25, 2013. Doc. 74.

While "Federal Rule of Civil Procedure 45(c)(3)[] does not set a minimum amount of time required to be considered a 'reasonable time to comply' with a subpoena, [] 'generally, courts make the determination of reasonableness on a case-by-case basis, considering the factors at work in the given case.'" *Stern v. Shelley*, 3:09-CV-00082-JTC, 2009 WL 9156145, *11 (N.D. Ga. Aug. 31, 2009), citing *Parrot, Inc. v. Nicestuff Distributing Int'l, Inc.,* No. 06–61231, 2009 WL 197979, *4 (S.D.Fla. Jan.26, 2009). Movants' motion to quash filed on November 25, 2013, is timely given that it is only two weeks after they were first notified of the subpoena, and is the date they were informed by Microsoft as the date by which they needed to file a legal objection. Fed. R. Civ. P. 45(d)(3)(A).  Drummond´s expectation that the email account holders file their objection by October 16, 2013, a month before they even received notice that their information was being sought is illogical.

Defendants' motion is likewise timely given the facts of this case. Defendants were not required to file objections, as Drummond suggests, since a party's remedy with respect to a Rule 45 subpoena is not to serve objections, but to file a Rule 26 motion for a protective order or motion to quash.  *Rivertree Landing, LLC v. Murphy,* No. 6:07-mc-104-GAP-DAB, 2007 WL 3333357, *1 (M.D. Fla. Nov 09, 2007).  Because Movants Toro and Baeza have timely filed their Motion, Drummond is not prejudiced by Defendants' joining that timely motion.

### III.     Movants have Standing to Quash Subpoena in its Entirety.

As an initial matter, Defendants have standing to quash the subpoena because "permitting the production of the documents from third-parties without allowing Defendants the opportunity to bring a motion to quash would effectively moot the discovery dispute" in the libel suit regarding production of the duplicative documents sought here. *Melder v. State Farm Mut. Auto. Ins. Co.*, No. 1:08-CV-1274-RWS-JFK, 2008 WL 1899569, *2 (N.D. Ga. Apr. 25, 2008). Movants also have independent standing grounds to quash the Microsoft subpoena because (1) it seeks Movants Baeza and Toro's personal information and (2) they have third party standing to quash the portion of the Microsoft subpoena seeking data from non-movants' email accounts.

#### A.     Movants Have a Personal Interest in Subpoena Seeking Data from Movants Toro and Baeza's Email Accounts.

Because Movants Toro and Baeza have a "privacy interest in maintaining the confidentiality of [their] identity and whereabouts as a customer of [Microsoft]" they have standing to bring this Motion to Quash. *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address*, No. MISC 08–347(ARR)(MDG), 2010 WL 2219343, *5 (E.D.N.Y. Aug. 14, 2012); s*ee also* Mot. at 11-12; *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, *5 (N.D. Cal. Aug. 22, 2013) ("Ownership of the email addresses gives the [] movants a personal stake in the outcome of this dispute, and therefore standing to quash the subpoenas").[1] Microsoft itself recognizes that email account owners have a personal interest in the data sought as they state that "Microsoft is giving you notice of this request and an opportunity to seek a protective order from the court blocking or restricting disclosure of the

---

[1] In the only case Drummond cites to support their argument that Movants have no standing to protect their personal information, *Rehberg v. Paulk*, the court was analyzing whether there had been a Fourth Amendment violation regarding disclosed phone and fax information. 611 F.3d 828, 843 (11th Cir. 2010).  There was no question that Plaintiff had standing to bring a challenge to the information's disclosure. *Id.*

4

records/data." Doc. 75-3.  As Baeza's employer, Defendants also have standing to quash the subpoena seeking information about Baeza's account in order to protect private information that will be disclosed if the information sought is revealed. *In re Grand Jury*, 619 F.2d 1022, 1027 (3d Cir. 1980) (employer had standing to move to quash subpoenas issued to employees); *Burch v. P.J. Cheese, Inc.*, 2:09-CV-1640-SLB, 2010 WL 9081738, *3 (N.D. Ala. 2010)(Movant had standing to quash subpoena to employer, seeking his employment records).

### B. Movants have Standing to Quash Subpoena Seeking Information Regarding Non-movant Email Accounts.

Drummond does not challenge Movants' showing that they have third party standing to quash the subpoena targeting the three non-movant email accounts.  *See* Doc. 82, at 5-6. Because Movants have "a 'close' relationship with the [non-movant email account owners]" and because "there is a 'hindrance' to the [email account owners'] ability to protect his own interests," Movants have third party standing. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *see also Disc. Video Ctr., Inc. v. Does 1-29*, 285 F.R.D. 161, 166 (D. Mass. 2012) (recognizing standing of Defendants and quashing subpoena to internet service provider in order to protect non-movant subscribers' privacy interests). The relationship between Movants, who are human rights lawyers and a legal assistant working for Defendants, and the email holders, who are related to witnesses of the human rights abuses litigated by Movants, is sufficiently close to grant standing. Doc. 74, 13-15. The email account holders are being targeted here precisely because of their relationship with Movants in the *Balcero* case, and close relationships have been found in analogous situations. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 118 (1976) (third party standing of physicians over interests of their patients); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208 (6th Cir. 2011) (close relationship found between teachers and their students). Additionally, the three non-movant email holders are the family members of Colombian

5

witnesses in *Balcero,* and presumably speak no English, so the "'hindrance' to the possessor's ability to protect his own interests" is self-evident. *Kowalski,* 543 U.S. at 130.

