FILED

2013 Dec-20  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-CV-3695-RDP |
| | ) |
| TERRENCE P. COLLINGSWORTH, individually and as an agent of Conrad & Scherer, LLP; and CONRAD & SCHERER, LLP, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MEMORANDUM OF LAW ON WORK PRODUCT PRIVILEGE AND RENEWING MOTION TO COMPEL AGAINST DRUMMOND

Bradley J. Smith
STATE BAR ID: ASB-6847-B52S
CLARK, HAIR & SMITH, P.C.
1000 Urban Center Drive, Suite 125
Birmingham, AL 35242
Tel.: (205) 397-2900
Fax: (205) 397-2901
bsmith@chslaw.com

*Attorney for Defendants Terrence P. Collingsworth and Conrad & Scherer, LLP*

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT…………………………………………...1

STATUS OF ONGOING DISCOVERY……………………………………………………………3

ARGUMENT…………………………………………………………………………………...4

I.     Defendants' Internal Communications Relating to Fact Gathering and Witness Credibility Constitute Opinion Work Product and are not Discoverable ………………………………………………………………... 4

     A.     Defendants have not waived any protection of their opinion work product……………………………………………………… 5

          1.     Opinion work product is not subject to implied waiver…………...6

          2.     Defendants have not waived protection by making testimonial use of work-product materials………………………10

     B.     Drummond does not overcome the near absolute protection Defendants' opinion work enjoys with substantial and compelling need ……………………………………………………… 12

II.     Defendants have not Waived Work Product Protection over Documents Related to Legal Analysis of Witness Payments…..…………………………… 14

     A.     Defendants' provision of security assistance to witnesses was *not* payment for testimony, and it is entirely permissible and proper under the ethical rules…………………………………………15

     B.     This Court previously rejected Drummond's argument "payments to witnesses" vitiates valid claims of work product…………………….. 17

III.     This Court Should Compel Disclosure of Drummond's Work Product Demonstrating the Truth or Falsity of the Allegedly Defamatory Statements……………………………………………………..19

CONCLUSION…………………………………………………………………...21

# TABLE OF AUTHORITIES

## CASES

*Am. Dental Ass'n v. Khorrami*,
    2003 WL 24141019 (C.D. Cal. July 14, 2003)……………………………………..13

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
    276 F. Supp. 2d 1084 (D. Nev. 2003)……………………………………………… 11

*Chao v. Tyson Foods, Inc.*,
    568 F. Supp. 2d 1300 (N.D. Ala. 2008)…………………………………………...8, 9

*Cox v. Adm'r U.S. Steel & Carnegie*,
    17 F.3d 1386 (11th Cir. 1994)……………………..………………………………. *in passim*

*Duplan Corp. v. Moulinage et Retorderie de Chavanoz*,
    540 F.2d 1215 (4th Cir. 1976)……………………………………………… 11, 12

*Ex parte State Farm Fire & Cas. Co.*,
    794 So. 2d 368 (Ala. 2001)………………………………………………………..8

*Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*,
    136 F.3d 695 (10th Cir. 1998)…………………………………………………… 8

*Handgards, Inc. v. Johnson & Johnson*,
    413 F. Supp. 926 (N.D. Cal. 1976)……………………………………………… 11

*Hearn v. Rhay*,
    68 F.R.D. 574 (E.D. Wash. 1975)………………………………………………7

*Hickman v. Taylor*,
    329 U.S. 495 (1947)………………………………………………………………4

*In re Cnty. of Erie*,
    546 F.3d 222 (2d Cir. 2008)……………………………………………………..8

*In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*,
    348 F.3d 16 (1st Cir. 2003)……………………………………………………..8

*In re Martin Marietta Corp.*,
    856 F.2d 619 (4th Cir.1988)……………………………………………… 7, 11, 12

*In re Murphy*,
    560 F.2d 326 (8th Cir.1977)..................................................................................1, 5

*Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach*,
    92 C 7768, 1993 WL 179789 (N.D. Ill. May 24, 1993)…………………………………… 13

*Nutramax Laboratories, Inc. v. Twin Laboratories Inc.*,
    183 F.R.D. 458 (D. Md. 1998)..................................................................................11, 12

*Pereira v. United Jersey Bank,*
    94 CIV. 1565 (LAP), 1997 WL 773716 (S.D.N.Y. Dec. 11, 1997)……………………… 8

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.,*
    32 F.3d 851 (3d Cir. 1994)…………………………………………………………………...8

*Stern v. O'Quinn*,
    253 F.R.D. 663 (S.D. Fla. 2008).............................................................................6, 7, 9

*United Kingdom v. United States,*
    238 F.3d 1312 (11th Cir. 2001)……………………………………………………………1

*United States v. Nobles*,
    422 U.S. 225 (1975)...............................................................................................5, 11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)……………………………………………………………...4, 13

*Volpe v. US Airways, Inc.*,
    184 F.R.D. 672 (M.D. Fla. 1998)…………………………………………………… 8

