FILED

2015 Sep-29  PM 06:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No 2:11-cv-3695-RDP |
| | ) | |
| TERRENCE P. COLLINGSWORTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CONRAD & SCHERER'S POST-HEARING BRIEF REGARDING THE
CRIME-FRAUD EXCEPTION**

Robert K. Spotswood
Michael T. Sansbury
William T. Paulk
SPOTSWOOD SANSOM & SANSBURY LLC
One Federal Place
1819 Fifth Avenue North, Suite 1050
Birmingham, Alabama 35203
Tel: 205-986-3620
Fax: 205-986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
wpaulk@spotswoodllc.com


*Attorneys for Conrad & Scherer, LLP*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.      THE COURT MUST CONDUCT A SEPARATE CRIME-FRAUD
        ANALYSIS AS TO BOTH DEFENDANTS, AND CONRAD &
        SCHERER'S PRIVILEGES CANNOT BE WAIVED AS A
        RESULT OF A CRIME-FRAUD FINDING ONLY AS TO
        COLLINGSWORTH. ............................................................................... 3

        A.      If the Court concludes that the crime-fraud exception
                applies with respect to Collingsworth, his conduct cannot be
                imputed to Conrad & Scherer for crime-fraud purposes. .................... 3

        B.      Even if the crime-fraud exception applies to Collingsworth,
                it should not apply to Conrad & Scherer. ................................................. 5

        C.      Even if the Court concludes that the crime-fraud exception
                applies with respect to Collingsworth, Conrad & Scherer's
                privileges and work product in this and other cases, which it
                owns independently of Collingsworth, do not lose their
                protection. ............................................................................................ 10

                1. Conrad & Scherer's separate communications are not subject to
                waiver because, as a joint client, it enjoys a separate line of privileged
                communications with counsel in this case. ........................................... 10

                        a. .... Collingsworth cannot waive any privileges owned by Conrad &
                        Scherer. ......................................................................................... 11

                        b. The few crime-fraud cases that have involved joint clients reflect
                        that a separate analysis must be undertaken as to each client. ......... 13

                2. A finding that the crime-fraud exception applies as to either
                Collingsworth or Conrad & Scherer, or both, does not result in
                wholesale disclosure of privileged communications or work product in
                other cases. ..................................................................................... 15

II.     CONSIDERATION OF ADDITIONAL CRIME-FRAUD
        PRINCIPLES RAISED BY THE COURT CONFIRMS THAT NO
        CRIME-FRAUD FINDING IS WARRANTED AS TO CONRAD
        & SCHERER AND NO WAIVER OF ITS PRIVILEGES
        SHOULD OCCUR. ................................................................................. 19

**A.**      **Drummond has not made a prima facie showing of a "fraud on the court" by Conrad & Scherer, which is limited to extremely egregious misconduct designed to impede the ability to access an impartial system of justice.**......................... 19

**B.**      **Drummond has not produced evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes a prima facie case of a fraud on the court against Conrad & Scherer.**...................................... 24

     **1. Scope: Only those communications made "in furtherance of" the specific crime or fraud at issue are subject to disclosure.**.................. 26

     **2. Process: The process for considering the second prong requires in camera review of documents and testimony.**........................................ 29

**C.**      **If the Court determines that the crime-fraud exception Applies, it must then undertake in camera review of the documents and testimony to determine whether they were made "in furtherance of" the specific fraud identified by the Court** .................................................................................... 26

**D.**      **Conrad & Scherer has corrected the misstatements and incomplete disclosures in this case, and Drummond has not suffered any prejudice as to the merits of its case by the misstatements and corrected disclosures.** ............................... 31

**CONCLUSION** ......................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Chudasama v. Mazda Motor Corp.*,
   123 F.3d 1353 (11th Cir. 1997) ........................................................................... 5

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343, 348-49 (1985) ............................................................................ 12

*CPR Assocs., Inc. v. Southeast Penn. Chapter of Am. Heart Ass'n*,
   No. CIV. A. 90-3758, 1992 WL 229296 (E.D. Pa. Sept. 9, 1992) ...................... 5

*Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*,
   300 F.R.D. 590 (S.D. Fla. 2014) ...................................................................... 16

*Haines v. Liggett Grp. Inc.*,
   975 F.2d 81 (3d Cir. 1992), *as amended* (3d Cir. Sept. 17, 1992) ....................... 4

*In re Antitrust Grand Jury*,
   805 F.2d 155 (6th Cir. 1986) ............................................................................ 29

*In re BankAmerica Corp. Sec. Litig.*,
   270 F.3d 639 (8th Cir. 2001) ............................................................................ 31

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
   805 F.2d 120 (3d Cir. 1986) ............................................................................. 12

*In re Cutuli*,
   No. 11–35256–BKC–AJC, 2013 WL 5236711 (Bankr. S.D. Fla. Sept. 16, 2013) .......... 13

*In re Fed. Grand Jury Proceedings, 89-10 (MIA)*,
   938 F.2d 1578 (11th Cir. 1991) ........................................................................ 27

*In re Feldberg*,
   862 F.2d 622, 628 (7th Cir. 1988) ............................................................... 30, 31

*In re Gen. Motors Corp.*,
   153 F.3d 714 (8th Cir. 1998) ............................................................................ 30

*In re Grand Jury Investigation*,
   231 F. App'x 692 (9th Cir. 2007) ..................................................................... 15

*In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*,
   401 F.3d 247 (4th Cir. 2005) ............................................................................ 29

*In re Grand Jury Proceedings*,
   43 F.3d 966 (5th Cir. 1994) ............................................................................. 17

iii

*In re Grand Jury Proceedings,*
    604 F.2d 798 (3d Cir. 1979)......................................................................... 18

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,*
    731 F.2d 1032 (2d Cir. 1984)....................................................................... 27

*In re Grand Jury Subpoena,*
    419 F.3d 329 (5th Cir. 2005) ....................................................... 26, 27, 28, 29

*In re Grand Jury Subpoenas,*
    561 F.3d 408 (5th Cir. 2009) ....................................................................... 18

*In re Richard Roe, Inc.,*
    68 F.3d 38 (2d Cir. 1995)............................................................... 14, 28, 29

*In re Sealed Case,*
    676 F.2d 793 (D.C. Cir.1982) ..................................................................... 18

*In re Sealed Case,*
    754 F.2d 395 (D.C. Cir. 1995) ..................................................................... 23

*In re Special September 1978 Grand Jury,*
    640 F.2d 49 (7th Cir. 1980) ......................................................................... 18

*In re Sunrise Securities Litig.,*
    130 F.R.D. 560 (E.D. Pa. 1989).................................................................... 12

*In re Teleglobe Commc'ns Corp.,*
    493 F.3d 345 (3d Cir. 2007)......................................................................... 11

*In re United Mine Workers of Am. Employee Ben. Plans Litig.,*
    159 F.R.D. 307 (D.D.C. 1994)...................................................................... 17

*Jinks-Umstead v. England,*
    232 F.R.D. 142 (D.D.C. 2005)...................................................................... 21

*Jones v. Tauber & Balser, P.C.,*
    503 B.R. 162 (N.D. Ga.), *modified*, 503 B.R. 510 (N.D. Ga. 2013)................................. 14

*Knight v. E.F. Hutton & Co.,*
    750 F. Supp. 1109 (M.D. Fla. 1990) .............................................................. 22

*Lake Shore Radiator, Inc. v. Radiator Exp. Warehouse,*
    No. 3:05CV1232 J12MCR, 2007 WL 842989 (M.D. Fla. Mar. 19, 2007) ..................... 16

*Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC,*
    No. 12-cv-22539, 2014 WL 5529403 (S.D. Fla. 2014) ................................... 21

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.,*

886 F. Supp. 2d 466 (D. Del. 2012) ............................................................................ 21

*Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*,
    30 F. Supp. 2d 1182 (D. Ariz. 1998) ......................................................................... 5

*Montgomery v. eTreppid Techs., LLC*,
    548 F. Supp. 2d 1175 (D. Nev. 2008) ....................................................................... 12

*Ohio-Sealy Mattress Mfg. Co. v. Kaplan*,
    90 F.R.D. 21 (N.D. Ill. 1980) ................................................................................... 11

