FILED

2015 Dec-04  PM 04:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No 2:11-cv-3695-RDP |
| | ) | |
| TERRENCE P. COLLINGSWORTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING VARIOUS THIRD-PARTY SUBPOENAS

Robert K. Spotswood
Michael T. Sansbury
William T. Paulk
SPOTSWOOD SANSOM &
SANSBURY LLC
1819 5th Ave. N.
Suite 1050
Birmingham, AL 35203
Phone (205) 986-3620
Fax (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
wpaulk@spotswoodllc.com

*Attorneys for Conrad & Scherer, LLP*

W. Percy Badham
Brett A. Ialacci
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Phone: (205) 521-0036
Fax: (205) 521-0037
pbadham@badhambuck.com
bialacci@badhambuck.com

*Attorneys for Terrence P. Collingsworth*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

   I.   1st UNITED BANK............................................................................................... 3

   II.   DANIEL KOVALIK. ........................................................................................... 4

   III.  IRA ....................................................................................................................... 9

   IV.  WILLIAM WICHMANN—THE WICHMANN CASE IS UNIQUE: BOTH UNRELATED TO THIS CASE AND FULL OF PRIVILEGED MATERIAL – AND A BROAD SUBPOENA SHOULD NOT APPLY. .............................................. 9

     A.  The Special Master failed to provide any reasoning to support the production of all documents produced in the Broward County case........................................................ 14

       i.  The core issues in the Broward County case involve client grabbing ...................... 14

       ii.  The Broward County case involves the exchange of thousands of privileged documents between attorneys under the doctrine of limited waiver that are completely irrelevant to any issue in Drummond. .................................................... 16

     B.  If the subpoena is not quashed in its entirety, it should be modified and limited, and any confidential documents produced should be subject to the protective order in the Broward County case.................................................................................................. 18

CONCLUSION................................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                                                     **Page**

*Adelman v. Adelman,*
    561 So. 2d 671 (Fla. Dist. Ct. App. 1990) ................................................................... 16

*Balcero, et al. v. Drummond Company, Inc., et al.,*
    No. 2:09-cv-1041-RDP (N.D. Ala.)………………………………………………………….…5

*Cytodyne Techs., Inc. v. Biogenic Techs., Inc.,*
    216 F.R.D. 533 (M.D. Fla. 2003) ....................................................................................... 7

*Ebert v. C.R. Bard, Inc.,*
    WL 1365889, No. 1:13-MC-277, (M.D. Pa. Apr. 7, 2014) ...................................................... 8

*In re Candor Diamond Corp.,*
    26 B.R. 847 (Bankr. S.D.N.Y. 1983) ..................................................................................... 7

*Paradise Divers v. Upmal,*
    943 So. 2d 812 (Fla. Dist. Ct. App. 2006) ........................................................................ 16

*Romero, et al. v. Drummond Company, Inc., et al.,*
    No. 7:03-cv-00575-KOB (N.D. Ala.)………………………………………………………..4

## RULES AND REGULATIONS

Fed. R. Civ. P. 26(b)(1).................................................................................................. 10
Fed. R. Civ. P. 45(d) ............................................................................................... 4, 5, 8
Fed. R. Civ. P. 53(f)(2) ................................................................................................. 1

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 53(f)(2) and paragraph 4(c) of the "Stipulated Order Appointing a Special Master," Doc. 129, Defendants file these written objections to the "Report and Recommendation of Special Master Regarding Various Third-Party Subpoenas." Doc. 409 ("R&R").

The R&R pertains to four third-party subpoenas Drummond served between August 2013 and October 2014. The recipients of these subpoenas were 1st United Bank, Daniel Kovalik, International Rights Advocates ("IRA"), and William Wichmann, none of whom are parties in this case. Defendants filed motions to quash each of these subpoenas, and Mr. Kovalik and IRA each filed or served their own objections to their respective subpoenas.

Despite the numerous arguments made by Defendants and the third parties for quashing or narrowing the subpoenas, the Special Master did not, with a few exceptions, resolve any objections in the R&R. Instead, the Special Master simply ordered that documents responsive to the subpoenas be produced under the "Subpoena Procedures" recommended by the Special Master, Doc. 266, and approved by the Court, Doc. 291.