Moreover, prudential standing requirements are relaxed when First Amendment rights are impacted, as they are here. *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984))*; see* Section IV, *infra;* Doc. 74 at 16-20.

## IV. Disclosure of Sought Information would be in Violation of First Amendment Rights of Movants Toro and Baeza, and of all Email Account Owners

### A. The First Amendment Protects Email Account Owners

Despite Drummond's claims to the contrary, the email account owners have First Amendment Rights with regard to their subscription to and usage of Microsoft's email service. Even as to noncitizens, "[t]he Supreme Court has held in a series of cases that the border of the United States is not a clear line that separates aliens who may bring constitutional challenges from those who may not." *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 995 (9th Cir. 2012). In *Boumediene v. Bush*, for example, the Court held that non-citizens held as enemy combatants outside the United States had constitutional rights.  553 U.S. 723, 732 (2008). The Court found that in determining the constitutional rights of aliens outside the United States, courts apply a "functional approach" rather than a bright-line rule. *Id*. at 764.  *United States v. Verdugo-Urquidez*, suggests that if the place to be searched is in the United States, the affected party is entitled to constitutional protections. 494 U.S. 259, 266, 273-74 (1990).  Here, the information is being sought from Microsoft, a U.S. corporation, in the United States; therefore disclosure is subject to constitutional limitations. *Id.*

Furthermore, the email account owners are being targeted precisely because of their connection to the United States through their participation in the *Balcero* case.  Doc. 74 at 6-10. The chilling effect of this strategy is clear and as with other First Amendment cases, these

unconstitutional subpoenas should not be enforced by this Court. The International Convention on Civil and Political Rights may be unenforceable in U.S. Courts, however, the fact that it recognizes essentially identical privacy and speech rights as the First Amendment further shows that email holders have an expectation of privacy and speech rights, that this court must enforce under the First Amendment. *Id.* at 16, 19.

### B. The Information Sought is Protected Under the First Amendment.

The information sought from Microsoft will track the email account owners' geographic location and movements every time they have logged into their Microsoft account since 2003, including which offices they have worked out of and who they have met with at what time. *Id.* at 4-5. The email account owners here have a "right to associate with other individuals so they may collectively further their common goal of promoting human rights in Colombia by holding human rights abusers accountable," which will be hindered if the information sought is disclosed. Doc. 75-1 at 21; *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)(The focus of the expressive association inquiry is whether individuals associate to engage "in some form of expression, whether it be public or private."). Given the context of Colombia and the risks faced by human rights defenders and witnesses, it is particularly troubling that Drummond is now seeking to track the movements of witnesses' families and human rights defenders in Colombia. *See* Section VI, *infra*; Doc. 68, Response to Supplemental Brief, at 4-11.

The identifying information sought from Microsoft also impermissibly infringes on the account owners' right to anonymous speech, and should likewise be quashed. *See* Doc. 74 at 18-19. Before identifying information is revealed, the court must determine "whether plaintiff has set forth a prima facie cause of action against the [anonymous]," which Drummond has not done here. *Dendrite Int'l, Inc. v. Doe No. 3,* 775 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001). In

7

*Dendrite,* a defamation suit brought against anonymous Internet users, the court found that the Doe defendants' identities need not be disclosed, because all elements of the defamation suit had not been shown.  *Id.* Here, Drummond seeks the identity information of five individuals who are not defendants in the libel suit, and who Drummond has merely accused of improper conduct in their briefing.  Movants Toro and Baeza, whose identity is known, also have unique privacy interests in preventing the disclosure of their mailing addresses, billing information and phone numbers given the risks they face in Colombia if this information is revealed.[2]  *McIntyre v. Ohio Elections Comm'n***,** 514 U.S. 334, 341 (1995) ("The decision in favor of anonymity may be motivated by fear of economic or official retaliation.").

### V. Court Has Discretion to Quash Subpoena Because it Seeks Irrelevant, Duplicative Information, Available From More Direct Sources.

Courts *must* limit a subpoena if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)).  Additionally, the information sought must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  In objecting to Movants' argument that the Court should exercise its discretion and quash the subpoena in its entirety under Rule 26(b), Drummond only addresses the 'burden' on Microsoft (Doc. 82 at 12-13), ignoring the fact that the information sought is irrelevant, duplicative and overbroad. Doc. 74 at 20-23.