## RULES

Fed. R. Civ. P. 26(b)(3)……………………………………………………………………4

## INTRODUCTION AND SUMMARY OF ARGUMENT

On December 6, 2013, the parties filed simultaneous briefs on the scope of the work product privilege as it relates to the facts of this case.  Drummond's work product brief ("DR. Br."), ECF No. 78, evidenced a fundamental misunderstanding of the work-product doctrine, and the higher protection afforded attorney opinion work product.  Drummond failed to recognize the near absolute immunity opinion work product enjoys in this Circuit.  *See, e.g., United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir. 2001) ("'opinion' work product, such as internal memoranda, that reflects an attorney's mental impressions; these materials are almost always protected from disclosure."); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 *op. modified on reh'g,* 30 F.3d 1347 (11th Cir. 1994)  ("'opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'") (quoting *In re Murphy,* 560 F.2d 326, 336 (8th Cir. 1977)).  Indeed, Drummond did not even attempt to satisfy the "crime-fraud exception," which presents the only "one of the rare and extraordinary circumstances in which opinion work product is discoverable," heretofore recognized by the Eleventh Circuit.  *Cox,* 17 F.3d at 1422.  Instead, Drummond argued Defendants impliedly waived their opinion work product, and even if not, Drummond has a substantial and compelling need for it, sufficient to overcome the protection and permit disclosure.  To borrow Drummond's own words, its position is "legally untenable."  DR. Br. at 1.

Drummond also argues documents related to legal analysis of witness payments are discoverable, despite clearly constituting work product.  In doing so, Drummond continues to falsely accuse Defendants of improperly paying witnesses for their testimony, when the facts are clear Defendants properly provided security assistance to three witnesses whose family members were threatened by Drummond's operatives in Colombia.  Drummond's classic tactic of

attacking Mr. Collingsworth now includes ignoring undisputed facts in the record, including extensive documentation that for years witnesses against Drummond, as well as Colombian lawyers working on the Drummond human rights cases, have had family members killed, been targets of assassination attempts, and received numerous, repeated, credible death threats. *See* Def. Supp. Br. ("Supp. Br."), ECF No. 68, at 6-11; Decl. of Terrence P. Collingsworth ("TPC Decl."), ECF No. 69,  ¶¶ 13-14, 21, 23, 27-32, 37-53.  Drummond also ignores the three legal expert opinions Defendants submitted finding that providing security assistance to endangered witnesses is entirely permissible under the ethical rules, as well as the sole decision by any court directly on point, which characterized the attempt to bar the testimony of a witness who received security assistance as "frivolous."  Expert Declaration of Professor Steven H. Hobbs ("Hobbs Decl."), ECF No. 70, Exs.A-C.[1]  Regardless, this Court already held a valid work product claim, such as for legal research and analysis, is not vitiated because it references payments to witnesses.  *See* Oct. 10, 2013 Disc. Hr'g Tr., ("Hr'g Tr."), at 60:19-62:19.

Finally, Drummond argues while it is entitled to complete discovery of Defendants' *opinion* work product because it is required to prove actual malice, Defendants may not discover Drummond's *fact* work product bearing on their affirmative defense the statements at issue were true.  Drummond already presented this argument, and it was shot down by the Court in the October 10, 2013 discovery hearing.  Specifically, the Court found "[w]hat's good for the goose is good for the gander," and Drummond was attempting to use the work-product doctrine as both "a sword and a shield  . . . exposing [it]self to some discovery on similar documents, i.e., those

---

[1] Defendants' prior Supplemental Brief, ECF No. 68, was supported by a declaration from Mr. Collingsworth, ECF No. 69, with 52 *numerically* designated Exhibits attached, as well as the Expert Declaration of Professor Steven H. Hobbs, ECF No. 70, with three *alphabetically* designated Exhibits attached.  Unless otherwise noted, any reference to exhibits will be to these previously filed exhibits.

documents that contain facts that would go to the truth but don't contain mental impressions of any particular lawyer representing Drummond."). *Id.* at 65:4, 68:1-6. Drummond has not provided this Court with any reason to reconsider this prior holding, citing only inapplicable case law outside of the defamation context. Moreover, in addition to Defendants' substantial and compelling need to obtain fact work product in order to prove its affirmative defense of the truth, Defendants also have made out a *prima facie* case of criminal conduct, sufficient for the crime-fraud exception to apply and Drummond's opinion work product to become discoverable.

**STATUS OF ONGOING DISCOVERY**

Drummond's assertion Defendants have failed to produce any new documents after this Court's October 10, 2013 hearing is not accurate. DR. Br. at 1. First, it bears noting on October 8, 2013, two days before the hearing, Defendants produced a major group of 1,608 documents, Bates Nos. CS002495-4103, which were responsive to Drummond's 2nd RFPs No. 8, Communications with Ivan Otero, Defendants' local counsel. Further, the day after the hearing, on November 11, Defendants produced another 3,417 documents, Bates Nos. CS004104-7521, which were responsive to Drummond's 1st RFPs Nos. 46 & 71, Communications with Third Parties re.Drummond litigation and human rights violations.

Defendants have informed Drummond they are continuing to produce documents on a rolling basis. Defendants have continued to work on the privilege log and were seeking to complete it before submitting to Drummond and the Court. There has been a great delay in getting the cost and financing documents, however, because many of them were in warehouse storage and are not arranged by case. Rather than continue to wait for this part of the production, Defendants produced to Drummond today an updated log. The privilege log produced on October 2, 2013 and this supplemental log list privileged documents, if any, responsive to

Plaintiffs' first request for production nos. 1-63, 69, 70-72, 74, 75, 78-80, 82-89 and Plaintiffs'
second request for production of documents nos. 1-13.  Defendants will continue to produce
documents responsive to cost and finance requests on a rolling basis.

In the meantime, as noted in Defendants' work product brief (Def. Br.), ECF No. 80,
Drummond has continued to stonewall discovery.  *Id*. at 15-18. Drummond has produced no
documents since the hearing, and has again refused to provide a privilege log, while
acknowledging it is withholding documents based on privilege. Defendants again respectfully
request a hearing so their motion to compel may be addressed.