*Patterson v. Lew*,
    265 F. App'x 767 (11th Cir. 2008) ........................................................................... 19

*Peacock v. Merrill*,
    No. CA 05-0377BHC, 2008 WL 762103 (S.D. Ala. Mar. 19, 2008) .......................... 16

*Pittman v. Frazer*,
    129 F.3d 983 (8th Cir. 1997) .................................................................................... 16

*Rambus, Inc. v. Infineon Techs. AG*,
    222 F.R.D. 280 (E.D. Va. 2004) ............................................................................... 23

*RCA Corp. v. Data Gen. Corp.*,
    Civ. A. No. 84-270-JJF, 1986 WL 15684 (D. Del. Oct. 27, 1986)............................. 21

*Regions Fin. Corp. v. United States*,
    No. 2:06-CV-00895-RDP, 2008 WL 2139008 (N.D. Ala. May 8, 2008) ..................... 16

*SEC v. ESM Grp., Inc.*,
    835 F.2d 270 (11th Cir. 1988) ............................................................................ 19, 20

*Traveler's Indemnity Co. v. Gore*,
    761 F.2d 1549 (11th Cir. 1985) ........................................................................... 19, 20

*United States v. Cleckler*,
    265 F. App'x 850 (11th Cir. 2008) ........................................................................... 26

*United States v. Soudan*,
    812 F.2d 920 (5th Cir.1986) ...................................................................................... 4

*United States v. Under Seal (In re Grand Jury Proceedings, Thursday Special Grand Jury*
    *September Term 1991)*, 33 F.3d 342, 349 (4th Cir.1994).......................................... 18

*Waddell & Reed, Inc. v. United Investors Life Ins. Co.*,
    875 So. 2d 1143 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003).............. 22

*Westinghouse Elec. Corp. v. Republic of the Philippines*,
    951 F.2d 1414 (3rd Cir. 1991) .................................................................................. 16

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009) .................................................................................. 5

**Rules**

Fed. R. Evid. 104(a) ............................................................................................. 24

**Treatises**

1 Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 160 (5th ed. 2007) .................................................................................................................. 12

1 John W. Strong, *McCormick on Evidence* 382 (5th ed. 1999) ................................. 28

Corp. Counsel Guide to Attorney-Client, Work-Product & Self-Evaluation Privilege § 6:27 ..... 17

*Restatement (Third) of the Law Governing Lawyers* § 75 cmt. e. ................................ 11

*Restatement of the Law Governing Lawyers* § 4:25 .................................................. 13

## INTRODUCTION

The thrust of the Court's concern in asking for post-hearing briefing on the crime-fraud exception appeared to be whether Conrad & Scherer could be separated from Mr. Collingsworth for crime-fraud purposes. Specifically, the Court appeared to be focused on the following three questions:

1.  Although Drummond has not made an unrebutted prima facie case for any application of the crime-fraud exception, even if the Court finds that the standard was met with respect to Collingsworth, *does* it automatically apply to Conrad & Scherer as well?

2.  If the crime-fraud exception applies to Collingsworth, *should* it apply to Conrad & Scherer as well?

3.  If the crime-fraud exception applies to Collingsworth, are Conrad & Scherer's privileged communications and work product subject to waiver as a result of that finding?

The answers to these questions are straightforward.

1.  No. A finding that the crime-fraud exception applies to Collingsworth does not mean the exception automatically applies to Conrad & Scherer as well. Instead, a separate and independent inquiry must be undertaken as to Conrad & Scherer.

2.  No. The testimony and evidence presented during the evidentiary hearing demonstrates that:

    a.  Conrad & Scherer was not aware until approximately the time the Court and Drummond became aware that the additional payments at issue had not been disclosed and that certain statements and representation made to this Court were not correct. On this record, there is no basis for finding that the crime-fraud exception applies as to Conrad & Scherer.

    b.  Conrad & Scherer complied with the October 15, 2014 Order and the revised deadline for supplementing interrogatories. There can be no fraud on the court—no impediment to the ability to access an impartial system of justice— when Conrad & Scherer met these Court-imposed deadlines.

3.  No, because:

    a.  Conrad & Scherer's privileges and work product, which it owns independently of Collingsworth, do not lose their protection based on a finding that the crime-fraud exception applies to Collingsworth.

    b.   There is no basis for invoking the exception as to Conrad & Scherer's communications in an entirely separate case based on a finding of a crime or fraud by anyone in this case.

    c.   The Florida state court case is an entirely different case, and the court there was notified within weeks of the supplementation that occurred in this case that additional witness assistance payment information had been located.

    d.   The only waiver that should occur if the Court determines the crime-fraud exception applies to Collingsworth is a waiver over his separate and independent communications that were made in furtherance of the specific crime or fraud identified by the Court.

    e.   In that event, the Court should make expressly clear that the waiver is a limited one that applies only to Collingsworth's own privileged and work-product-protected communications with clients, co-counsel, and others, and not those involving or belonging to Conrad & Scherer in this or any other case.

The results above are compelled by established legal principles governing the crime-fraud exception and privilege analysis in a joint-client scenario. Conrad & Scherer's separately-owned privileges and work product cannot be waived without an express finding that the crime-fraud exception applies to it as a result of its conduct.

In addition to the questions above, which are addressed in Part I, the Court raised the following additional issues and asked for briefing on additional questions that Conrad & Scherer responds to in Part II below:

1.    Drummond has not made a prima facie showing of a "fraud on the court" by Conrad & Scherer, which is limited to extremely egregious misconduct that impedes a party's ability to access an impartial system of justice.

2.    Drummond has not produced evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes a prima facie case of a fraud on the court by Conrad & Scherer.

3.    If the Court decides that Drummond has made a prima facie showing of crime-fraud, it must review documents and testimony in camera to determine precisely which documents and what communications were made "in furtherance of" the specific crime or fraud identified by the Court.

> 4. Conrad & Scherer has corrected the misstatements and incomplete disclosures in this case, and Drummond has not suffered any prejudice as to the merits of its case by the misstatements and subsequent corrected disclosures.

There is simply no factual basis for finding that Conrad & Scherer committed a fraud on the court. Further, there has been no undermining of the administration of justice when Conrad & Scherer complied with the Court's October 15, 2014 Order and the deadline for supplementing interrogatories.

In many ways, this case has entered uncharted territory. Application of the crime-fraud exception in a civil case involving a "fraud on the court" based on litigation conduct is practically unheard of—especially where the alleged conduct is a discovery or disclosure violation that has been corrected before discovery has closed and with no trial date pending. When combined with privilege issues arising from an attorney-client relationship that involves representation of a lawyer and his law firm, who themselves have their own attorney-client privileges and work-product protections in other cases, this case becomes truly unprecedented. These facts, especially when viewed against Drummond's admission that it does not believe the crime-fraud exception is necessary to resolve its sanctions motion, should temper any effort to apply the rarely invoked crime-fraud exception in these uncharted waters.

## ARGUMENT

**I. THE COURT MUST CONDUCT A SEPARATE CRIME-FRAUD ANALYSIS AS TO BOTH DEFENDANTS, AND CONRAD & SCHERER'S PRIVILEGES CANNOT BE WAIVED AS A RESULT OF A CRIME-FRAUD FINDING ONLY AS TO COLLINGSWORTH.**

### A. If the Court concludes that the crime-fraud exception applies with respect to Collingsworth, his conduct cannot be imputed to Conrad & Scherer for crime-fraud purposes.

While, as Collingsworth demonstrates in his separate brief, there is no evidence to support application of the crime-fraud exception to him, even if the Court disagrees, that finding

cannot be imputed to Conrad & Scherer. Imputation of liability for the crime-fraud exception to Conrad & Scherer based on Collingsworth's conduct is inconsistent with the purpose of the crime-fraud exception. It also ignores the requirement that, as is relevant here, fraud for crime-fraud purposes focuses on the actor's *intent*, which is individual to the actor.