Defendants do not object to the R&R's recommendation that any documents that are produced be produced in accordance with the Subpoena Procedures. Defendants, however, do object to the R&R on the basis that it does not resolve certain facially-obvious problems with the subpoenas that should be resolved prior to document production rather than on a document-by-document basis under the Subpoena Procedures. Instead of reasserting every objection to or argument for quashing the subpoenas, Defendants focus on the following arguments that should be resolved before production of documents consistent with the Subpoena Procedures:

- The time periods covered by the subpoenas should be narrowed.

- The substantive scope of the financial documents Drummond seeks from 1st United Bank—Conrad & Scherer, LLP's (C&S) primary bank—should be narrowed. Moreover, Drummond agreed to limit one of its requests to 1st United, but that limitation is not reflected in the R&R.

- The subpoenas circumvent the Court's restrictions on which documents the parties must include on privilege logs. Those restrictions are clearly set out in the Court's October 15, 2014 Order.

- The subpoenas to Daniel Kovalik, International Rights Advocates (IRA), and William Wichmann seek privileged documents belonging to Defendants in violation of Rule 45.

- The subpoenas to Daniel Kovalik and IRA are so broadly worded as to require new document searches and review efforts that would be complex, time-consuming, and costly. Drummond made no effort to comply with its obligation to reduce the burden on these non-parties by serving narrow requests.

- The R&R states that Daniel Kovalik did not "file[]" any motions or objections to Drummond's subpoena, but it omits any mention of the objections he served on Drummond.

- The subpoena to William Wichmann seeks all documents and other information produced in Florida state court litigation between Wichmann and C&S. That case involves allegations of client-grabbing and breaches of fiduciary duty related to cases and clients wholly unrelated to Drummond or the issues in this case.

- Because the *Wichmann* litigation is between a law firm and former lawyer in that firm, it inherently has involved the production of numerous privileged and work product documents, which were exchanged by the parties under Florida's limited waiver rule and pursuant to a protective order in that case.

- Despite the clear irrelevancy to this case of many of the documents sought by Drummond's subpoena, the Special Master did not in any way narrow or limit the scope of Drummond's subpoena to Wichmann.

- The Court should, at a minimum, narrow the Wichmann subpoena to focus only on the issues that are relevant to this case, and it must not allow wholesale production of privileged and work product documents between a law firm and a former lawyer involving issues unrelated to this case.

These issues, among others, are discussed below as they relate to each of the subpoenas.

2

## ARGUMENT

### I.    1st UNITED BANK

1st United Bank (n/k/a Valley National Bank) is C&S's principal bank. As a result, it possesses an enormous amount of financial information concerning C&S, the large majority of which is entirely irrelevant to this lawsuit and, for obvious reasons, very sensitive. Accordingly, the Special Master's R&R that 1st United Bank produce documents responsive to Drummond's subpoena with just one modification (a slightly shortened time period) should be rejected and instead modified in three ways.

First, the applicable time period should be narrowed beyond what the Special Master recommended. Drummond previously offered to limit the scope of the subpoena to January 1, 2006, to December 31, 2012. Ex. 1 (Oct. 28, 2015 W. Paulk Ltr. to T. Wells), at 1. But, when Defendants recently requested that Drummond reaffirm these limits, Drummond refused. Ex. 2 (Oct. 28, 2015 T. Wells Ltr. to W. Paulk) at 1. Instead, Drummond agreed only to amend the period "to be from January 1, 2006 to the present." *Id.* By the "present," Drummond presumably means the date of its letter agreeing to the date restriction—October 28, 2015. The R&R quotes Drummond's letter in recommending a time period from "January 1, 2006 to the present." R&R ¶ 15.

The time period should be limited to January 1, 2006, to December 31, 2012. Had Defendants' motion to quash been resolved promptly after it was filed in May 2014, 1st United Bank would not be faced with producing documents for an additional three years beyond what Drummond originally agreed to. In addition, as discussed further below, to the extent 1st United Bank produces any privileged or work-product protected documents, requiring Defendants to log documents dated after December 31, 2012, is inconsistent with the Court's October 15, 2014 Order on Privilege Logs, Doc. 151.

3

Second, several requests are patently overbroad in that they request information certain information about "**any** person or entity in Colombia or Panama." Ex. 3 (1st United Bank subpoena), RFPs 1 & 2; *see also id.* at RFPs 3, 7, 10 (requesting certain information concerning "any individual or entity in Colombia or Panama").[1] Defendants proposed narrowing those five requests to documents relating to a specific (yet still lengthy) list of individuals and entities. Ex. 1, at 1-2. Drummond refused. Ex. 2, at 1-2. Providing 1st United Bank with a specific list of persons and entities, rather than broadly seeking information about any person and entity in two countries, would help focus the subpoena on relevant information and reduce the burden on 1st United Bank, which Drummond has an obligation to do. *See* Fed. R. Civ. P. 45(d)(1) (requiring party serving a non-party subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

Third, Defendants requested that Drummond agree to limit RFP 9 "to transfers or transactions relating to Colombia or Panama." Ex. 1, at 2. Drummond agreed to limit "this request to transfers or transactions relating to Colombia, Panama, Spain, France, or the Netherlands." Ex. 2, at 2. Thus, at a minimum, this limitation should be should be adopted by the Court and the subpoena revised accordingly.