The subpoena seeks "names, mailing addresses, phone numbers, billing information," of each account owner, in addition to over ten years of IP-log in data.  Doc. 75-2, Notice of Intent to Serve Subpoena. Drummond argues that the email identity information sought is relevant because account holders communicated via email regarding security payments made to the

---

[2] Toro is a human rights lawyer who has faced threats and who has had to periodically change his location due to security concerns.  Doc. 74 at 7.  Likewise, Baeza works for Defendants on human rights litigation, and is based in Colombia where human rights defenders continue to be at risk and the subject of assassination. *See* Section VI., *infra*; Doc. 68, at 4-11.

witnesses' family member account owners, and because "the fact of payments to witnesses in Colombia who have testified against Drummond is clearly discoverable." Doc. 82 at 2. However, the subpoena does not actually seek information about witness payments. While Drummond argues that identifying information such as mailing addresses and phone number will assist Drummond in locating potential witnesses (Doc. 82 at 12), Drummond makes no argument as to why billing information or the IP-log in data is relevant to any of their claims or defenses. Furthermore, Movant Toro has not received any compensation or payment from Defendants, nor was he aware of any security payments or payments of any kind to any Drummond witnesses. Doc. 74 at 7-8. This subpoena clearly "'imposes on [Toro's] privacy rights and seek[s] to harass and oppress,' rather than obtain relevant information." *Burch*, 2010 WL 9081738, at \*3. Additionally, Defendants first had contact with one email account owner, milenalombardy@hotmail.com in November 2011, two months after the last allegedly defamatory letter was sent. Doc. 44, Ex. EE. The documents sought from this account clearly "'have nothing to do with the averred [defamatory] acts by defendant," and must be quashed. *Burch*, 2010 WL 9081738, \*3. Drummond's subpoena to Microsoft "seeks wholly irrelevant information" and "appears to be more of a 'fishing expedition' or 'tool for harassment,' than a reasonably calculated discovery request." *Id*., citing *Porter v. Ray,* 461 F.3d 1315, 1324 (11th Cir.2006).

     Drummond does not dispute that the requests are duplicative or that Defendants have satisfied their discovery obligations in *Balcero* and the libel case with respect to these duplicative requests. Doc 82-1, Declaration of Presley ¶ 7 (listing emails with the five email account owners targeted here, produced by Plaintiffs in the *Balcero* case); Doc. 75-4,5,9 (Attaching the same emails as Exhibits). Additionally, Movant Baeza's email accounts were already searched in

order to respond to discovery requests in *Balcero* and the libel suit. Doc. 75, ¶ 6. The subpoena to Microsoft is due to be quashed in its entirety since any potentially relevant information – communications with the email account holders - has already been sought from a more direct source; Defendants.

Finally, the scope of the subpoena is overbroad. Drummond does make any argument as to the potential relevance of data from as early as 2003, or after September 19, 2011, when the last allegedly defamatory letter was sent. Drummond's identical subpoenas to Google and Yahoo! were significantly modified because the court found that "the subpoenas are overbroad as to time." Doc. 75-1, at 28.[3] The Court should likewise limit disclosure here if it does not quash the subpoena in its entirety.

## VI. Subpoenas Seek Information That Will Put Email Account Owners at Risk if Revealed.

As Defendants have extensively briefed, human rights defenders, witnesses and their family members - particularly those who have denounced Drummond - face serious safety risks in Colombia, including assassination. Doc. 68, at 4-11. Disclosing the ISP log-in data and identity information of those whose emails are targeted here will reveal their physical location and movements over a ten year period, making them susceptible to retaliation. These subpoenas are due to be quashed, or at the very least a protective order should be granted to protect the sensitive and invasive information sought here.

## VII. CONCLUSION

For the foregoing reasons, this Court should quash the subpoena directed at Microsoft in its entirety.

---

[3] The N.D. court limited disclosure of IP log-in data to between the date the email account owner had first received a security payment from Defendants until September 19, 2011, the date of the last allegedly defamatory letter. Doc. 75-1 at 29.

Dated: December 19, 2013          Respectfully submitted,

                                      /s/*Brad Smith*
                                      Bradley J. Smith (State Bar ASB-6847-B52S)
                                      Clark, Hair & Smith, P.C.
                                      1000 Urban Center Drive
                                      Suite 125
                                      Birmingham, Alabama 35242
                                      205-397-2900
                                      205-397-2901 – Fax
                                      Email: bsmith@chslaw.com

                                      *Attorney for Movants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December, 2013, a copy of the foregoing has been served on the following counsel via electronic mail and/or the CM/ECF system:

William Anthony Davis, III, Esq.
H. Thomas Wells, III, Esq.
Benjamin T. Presley
STARNES DAVIS FLORIE, LLP
P.O. Box 59812
Birmingham, Alabama 35259
TDavis@starneslaw.com
htw@starneslaw.com
btp@starneslaw.com

Sara E Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G Street NW, Suite 800
Washington, D.C. 20001
sara@kropf-law.com

I further certify that non-party Microsoft, Inc. has been served electronically and via U.S. First Class Mail as follows:

Microsoft Litigation Policy Enforecemnt
litenfo@microsoft.com
3535 Grandview Parkway
Suite 335
Birmingham, AL 35243

/s/ Bradley J. Smith
Bradley J. Smith