## ARGUMENT

**I.**    **Defendants' Internal Communications Relating to Fact Gathering and Witness
Credibility Constitute Opinion Work Product and are not Discoverable.**

Drummond's work product brief evidenced a fundamental misunderstanding of the work-
product doctrine and the dichotomy created by Federal Rule of Civil Procedure 26 between fact
work product and opinion work product.  *See* Fed. R. Civ. P. 26(b)(3)(B) ("*Protection Against
Disclosure*.  If the court orders discovery of [fact work product], it must protect against
disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney
or other representative concerning the litigation.").  Despite admitting it seeks Defendants'
"mental impressions and internal communications pertaining to witness credibility," DR. Br. at
2, Drummond ***never*** addresses the higher protection afforded such opinion work product.  *See,
e.g., Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) ("Rule 26 accords special protection
to work product revealing the attorney's mental processes."); *Hickman v. Taylor,* 329 U.S. 495,
510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries
into the files and the mental impressions of an attorney."); *id.* at 511 (characterizing "[a]n
attorney's thoughts [as] heretofore inviolate"); *Cox v*, 17 F.3d at 1422 (holding "'opinion work

4

product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."') (quoting *Murphy,* 560 F.2d at 336).

Indeed, not only does Drummond not attempt to satisfy the only "one of the rare and extraordinary circumstances in which opinion work product is discoverable," recognized in this Circuit, the crime-fraud exception, Drummond does not even ***mention*** or discuss *Cox*, the leading Eleventh Circuit case on the discoverability of opinion work product.  Instead, without referencing "opinion work product," Drummond offers two arguments for why Defendants' internal communications relating to fact gathering and witness credibility are discoverable.  First, Drummond argues Defendants waived work-product protection through the theory of implied waiver and Mr. Collingsworth's status as a witness in this litigation.  DR. Br. at 2-7.  Second, Drummond argues, "[e]ven without waiver, Drummond is entitled to this discovery because it has a substantial and compelling need for this information."  *Id.* at 8.  Both arguments fail.

### A.      Defendants have not waived any protection of their opinion work product.

Neither the theory of implied waiver nor Mr. Collingsworth's status as a defendant and potential witness in this litigation support finding waiver of Defendants' opinion work product. As an initial matter, the Eleventh Circuit does not recognize implied waiver of opinion work product, nor is the doctrine otherwise applicable where Defendants have taken no affirmative action to inject their protected work product into this case and, instead, rely on evidence in the *public* record to support the truth of the allegedly libelous statements at issue.  In addition, while waiver of fact work product may result where a client calls his attorney as a witness, this has not occurred here, and Mr. Collingsworth has not made "unilateral testimonial use of work-product materials," a prerequisite to waiver.  *Unites States v. Nobles*, 422 U.S. 225, 239 (1975).

### 1.      Opinion work product is not subject to implied waiver.

Drummond relies on *Stern v. O'Quinn*, 253 F.R.D. 663 (S.D. Fla. 2008), another case involving an attorney sued by his opposing counsel for defamation, to argue Defendants have impliedly waived protection of their opinion work product.  *See* DR. Br. at 3-6.  Both parties have briefed this case *ad nauseam*, with Defendants thoroughly discrediting its application to this case in their opposition to Drummond's motion to compel.  ECF No. 46, at 14-18.  Nonetheless, because Drummond apparently hopes repeating a failed argument will strengthen it, Defendants will briefly respond.  The *Stern* court found under the theory of implied waiver:

> a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense.

253 F.R.D. at 676.  In *Stern*, the court found the defendant attorney and his law firm had impliedly waived work product protection by affirmatively relying on a private investigation in defending the allegedly defamatory statements, and held the plaintiff "must be permitted access to all investigation materials for the purpose of testing the genuineness of [the] investigation." *Id.* at 677.

There are many reasons *Stern*, despite involving factually similar circumstances, provides no support for Drummond's argument it is entitled to discover Defendants' opinion work product.  First and foremost, in finding waiver and ordering production of defendants' work-product, the *Stern* court failed to address the distinction between fact work product and opinion work product.  It is unclear whether the investigation file detailing the defendants' fact gathering contained any mental impressions or other opinion work product.  But considering the near absolute immunity opinion work product enjoys in this Circuit, *see, e.g., Cox*, 17 F.3d at 1422, to

the extent the *Stern* court might have ordered discovery of opinion work-product without explicit analysis of such, its holding is suspect. This is especially so because the Eleventh Circuit has ***expressly*** rejected implied or subject-matter waiver for opinion work product. *Id.* at 1422-23.