The crime-fraud exception was not established as an instrument for imposing vicarious liability on one person based on another person's conduct. It was not established to punish wrongdoers or to vindicate tortious or criminal conduct. Instead, it was established for the much narrower purpose of preventing the use of a privilege to facilitate ongoing or future criminal activity. As the Third Circuit has explained,

> [t]he seal is broken when the lawyer's communication is meant to facilitate future wrongdoing by the client. Where the client commits a fraud or crime for reasons completely independent of legitimate advice communicated by the lawyer, the seal is not broken, for the advice is, as the logicians explain, *non causa pro causa*. The communication condemned and unprotected by the attorney-client privilege is advice that is illicit because it gives direction for the commission of future fraud or crime. The advice must relate to future illicit conduct by the client; it is the *causa pro causa,* the advice that leads to the deed.

*Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992), *as amended* (3d Cir. Sept. 17, 1992).

Thus, imputing liability to Conrad & Scherer for Collingsworth's actions does not further the purpose of the crime-fraud exception, which could only properly be applied to waive privilege over communications that <u>Conrad & Scherer</u> made in furtherance of a crime or fraud.

Moreover, in determining whether "fraud" sufficient to invoke the crime-fraud exception exists, "[t]he client's intent is central to this inquiry." *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1311-12 (S.D. Fla. 2000) (citing *United States v. Soudan,* 812 F.2d 920, 927 (5th Cir. 1986)). Thus, the communications at issue must have been "conducted with the <u>express purpose</u> of promoting intended or continuing criminal or fraudulent activity." *Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 30 F. Supp. 2d 1182, 1207 (D. Ariz. 1998) (emphasis

added). As a result, the crime-fraud exception cannot be applied to Conrad & Scherer based on a "fraud on the court" or "discovery fraud" theory unless Conrad & Scherer itself had the requisite fraudulent intent to hide from Drummond and the Court the number of witnesses who received assistance payments and the nature of that assistance. And there is no evidence of that. If a finding of "bad faith" for sanctions purposes cannot be imputed to others, then intent for crime-fraud purposes, which includes only the most egregious misconduct, clearly should not be either. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 (11th Cir. 1997); *CPR Assocs., Inc. v. Southeast Penn. Chapter of Am. Heart Ass'n*, No. CIV. A. 90-3758, 1992 WL 229296, at *11 (E.D. Pa. Sept. 9, 1992) (finding no reason to vicariously sanction a law firm when the firm did not willfully engage in misconduct or significantly participate in the discovery process).

### B. Even if the crime-fraud exception applies to Collingsworth, it should not apply to Conrad & Scherer.

Even if the crime-fraud exception applies to Collingsworth (which it should not), it certainly should not apply to Conrad & Scherer. The crime-fraud exception cannot apply to Conrad & Scherer unless there is evidence from which a fact finder "would" conclude that Conrad & Scherer committed a crime or fraud. No such evidence exists.

After hundreds of pages of briefing and a three-day evidentiary hearing, it is undisputed that Collingsworth did not tell anyone at Conrad & Scherer that he had not disclosed the additional payments. It is also undisputed that Conrad & Scherer did not know about the incomplete disclosures, and Collingsworth's incorrect statements about them, until after the October 15, 2014 Order was issued, the new team was on board, and Conrad & Scherer began preparing supplementary discovery responses. Thus, it is undisputed that, until that time, Conrad & Scherer did not know the following:

5

- That assistance payments were being made to the families of El Tigre and Samario through Otero;

- That Collingsworth had not disclosed that assistance payments were being made to the families of El Tigre and Samario through Otero, in addition to the three others that had previously been disclosed;

- That Albert van Bilderbeek was paying Blanco's attorney's fees through Otero;

- That Blanco would not finalize his declaration until van Bilderbeek upheld his end of the bargain he struck with Blanco; and

- That certain statements made by Collingsworth to the Court orally and in writing were incorrect and incomplete.

Faced with these undisputed facts, Drummond attempts to cobble together a crime-fraud case against Conrad & Scherer based solely on innuendo and speculation from two events: (1) the circulation and printing of the "deps in the can" email by someone at Conrad & Scherer at the end of June 2014, and the subsequent use of Collingsworth's affidavit in the Florida case, and (2) Parker Waichman's production of privileged documents to the Special Master.

With respect to "deps in the can" email, the Court has already expressed skepticism that Mr. Scherer's receipt of the email in 2011—among hundreds of others he receives on any given day—is sufficient to support the crime-fraud exception. Doc. 390 (Sept. 2, 2015 Hr'g Tr.) 461:20-462. The Court's skepticism is well founded because the email had no meaning to Mr. Scherer when he briefly saw it in 2011. *Id.* 395:9-23; 396:6-8. Mr. Scherer testified that the email was "meaningless" to him and did not impart any kind of information to him about the case, the management responsibility for which he had delegated to others. *Id.* 395:14-23.

That leaves only the circulation and printing of the email by someone at Conrad & Scherer at the end of June 2014. As the record reflects, Mr. Scherer's son forwarded the email to Conrad & Scherer's lawyer in this case, Brad Smith. *Id.* 397:22-25. Beyond that, Mr. Scherer's undisputed testimony is that, although the email was sent to him at the end of June 2014, the

6

email did not mean anything to him, or anyone else at the firm, because he was not monitoring the details of the Drummond case. *Id.* 408:14-18; 399:3-5; 398:2-8. In other words, given those facts, the email did not have any significance to Mr. Scherer as it related to the Drummond case. In fact, Mr. Scherer did not record any time for reviewing the email. *Id.* 398:9-10.

It was not until after the October 15 Order was issued, the new team was on board, and Conrad & Scherer began preparing supplemental discovery responses in this case that Conrad & Scherer learned the meaning of this email—that additional witnesses beyond the three previously disclosed had received assistance payments, and that this information had not been disclosed. *Id.* 392:14-15, 18-20; 393:11-13. Until then, Conrad & Scherer believed that only three witnesses had received payments, and Collingsworth had not told Conrad & Scherer anything to the contrary. *Id.* 393:18-394:1; 394:24-395:2.

Conrad & Scherer's use of Collingsworth's affidavit in the Florida state court case after the email was printed is equally unhelpful to Drummond, both legally and factually. As a legal matter, Conrad & Scherer's actions in a separate court with an entirely different discovery schedule, discovery cutoff deadline (which had not expired), and disclosure obligations cannot form the basis of a fraud on *this* Court in *this* case.

As a factual matter, Conrad & Scherer's actions in the Florida state court case were innocent and undertaken without any knowledge of the incorrect statements in Collingsworth's affidavit. The Florida state court case was filed in 2009 by Conrad & Scherer against a former partner, William J. Wichmann ("Wichmann"), for client grabbing and breach of fiduciary duties. Thus, Conrad & Scherer is a party to the *Wichmann* case and has had privileged communications with its counsel in that case. *See* Exhibit 1 (Decl. William R. Scherer, Jr.) ¶¶ 10-11. The fact that witness payments was not at issue in that case for the first five years after it was filed, and

Wichmann's counsel had no involvement in the Drummond case. In March 2014, Wichmann's counsel sought discovery from Conrad & Scherer regarding payments to witnesses. Conrad & Scherer and its counsel turned to the person most knowledgeable about the payments to determine the facts, Collingsworth.

In August 2014, Conrad & Scherer obtained an affidavit from Collingsworth. Collingsworth's affidavit was filed with the court on September 24, 2014, along with the Drummond and Parker Waichman privilege logs. No discovery orders required the filing of the logs and no orders were entered in reliance on Collingsworth's affidavit.

Conrad & Scherer was not aware of the additional payments when Collingsworth's affidavit was submitted. Doc. 390, at 392:14-15, 18-20; 393:11-13 (Mr. Scherer's testimony explaining that it was not until around the time the Court was informed of the incorrect statements that Conrad & Scherer learned of the additional witness payments). Collingsworth had not informed Conrad & Scherer of anything to the contrary. *Id.* 393:24-394:1.