## II.   DANIEL KOVALIK.

Daniel Kovalik and Mr. Collingsworth served as co-counsel together during the entirety of the *Romero et al. v. Drummond Company, Inc., et al.*, No. 7:03-cv-00575-KOB (N.D. Ala.), litigation, from the filing in 2002, until the appeal concluded in 2008. Drummond served a subpoena on Mr. Kovalik on or about August 16, 2013. Ex. 4 (Kovalik subpoena). The R&R as it relates to this subpoena should be rejected for five reasons.

---

[1] All emphasis is added unless otherwise noted.

4

First, the R&R could mistakenly be read to suggest that Mr. Kovalik did not object in any way to the subpoena. R&R ¶ 22 ("Kovalik has not filed any motions or objections related to this subpoena."). Although Kovalik did not "file" any objections with any court, he did serve Drummond with objections to the subpoena. Ex. 5 (Aug. 22, 2013 Objections from Kovalik to Drummond). Accordingly, the above-quoted sentence from paragraph 22 of the R&R should be replaced with the following:

> While Kovalik has not filed any motions or objections related to this subpoena, he did serve Drummond with written objections on August 22, 2013. In those objections, he objected to the subpoena as causing undue burden and expense, as exceeding the scope of discovery in this case, and as being so broad that it would require the production of privileged information. Kovalik also made specific objections to certain requests.

Second, the R&R recommends that the subpoena cover the time period from "January 1, 2006 to the present." R&R ¶ 23. Defendants asked Drummond to agree to limit the time period to January 1, 2009, to December 31, 2012. Ex. 1, at 2. In refusing, Drummond maintained that "Mr. Kovalik obtained a declaration from Garcia in prison *in 2007*" and that he worked on the *Balcero* case *in 2013*. Ex. 2, at 2. Thus, even by Drummond's own calculation, the time period should be January 1, 2007, to December 31, 2013. Yet the Special Master recommended that the time period be expanded two years beyond this. The shorter period is appropriate given Drummond's obligation to minimize the burden on Mr. Kovalik. *See* Fed. R. Civ. P. 45(d)(1).

Third, unrestricted enforcement of the subpoena would be an end-run around the Court's limitations on what documents must be logged by the parties. Drummond should not be allowed to use its third-party subpoenas to have non-parties log certain categories documents that Drummond cannot force Defendants to log.

Through this and the other three subpoenas, Drummond seeks to require non-parties to produce or log documents post-dating the Court-ordered January 1, 2013 cut-off for privilege

5

logs. The Court could not have been clearer in imposing this cut-off: ***"Neither Party is required to include in its privilege log any document, regardless of the subject matter, if that document is dated on or after January 1, 2013."*** October 15, 2014 Order, Doc. 151, at 3. It is no answer that the Order only applies to "parties," and not to non-parties. Drawing that distinction only illustrates the unfairness of Drummond forcing non-parties to review and log documents for a period during which it cannot force Defendants to log. Further, under the Subpoena Procedures, Defendants (as parties) will be obligated to log documents produced by Mr. Kovalik and other non-parties outside of this time frame.

Drummond's subpoena violates other aspects of the Court's Order on Privilege Logs. For example, the subpoena would require Mr. Kovalik to log certain internal communications and work product regarding Drummond-related litigation that the Court specifically excluded from the logging requirement. The Court ruled that the parties ***"are NOT required to include in their respective privilege logs all internal communications from all of the Drummond-related litigation, nor are they required to include all attorney work product from all of the Drummond-related litigation."*** Doc. 151 at 4. It then set forth three exceptions to this exclusion. *Id.*

Drummond's subpoena, however, seeks documents that fall within this exclusion but not any of the exceptions. For example, Drummond's subpoena seeks documents relating to the anticipated or actual testimony of "individuals incarcerated in Colombia." Ex. 4, RFPs 17 & 18. But, the Court's Order only requires logging of internal communications, work-product, and attorney-client communications concerning the testimony or proposed testimony of "Colombian witnesses," which is defined as "any person claiming to have knowledge of Drummond's alleged collaboration with paramilitaries . . . ." Doc. 151 at 4 & n.1. Thus, Drummond's subpoena would

6

require Mr. Kovalik, and then the Defendants, to log communications and work product regarding persons in Colombia who have nothing to do with the cases against Drummond.