In *Cox*, the plaintiff argued defendant waived protection of its opinion work product by injecting it into the case, but the Court of Appeals found such implied or subject-matter waiver is "not among the very rare and extraordinary circumstances in which opinion work product is discoverable." *Id.* at 1422. The Court joined the Fourth Circuit in holding "the subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege." *See id.* (citing *In re Martin Marietta Corp.,* 856 F.2d 619, 626 (4th Cir.1988), *cert. denied,* 490 U.S. 1011 (1989)). In *Martin Marietta*, the Fourth Circuit found "a distinction can be made between non-opinion work product, which may nevertheless be ordered produced if counsel has waived work product protection, and pure mental impressions severable from the underlying data and arguably not subject to subject matter waiver." 856 F.2d at 625. The Eleventh Circuit found persuasive "[t]he *Martin Marietta* court's reasoning . . . that the plain language of Fed. R. Civ. P. 26(b)(3) suggests that ***opinion work product should not be subject to such an implied waiver***, and that the rationale behind the doctrine . . . does not apply to mental impressions and legal theories." *Cox,* 17 F.3d at 1422 (emphasis added). Because the Eleventh Circuit does not recognize implied waiver of the opinion work product Drummond seeks, any analysis into waiver should end here.[2]

_____

[2]Because Drummond repeatedly fails to distinguish between opinion work product and fact work product, to the extent this Court reads Drummond's argument as also including waiver of the latter, there are other reasons still for rejecting the *Stern* court's analysis. The implied waiver test adopted by the Southern District of Florida in *Stern* was directly derived from *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). *See Stern*, 253 F.R.D. at 676 (citing *Hearn*). This test has not been considered by the Eleventh Circuit, but it has been widely criticized and overwhelmingly rejected by other courts, including by the Second and Third Circuits and the

Even if implied waiver of opinion work product were acceptable, however, *Stern* and all of the other implied waiver cases Drummond cites are factually distinguishable. Here, Defendants have not directly "place[d] the substance of the documents for which the protection is claimed at issue." *See* DR. Br. at 3 (quoting *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1328 (N.D. Ala. 2008)). Nor have Defendants used "'privileged documents to prove a point but then invok[ed] the privilege to prevent an opponent from challenging the assertion.'" *Chao*, 568 F. Supp. 2d at 1327 (quoting *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 704 (10th Cir. 1998)). Unlike in *Stern* and *Volpe v. US Airways, Inc.*, 184 F.R.D. 672, 673 (M.D. Fla. 1998), which Drummond also cites, (Dr. Br. at 6), Defendants have not relied on ***any*** work product resulting from an internal investigation as an affirmative defense to liability. Rather, Defendants consistently have maintained Mr. Collingsworth's statements were based on all of the evidence in the ***record*** in *Balcero v. Drummond Co., Inc.*, No. 2:09-cv-1041-RDP (N.D. Ala.) and statements taken from other witnesses to Drummond's collaboration with the AUC. And Defendants previously produced in *Balcero*, or identified in this litigation, an abundance of documents supporting the truth of Mr. Collingsworth's statements, including the sworn statements of no less than 11 witnesses affiliated with the AUC, all of whom testified or

_____

Supreme Court of Alabama. *See, e.g.*, *In re Cnty. of Erie*, 546 F.3d 222, 227-29 (2d Cir. 2008); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 864 (3d Cir. 1994); *Ex parte State Farm Fire & Cas. Co.*, 794 So. 2d 368, 374 (Ala. 2001). Specifically, while courts applying this implied waiver test "dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed." *Rhone-Poulenc Rorer*, 32 F.3d at 864. "Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Id. See also Pereira v. United Jersey Bank,* 94 CIV. 1565 (LAP), 1997 WL 773716, at *3 (S.D.N.Y. Dec. 11, 1997) ("*Hearn* is problematic insofar as there are very few instances in which the *Hearn* factors, taken at face value, do not apply and, therefore, a large majority of claims of privilege would be subject to waiver."); *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003) ("the case law reveals few genuine instances of implied waiver.").

provided a declaration regarding their knowledge of Drummond's role in committing war crimes and extrajudicial killings.

Indeed, Drummond does not even attempt to identify any specific investigative materials, documents, or testimony, which Defendants have stated they rely on to support their defense, but which Defendants have refused to produce as privileged. *Cf. Chao,* 568 F. Supp. 2d at 1326 (excluding declaration plaintiff submitted based on "information which Plaintiff refused to supply during discovery as protected" work product). Instead, Drummond asserts Defendants have inserted into the case ***all*** work product originating prior to the date of Mr. Collingsworth's statements, simply by making the allegedly libelous statements. *See* DR. Br. at 4 ("Defendants placed their state of mind directly at issue by writing and distributing the defamatory letters"). Not a single case Drummond cites found implied waiver solely by virtue of the underlying action at the heart of the litigation, without some additional affirmative act. *Cf. Stern,* 253 F.R.D. at 676 (defendant indicated he was in possession of "specific facts that inform his belief" of the truth of the statements but could not publicly reveal them because to do so would "reveal work-product-protected information"). Thus, Drummond essentially argues anytime a plaintiff must prove actual malice to succeed in a defamation action against an attorney, the defendant waives all work-product protections for documents relevant to his state of mind, regardless of whether he affirmatively relied on them to support the truth of the statements. However broad the scope of the implied waiver doctrine may be, it does not extend so far as to permit disclosure of Defendants' opinion work product, based on their reliance of evidence in the ***public*** record.

### 2. Defendants have not waived protection by making testimonial use of work-product materials.

Drummond also presents a second theory for finding waiver. According to Drummond, "[b]y making the defamatory statements at issue, Mr. Collingsworth made himself a key witness in this case, and thus waived work product protection." DR. Br. at 6. Drummond would have this Court believe any time an attorney is named as a defendant, or called as a witness in a case, this "waives work product protection over any materials bearing on" the subject of his testimony." *Id.* at 6-7. This argument lacks any merit. Indeed, Drummond's own cases do not even support it.