On January 27, 2015, Conrad & Scherer, after learning that the affidavit was incorrect, disclosed to the Florida state court that additional information had come to light on the payments issue and that Conrad & Scherer would amend or supplement both its discovery responses and privilege logs as soon as the court resolved a motion filed by Conrad & Scherer to disqualify Wichmann's counsel.[1]

It is simply not plausible that Mr. Scherer would have knowingly filed a false affidavit in his home court:

---

[1] The Florida court had effectively stayed discovery while Conrad & Scherer's motion to disqualify Wichmann's counsel was pending and, thus, there was no discovery-related urgency to notify the court of this additional information after it was discovered in late 2014. Discovery remains stayed pending appeal of the court's order disqualifying Wichmann's counsel, which was entered on June 4, 2015.

> You know, 42 years, you practice a certain way and you don't lack candor to the court one time, and you don't make a filing in my home court where I'm going to start this big trial in a month, same judge, by filing some kind of false affidavit trying to cover up for what went on here, because it just didn't happen.

*Id.* 400:22-401:2. No finder of fact would conclude that Conrad & Scherer committed a crime or fraud on this Court by its innocent use in another court of an affidavit that contained an incorrect statement in good faith reliance on a fellow law partner.

With respect to Parker Waichman's disclosure, the documents produced by Parker Waichman in April 2014 did not reflect payments actually made to Blanco or El Tigre or Samario. So, this production could not have triggered disclosure.

Nor did Parker Waichman's production of privileged documents to the Special Master in October trigger disclosure. Parker Waichman's privilege log, which identified the documents it would be producing to the Special Master, should not have included any documents regarding payments to Blanco. And, although the "deps in the can" email may be on the privilege log, it is undisputed that <u>no one</u> at Conrad & Scherer knew of that possibility. Collingsworth's unrebutted testimony is that that he did not see the privilege log and that he did not know what documents Parker Waichman had logged. Doc. 391 (Sept. 1, 2015 Hr'g Tr.) 121:23-122:16. And, according to his attached declaration, Mr. Scherer did not become aware that Parker Waichman had produced a privilege log, which he never reviewed, until August 2015. *See* Exhibit 1, ¶ ¶ 8-9. Drummond's argument that Parker Waichman's production to the Special Master of privileged documents prompted Conrad & Scherer to begin correcting and supplementing discovery responses regarding payments to Blanco, El Tigre, and Samario is unsupported by the record and would not lead any fact finder to conclude that Conrad & Scherer committed a crime or fraud.

    **C.**    **Even if the Court concludes that the crime-fraud exception applies with respect to Collingsworth, Conrad & Scherer's privileges and work product in this and other cases, which it owns independently of Collingsworth, do not <u>lose their protection</u>.**

Even if the Court concludes that the crime-fraud exception applies to Collingsworth (which it should not), Conrad & Scherer's privileges and work product in this and other cases are not subject to waiver simply as a result of that finding. As explained below, Collingsworth's actions cannot result in waiver of a privilege belonging to a joint client, Conrad & Scherer, in this case. In addition, Collingsworth's actions cannot result in waiver of privileges belonging to Conrad & Scherer and its clients in other cases. If the Court determines that the crime-fraud exception results in waiver as to Collingsworth's separate communications, it should <u>expressly instruct</u> that it is a limited waiver that does not impact the privileges and work product separately held by Conrad & Scherer.

    **1.**    **Conrad & Scherer's separate communications are not subject to waiver because, as a joint client, it enjoys a separate line of privileged communications with counsel in this case.**

Collingsworth and Conrad & Scherer are each named defendants in this case. It is undisputed that Brad Smith and his law firm represented both defendants. Thus, Collingsworth and Conrad & Scherer were joint clients of Brad Smith and his law firm. That is an important fact for the crime-fraud analysis.

Defendants have not located a single case substantively addressing application of the crime-fraud exception in the particular circumstances presented here. But, certain general principles, combined with a handful of cases that have touched on this topic in fact patterns similar to this one, illustrate that Conrad & Scherer's privileges and work product—which it holds separately from Collingsworth—cannot be pierced based solely on Collingsworth's conduct.

> a. Collingsworth cannot waive any privileges owned by Conrad & <u>Scherer</u>.

It is well established that in a joint-client relationship, one client cannot waive the privilege belonging to another client. The same analysis should apply for crime-fraud purposes, which is a court-imposed waiver of the privilege.

"[T]he question is whether the co-client privilege is subject to a unilateral control rule (either co-client may waive the privilege unilaterally and thus force the other to turn over documents produced during the course of the joint representation to third parties) or a bilateral control rule (both clients must agree to waive the privilege in order for the waiver to take effect). The general answer is bilateral control." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 379 (3d Cir. 2007). As the Third Circuit explained, quoting from the Restatement of the Law Governing Lawyers,

> [I]n the absence of an agreement with co-clients to the contrary, each co-client may waive the privilege with respect to that co-client's own communications with the lawyer, so long as the communication relates only to the communicating and waiving client. One co-client does not have authority to waive the privilege with respect to another co-client's communications to their common lawyer. If a document or other recording embodies communications from two or more co-clients, all those co-clients must join in a waiver, unless a nonwaiving co-client's communication can be redacted from the document.

*Teleglobe*, 493 F.3d at 379 (quoting *Restatement (Third) of the Law Governing Lawyers* § 75 cmt. e.); *see also Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 29 (N.D. Ill. 1980) ("Where two or more persons jointly consult an attorney concerning a mutual concern, 'their confidential communications with the attorney, although known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world . . . .'").

This principle holds true when one joint client is an individual and the other is an entity. "Depending on whether the corporation, the individual, or the two of them is the client, the communication of an individual may remain privileged even if the corporation has waived its

privilege. The converse also applies. Although an individual may have waived the privilege as to himself or herself, the individual may have had no authority to do so on behalf of the corporation." 1 Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 160 (5th ed. 2007) (citing *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124-25 (3d Cir. 1986)).[2]

 As joint clients of the same lawyers, Conrad & Scherer and Collingsworth each had an individual privilege it could assert against waiver by the other. This is true even though Collingsworth had authority to establish privileged communications for the firm because Collingsworth did not have the power, under the principles discussed above, to waive the law firm's privileges merely as a joint client.

Nor could Collingsworth do so as a matter of corporate law, which generally holds that only the manager or persons within the "control group" have authority to waive the privilege on behalf of an entity. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) (noting the parties' agreement "that, for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors"); *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1187 (D. Nev. 2008) (holding that the privilege belongs to the entity and can be waived only by management, such that a former officer suing the company in his individual capacity was not entitled to company documents over the objection of the company).

---

[2] Internal communications between lawyers at Conrad & Scherer relating to this case are also protected. In *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 595-98 (E.D. Pa. 1989), on a motion for partial reconsideration, the court held that a lawyer's internal communications with other members of the firm seeking legal advice would be protected by the attorney-client privilege as long as the communication did not cause of a conflict of interest with the firm's clients.

Mr. Scherer is the sole managing partner of Conrad & Scherer. Exhibit 1, ¶ 3. According to Mr. Scherer, only he has management authority to waive privileges belonging to Conrad & Scherer. *Id.* ¶ 5. He could have delegated that authority to Collingsworth, but he did not—in this or any other case. *Id.* ¶ 6. The Restatement is clear that, notwithstanding the apparent unfairness of allowing an individual like Collingsworth to create privileged communications on behalf of the firm but not to waive the privilege, only the person or persons with managerial control over a company have the authority to waive the privilege. *See Restatement of the Law Governing Lawyers* § 4:25.

Collingsworth could not waive any privilege belonging to Conrad & Scherer because he is both a joint client and had no authority to waive privilege for the firm. Thus, a court-imposed waiver of privilege resulting from the crime-fraud exception based on Collingsworth's conduct likewise should not result in a waiver of Conrad & Scherer's separately owned privilege.

<blockquote>

b.      The few crime-fraud cases that have involved joint clients reflect <u>that a separate analysis must be undertaken as to each client</u>.

</blockquote>

As noted above, Conrad & Scherer has located very few cases providing substantive analysis of the crime-fraud exception in a joint-client scenario—not to mention a scenario where the joint clients are an individual and entity. The cases that exist, however, support Conrad & Scherer's position that its privilege must be assessed separately from Collingsworth's privilege.