Similarly, Drummond's subpoena contains requests for documents relating or referring to payments to or request for payments to any individual, or the family of any individual, who has or is believed to have connections to Colombian paramilitaries. Ex. 4, RFPs 7-10. Logging all privileged documents responsive to these requests is a much broader logging obligation than the one required under the Court's Order. *See* Doc. 151 at 4.

In short, Drummond is trying to use its third-party subpoenas as a way to get privilege logs containing two categories of documents that it cannot get from Defendants. Allowing Drummond to seek more expansive discovery from third-parties than it could seek from Defendants turns basic principles of discovery on their head and should not be allowed. *See Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003); *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (Bankr. S.D.N.Y. 1983) ("Restrictions on discovery may be broader where a nonparty is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, and expense of disclosure of confidential information."). If Drummond is unhappy with the Order limiting the scope of privilege logs, the proper course of action would be for it to ask the Court to modify it. Yet Drummond has not done so in the 13-plus months since the Order was entered.

Fourth, the document requests are so overbroad that they would require production of an inordinate amount of privileged and work-product protected materials. Nearly every one of the thirty eight document requests begins with the phrase "[a]ny and all documents" or "[a]ny and all communications . . . ." *See generally* Ex. 4. Although requests such as these may, in some circumstances, be appropriate when directed toward truly neutral, non-party witnesses, they are

not appropriate when directed to Mr. Kovalik, who is a lawyer and was co-counsel with Mr. Collingsworth in *Romero*. Because of Mr. Kovalik's co-counsel relationship with Mr. Collingsworth, he likely possesses many privileged or work-product protected documents. In fact, Mr. Kovalik objected to the subpoena on this very basis. *See* Ex. 5, at 3 ("Requests 7- 10 would require production of documents protected by attorney-client privilege and/or the work product doctrine, such as documents that discuss representation provided in other matters or that describe counsel's understanding of the relevance of information known to particular witnesses or potential witnesses.").

Although the Subpoena Procedures provide a process for a non-party, and party, to log privileged documents, those procedures should not be construed as permitting Drummond to enforce overly broad requests that, given the co-counsel relationship between Mr. Kovalik and Mr. Collingsworth, essentially seeks categorically privileged documents. For this reason, the subpoena should be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (courts "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter"); *Ebert v. C.R. Bard, Inc.*, No. 1:13-MC-277, 2014 WL 1365889, at *3 (M.D. Pa. Apr. 7, 2014) ("quashing the subpoena is appropriate because it requires the disclosure of privileged and confidential information").

Finally, due to the broadly-worded requests described above, the subpoena seeks clearly irrelevant information and is extremely overbroad. As but one example, requests 17 and 18 seek all documents relating to the anticipated or actual testimony of "individuals incarcerated in Colombia." Ex. 4, RFPs 17 & 18. Similarly, requests 7-10 seek information about persons that have, or are believed to have, connection to Colombian paramilitaries. *Id.*, RFPs 7-10. At a minimum, these requests should be limited to persons claiming to have knowledge of

Drummond's alleged collaboration with the AUC, which is how the Court defined "Colombian witnesses" in its October 15, 2014 Order. As written, these requests encompass witnesses who may not have any knowledge of Drummond's alleged collaboration with the AUC, including witnesses from other Colombian-based cases that Defendants have litigated.

## III.    IRA

IRA has filed its own objections to the R&R, *see* Doc. 414, and Defendants adopt and incorporate those objections by reference. Defendants do not object to the R&R's recommendation that IRA produce a list of documents that Defendants have already produced and logged in lieu of having to re-produce and re-log those same documents. R&R ¶ 31.

In summary, the R&R should not be adopted for many of the same reasons discussed above. The R&R does not limit the time period for the subpoena to a reasonable, and relevant, time period. The subpoena, if enforced as is, would be an end-run around the Court's limitations on what documents must be logged by the parties. The subpoena improperly targets categorically privileged documents. Finally, the subpoena is so broadly-worded as to require new document search and review efforts that would be complex, time-consuming, and costly.