Drummond cites the Supreme Court's decision in *Nobles*, which found the work-product privilege can be waived where a party attempts to make "a unilateral testimonial use of work-product materials." 422 U.S. at 239. There, "defense counsel sought to impeach the credibility of key prosecution witnesses by testimony of a defense investigator regarding statements previously obtained from the witnesses by the investigator." *Id.* at 227. The district court refused to allow the investigator to testify about his interviews with the witnesses unless a copy of his investigative report, inspected and edited in camera, was submitted to the prosecution to review for purposes of cross-examination. *Id.* at 229. The defense refused to produce the report and the district court excluded the investigator's testimony. *Id.* The Supreme Court affirmed the investigator properly was precluded from testifying because defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony." *Id.* at 239.

Unlike in *Nobles* and all of the other cases Drummond cites, however, this is *not* a case where a client has chosen to call his attorney or other representative (e.g., investigator) specifically to testify as to their work-product materials, thus waiving protection. *See* DR. Br. at

7 ("'***once a client decides to call the attorneys as witnesses***, the work-product protection must give way to full disclosure on any issue to which they will testify.'") (quoting *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1094 (D. Nev. 2003); *see also id.* (citing *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 463 (D. Md. 1998) (same); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 931 (N.D. Cal. 1976) (same)). Here, Mr. Collingsworth is not being called by any of his clients in the related human rights litigation to testify as to his work on their behalf. Instead, Drummond has named him as a defendant in this lawsuit and is now attempting, by their own admission, to obtain "discovery of information in this case that would otherwise be prohibited in the underlying litigation." DR. Br. at 11.

Moreover, Drummond fails to identify how Defendants have made "a unilateral testimonial use of work-product materials," a prerequisite to waiver. *Nobles,* 422 U.S. at 240; *see also Martin Marietta,* 856 F.2d at 624 ("The signal feature of the implied waiver in [*Nobles*] . . . is the attempt to make testimonial use of work-product materials."); *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976) ("*Nobles* applied the concept of waiver where a party sought to make affirmative testimonial use of the very work product which was then sought to be shielded from disclosure."). Nor does Drummond's presumption Defendants will do so in the future permit disclosure of Defendants opinion work product at this stage in the litigation. *See* DR. Br. at 6 ("Mr. Collingsworth will be a witness and will ***presumably*** testify that . . . .") (emphasis added).

Drummond does not cite a single case supporting waiver based only on a party's ***anticipated*** testimony in the future. Indeed, the one case to expressly consider this issue found waiver cannot be presumed and disclosure is inappropriate prior to any affirmative testimonial use of work product. *Duplan*, 540 F.2d at1223. In *Duplan*, the Fourth Circuit held:

> In the instant case, appellees have neither made nor sought to make any affirmative testimonial use of the documents for which the throwsters claim the work product immunity has been waived.  The throwsters contend, however, that it is clear that during the course of the actual trial of this case these documents will be so used.  That may well be true and, if and when they are, the principles laid down in *Nobles* may be applicable.  This we need not decide at this time, however.  It is sufficient for our purposes here to note that the throwsters cannot claim a right of discovery based upon subject matter waiver and what the appellees may or may not do in the future.

*Id.* at 1223.  Thus, because Defendants have not made any testimonial use of work product to date, Drummond's second theory for waiver also fails.

Furthermore, even if there a comes a time in the future when Mr. Collingsworth *does* testify as to any work product materials forming the basis of his belief in the truth of the statements at issue, Drummond still has not shown the holding in *Nobles* extends to *opinion* work product.  *See Martin Marietta*, 856 F.2d at 625 (noting "*Nobles* dealt with non-opinion work-product and that *Nobles* had held that subject matter waiver applies to non-opinion work-product when testimonial use of non-opinion work-product is made.").  As Drummond's own case recognizes, "[s]ubsequent decisions by the Fourth Circuit have limited *Nobles* to apply only in instances where non-opinion work product is put to a testimonial use."  *Nutramax*, 183 F.R.D. at 463 n.9 (citing *Martin Marietta,* 856 F.2d at 624-25).  And Drummond has not identified any case in this Circuit applying *Nobles*' testimonial waiver to opinion work product.

### B.   Drummond does not overcome the near absolute protection Defendants' opinion work enjoys with substantial and compelling need.

Drummond argues even absent waiver, it is entitled to discover Defendants' opinion work product "because it has a substantial and compelling need" for any information bearing on Mr. Collingsworth's state of mind and "Drummond cannot obtain this information from any other source, because the inquiry is *subjective*."  DR. Br. at 8-9.  "As Rule 26 and *Hickman* make clear, [however,] such work product cannot be disclosed simply on a showing of substantial need

12

and inability to obtain the equivalent without undue hardship." *Upjohn*, 449 U.S. at 401. Indeed, in making this argument, Drummond does not even attempt to satisfy the Eleventh Circuit's standard for obtaining opinion work product, which enjoys near absolute immunity from discovery. *See Cox,* 17 F.3d at 1422 (holding "[t]he crime-fraud exception presents one of the rare and extraordinary circumstances in which opinion work product is discoverable," but rejecting the subject-matter waiver doctrine as "not among the very rare and extraordinary circumstances"). Drummond repeatedly states this is an "extraordinary case," DR. Br. at 7-11, but nowhere does Drummond make the case the crime-fraud exception applies, nor does Drummond identify any other exception the Eleventh Circuit has recognized which does apply.