In one of the few cases to reach the merits of the crime-fraud analysis in a joint-client scenario, the court in *In re Cutuli*, No. 11–35256–BKC–AJC, 2013 WL 5236711 (Bankr. S.D. Fla. Sept. 16, 2013), held that the crime-fraud exception applied to communications between a lawyer and co-clients represented by the lawyer. But, the court explained that a prior court had determined that <u>both</u> co-clients were participants in the criminal and fraudulent scheme underlying the crime-fraud analysis. *Id.* at *4-*6. Thus, this was not a situation where one co-

client's criminal or fraudulent pursuits negated the privilege separately held by the other co-client.

Other cases reflect important points relevant to the Court's analysis here. In a multi-party crime-fraud analysis, a crime-fraud finding as to one party's communications does not automatically open up all communications that party had on a particular subject with a different party. In *Jones v. Tauber & Balser, P.C.*, 503 B.R. 162, 196 (N.D. Ga.), *modified*, 503 B.R. 510 (N.D. Ga. 2013), for example, the court found that the crime-fraud exception applied to certain communications between a defendant and its counsel in a business transaction. *Id.* at 187-88. But, it refused to find the crime-fraud exception applied to communications between the defendant and its insurer, with whom the court found the defendant had a common-interest relationship. *Id.* at 196 ("Nothing in these documents [reviewed by the court in camera] suggest that communications with CAMICO were made in furtherance of any crime or fraud. Accordingly, the crime-fraud exception does not vitiate any otherwise valid assertions of the attorney-client privilege as to these documents.").

In *In re Richard Roe, Inc.*, 68 F.3d 38 (2d Cir. 1995), the Second Circuit instructed the district court on remand that

> [i]f production is ordered, the court shall specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered, <u>which of the parties asserting claims of privilege possessed a criminal or fraudulent purpose with respect to those documents or communications, and, if appropriate, whether the crime-fraud exception applies to an innocent joint privilege-holder</u>.

*Id.* at 41 (emphasis added).

Conrad & Scherer could not locate any publically-available decision by the district court following remand. But, the Second Circuit's instructions reflect that (1) the privilege analysis must be undertaken as to each party individually, and (2) crime-fraud liability cannot be blindly imputed to an innocent joint privilege-holder.

Finally, in *In re Grand Jury Investigation*, 231 F. App'x 692 (9th Cir. 2007), the court affirmed the district court's determination that a prima facie case of securities fraud had been established against an agent of a company, which the district court also found was subject to the crime-fraud exception, presumably based on the agent's conduct. In remanding the case for the district court to apply the proper standard of the second prong of the crime-fraud test, the Ninth Circuit specifically instructed that if the district court "orders the production of documents or communications in which [the company] purports to hold either an individual or joint privilege, the court shall identify the legal and factual basis for application of the exception." *Id.* at 696. In other words, the court ordered the district court to make a separate finding with respect to the company rather than simply assuming that the agent's conduct could be imputed to the company.

The handful of cases involving the crime-fraud analysis in the joint-client scenario, combined with black-letter law regarding waiver of privilege by joint clients, indicate that Conrad & Scherer is entitled to assert its own privilege even if Collingsworth's privilege is lifted as a result of the crime-fraud exception.

2. **A finding that the crime-fraud exception applies as to either Collingsworth or Conrad & Scherer, or both, does not result in wholesale disclosure of privileged communications or work product in other cases.**

Even if the Court were to conclude that the crime-fraud exception applies, that finding would not warrant wholesale disclosure of privileged communications or work product in other cases.

As a lawyer and law firm, Collingsworth and Conrad & Scherer have separate attorney-client privileges and work-product protections for themselves and the clients they represent in other cases. And, as a party in the Florida state court case, Conrad & Scherer has its own attorney-client privilege and work product protections in that case.

15

If the Court concludes that a particular written communication in this case was in furtherance of an ongoing or contemplated crime or fraud—and, therefore, the attorney-client privilege over that communication is lifted—that same communication may lose its attorney-client protection in any other litigation. But, the same is not true of a written communication Conrad & Scherer may have had with co-counsel on the same topic in another case or with its own counsel in the Florida case. In those instances, the communication—although on the same topic—would not have been <u>in furtherance of</u> the specific crime or fraud identified here. Thus, a finding that certain privileged communications in this case were used in furtherance of a specific crime or fraud would not lift the privilege over communications in another case, unless those communications also were made in furtherance of the specific crime or fraud the Court identifies here.

The analysis is also different with respect to work product, for two reasons. First, disclosure of work product to one adversary does not automatically result in waiver of work product with respect to other adversaries,[3] and the production of some work product does not result in waiver of protection over other work product.[4] If the Court determines that work

---

[3] *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991) ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information."); *Regions Fin. Corp. v. United States*, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at *7 (N.D. Ala. May 8, 2008) ("Waiver occurs when the documents are either made available to an adversary or to a third party that could serve as a conduit to an adversary." (emphasis added)); *Peacock v. Merrill*, No. CA 05-0377BHC, 2008 WL 762103, at *4 (S.D. Ala. Mar. 19, 2008) ("[T]he work-product privilege is not necessarily waived by disclosure to any third party; rather, the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." (emphasis added)).

[4] *See, e.g.*, *Lake Shore Radiator, Inc. v. Radiator Exp. Warehouse*, No. 3:05CV1232 J12MCR, 2007 WL 842989, at *6 (M.D. Fla. Mar. 19, 2007) ("While Plaintiff's production resulted in waiver of the work product doctrine as to the transcripts already produced, it does not result in waiver of the remainder of [Plaintiff's investigator's] files or investigation." (citing *Pittman v. Frazer*, 129 F.3d 983, 987-88 (8th Cir. 1997) (finding that disclosure to an adversary waives work product protection only for the items actually disclosed))); *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 598-99 (S.D. Fla. 2014) ("With work product protected materials, disclosure operates only to waive the protection for the actual material disclosed, not other materials. . . . Due to the sensitive nature of work-product materials and the policy behind maintaining their secrecy, generally

product protection should be waived over documents created or used in furtherance of a crime or fraud in this case—and, therefore, work product is produced to Drummond—that does not mean that Conrad & Scherer loses the right to assert work product with respect to other adversaries, or that all associated work product loses its protection as well.

Second, "[i]n contrast to the attorney-client privilege, the work product privilege belongs to both the client and the attorney, either one of whom may assert it. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994). In other words, if Conrad & Scherer (or Collingsworth) lost its ability to assert work product protection over a document in this case by operation of the crime-fraud exception, and if the document was prepared by or for Brad Smith, for example, Smith would have an independent basis to assert work product over any attempt to seek production of the document in another case.

In *In re Grand Jury Proceedings*, the Fifth Circuit considered "whether a prima facie case of fraud or criminal activity by the *client* will be sufficient to invoke the crime/fraud exception if the party asserting the work product privilege is an innocent attorney." *Id.* at 972. In holding that an innocent attorney may assert work product protection notwithstanding a prima facie showing of criminal conduct by his client, the Fifth Circuit observed that "[n]umerous courts have agreed that, in the specific context of the work product privilege, an innocent attorney may invoke the privilege even if a prima facie case of fraud or criminal activity has been made as to the client. *See United States v. Under Seal (In re Grand Jury Proceedings,*

---

speaking, when work-product protection has been waived, it is limited to the information actually disclosed, not subject matter waiver." (internal citations and quotations omitted)); Corp. Counsel Guide to Attorney-Client, Work-Product & Self-Evaluation Privilege § 6:27 ("[W]aiver as to certain documents should not automatically extend the waiver as to other work-product documents, even if those documents address the same subject matter as the documents already disclosed." (citing *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 159 F.R.D. 307 (D.D.C. 1994))).