## IV.    WILLIAM WICHMANN—THE WICHMANN CASE IS UNIQUE: BOTH UNRELATED TO THIS CASE AND FULL OF PRIVILEGED MATERIAL – AND A BROAD SUBPOENA SHOULD NOT APPLY.

Drummond's subpoena to William Wichmann – asking for virtually everything in an unrelated lawsuit pending in Broward County, Florida – is a classic example of asking for far too much for the purposes at hand – and causing C&S to incur excessive costs:

- Judge Lynch in the Broward County lawsuit filed by Conrad & Scherer against Wichmann has already rejected a much narrower subpoena served by Dole as being overly broad. *See* Ex. 6 (Order Granting Motion to Quash Dole Food Company Inc.'s Subpoena to William J. Wichmann).

- The reason is simple: the *Wichmann* case in Broward County has nothing to do with the *Drummond* or *Dole* matters, and there are only some very peripheral documents related to witness issues in the *Dole*, *Drummond*, and *Chiquita* cases.

- The only real concern in this case is issues of witness assistance payments by Mr. Collingsworth.

- Even Dole recently narrowed it subpoena for documents Wichmann obtained in the Broward County lawsuit to include only documents relating to witness assistance payments and alleged drafts of questions and answers relating to witness testimony. *See* Ex. 7 (Dole's Subpoena for Documents and Videotaped Deposition).

- Wichmann has already submitted for pre-review 100 documents in response to Dole's narrowed subpoena – 14 of which C&S is protecting as privileged. *See* Ex. 8 (C&S Amended Privilege Log).

- The issue of witness assistance payments did not come up in the five years between the filing of the Broward County case in 2009 and April-May 2014 when Wichmann first asked for Drummond-related discovery on witness assistance payments.

- There is  good reason why: the Broward County case dealt with Wichmann suddenly and secretly leaving C&S in February 2009 with over 100 valuable *Engle* tobacco case files and some *Chiquita* files he had himself developed – without any consent of clients or the following of partnership procedures. *See* Ex. 9 (Broward County Fourth Amended Complaint (corrected)).

- The spirit of keeping discovery focused is clearly embodied in the new Federal Rules of Civil Procedure, which make clear discovery is confined to matters (i) "relevant to any party's claim or defense" and (ii) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2015).

- But even under the former rules, the discovery sought should not be overly burdensome, and the vast lion's share of documents produced in the *Wichmann* case are totally irrelevant to the issues in Drummond.

Bottom line:  Drummond's subpoena to Wichmann clearly does not take a targeted focus.

Unlike Dole's subpoena, much of the discovery and deposition materials sought by Drummond

is not only totally unrelated to any issue in this case, but involves privileged communications

between the lawyers to this dispute – creating the need for extensive privilege logs on material

that is not relevant if Drummond's subpoena is not narrowed.

The facts of the *Wichmann* case underscore this:

- Wichmann secretly grabbed over 100 valuable *Engle* Tobacco files in February 2009, right after the first case in Broward County was won by another attorney. *See* Ex. 9 (Broward County Fourth Amended Complaint).

- Wichmann did not obtain client consent beforehand, nor did he obtain proper consent afterwards. Wichmann also took some *Chiquita* cases which he personally – not Mr. Collingsworth – had developed.

- This was long before the key witness assistance payments at issue in this case had even occurred.

- Wichmann later dropped his representation of the 100 tobacco cases – leaving the clients in a total lurch. *See* Ex. 10 (Wichmann Motion for Withdrawal and Substitution of Counsel).

- The Florida court has already denied two summary judgment motions brought by Wichmann and has allowed a punitive damages allegation to proceed against him. *See* Ex. 11 (Order Denying Motion for Partial Summary Judgment); Ex. 12 (Order Granting Plaintiff's Motion to Amend to Add Claim for Punitive Damages).

- Wichmann's own lawyer has been disqualified by Judge Lynch for hiring C&S's legal assistant who worked on the case against Wichmann. *See* Ex. 13 (Order Granting Disqualification).

- There are highly confidential and protected health records, relating to *Engle* tobacco clients, and references to how those clients are trying their case against tobacco companies. This is all far afield from any issues in this case.

In summary, the case against Wichmann is a totally separate lawsuit. The issues are entirely different. Drummond's subpoena to Wichmann should be quashed, as Dole's subpoena to Wichmann was, and resubmitted in a much more focused manner.

For the above reasons, the Special Master's recommendation that the Motion to Quash be denied in its entirety should be rejected. Drummond should resubmit a narrower subpoena, or this Court should narrow the requests on its own.