Instead, Drummond cites for support several district court cases where discovery of work product was ordered because an attorney's mental impressions, opinions, or advice was directly at issue in the litigation. *Id.* at 10-11. These decisions are circumspect to the extent they appear to reduce the inquiry for overcoming opinion work product down to the requesting party's need and burden. *See, e.g., Am. Dental Ass'n v. Khorrami*, CV 02-3853 DT(CTX), 2003 WL 24141019, at *8 n.5 (C.D. Cal. July 14, 2003) (ordering disclosure of opinion work product because "Plaintiff's need for such materials is particularized and compelling and cannot be satisfied by resort to other discovery targets."). And it is of note, this line of cases cited by Drummond does not appear to have been adopted by a single Circuit Court of Appeal.

Further, even the cases Drummond cites which found opinion work product was discoverable still recognized the effect disclosure would have on pending proceedings between the parties. *See, e.g., Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach*, 92 C 7768, 1993 WL 179789, at *7 (N.D. Ill. May 24, 1993) ("The argument that production of these work product materials will adversely affect their client's interest in pending proceedings is of little

13

value to defendants.  Plaintiffs have limited their request to closed cases.").  Here, Drummond

has not so limited its requests, admitting it seeks "discovery of information in his case that would

otherwise be prohibited in the underlying litigation," before this same court.  DR. Br. at 11.

This Court has already expressed concern Drummond seeks Defendants' evaluations of

the credibility of witnesses while "we have pending litigation that various plaintiffs are pressing

in this court related to the same conduct," and questioned why Drummond would "be entitled,

then, to discover work product that still affects potentially the outcome of the *Melo* [*v.*

*Drummond Co. Inc.*, No. 2:13-cv—00393-RDP (N.D. Ala.)] case," as well as potentially *Balcero*

*v. Drummond Co., Inc.*, No. 2:09-cv-1041-RDP (N.D. Ala.) and *Baloco v. Drummond Co., Inc.,*

Case No. 09-16216 (11th Cir.).  Hr'g Tr. at 15:6-11; 15:21-25.  This Court also recognized the

effect of disclosing Defendants' opinion work product could not be contained to the immediate

case "while we're litigating the *Melo* case because [Drummond] could really use that

information in the *Melo* case as well."  *Id.* at 54:21-25.  Given Drummond's complete failure to

meet the Eleventh Circuit's standard for discovering opinion work product, it has provided this

Court with no reason to now reverse course and permit such discovery.

## II.    Defendants have not Waived Work-Product Protection over Documents Related to Legal Analysis of Witness Payments.

Drummond continues to repeat its tale Defendants improperly paid incarcerated witnesses

for their testimony in the related human rights litigation, and asserts these payments may be

unethical, thus lifting the work product privilege.  DR. Br. at 11, 16-17.  Drummond also

continues to use the litigation privilege afforded by this libel action against Defendants to make

further false assertions based on speculation.  Drummond now accuses Mr. Collingsworth of

paying for lawyers of the paramilitary witnesses, based solely on the fact one of his associates

drafted a memo to address whether it would be ethical to do so.[3]  DR. Br. at 12-15.  As a result, Drummond seeks documents related to legal analysis of witness payments, arguing Defendants have waived work product protection.

As an initial matter, Drummond repeats its false and baseless accusation of unethical conduct without even mentioning Defendants provided three different expert opinions, which all agree providing security assistance is *not* an ethical violation.  Hobbs Decl., Ex. A, ECF 70-1; Ex. B, ECF 70-2.  Further, the sole court directly to address Drummond's assertion providing necessary security assistance to an endangered witness is unethical called the argument to prohibit the witness from testifying "frivolous."  Hobbs Decl., Ex. C, ECF No. 70-3. Additionally, this Court previously held valid claims of work product are *not* waved simply because a document references payments to witnesses.  *See* Hr'g Tr. at 60:19-62:19.

A.   **Defendants' provision of security assistance to witnesses was *not* payment for testimony, and it is entirely permissible and proper under the ethical rules.**

Defendants' work product brief referenced an earlier Supplemental Brief, ECF No. 68, which was Defendants' first opportunity to respond to these false assertions Defendants improperly paid witnesses for their testimony.  As the supplemental brief made clear, the facts are Defendants provided security assistance to three witnesses whose family members were threatened by Drummond's operatives in Colombia, which is entirely permissible under the ethical rules.  Defendants' Supplemental Brief was supported by the Expert Declaration of

---

[3] Drummond's effort to cleanse the improper act of reading and relying upon a memo that is clearly work product fails. DR. Br. at 13. When Mr. Collingsworth gave the memo to Mr. Wolf, they were co-counsels and Mr. Collingsworth certainly had a reasonable expectation at the time he shared the memo with Mr. Wolf that he would respect the work product and common interest privileges. That, two years later, Mr. Wolf gave the memo to Drummond does not affect Mr. Collingsworth's expectations at the time he provided the memo to Mr. Wolf. For the record, Mr. Collingsworth will be filing a complaint with the D.C. Bar regarding Mr. Wolf's improper disclosure of privileged material.

Professor Steven Hobbs, the Tom Beevill Chariholder of Law at the University of Alabama School of Law, who concluded "arrangements to provide for security or a safe haven for witnesses after they have been threatened with violence . . . is not an improper inducement or payment for testimony in a manner intended to shape the testimony of the witness."  Hobbs Decl., ¶ 42; s*ee also, id*. ¶¶ 24, 26, 28, 32, 37, 47 (citing range of legal sources to support opinion).