*Thursday Special Grand Jury September Term 1991)*, 33 F.3d 342, 349 (4th Cir.1994) ('The record in the case does not indicate that the attorney engaged in ... misconduct ... and, therefore, the attorney may not be said to have waived his right to assert the work product privilege'); *In re Sealed Case,* 676 F.2d 793, 812 (D.C. Cir.1982) (noting that the crime/fraud exception applies '[u]nless the blameless attorney is before the court with an independent claim of privilege.'); *cf. In re Special September 1978 Grand Jury*, 640 F.2d 49, 63 (7th Cir. 1980) (exposing all information—but not mental impressions, conclusions, opinions, or legal theories—that an innocent attorney has collected if the government shows it has 'extraordinary' need for the information); *In re Grand Jury Proceedings,* 604 F.2d 798, 802 n.5 (3d Cir. 1979) ('[T]here may be circumstances in which the attorney, without knowledge of his client's illegal activity, *might* nevertheless properly claim and prevail in asserting a work product privilege.' (emphasis added))." *Id.*

This rationale would apply to innocent clients—*e.g.*, *Balcero* plaintiffs—whose lawyer is alleged to have engaged in a crime or fraud. As explained by the Fifth Circuit in a subsequent decision, work product may be asserted by either an innocent client or innocent lawyer in the face of alleged wrongdoing by the other: "The party intending crime or fraud cannot invoke the work product doctrine, but if the other party did not intend crime or fraud, that party can invoke it." *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). It would also apply as between joint clients—such as Conrad & Scherer and Collingsworth—such that Conrad & Scherer could continue to assert work product claims over materials in this and other cases.

18

## II. CONSIDERATION OF ADDITIONAL CRIME-FRAUD PRINCIPLES RAISED BY THE COURT CONFIRMS THAT NO CRIME-FRAUD FINDING IS WARRANTED AS TO CONRAD & SCHERER AND NO WAIVER OF ITS PRIVILEGES SHOULD OCCUR.

Beyond the issues concerning the separation of Conrad & Scherer and Collingsworth for crime-fraud purposes, consideration of additional crime-fraud principles raised by the Court confirms that a crime-fraud finding is not warranted as to Conrad & Scherer.

### A. Drummond has not made a prima facie showing of a "fraud on the court" by Conrad & Scherer, which is limited to extremely egregious misconduct designed to impede the ability to access an impartial system of justice.

The Court now appears to be considering applying the crime-fraud exception based on a "fraud on the court" theory. Such application would be in appropriate as to Conrad & Scherer because Drummond has not established a prima facie case of fraud on the court by Conrad & Scherer.

A "fraud on the court" is a very specific type of fraud, the threshold for which is extremely high. The Eleventh Circuit has defined fraud on the court as

> embrac[ing] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

*SEC v. ESM Grp., Inc.*, 835 F.2d 270, 273 (11th Cir. 1988) (quoting *Traveler's Indemnity Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985)).

This is an incredibly high standard: "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Patterson v. Lew*, 265 F. App'x 767, 768 (11th Cir. 2008). In fact, the Eleventh Circuit has held that perjury during trial does not constitute fraud on the court. *Id.* (holding, following an allegation of perjury during trial, that

19

"[w]e even declared in that case that perjury does not constitute fraud on the court"). That is because perjury "is the type of fraud which the litigants should discover; it does not prevent a party from gaining access to an impartial system of justice." *ESM Grp.*, 835 F.2d at 273-74. "Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process, . . . those we cannot necessarily expect to be exposed to by the normal adversary process." *Gore*, 761 F.2d at 1552.

After a three-day evidentiary hearing, it is clear that Drummond has not established, and cannot establish, a prima facie case of fraud on the court as to Conrad & Scherer:

- Conrad & Scherer did not know about the assistance payments to El Tigre, Samario, and Blanco until after the October 15, 2014 Order was entered and the new team undertook its investigation.

- Conrad & Scherer did not know that Collingsworth's statements in this case were incorrect until after the October 15, 2014 Order was entered and the new team undertook its investigation.

- Conrad & Scherer did not knowingly submit the incorrect statement included in Collingsworth's affidavit to the Florida state court in September 2014.

- Conrad & Scherer has spent an enormous amount of resources correcting all misrepresentations through discovery supplementation. And, it did so very early in this case—in compliance with the Court's order of October 15, 2014, and before discovery closed, summary judgment motions were due to be filed, or a trial date was set.

- The misrepresentations in this case, which have been corrected, relate to the *number* of witnesses who, or whose family, received assistance payments, and the misrepresentations relate to only three witnesses.

- These misrepresentations did not go to *the* key issue in the case. Instead, the misrepresentations relate to the credibility of the witnesses.

This record cannot support invocation of the crime-fraud exception against Conrad & Scherer based on a fraud on the court, especially where the incorrect statements and incomplete disclosures were completed within the deadline established by the October 15, 2014 Order and long before trial.

In addition, application of the crime-fraud exception under a "fraud on the court" theory that is itself based on discovery violations should be rejected because discovery violations typically do not support the crime-fraud exception.

"Generally, an erroneous judgment made in good faith does not suffice to establish fraudulent intent. Likewise, the crime-fraud exception is not triggered by the mere showing that an attorney has failed to produce certain documents in the course of extensive discovery . . . ." *RCA Corp. v. Data Gen. Corp.*, Civ. A. No. 84-270-JJF, 1986 WL 15684, *2 (D. Del. Oct. 27, 1986) (citations omitted); *see Jinks-Umstead v. England*, 232 F.R.D. 142, 145-46 (D.D.C. 2005) ("This court has not found any precedent, nor has plaintiff provided any, that supports the expansion of the crime-fraud exception to errors made during the discovery process."). This is true even when a party destroyed documents and allegedly provided false interrogatories, knowingly concealed information, and fraudulently induced a settlement. *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 487-88 (D. Del. 2012) (holding that party did not make a prima facie case of crime or fraud despite these actions).

*Latele Television, C.A. v. Telemundo Communications Group, LLC*, No. 12-cv-22539, 2014 WL 5529403 (S.D. Fla. 2014), is instructive for this point. The court held that the failure to produce documents and the making of alleged misstatements about discovery, including the failure of the client and its former law firm to advise a subsequent law firm of the existence of certain documents and transactions at issue, did not support a crime-fraud finding, even though "the alleged discovery misconduct may . . . generate consequences related to other issues, i.e., those at issue in the motion to dismiss." 2014 WL 5529403, at *2.

Conrad & Scherer has not located any cases from within the Eleventh Circuit that base a crime-fraud finding on discovery violations other than the Southern District of Florida's decision

in *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291 (S.D. Fla. 2000).[5] There is a good reason so few cases hold that discovery violations constitute a fraud on the court or discovery fraud sufficient to invoke the crime-fraud exception. Common-law fraud contains several elements: "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Knight v. E.F. Hutton & Co.*, 750 F. Supp. 1109, 1114 (M.D. Fla. 1990); *see also Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003). Mere false statements alone do not constitute fraud—intent to defraud and injury are also required.

The *Gutter* case is easily distinguishable in multiple, important ways, including because all of the elements of common-law fraud were satisfied:

- The misconduct at issue in *Gutter* was massive and egregious—it involved intentional violation of three discovery orders, repeated perjury in an attempt to cover up the results of soil sample tests, concealment of the soil sample tests and misrepresentations regarding the same, and concealment of documents.

- The misconduct at issue occurred in two different cases and was not discovered until <u>after</u> the trial of one case and settlement of the other case.

- The party responsible for the misconduct was sanctioned—after a settlement in one case of originally more than $100 million dollars.

- Two different courts made factual findings establishing the egregiousness of the party's misconduct.

- There was no effort by the offending party to correct its misconduct prior to trial or settlement.

---

[5] *Gutter* cites *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994), for the proposition that the crime-fraud exception can be applied in "complex civil cases." However, *Cox* did not expressly address this question. Instead, it assumed that crime-fraud "may" be applied to the facts in that case. *Id.* at 1416. And, it refused to find the crime-fraud exception applied. *Id.*

In this case, the discovery was corrected in accordance with the deadline established by the October 15, 2014 Order and long before trial. In *Gutter*, on the other hand, the discovery misconduct contained all of the elements of a common-law fraud, including injury because the fraud was not discovered until after trial of one case and after settlement of another. The facts of the *Gutter* case reflect that courts will apply the crime-fraud exception to discovery violations only when such violations are intentional, willful, repeated, and prejudicial to an adjudication on the merits. Otherwise, any discovery violation that includes incomplete disclosures or incorrectness could rise to the level of discovery fraud. For example, the court in *In re Sealed Case*, 754 F.2d 395 (D.C. Cir. 1995), found the crime-fraud exception applied where

> affidavits, based on the personal observations and participation of the affiants, reveal in extraordinary detail a <u>pervasive and systematic scheme</u> to <u>destroy or alter subpoenaed evidence</u>. The affidavits further reveal Synanon's continuing <u>efforts to conceal</u> its wrongdoing before courts in which it was involved in litigation—<u>all with the knowledge and participation of Synanon's legal department</u>. Synanon archivist, Steve Simon, for example, <u>routinely perjured</u> himself in litigation in which Synanon was involved, as did other Synanon officials. The affidavits also show that the computer tape inventory presented by Simon as Exhibit 1 to his November 1981 <u>testimony given in Bernstein had been deliberately falsified</u>.