The overbreadth of the Drummond subpoena cannot be overstated:

- The subpoena expressly requires production of all documents produced to or by Wichmann in *Conrad & Scherer, LLP v. William J. Wichmann, et al.*, Case No.

11

09-011600 (05) in the Seventeenth Judicial Circuit in and for Broward County, Florida (the "Broward County"). *See* Ex. 14 (Wichmann subpoena), RFP 1.

- The subpoena also seeks all deposition transcripts and privilege logs from the Broward County suit. *Id.*, RFPs 2 and 3.

- The Broward County suit has been pending for almost six years during which the parties exchanged tens of thousands of pages of privileged communications, work product, and confidential documents.[2]

- The Broward County suit involves claims of egregious breaches of fiduciary duty and client grabbing by Wichmann involving over 200 cases, including 140 *Engle* progeny tobacco cases. The remaining stolen files were Chiquita "banana cases" Wichmann handled while at C&S.

- The core issues in the Broward County case have absolutely nothing to do with Terry Collingsworth or witness payments.

- The only reason Wichmann has any documents in his possession responsive to Drummond's subpoena is because they were produced to him in the Broward County suit or he received them on behalf of C&S clients while a partner at C&S.

- The documents responsive to Drummond's subpoena in his possession include:

  o Work product and attorney-client communications produced to or by Wichmann in the Broward County suit related to the theft of the *Engle* Tobacco client files and *Chiquita* "Banana" case files at issue;

  o Confidential documents that were produced to Wichmann in the Broward County suit by C&S and marked Confidential or Highly Confidential pursuant to the Protective Order entered by Judge Lynch in the Broward County case on October 30, 2014. The documents marked confidential include *Engle* Tobacco client files containing medical records and other personal information and C&S's confidential financial and business information.

  o Work product and/or attorney-client communications which came into Wichmann's possession through his representation of clients at C&S prior to his departure from the firm, or which came into his possession as cooperating counsel with C&S and other counsel in the Chiquita litigation.

---

[2] Not once during the first five years of discovery in the Broward County case did Wichmann ever claim he left because he suspected Mr. Collingsworth of making illegal payments to witnesses. In fact, in Wichmann's most recently-filed answer, there is no mention of witness assistance payments or any allegations that his departure from the firm was in any way related to witness payments. *See* Ex. 15 (Wichmann Answer to Third Amended Complaint). This position was concocted and first raised only after Wichmann learned about the allegation in this case in early 2014.

- Like the documents, many of the deposition transcripts are designated confidential and have no discussion of Terry Collingsworth, witness payments, or Drummond.

- All material unrelated to witness assistance payments or Mr. Collingsworth should not be subject to any subpoena. It will result in unnecessary and irrelevant entries on privilege logs.

- Furthermore, the material produced should be subject to the Broward County Confidentiality Order – because this not only involves privileged issues, but also health records that must be specially protected (relating to the *Engle* tobacco cases).

As indicated above, the bulk of those documents, and the deposition testimony, relate to Wichmann's departure from the firm and/or the *Engle* progeny tobacco cases and have absolutely no relevance or connection to any issue in this litigation.

The remainder of any responsive documents in his possession he obtained prior to his departure from the firm while representing C&S clients.

As set forth in more detail below, the Special Master performed no analysis and gave no reasoning in support of his ruling denying the Motion to Quash. Had he done so, he would have found the subpoena overbroad. For that reason alone, the R&R should be rejected and the Motion to Quash granted.

In the alternative, the Special Master's ruling should be modified to grant the Motion to Quash in part as to requests 1-3 and protect from discovery any documents or deposition testimony unrelated to the topics in requests 4-8.

The Drummond subpoena on Wichmann does include several other requests that while narrower, almost certainly include attorney work product in their scope. Those requests include:

- Request 4, which seeks documents created prior to Mr. Collingsworth joining C&S that reference or relate to Mr. Collingsworth.

- Request 5, which seeks communications with Mr. Collingsworth or any C&S employee that relate to payments to witnesses or Colombian paramilitaries, or any alleged unethical or illegal conduct by Mr. Collingsworth.

13

- Request 6, which seeks all documents relating to the employment or compensation of any witness or Colombian paramilitary by C&S, Mr. Collingsworth, IRAdvocates and/or International Labor Rights Fund.

- Request 7, which seeks all communications with Mr. Collingsworth or any C&S employee or shareholder regarding contingency fee agreements with any Colombian criminal lawyer, including but not limited to Ivan Otero; and

- Request 8, which seeks communications with Collingsworth and/or C&S relating to Llanos Oil or the Bilderbeeks.