Professor Hobbs also referred to two other expert opinions in his declaration, both of which addressed a similar issue of witness security in *Chevron Corp. v. Donziger*, 1:11-cv-00691-LAK-JCF (S.D.N.Y. filed Feb. 1, 2011).  In *Chevron*, a key witness was relocated to the U.S. because Chevron asserted the witness faced violent retaliation in Ecuador.  One of the expert opinions was provided by Professor George M. Cohen, the Brokaw Professor of Corporate Law at the University of Virginia School of Law ("Cohen Op.").  Hobbs Decl., Ex.A, ECF No. 70-1.  The last expert opinion was provided by Professor Erwin Chemerinsky, Dean of the University of California at Irvine School of Law.  Hobbs' Decl., Ex. B, ECF No. 70-2.

Dean Chemerinsky concluded, "[a]lthough not expressly contemplated by the rules, if a witness faces a bona fide personal safety or security risk due to his or her testimony, in my opinion it is permissible for attorneys to pay expenses reasonably necessary to keep the witness in a safe location."  *Id*. ¶ 7.  Similarly, Professor Cohen found "the structure of [Model Ethical Rule 3.4(b)] suggests that a payment to a witness that is permitted by law is also ethically permitted, unless the payment is contingent on the content of testimony or the outcome of the case."  Cohen Op. ¶ 10.  As a result, "there is a good faith argument . . . for counting as permitted expenses any expenses incurred by a witness . . . as a consequence of testifying, including expenses for . . . the safety and security of the witness and his family."  *Id*. ¶ 6.  He further

16

concluded where "the risk of threats to the safety and security of the witness and his family is real . . . that risk is directly related to the witness's proposed testimonial activity." *Id*.¶ 21.[4] Relying on these expert opinions, the Southern District of New York recently permitted the witness who received security assistance to testify, characterizing the motion to bar the testimony as "frivolous." *See* Order, *Chevron Corp. v. Donziger*, No. 1:11-cv-00691-LAK-JCF (S.D.N.Y. Oct. 31, 2013), ECF No. 1650 at 1, attached as Ex. C to Hobbs Decl., ECF No. 70-3.

### B.   This Court previously rejected Drummond's argument "payments to witnesses" vitiates valid claims of work product.

Drummond repeats verbatim its argument work-product privilege is vitiated by unethical conduct, directly accusing Defendants of possibly violating Alabama Rule of Professional conduct 3.4 (b), which restricts payments to witnesses to those "permitted by law."  DR. Br. at 16-17.  In doing so, Drummond fails to even mention Defendants' position, that providing security assistance to endangered witnesses is entirely permissible, is supported by ***three*** experts of legal ethics and the ***only*** court decision to directly address the issue.  *See id.* at 17 ("Drummond is unaware of any federal or Alabama law that 'permits' a party in private civil litigation to pay for the security of a witness").  To make this bald accusation of unethical conduct without acknowledging the extensive legal support Defendants supplied in support of their position, or providing a single countervailing legal authority finding security assistance is improper, shifts from strategic gamesmanship to bad faith on Drummond's part.[5]

---

[4] There is a detailed discussion of the legal underpinnings of these expert opinions and the application of Model Ethical Rule 3.4(b) in Defendants' prior Supp. Br. at 12-17.

[5] Drummond also fails to respond to the extensive record evidence offered by Defendants documenting that for years witnesses against Drummond, as well as Colombian lawyers working on the Drummond human rights cases, have had family members killed, have been targets of assassination attempts, and have received numerous, repeated, credible death threats.  *See* Supp. Br. at 6-11; TPC Decl. ¶¶ 13-14, 21, 23, 27-32, 37-53.  This evidence is not only relevant to show Defendants were justified in acting to save the lives of family members of threatened

This is highlighted more so by Drummond's apparent re-litigation of an issue already ruled on by the Court.  In the October 10, 2013 hearing on the parties' competing motions to compel, Drummond raised the issue of work product as applied to documents evidencing "witness payments."  Drummond expressed concern "with specific respect to payments of witnesses and whether legally work product could ever apply to that."   Hr'g Tr. at 60:19-22.  The Court responded "the fact of a payment is not going to be a work product issue period, but there could be a document that reflects a payment that, weaved within it, has some work product information."  *Id.* at 61:4-7.  Not satisfied with this answer Drummond followed up, asking: "Well, the question is can there ever be work product on a document that reflects a payment to a witness."  *Id.* at 61:16-18.  The Court could not have been clearer when responding,

> ***Yes, there can be*** . . . you're going to get to discover the fact of payments but not every document that references a payment do you get 100 percent of.  ***That can't be the law***.  If [Defendants] got a valid privilege or a valid work product document, they're entitled to redact out that portion of it . . . you get to discover those aspects of the document that reflect the fact of payment, who the payment was made to,  . . . but you may ***not*** get an internal mental impression that's buried in the document as well.

*Id.* at 61:19-62:10 (emphasis added).  To this end, this Court found it would be appropriate "to require any discovery related to ***research*** regarding payments to witnesses and the propriety of it to be disclosed in camera to the magistrate judge."  *Id.* at 42:19-42:22 (emphasis added).

Thus, this Court already has held protection is not waived from a valid work product document, including legal research and analysis, simply because it references the fact of payments, instead requiring such work product be logged and submitted to a magistrate judge for review.  Drummond's argument "Defendants have waived any work product protection over all

---

witnesses, but that Drummond apparently views its false accusations of Defendants' improper conduct as a more serious legal violation than its own conduct in being involved in threatening key witnesses with violent retaliation.

documents related to witness payments, including legal analyses of the propriety of such payments," therefore, is precluded by this Court's prior ruling.  DR. Br. at 18.

### III.    This Court Should Compel Disclosure of Drummond's Work Product Demonstrating the Truth or Falsity of the Allegedly Defamatory Statements.