*Id.* at 400 (emphasis added); *see also Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 298 (E.D. Va. 2004) (finding prima facie case satisfied where the record showed that party "had in effect a <u>document retention program that was conceived and implemented</u> as an integral part of its licensing and litigation strategy . . . <u>to destroy discoverable documents as part of its litigation strategy</u> and the allegedly privileged documents evince that plan. . . ." (emphasis added)).

The record here simply does not support application of the crime-fraud exception based on a "fraud on the court" theory that is itself based on discovery violations.

**B.      Drummond has not produced evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes a prima facie <u>case of a fraud on the court against Conrad & Scherer</u>.**

Not only has Drummond failed to establish a prima face case of fraud on the court or discovery fraud, but it has also failed to satisfy the threshold showing required to obtain in camera review to determine whether a prima facie case has been established. Even if Drummond had made that threshold showing, however, the Court should still decline to exercise its discretion to undertake in camera review for purposes of establishing whether a prima facie case has been made as to Conrad & Scherer.

"[B]efore a district court may engage in in camera review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." *United States v. Zolin*, 491 U.S. 554, 574-75 (1989). This threshold showing to obtain in camera review must be met by using only <u>non-privileged</u> evidence. *See id.* at 573 (finding Fed. R. Evid. 104(a) "establishes that materials that have been determined to be privileged may not be considered in making the preliminary determination of the existence of a privilege"). Even if the threshold showing is made, however, the Court has broad discretion on whether to undertake in camera review. That decision should be made

> in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Zolin*, 491 U.S. at 572.

The Eleventh Circuit considered the crime-fraud exception and the *Zolin* standard for in camera review in *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir.

1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). The plaintiffs in *Cox* argued that the crime-fraud exception applied because the defendant union "made numerous false statements" through its counsel, "as part of an effort to conceal their illegal actions." *Id.* at 1416. The district court refused to permit even in camera review of the communications at issue "because 'there [was] no evidence showing the communication furthered any crime or fraud, or . . . was connected with any crime or fraud.'" *Id.* The Court of Appeals also found "plaintiffs ha[d] failed to produce any evidence that" the communications at issue "furthered or were closely related to an effort on the Union's part to conceal the illegal actions of its negotiators." *Id.* at 1417. The Eleventh Circuit affirmed the district court's refusal "to engage in [a] groundless fishing expedition[], with the district court[] as their unwitting (and perhaps unwilling) agent[]." *Zolin*, 491 U.S. at 571.

As explained above in Part I.B, Drummond's crime-fraud case against Conrad & Scherer is based on innuendo and speculation arising from the "deps in the can" email and Parker Waichman's production of privileged documents to the Special Master. This hardly constitutes "evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." *Zolin*, 491 U.S. at 574-75.

But, even if this innuendo and speculation could give rise to a reasonable belief that in camera review may yield evidence adverse to Conrad & Scherer, the Court should nevertheless decline to exercise its discretion to undertake such an analysis based on the facts and circumstances of this case. The "facts and circumstances" are that Drummond has been arguing for months that it has presented sufficient information to establish the crime-fraud exception with respect to <u>both</u> Collingsworth and Conrad & Scherer. Not once has it argued that in camera review is necessary to establish a prima facie case as to Conrad & Scherer. Further, the Court

appears to be considering the crime-fraud issue for purposes of resolving Drummond's motion for sanctions. But, Drummond itself has acknowledged that determination of the crime-fraud issue should not be necessary to resolve its sanctions motion. Exhibit 2 (Aug. 31, 2015 Ltr. T. Davis to Hon. David R. Proctor). Thus, if Drummond does not believe that piercing the privilege under a crime-fraud analysis as to Conrad & Scherer is necessary for resolving its sanctions motion, neither should the Court.

C.  **If the Court determines that the crime-fraud exception applies, it must then undertake in camera review of the documents and testimony to determine whether they were made "in furtherance of" the specific fraud identified by <u>the Court</u>.**

Even if the Court were to determine that Drummond has made a prima facie showing of a crime or fraud, that would not be the end of the analysis. Instead, the Court would then have to determine whether the second prong of the crime-fraud test is satisfied—that is, whether the documents or communications at issue were made "in furtherance of" the specific crime or fraud identified by the court. *In re Grand Jury (G.J. NO. 87-03-A)*, 845 F.2d 896, 897 (11th Cir. 1988); *United States v. Cleckler*, 265 F. App'x 850, 853 (11th Cir. 2008). The purpose of this factor is to identify "communications that should not be privileged because they were used to further a crime or a fraud." *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1227 (11th Cir. 1987). This inquiry can be divided into two parts: the scope of the second prong, and the process for determining the second prong.

1.  **Scope: Only those communications made "in furtherance of" the specific crime or fraud at issue are subject to disclosure.**

Two guiding principles apply when considering the scope of the second prong of the crime-fraud exception. First, when the crime-fraud exception applies, it "is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena*, 419 F.3d 329, 343 (5th Cir. 2005); *Schroeder*,

842 F.2d at 1226 (requiring as the second element "a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it"). The exception does not apply to communications regarding past or completed crimes or frauds. *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038-41 (2d Cir. 1984) (holding that "[a]dvice sought in furtherance of a future or ongoing fraud is unprivileged; communications with respect to advice as to past or completed frauds are within the privilege"); *In re Fed. Grand Jury Proceedings, 89-10 (MIA)*, 938 F.2d 1578, 1581 (11th Cir. 1991) (holding that "the crime-fraud exception does not operate to remove communications concerning past or completed crimes or frauds from the attorney-client privilege").

The Fifth Circuit applied this principle in *In re Grand Jury Subpoena*. In that case, the district court had compelled "disclosure of all communications between the attorney and his client . . . rather than discrete communications related to a particular issue or limited to particular media." 419 F.3d at 340. The Fifth Circuit rejected the government's argument that the attorney-client and work product privileges simply disappear with a prima facie showing, and found the lower "court's application of the crime-fraud exception was overly broad because it lacked the requisite specificity to reach only communications and documents no longer protected by the attorney-client and work product privileges." *Id.* at 344.

The Fifth Circuit could locate "no case stand[ing] for the proposition that, when a prima facie showing is made . . . the privilege entirely disappears, subjecting everything in connection with that client's representation with that attorney to disclosure." *Id.* Further, drawing on decisions from other circuits, the court determined that "the reach of the crime-fraud exception does not extend to all communications made in the course of the attorney-client relationship, but

rather must be limited to those communications made and documents produced in furtherance of the ongoing or future crime or fraud, no longer protected by the privileges." *Id.* at 344-45.

The second principle is that a communication is not in furtherance of an ongoing crime or fraud if the communication merely reflects evidence of the crime or fraud. In other words, the crime-fraud exception is not a discovery device to obtain communications and information that would relate to a crime or fraud. Instead, in order for a document or communication to be subject to disclosure, it document or communication *itself* must have been in "furtherance of the ongoing or future crime or fraud at issue." *In re Grand Jury Subpoena*, 419 F.3d at 347. *See In re Richard Roe*, 68 F.3d at 40 ("[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud" but rather "applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud." (emphasis in original)); 1 John W. Strong, *McCormick on Evidence* 382 (5th ed. 1999) ("[T]he court must determine that the communication was itself in furtherance of the crime or fraud, not merely that it has the potential of being relevant evidence of criminal or fraudulent activity.").