If requests 4-8 are enforced, documents responsive to these requests should be produced to the Subpoena Procedures.

### A. The Special Master failed to provide any reasoning to support the production of all documents produced in the Broward County case.

The Special Master's recommendation is void of any reasoning, analysis or explanation for denying the Motion to Quash. There is not even any mention or acknowledgment by the Special Master that Defendants asserted the subpoena was overbroad. Instead, according to the Special Master "Defendants asserted that the subpoena served by Plaintiff seeks attorney work product and other privileged information and that it seeks irrelevant and confidential information." R&R ¶ 35. A proper analysis would have established the overbreadth of the subpoena, focused on the nature of the underlying dispute in the Broward County case, and resulted in a recommendation quashing the subpoena and restricting any production to Requests 4-8.

### i. The core issues in the Broward County case involve client grabbing.

Request Nos. 1-3 relate entirely to the Broward County Case. Request No. l, in particular, requires Wichmann to produce "[a]ll documents produced by any party in the litigation."

The Special Master's recommendation provides no analysis or reasoning why all documents produced in the Broward County case should be produced here. In the Broward

14

County case, C&S sued its former contract partner Wichmann, and his referring counsel Michael Fitzgerald, for breaches of fiduciary duty, fraud, and conspiracy, among other causes of action, for secretly taking over 200 of C&S's mass tort case files in a massive client-grabbing scheme. Over 140 of those cases were *Engle* progeny tobacco cases that have no relationship whatsoever to Terry Collingsworth, Colombia, or any matter at issue in the Drummond case.

The remaining files taken by Wichmann were *Chiquita* "Banana cases" that Wichmann was handling for the C&S. These were for clients unrelated to Mr. Collingsworth and were not cases managed by Mr. Collingsworth.

Wichmann's client grabbing was egregious, as outlined in the Fourth Amended Complaint. *See* Ex. 9.

- Wichmann secretly stole all the files before ever terminating his partnership agreement or getting client consent.

- Wichmann stole the files on the weekend before his departure and put them in the trunk of his car.

- On the day he sent his notice of termination, Wichmann used the C&S law firm computer network system to draft a number of "notices of change of law firm" for *Engle* Tobacco and *Chiquita* banana cases – drafting these before he gave notice to the firm. Those later had to be withdrawn as improper.

- Wichmann immediately filed these on February 23, the same morning he delivered his resignation letter.

- Wichmann – with the assistance of referring counsel – secretly sent a letter to over 100 tobacco clients that was false, disparaging, and totally misrepresented the circumstances to justify the client-grabbing and gain the clients' consent. C&S was given no notice of the letters. The letter included:

  - False statements that the clients had never retained C&S;

  - False statements that the client fee agreement was directly with defendant Wichmann, not C&S;

In carrying out this scheme, Wichmann blatantly ignored both Florida state bar rules and Wichmann's partnership agreement with C&S:

15

- Wichmann violated Rule 4-5.8(c)(l) of the Rules Regulating the Florida Bar governing required conduct when departing a firm (and attempting to take cases with him).

- Wichmann and Fitzgerald violated the rules required to sign up a client under a new co-counsel arrangement when the arrangement changed.

- Wichmann breached Section 8.2 of the Partnership Agreement with C&S, which required that he work full time for the law firm and perform as an attorney "<u>on behalf of the partnership</u>."

- Wichmann also violated the general standards of conduct required by Florida Statute 620.8404. These were specifically incorporated into his partnership agreement and required him to refrain from competing with the law firm for business and required him to discharge all of his duties consistently with the obligations of good faith and fair dealing.

ii. <u>The Broward County case involves the exchange of thousands of privileged documents between attorneys under the doctrine of limited waiver that are completely irrelevant to any issue in Drummond.</u>

Unsurprisingly, given the nature of the allegations in the Broward County case, the vast majority of the discovery in that case is attorney-client communications and attorney work product between Conrad & Scherer and the attorney defendants. The documents were exchanged under the Florida doctrine of limited waiver, which applies when there is a dispute between parties to a lawsuit that involves privileged materials. Under Florida law, waiver is limited solely to the parties to the lawsuit and to the documents at issue. *See Adelman v. Adelman*, 561 So. 2d 671, 673 (Fla. Dist. Ct. App. 1990) (where privileged information was used in an attorney malpractice case, the court held that "Mrs. Adelman, in suing her ex-lawyer for legal malpractice, has not waived her attorney-client privilege with this lawyer as to the entire world…"); *Paradise Divers v. Upmal*, 943 So. 2d 812, 814 (Fla. Dist. Ct. App. 2006) (a "party can make a limited waiver of its attorney-client or work product privileges…The limited waiver made by [petitioner] on the subject of maintenance and cure does not constitute a waiver of the

attorney-client and work product objections made to protected investigative materials, mental impressions, or communications concerning other counts of the complaint.").