It is ironic Drummond accuses Defendants of attempting to wield the work-product protection as both a sword and as shield, DR. Br. at 4, considering this Court already recognized this is *exactly* what Drummond is attempting to do by seeking Defendants' *opinion* work product under the pretense of satisfying their burden of showing actual malice, but simultaneously resisting discovery of Drummond's *fact* work product directly bearing on the truth of the statements, when truth is an absolute affirmative defense to defamation for which Defendants bear the burden of proving.  *See* Hr'g Tr. at 68:1-6 ("that's a sword and a shield unless you convince me otherwise that you may be exposing yourself to some discovery on similar documents, i.e., those documents that contain facts that would go to the truth but don't contain mental impressions of any particular lawyer representing Drummond.").  Indeed, this Court recognized, "What's good for the goose is good for the gander."  *Id.* at 65:4.

It is worth examining Drummond's discussion with the court during the October 10, 2013 hearing in detail because Drummond now repeats the same argument previously rejected, principally that Drummond's "state of mind is not at issue in this case," so any discovery of work product should be entirely one-sided.  *Id.* at 65:11-12.  In the hearing, the Court pushed back against this argument: "But that would go to truth or falsity regardless of state of mind.  They have an affirmative defense."  *Id.* at 65:14-16.  The Court questioned: "If there's a document that doesn't have any mental impressions in it but is going to the heart of a fact in this case, why wouldn't [Drummond] be required to produce that upon a discovery request?"  *Id.* at 66:4-8.  Unable to grasp the Court's reasoning, Drummond answered, "Because in this case, we're not

asking for it for the truth; we're asking for [Mr. Collingsworth's] subjective belief as to the truth." *Id.* at 66:24-67:1; *see also id.* at 66:1-3 (arguing "the reason [Defendants] cannot get work product is because the mental impressions of the attorney are not at issue"). The Court responded, "That's my point. You're looking at the claims through your own particular lens. They have filed a response that says what [Mr. Collingsworth] said in the letters was true, and truth is an affirmative defense . . . so what they're saying essentially is a mirror of what you're saying on your claims." *Id.* at 67:2-11. The Court found, therefore, Drummond's is "exposing [it]self to some discovery on . . . documents that contain facts that would go to the truth," even if containing work product. *Id.* at 68:2-4.

Drummond now repeats this stale argument, providing nothing new to persuade this Court to change its initial ruling. Drummond's only response is "the truth is at issue in every case, and the fact that a defamation defendant pleads the affirmative defense of 'truth'" is irrelevant. But Drummond does not cite a single case to support this proposition. Instead, Drummond cites a series of cases in which no substantial need for fact work product was found because the requesting party could conduct its own independent investigation. DR. Br. at 19-20. But not a single one of these cases was in the defamation context, none involving the truth as an affirmative defense. This Court should not allow Drummond to continue to use the work-product doctrine as both "a sword and a shield" in this discovery. Hr'g Tr. at 68:1. There is simply no merit to Drummond's argument is entitled to complete discovery of Defendants' opinion work product to prove its claim, but Defendants are prohibited from discovering even fact work product directly bearing on its affirmative defense.

Moreover, Defendants have made out a *prima facie* case of criminal conduct, sufficient to satisfy "[t]he crime-fraud exception [which] presents one of the rare and extraordinary

circumstances in which opinion work product is discoverable." *Cox*, 17 F.3d at 1422.[6]  In

addition to Drummond's systematic intimidation of witnesses discussed in Defendants' prior

supplemental brief, ECF No. 68 at 6-11, as well as Defendants opening work product brief, ECF

No. 80 at 11-12, the record evidence in the *Balcero* case, including the sworn statements of no

less than 11 witnesses, demonstrates Drummond collaborated with the AUC to commit war

crimes and extrajudicial killings. Further, Drummond's provision of material support to the

AUC, which was designated as a terrorist organization by the U.S. Department of State in 2001,

itself constitutes criminal conduct.  If Drummond is in possession of any opinion work product in

which Drummond's counsel evaluated allegations of witness tampering, paying the AUC, or

Drummond' responsibility for the crimes alleged in *Balcero*, this bears directly on the truth of

the statements at issue this defamation action and should be discoverable.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request Drummond's motion to

compel Defendants' opinion work product be denied and this Court schedule a hearing to address

Defendants' motion to compel.


Dated: December 20, 2013                                    Respectfully submitted,



_____

Bradley J. Smith
STATE BAR ID: ASB-6847-B52S
CLARK, HAIR & SMITH, P.C.
1000 Urban Center Drive, Suite 125

---

[6] Defendants are seeking discovery on who was aware within Drummond of witness
intimidation, but are not asserting that counsel for Drummond was involved.

Birmingham, AL 35242
Tel.: (205) 397-2900
Fax (205) 397-2901
bsmith@chslaw.com

*Attorney for Defendants Terrence P. Collingsworth, individually and Conrad & Scherer, LLP*

## CERTIFICATE OF SERVICE

I, Bradley J. Smith, hereby certify that on this 20th day of December, 2013, a true and correct

copy of the foregoing was served on the following parties via the Court's CM/ECF system:

William Anthony Davis, III, Esq.
H. Thomas Wells, III, Esq.
Benjamin T Presley
Starnes Davis Florie, LLP
P.O. Box 59812
Birmingham, Alabama 35259

Sara E Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G. Street NW, Suite 800
Washington, D.C. 20001

_____
Bradley J. Smith