Applying these principles, the Court can require disclosure only of Conrad & Scherer's privileged communications that furthered a specific crime or fraud that was ongoing or anticipated when the communications were made. For example, if the "fraud" at issue is a fraud on the court based on Collingsworth's incorrect and incomplete statements to the Court in April 2014 and in previous, written filings, then communications Conrad & Scherer had with Collingsworth or its outside counsel in this case in June 2014 would not be "in furtherance of" the completed fraud on the court. Nor would Conrad & Scherer's internal privileged communications or communications with its outside counsel in the Florida state court case. For

these communications to be subject to disclosure, they must have been made "in furtherance of" the alleged fraud on this Court.

### 2.     Process: The process for considering the second prong requires in camera review of documents and testimony.

In order to determine whether a document or communication was itself "in furtherance of" a crime or fraud, the Court must review the document or communication at issue in camera. Otherwise, it would be impossible to establish the requisite relationship to the crime or fraud identified by the Court. In fact, appellate courts have held that district courts' failure to conduct in camera review for purposes of establishing the second prong to be reversible error. *See In re Grand Jury Proceedings #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 255 (4th Cir. 2005) (holding that district court abused its discretion in finding crime-fraud exception without reviewing documents in camera since it could not decide the second factor without conducting in camera review); *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1986) (district court committed plain error by not examining documents in camera).

Further, in order to ensure that any disclosure order possesses "the requisite specificity to reach only communications and documents no longer protected by the attorney-client and work product privileges," *In re Grand Jury Subpoena*, 491 F.3d at 344, this Court must "specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered, [and] which of the parties asserting claims of privilege possessed a criminal or fraudulent purpose with respect to those documents or communications . . . ." *In re Richard Roe*, 68 F.3d at 41 (emphasis added).

Where the privileged information has not been submitted for in camera review as part of the prima facie showing—as is the case with most documents and privileged communications in this case—in camera review of the documents and testimony is required. *See In re Grand Jury*

*(G.J. NO. 87-03-A)*, 845 F.2d at 898 (explaining that the defense and government made in camera proffers of testimony to establish the "in furtherance of" factor after the prima facie showing was conceded by the party opposing the exception).

And, with regard to proffered oral testimony specifically, such testimony cannot be provided until the court "mak[es] a preliminary determination—after an in camera hearing, if necessary—about the kind of answer that would be forthcoming." *In re Feldberg*, 862 F.2d 622, 628 (7th Cir. 1988). Courts have held that *ex parte* in camera review of oral testimony is an important safeguard in the crime-fraud analysis for determining whether the communications at issue were made in furtherance of a crime or fraud. That safeguard should be in place especially where, as here, the crime-fraud exception sought to be applied is based on a prima facie showing of fraud, rather than a statutory crime. *See In re Gen. Motors Corp.*, 153 F.3d 714, 716 (8th Cir. 1998) (directing district court to have *ex parte*, in camera hearing to determine whether the crime-fraud exception applied to certain documents and testimony, and holding that the party seeking to pierce the privilege had no legal right to insist on being present at the in camera review); *United States v. Boender*, 649 F.3d 650, 656 (7th Cir. 2011) (district court had discretion whether to hold adversarial in camera review of proffered testimony, observing that some circumstances may warrant review solely by the court of in camera testimony); *Feldberg*, 862 F.2d at 628 ("The district court could not properly order Feldberg to answer Question 2 without making a preliminary determination—after an in camera hearing, if necessary—about the kind of answer that would be forthcoming.").

Finally, in undertaking the "in furtherance of" analysis, a court must finely parse whether each piece of testimony or each document at issue was used in furtherance of the crime or fraud. It cannot simply decide that *some* communication may relate to *some* crime and then order

disclosure of all communications. In *Tindall v. H&S Homes, LLC*, 757 F. Supp. 2d 1339 (M.D.

Ga. 2011), the court, after concluding its crime fraud analysis, explained that the

> Plaintiff, therefore, may inquire into attorney-client communications only as they are related to the planning or execution of the transition from H & S Homes to the Triangle entities, as described in this Order. Plaintiff may not inquire into communications made after these transactions were carried out, even if those communications concern the possible legal implications of the transactions. Plaintiff also may not inquire into matters unrelated to the planning and execution of these transactions, such as matters related to the defense of this lawsuit or any other lawsuit.

*Id.* at 1365.

Similarly, in *In re Feldberg*, the Seventh Circuit finely parsed between eight different

questions and answers posed to an attorney during a grand jury investigation, determining that

some of them may be subject to the crime fraud exception, while others might not. 862 F.2d at

628; *see also In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643 (8th Cir. 2001) ("The

district court focused only on plaintiffs' threshold showing of fraud. The court then assumed,

without any further showing by plaintiffs, that all contemporaneous attorney-client

communications 'could be construed' as in furtherance of the alleged fraud. This was error.").

**D.      Conrad & Scherer has corrected the misstatements and incomplete disclosures in this case, and Drummond has not suffered any prejudice as to the merits of its case by the misstatements and corrected disclosures.**

Finally, even if Drummond had made the requisite showing (which it has not), the Court

should not apply the crime-fraud exception to Conrad & Scherer because the firm has made

every effort to correct the misstatements and Drummond has not suffered any prejudice in the

prosecution of the merits of this case.

When Conrad & Scherer learned that misstatements may have been made and incorrect

information provided to the Court, it "moved Heaven and Earth" to correct the problem. Doc.

390, at 392:24. Mr. Scherer testified that as soon as he realized there may be a problem, he

"hired the best lawyers and the best team I could find to tell this Court what the facts are as we learned them." *Id.* 392:23-393:1. This included spending "millions of dollars of [his] own money making sure that the Court got every bit of the facts of this case." *Id.* 400:14-16. This process included producing a 14,000 entry privilege log in a matter of a few weeks. *Id.* 403:1-3. According to Mr. Scherer—who has been involved in numerous high profile and complex cases—the discovery supplementation that has occurred in this case is more extensive than in any other case he has ever litigated. *Id.* 405:1-4.

Conrad & Scherer has expended an incredible amount of resources to ensure that the truth regarding payments to witnesses is fully disclosed to the Court and Drummond, and Drummond cannot contend otherwise. Nor can Drummond contend that it has been prejudiced on the merits in the pursuit of its claim in this case. The overall case schedule has been stayed for months, and there is no discovery cut off date. The Court has not set a summary judgment deadline. Merits depositions, including of the witnesses who received assistance payments, have not occurred. There is no trial date. In short, Drummond is not prejudiced in its ability to pursue the merits of this case as a result of any nondisclosure or incorrect statements that were made.

## CONCLUSION

Drummond's crime-fraud motion should be denied in its entirety as to Conrad & Scherer. Furthermore, although the crime-fraud motion should be denied as to Collingsworth as well, if the Court disagrees, it should expressly limit any waiver of privilege or work-product protection to Collingsworth and it should not waive privilege or work-product protection belonging to Conrad & Scherer (whether jointly or individually) in this or any other case.

DATE: September 29, 2015                    Respectfully submitted,

                                            /s/ William T. Paulk
                                            Robert K. Spotswood
                                            Michael T. Sansbury
                                            William T. Paulk
                                            SPOTSWOOD SANSOM & SANSBURY LLC
                                            1819 5th Ave. N.
                                            Suite 1050
                                            Birmingham, AL 35203
                                            Phone (205) 986-3620
                                            Fax (205) 986-3639
                                            rks@spotswoodllc.com
                                            msansbury@spotswoodllc.com
                                            wpaulk@spotswoodllc.com

                                            *Attorneys for Conrad & Scherer, LLP*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on September 29, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

T. Michael Brown
Carly Miller
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
mbrown@babc.com
camiller@babc.com

William Anthony Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE, LLP
P.O. Box 59812
Birmingham, AL 35259
tdavis@starneslaw.com
twells@starneslaw.com
bpresley@starneslaw.com

Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G Street NW, Suite 800
Washington, D.C. 20001
Sara@kropf-law.com

W. Percy Badham
Brett A. Ialacci
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Phone: (205) 521-0036
Fax: (205) 521-0037
pbadham@badhambuck.com
bialacci@badhambuck.com

<u>/s/ William T. Paulk</u>
William T. Paulk