Further, given the bulk of the files at issue involved *Engle* Tobacco claims, many of the documents exchanged included personal and medical files related to those plaintiffs. The files also included copies of client information and files that Wichmann had been storing on his personal computer without the knowledge or consent of C&S. *See* Ex. 16 (Aff. of William R. Scherer, attached as Exhibit C to Defendants' Motion to Quash Wichmann Subpoena), ¶ 19.

There is no possibility that production of documents relating to the *Engle* Tobacco plaintiffs or other clients with no relationship to Mr. Collingsworth can lead to the discovery of relevant and admissible evidence in this case. Terry Collingsworth had absolutely no involvement in the *Engle* Tobacco cases, and "witness payments" in Colombia are not at issue.

The only thing the production of those documents will accomplish is to further increase the cost and time necessary for the Special Master and C&S sort through all of the documents to establish they are irrelevant or to establish privilege.

The same is true regarding to the deposition transcripts and the privilege logs from the Broward County case. Most of the testimony in the transcripts, and documents on the Broward County case privilege logs[3], have nothing to do with any matter at issue in this suit and there is very little discussion of Mr. Collingsworth. But, to the extent there is relevant testimony or documents on the privilege log, the appropriate solution is to order that only the relevant portions be produced.

---

[3] C&S has informed the Broward County court that its privilege logs and document production will need to be revised in light of additional materials discovered in this case. But, the provision of updated privilege logs and document production has been on hold pending an appeal related to the disqualification of Mr. Wichmann's counsel for hiring a C&S paralegal that had a significant role helping outside counsel in the case against Wichmann.

**B.      If the subpoena is not quashed in its entirety, it should be modified and limited, and any confidential documents produced should be subject to the protective order in the Broward County case.**

If any production is required, it should be limited to documents relevant to the specific topics in Requests 4-8 referencing Mr. Collingsworth's reputation or character, payments to witnesses, or any alleged unethical or illegal conduct by Mr. Collingsworth. And, production should be made pursuant to the Subpoena Procedures so that Defendants will have an opportunity to protect against improper disclosure of privilege information to Drummond.

In addition, to the extent any confidential documents are produced, the Court should order that their production is subject to and governed by the protective order in the Broward County case. *See* Ex. 17 (Protective Order in *Wichmann* case). Defendants previously requested that Drummond agree to be bound by that protective order as a condition to Wichmann producing documents. *See* Ex. 18 (Nov. 16, 2015 W. Paulk Ltr. to T. Wells). Drummond did not respond to this request. The Special Master noted the existence of the protective order, but did not clearly recommend that confidential documents produced by Wichmann be subject to that order. R&R, at 8 n.3. The Court should make clear that the protective order in the Broward County case governs Drummond's use of any confidential documents produced by Wichmann.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court reject those portions of the Special Master's R&R discussed herein. Defendants also request that the Court adopt that portion of the Special Master's R&R requiring that documents ultimately ordered to be produced are produced in accordance with the Subpoena Procedures, Doc. 266.

DATE: December 4, 2015                    Respectfully submitted,

/s/ William T. Paulk
Robert K. Spotswood
Michael T. Sansbury

18

William T. Paulk
SPOTSWOOD SANSOM & SANSBURY LLC
1819 5th Ave. N., Suite 1050
Birmingham, AL 35203
Phone (205) 986-3620
Fax (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
wpaulk@spotswoodllc.com

*Attorneys for Conrad & Scherer, LLP*

/s/ W. Percy Badham
W. Percy Badham
Brett A. Ialacci
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Phone: (205) 521-0036
Fax: (205) 521-0037
pbadham@badhambuck.com
bialacci@badhambuck.com

*Attorneys for Terrence P. Collingsworth*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Special Master T. Michael Brown
Carly Miller
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
mbrown@babc.com
camiller@babc.com

William Anthony Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL 35259
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G St. NW, Suite 800
Washington, DC 20001
(202) 627-6900


/s/ William T. Paulk
William T. Paulk