FILED
2023 Aug-21 AM 11:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ALABAMA
2                      SOUTHERN DIVISION

3    DRUMMOND COMPANY, INC.,          | CASE NO. 2:11-cv-03695-RDP
                                       |
4             Plaintiff,              |
                                       |
5    v.                                |
                                       |
6    TERRENCE P. COLLINGSWORTH,        |
     individually and as agent of     |
7    Conrad & Scherer, LLP; and CONRAD|
     & SCHERER, LLP,                   |
8                                      |
              Defendants.             |
9    _____ |

10   DRUMMOND COMPANY, INC., and       | CASE NO. 2:15-cv-506-RDP
     DRUMMOND LTD.,                    |
11                                     |
              Plaintiffs,             |
12                                     |
     v.                                |
13                                     |
     TERRENCE P. COLLINGSWORTH,        |
14   individually and as agent of     |
     Conrad & Scherer, LLP;           |
15   International Rights Advocates,   |
     Inc., and Albert van Bilderbeek; |
16   CONRAD & SCHERER, LLP; WILLIAM R. |
     SCHERER, JR.,individually and as |
17   agent of Conrad & Scherer, LLP;  |
     INTERNATIONAL RIGHTS ADVOCATES,   |
18   INC.; IVAN ALFREDO OTERO MENDOZA; |
     FRANCISCO RAMIREZ CUELLAR; and    |
19   ALBERT VAN BILDERBEEK,            |
                                       |
20            Defendants.             |

21          *   *   *   *   *   *   *   *   *

22          **TRANSCRIPT OF TELEPHONE CONFERENCE**

23          *   *   *   *   *   *   *   *   *

24   The proceedings were reported by a stenographic court reporter.
     The transcript was produced using computer-aided transcription.

25

```
 1    APPEARANCES:

 2    SPECIAL MASTER:              T. Michael Brown
      (appearing telephonically)  Bradley Arant Boult Cummings, LLP
 3                                 1819 Fifth Avenue North
                                   P.O. Box 830709
 4                                 Birmingham, Alabama  35283-0709

 5    FOR THE PLAINTIFFS:          H. Thomas Wells, III
      (appearing telephonically)  Benjamin T. Presley
 6                                 William Anthony Davis, III
                                   STARNES DAVIS FLORIE, LLP
 7                                 P.O. Box 598512
                                   Birmingham, Alabama  35259-8512
 8
      FOR THE DEFENDANT            Terrence P. Collingsworth
 9    TERRENCE P. COLLINGSWORTH,   INTERNATIONAL RIGHTS ADVOCATES
      Individually and as agent   621 Maryland Avenue NE
10    of Conrad & Scherer, LLP,    Washington, DC  20002
      International Rights
11    Advocates, Inc., and
      Albert van Bilderbeek;
12    INTERNATIONAL RIGHTS
      ADVOCATES, INC.:
13    (appearing telephonically)

14    FOR THE DEFENDANT CONRAD     Robert K. Spotswood
      & SCHERER, LLP, and          William Thomas Paulk, II
15    WILLIAM R. SCHERER, JR.:     SPOTSWOOD, SANSOM & SANSBURY, LLC
      (appearing telephonically)   505 20th Street North, Suite 700
16                                 Birmingham, Alabama  35203

17    FOR THE DEFENDANT            Greg William Foster
      IVAN ALFREDO OTERO           FOSTER LAW FIRM, PC
18    MENDOZA:                     4220 Cahaba Heights Court, Suite 206
      (appearing telephonically)   Vestavia, Alabama  35243-5733
19
      FOR THE DEFENDANT            Anil A. Mujumdar
20    FRANCISCO RAMIREZ CUELLAR:   DAGNEY JOHNSON LAW GROUP, LLC
      (appearing telephonically)   2170 Highland Avenue S., Suite 250
21                                 Birmingham, Alabama  35205

22

23          BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES

24    DISTRICT JUDGE, at Birmingham, Alabama, on Wednesday, August 16,

25    2023, commencing at 9:03 a.m.
```

```
 1                (Proceedings commenced at 9:03 a.m., telephonically:)

 2                THE COURT:  Hey, this is Judge Proctor.  We're here in

 3      Drummond versus Collingsworth, two cases, 11-cv-3695 and

 4      15-cv-506.  The Court set this for a telephone conference this

 5      morning on a couple of matters that we need to address.

 6                Who's on for Drummond?

 7                MR. WELLS:  Good morning, Your Honor.  Trey Wells, for

 8      Drummond.

 9                THE COURT:  Okay.

10                MR. DAVIS:  Tony Davis, for Drummond, Your Honor.

11                THE COURT:  Thank you.

12                MR. PRESLEY:  And Ben Presley, for Drummond.

13                THE COURT:  All right.  Are you all on the same line?

14                MR. PRESLEY:  We are.

15                THE COURT:  Okay.  Good.  That explains why we only

16      have six lines active, so -- all right.  Who's on for the

17      defendants?

18                MR. COLLINGSWORTH:  Terry Collingsworth is here, Your

19      Honor.  Good morning.

20                THE COURT:  Thank you, Mr. Collingsworth.

21                Who else?

22                MR. PAULK:  Good morning, Judge.  It's William Paulk

23      for Conrad & Scherer and Bill Scherer, and Bob Spotswood's

24      with me as well.

25                THE COURT:  All right.  Thank you.
```

1          MR. FOSTER:  Judge, Greg Foster here, for Ivan Otero.

2          THE COURT:  Okay.

3          MR. MUJUMDAR:  Good morning, Your Honor.  This is a

4  Anil Mujumdar, and I'm on on behalf of Francisco Ramirez.

5          THE COURT:  Okay.

6          MR. BROWN:  Your Honor, Mike Brown on.

7          THE COURT:  Okay.  And I take it Mr. Vanderbilt --

8  van Bilderbeek is not on?

9          (No audible response.)

10          THE COURT:  Okay.  All right.  So the first matter I

11  guess we need to take up is the request for a stay or a

12  continuance of deadlines related to what I understand is now a

13  green light on a trial that will occur in Colombia on criminal

14  charges against certain individuals.  Is that the first thing

15  we need to take up?

16          MR. WELLS:  Yes, sir, that would be fine with us.

17          THE COURT:  And procedurally, can someone explain to

18  me, is this just simply a -- there was a request to dismiss

19  the criminal prosecution that was denied?

20          MR. PAULK:  That is correct, Your Honor.

21          THE COURT:  Okay.

22          MR. WELLS:  No, Your Honor, the --

23          THE COURT:  Go ahead.

24          MR. WELLS:  -- the event that Conrad & Scherer cited

25  in their motion was an appeal on an expert report.

1          THE COURT:  The point, though, is there is not a

2     definitive trial date in that case at this time; correct?

3          MR. WELLS:  Correct, Your Honor.

4          THE COURT:  And what I understand from at least

5     Drummond's contact down there is even if we had a definitive

6     trial date, trials take a long time in Colombia.  Anybody

7     disagree with that?

8          MR. PAULK:  Judge, this is William.  I guess I would

9     say we don't have any independent knowledge today as to

10     whether -- how long that process could take or not, you know.

11     To the extent Drummond's declarant -- the testimony of that

12     declarant is going to weigh heavily in the Court's mind, you

13     know, we'd be happy to present a declaration that may shed

14     some more light on how that process --

15          THE COURT:  Well, what would that say, your

16     declaration?

17          MR. PAULK:  I'm sorry, Judge?

18          THE COURT:  What would your declaration say?  Just

19     make a proffer.

20          MR. PAULK:  Well, I think we would just -- again, like

21     I said, it could be that their declarant is exactly right, but

22     I suspect there could be some more flexibility in how long and

23     how quickly the procedures move forward down there, and we

24     could present a declaration that just may at least better

25     explain how quickly they may move and what the flexibility is

1     in terms of the timeline down there.

2          THE COURT:  But at this point we don't even know when

3     it's going to be set for trial.  We don't know how long the

4     trial would last.  We don't know -- there's a number of

5     things.  Also, they say that Otero has access to the criminal

6     file based upon representing persons who claim to have been

7     damaged.  And what's the response to that?

8          MR. PAULK:  Well, Judge, I guess our response is that

9     it's our understanding that even if Mr. Otero had access to

10    it, given his role down there, that he would not be at liberty

11    to share that information with us, with Conrad & Scherer,

12    which is -- obviously did not have a relationship with Otero

13    and is not involved in the criminal proceedings.  Otherwise,

14    if he could share that information with us, we would expect

15    Drummond to be able to share that information with us, and it

16    has repeatedly maintained that it cannot do so.

17         So we're, I guess, frankly, a little confused as to

18    why the fact that Otero or Collingsworth has that information

19    means that Conrad & Scherer has access to it.  It's our

20    understanding that we would not and could not have access to

21    it.

22         THE COURT:  Well, at this point we don't even know

23    what the scope of the trial -- we don't know who the witnesses

24    are going to be, or do we?

25         MR. PRESLEY:  No, Your Honor.  The parties -- this is

1    Ben Presley, for Drummond.  The parties -- the defense and the

2    prosecution -- do not submit their proposed list of witnesses

3    or documentary evidence until the 15-day period begins, which,

4    as we point out in our motion, has not begun yet.

5           THE COURT:  And it's indeterminate as to when it would

6    begin?

7           MR. PRESLEY:  Yes, Your Honor.

8           THE COURT:  In other words, it's not triggered, it's

9    not -- there's not -- it's not on the horizon at this point.

10   There will have to be some event that schedules that that

11   hasn't transpired yet?

12          MR. PRESLEY:  Correct, Your Honor.

13          THE COURT:  All right.  Right now -- well, let me ask

14   -- so let me ask Drummond this.  You don't have to uncover

15   every rock and look at every syllable of evidence in this case

16   to be ready to defend a summary judgment motion and go to

17   trial; correct?

18          MR. WELLS:  That is correct, Your Honor.

19          THE COURT:  Are you-all -- what's left to be done by

20   you as far as discovery in this case?

21          MR. WELLS:  So we have taken several depositions and

22   we've kind of had to triage that on those we thought we could

23   take before we had all the documents or even most of the

24   documents.  So we've gotten through those.  Mr. Collingsworth

25   was obviously on the back end of the list in terms of wanting

 1    to have all documents to make sure we have backup for answers

 2    we may get that don't necessarily coincide with those

 3    documents.

 4         We have reached out to Mr. Collingsworth on his

 5    deposition and the length of time.  We expect it's going to

 6    need to take more than the typical seven hours.

 7    Mr. Collingsworth has taken a position that we can only ask him

 8    the questions he was instructed not to answer in his sanctions

 9    deposition.  That's something we can discuss in a separate --

10         THE COURT:  Well, look, when we get to depositions and

11    instructions not to answer, we will have a conference.  And

12    there's a good chance we'll have those depositions in my

13    courtroom, because one of the things we're not going to do as

14    we bear down on October 31 is have to come back to retake a

15    deposition because someone refused to answer a question that

16    they should have answered and/or some other development in the

17    case that makes us get back together.  We're going to be

18    efficient in that.

19         So what I would say is, absent a self-incrimination

20    privilege, I can't think of a reason that someone would refuse

21    to answer a question in this case, because the privileges have

22    been waived at least in the subject areas that I think

23    Drummond should stick to in terms of the questions; okay?

24    Now, again, I can put some flesh on those bones, but that's

25    the skeleton right there is that at this point the crime fraud

1    exception has been applied, as it relates to these payments to

2    witnesses; there is no assertion of work product

3    attorney-client privilege.  There may be an -- and I'm not

4    suggesting there should be or will be, but the only thing I

5    can think of in that area would be a self-incrimination

6    privilege.

7            On top of that, if we're just talking about the

8    regular course of what statements were made, I would tell

9    Drummond don't ask about attorney-client privilege as it

10   relates to anything other than payments to witnesses.  And

11   therefore, we wouldn't get into a need to -- an instruction

12   not to answer a question.

13           Am I being oversimplistic here?

14           MR. WELLS:  No, Your Honor.

15           THE COURT:  All right.

16           MR. PAULK:  Judge, I --

17           THE COURT:  So let me go back to my question.  What

18   depositions still need to take place from Drummond?

19   Collingsworth.  Who else?

20           MR. WELLS:  Francisco Ramirez, Ivan Otero, Albert

21   van Bilderbeek.  We've got motions to compel pending on all

22   three of them for the documents that -- we've not gotten

23   barely anything from them.

24           THE COURT:  All right.  So right now my understanding

25   is Ramirez has not cooperated in discovery and has not

1    provided the declaration that would be the last thing we need

2    to depose Gomez; is that right?

3              MS. WAUDBY:  Mancuso.

4              THE COURT:  Mancuso.  Excuse me.

5              MR. PAULK:  That's right, Judge, we don't have a

6    declaration from Mr. Ramirez yet, although I understand from

7    Anil that he's willing to provide one and is in the process of

8    getting one to us.

9              THE COURT:  All right.  Anil, it's time for your guy

10   to get off the stall tactics; okay?

11             MR. MUJUMDAR:  Yes, sir, Your Honor.

12             THE COURT:  All right.  I'm about done with this --

13   these delays.

14             MR. MUJUMDAR:  Yes, sir, Your Honor.

15             THE COURT:  All right.  So what date are we going to

16   get that by?

17             MR. MUJUMDAR:  Your Honor, I was hoping to have it

18   before the hearing today, and I had a communication with the

19   client this morning.  And I do expect we'll have it today.

20   And I'm as much to blame, Your Honor, in this.  There was a --

21   I had the declaration, and there was a minor clerical error,

22   for lack of a better term, in the document.  And I asked that

23   it get resolved and then the communication language.  And I

24   just neglected to send another prompt.  So I expect we'll have

25   it today.

1          THE COURT:  All right.  Tell you what, I want a report

2    from you by tomorrow about where that stands, by tomorrow at

3    4:30 p.m.

4          MR. MUJUMDAR:  Yes, sir, Your Honor.

5          THE COURT:  Okay.  And then that's the last item that

6    we would need to accomplish to take Mancuso's deposition?

7          MR. WELLS:  Yes, sir.

8          THE COURT:  When would we take Mancuso's deposition,

9    if that's accomplished?

10         MR. PAULK:  Judge, we could be ready in the next

11   month, I would say.  Because he is in ICE custody, we've had

12   some difficulty getting ahold of someone that can actually

13   help us over there.  And it could be that we need a court

14   order making him available, much like if he was in prison.  We

15   just haven't been able to get, really, any traction in talking

16   about a schedule with him.

17         THE COURT:  Okay.  All right.  So we're going to look

18   to take him by mid-September, then.  All right.  How about

19   Otero?  Not cooperating with discovery at this point?

20         MR. FOSTER:  Correct, Your Honor.

21         THE COURT:  All right.  Well --

22         MR. FOSTER:  And, Judge, he -- as we have outlined, I

23   mean, he's cooperated as far as providing a declaration with

24   Mancuso, he's provided interrogatory responses, and as far as

25   Requests For Production, only objections up to this point.

1              THE COURT:  Well, it's -- he needs -- look, he's

2       getting real close to getting a default.

3              MR. FOSTER:  Yes, Your Honor.

4              THE COURT:  It's time -- you know, we've been at this

5       for years.  There's no excuse for that.  Now, he may not --

6       you know what?  He may be able to stand on his protest.  Maybe

7       he doesn't like getting sued here.  Maybe he thinks this is an

8       unjust proceeding.  I don't know what he's -- what's in his

9       mind, but he's real close to getting a default at this point.

10             And I'm going to say this.  I want a report from --

11      Mr. Foster, I want a report from you about what outstanding

12      discovery obligations your client is committed to resolving by

13      the end of next week and what the plan is --

14             MR. FOSTER:  Yes, Your Honor.

15             THE COURT:  -- to get that information to Drummond.

16             MR. FOSTER:  Yes, Your Honor.

17             THE COURT:  Okay.  Now, I know there is a request for

18      you-all to go have Mr. Brown, the special master, work with

19      you.  You're not paying for that.  You're not part of that.

20      You know, I want to win the lottery.  Alabama doesn't have a

21      lottery.  It's kind of impossible.  So that's my answer to you

22      is if you're not -- if you weren't willing to participate in

23      the process, you can't go and take advantage of the process;

24      okay?  And I'm not -- that's not a penalty, that's just a

25      reality.

1          So you're going to have to get your client in line to

2     understand that he is at a fork in the road and it's either

3     give the information that it's been -- he's been obligated to

4     give for a substantial period of time now or face the

5     consequences of not doing so.

6          And I'd say the same thing about Mr. Ramirez.  I want

7     to -- I want something on the same deadline from you, Anil,

8     about, okay, what's -- here are the outstanding discovery

9     matters; here's our plan to get that information to Drummond.

10    All right?

11         MR. MUJUMDAR:  Yes, sir, Your Honor.

12         THE COURT:  Okay.  Mr. van Bilderbeek has done more,

13    apparently, to provide documents, although that's a low bar.

14    He's not on the phone.  I'm going to just make it a matter of

15    record, he has an obligation to defend himself in this Court.

16    He's not doing it.  And this whole time zone thing that he

17    brought up last time, I don't know what -- I don't know where

18    he is, because I think he travels some; right?  Isn't that

19    everybody's understanding?

20         MR. COLLINGSWORTH:  This is Collingsworth.  Yeah, he

21    travels a lot.

22         THE COURT:  So he's in different time zones.  It's not

23    my job to predict what time zone he is going to be in to set

24    something.  And, you know, the issue is that he probably -- he

25    has an obligation to defend himself here.  If he doesn't, then

1     he's going to be subject to default.

2          All right.  Mr. Collingsworth, you're the defendant

3     who has honored his obligations and participated in this

4     process.  I appreciate that.  We need to -- so the question

5     is, if we're not going to have depositions of others besides

6     Mancuso, what other depositions besides Mr. Collingsworth are

7     left to be had in this case taken by Drummond?

8          MR. WELLS:  Your Honor, we've had a subpoena

9     outstanding for those documents and depositions for Brad Smith

10    since before the crime fraud hearing.  That one is getting --

11    the special master -- I think it's been sort of put behind all

12    the various crime fraud things the special master has been

13    working through.  So that is one.  We do have the deposition

14    of Christian Levesque --

15          THE COURT:  Of who?

16          MR. WELLS:  -- set for -- Christian Levesque, who is

17    Mr. Collingsworth's co-counsel in --

18          THE COURT:  Well, you have -- you guys have till

19    October 31.  You better get a calendar up on how you're going

20    to take these depositions; right?

21          MR. WELLS:  Yes, Your Honor.

22          THE COURT:  I mean, you're -- you can't, on the one

23    hand, say, Judge, don't continue the deadlines because this

24    trial is indeterminate and we don't know if there's -- and

25    then turn around and say, Well, we're not -- we've got all

1    these depositions to take.  I'm going to hold everybody's feet

2    to the fire on October 31 on both sides.

3           MR. PAULK:  Judge, this is -- Judge, this is William.

4    It was our understanding as part of the meet-and-confer

5    correspondence that Drummond was, in fact, agreeable to an

6    extension of the discovery deadline.  I think where the

7    parties disagree is what are the mechanics of getting that

8    extension in place.  And what Conrad & Scherer asked for was

9    basically a suspension of the discovery deadline for 120 days,

10   basically.  So the clock stops ticking on discovery while we

11   let the Colombian process play out, and then at the end of

12   that 120-day period we would have a better sense of, one, what

13   information has already come out of that case -- it may be

14   highly relevant to the cases before the Court -- and then,

15   two, we would have a better sense, I hope, of how much longer

16   that proceeding is likely to last and when it might end.

17          And then at the end of that 120-day period, we could

18   gather up with the Court again, reassess what discovery has

19   been done, which, as we said in our motion, we're very willing

20   to continue and would plan to do during that period, and

21   figure out what is left, including, you know, what else we

22   might need out of the Colombia proceeding.

23          MR. SPOTSWOOD:  Your Honor, this is Bob Spotswood.  A

24   couple of other things.  The Court's questions primarily have

25   focused on outstanding discovery from Drummond.

1          THE COURT:  Yeah.  I was going to get to you.  Don't

2     worry.

3          MR. SPOTSWOOD:  Okay.  All right.  I'll be quiet,

4     then.

5          THE COURT:  I can only deal with one -- I'm trying to

6     be organized in my conceptual understanding of where we are,

7     so I was starting with --

8          MR. SPOTSWOOD:  Yes, sir.

9          THE COURT:  -- discovery from plaintiff to defendants.

10    I will ask about discovery from defendants back to plaintiff.

11         But look, guys, how -- this amended scheduling order

12    that was entered in April extended discovery essentially for

13    another six months.  What have we done in that six months, in

14    three of the six months or four of the six months?  I didn't

15    extend discovery to October 31 going, Okay, that's

16    aspirational, we'll probably have to continue it again, did I?

17         MR. PAULK:  Judge, I don't have it in front of me.  I

18    think that order was in April of 2022.

19         THE COURT:  Yeah, that's right.  That's right.

20         MR. PAULK:  And at that point in time, you know, we,

21    of course, didn't -- I think the appeal of the -- from the

22    executives in Colombia was still pending and so we did not

23    know at that point whether or not the trial would actually go

24    forward, which is why we didn't move to stay the case or

25    anything at that point in time from --

1          THE COURT:  Yeah, but look.  Let me -- let me just

2    disabuse you of this notion.  I don't -- I am not -- I am not

3    willing to delay my case just -- without any moorings, waiting

4    on a Colombia court to set a case for trial when I don't know

5    what the issues that are going to be tried are, I don't know

6    what the evidence that may or may not come out of it is, I

7    don't know when the trial's going to start, I don't know how

8    long it's going to last, I don't know if there would be a

9    mistrial, I don't know if -- even if the trial gets completed,

10   if there would be a argument for a retrial.  There's all sorts

11   of things that are forks in the road that we have no way of

12   negotiating at this point.

13         What I do know is this, is that the defamation case

14   was filed in 2011 and it's coming up on 12 years old now;

15   okay?  And I know that the RICO case was filed in 2005 --

16         MS. WAUDBY:  '15.

17         THE COURT:  -- I'm sorry -- '15, and it's coming up on

18   eight years old now.  That is too -- and look, we did have

19   this hiatus where I certified an order and let you-all go up

20   to the Circuit on this crime fraud issue.  That -- what was

21   the date of the Eleventh Circuit opinion on the crime fraud

22   issue?  Was it 2019?

23         MS. WAUDBY:  '18?

24         THE COURT:  '18 or '19 anyway.  And look, we had

25   COVID.  I get it.  Everybody's going, Well, what about this?

```
1    What about that?  This is just -- this is taking too long.

2    It's time to get on with the dern litigation, as Judge Nelson

3    said, and you-all are going to wrap up discovery.  So you

4    better -- everybody better just go ahead and say -- you know,

5    maybe Anil's job is easy here.  Maybe Mr. Foster's job is easy

6    here because your clients aren't participating.  Everybody

7    else is going to be working their rear end off because that's

8    the deadline that we had, you're right, since April 2022.

9    That actually strengthens my resolve on this issue because

10   that means you had 18 months at that point to get discovery

11   done; okay?  So that's what I'm trying to do is get an

12   inventory of what depositions are left.

13           I'll be honest with you -- Mike, how many documents

14   are left for your review to be provided to the parties?

15           MR. BROWN:  Well, Your Honor, there are a couple

16   different categories of documents.  On the one hand, we were

17   given some additional documents related to relevancy and crime

18   fraud that we are in the process of reviewing, and that

19   number -- I don't know the exact number.  William might know

20   better than I do.  And then there is the second set of

21   documents that was raised by Trey or Ben relating to Brad

22   Smith.  That's a substantial sum of documents that we -- we

23   have not reviewed.

24           THE COURT:  Well --

25           MR. BROWN:  We put that on -- you know, we've worked
```

1    with the parties to adjust issues that were before them.

2          THE COURT:  Okay.  I'm not being nice to anybody this

3    morning, so I'm not going to be nice on this one.  We have an

4    October 31 discovery cut-off.  Did everybody just assume that

5    was just a suggestion?

6          MR. BROWN:  No, Your Honor.

7          MR. MUJUMBAR:  No, sir, Your Honor.

8          THE COURT:  Well, I mean, apparently we did, because

9    we don't even have -- how can we take Brad Smith's deposition

10   by October 31 if we don't even have the documents to the

11   plaintiff on what they need to ask him about?

12         (No audible response.)

13         THE COURT:  That wasn't a rhetorical question.

14         MR. BROWN:  Your Honor, we -- on my end, it's a

15   failure on my end to push parties forward on, you know,

16   understanding when we need to get these done, and I don't have

17   the number amount of those documents in front of me.  I do

18   know that we have taken a general overview look at them to

19   see, kind of, what's in there.  And, you know, there's a lot

20   of things that are probably not part of that production.  But

21   yes, Your Honor, we need to complete that, I guess, next

22   before -- in terms of --

23         THE COURT:  What would be the best way to expedite

24   that review?  Would it be for you to get Mr. Smith in your

25   office and work through those documents with him to determine

1    which communications fall in the category of what would

2    otherwise be attorney-client privileges related to these

3    witness payments?

4            MR. BROWN:  It certainly would not hurt, Your Honor.

5    That would certainly speed things up.

6            THE COURT:  Well, let me suggest we do that, we get

7    Mr. -- Mr. Smith has an obligation to Mr. Collingsworth not to

8    have anything produced that has not been waived under the

9    crime fraud exception.  So I would say you call Mr. Smith

10   today, tell him that I want him into your office meeting with

11   you to work through these documents to isolate the documents

12   you need to take a look at.

13           MR. BROWN:  Yes, Your Honor.

14           THE COURT:  All right.  Folks, can you tell I am not

15   happy right now?  And you know what?  I'm generally a happy

16   person.  But I don't -- I don't know what we were thinking

17   here.  I think Drummond, to be honest with you, has been way

18   too belabored in terms of thinking you have to turn -- at some

19   point you have enough; okay?  At some point you have enough to

20   go prove your claims.  And I can't imagine we're not at that

21   point right now.  I can't imagine -- but I think we ought to

22   get through this Smith set of documents -- whatever set of

23   documents left, what's the deadline we can get that done by,

24   and then we'll have a period where we take depositions?

25           All right.  So I am coming slowly to the reality that

```
1   October 31 probably isn't going to work.  I am furious about
2   that.  But it is a reality.  So what I'm going to do -- and
3   you know what?  It's time to quit playing games and it's time
4   to quit over-lawyering in this case.
5        I want you, Special Master, to coordinate everybody
6   else.  And look, if Otero, Ramirez, and van Bilderbeek are not
7   doing what they should be doing, nothing we can do about that.
8   I expect that there would be a motion for default based upon
9   their failure to cooperate in the discovery process coming up.
10  And I think somebody needs to get van Bilderbeek that notice
11  that I am inviting that, because I'm just overly done on the
12  gamesmanship here; okay?  So that's the first thing.  I want
13  -- if they're not going to help us finish discovery, then I
14  think they're subject to default; okay?
15       Second -- and I'm not prejudging the default -- I got
16  to -- I will have to take a look at what it says -- but at a
17  minimum, maybe that will wake them up and say, You know what?
18  Maybe I ought to do what I'm supposed to do after all.  Okay?
19       Second thing is I want Special Master to coordinate
20  with everyone the deadline on which all document discovery
21  will be completed.  And that's separate and apart from
22  whatever Otero, Ramirez, and van Bilderbeek are doing; okay?
23       And again, I want to thank Mr. Collingsworth, who is
24  -- I know this is time-consuming for him, but he -- and he and
25  I have disagreed on some things along the way, but I'm giving
```

1   him credit for at least being steady in the process, being

2   available for all these conference calls, even defending

3   himself.  So I want to give some credit where credit's due.

4   Again, low bar, but based upon the other individual defendants

5   in this case, I'm giving him some credit there; okay?

6          MR. COLLINGSWORTH:  Thank you, Your Honor.

7          THE COURT:  I want Drummond to sit back and think --

8   go to your client if you need to and think about this:  Do we

9   have enough?  If not, what do we need to have?  You're not

10  going to -- you're just not going to get every document that

11  may arguably have been related to these payments.  Some of

12  them are down in South America.  You're not going to get

13  those; okay?  I'm sorry.  And you can't, on the one hand, say,

14  Don't hold up this litigation for this trial but we're still

15  trying to get all these documents down in South America.  You

16  can't say that.

17         On the other hand, there are documents that I want you

18  to work with the special master on to make sure that you get

19  based upon what's in the vat now.  I want a deadline -- so I

20  want deadlines for when the document discovery is going to be

21  completed in this case, and then I want a aggressive set of

22  dates when depositions will be taken, what depositions will be

23  taken by whom.

24         Now, I could ask the defendants what discovery you

25  think you still need at this point, and that would probably be

1    appropriate, so let's do that.  I've dealt with the

2    plaintiffs' discovery and a plan for that, but what's the

3    defendants' discovery that's necessary here?  And, of course,

4    I'm talking about the firm and Mr. Collingsworth.

5            MR. PAULK:  Judge, this is William.  From

6    Conrad & Scherer's perspective, there is still some

7    outstanding, we believe, document discovery to be produced by

8    Drummond.  The parties, we've been meeting and conferring for

9    a while over it, and I suspect on some categories, you know,

10   we'll eventually need to elevate that to the Court on a

11   motion --

12           THE COURT:  Well, no.  Is Mr. Brown involved in this

13   process yet?

14           MR. PAULK:  Yes, sir, we've involved him when we can.

15   I think some of these issues are issues that maybe the Court

16   has dealt with before previously, like, for example, the exact

17   type of damages Drummond is able to seek, whether it's a

18   public figure.  And because the Court's weighed in previously,

19   we felt like we might need to come back to you, but we're

20   obviously welcome to -- and willing to go back to Mike first

21   if we need to.

22           So in addition to the document discovery, I anticipate

23   we will need at least three or four depositions of Drummond

24   employees who are located in the United States.  We very much

25   want to depose the two executives that are going to be tried

1    in Colombia, but we're concerned -- and this is part of the

2    reason we asked for a suspension of the deadlines -- that

3    we're not going to get any meaningful type of deposition out

4    of them while that case is pending.  As I understand, they may

5    have the equivalent of Fifth Amendment rights down there.  So

6    that's one of the issues we're going to have to be working

7    through to figure out how do we get that done.

8            THE COURT:  Well, let me ask you this, and this is a

9    simplistic -- maybe an overly simplistic question, but the

10   defendants are not alleged to say that certain executives down

11   in South America working for Drummond did all sorts of

12   terrible things.  Your position is that Drummond did all sorts

13   of terrible things; right?

14           MR. PAULK:  Correct.

15           THE COURT:  All right.

16           MR. PAULK:  Through -- acting through their

17   executives, yes.

18           THE COURT:  Well, we go back to the -- that's not the

19   way I recall the statements alleged in the complaint to be

20   worded, but that's one of the questions I guess we need to get

21   a deposition on is exactly what did you say?  I know it's been

22   reported, but what did you say?  Van Bilderbeek, for example,

23   and Collingsworth, for example, have, I guess, what I recall

24   to be press statements or what have you.  But, you know, I

25   think we need to start, you know -- that's one of the things I

1    think we haven't done because of this payment issue is we've

2    not focused in on the actual litigation facts related to what

3    was said, whether it was false, whether it was intentionally

4    false or recklessly false or negligently false, and whether

5    truth is a defense to it; okay?  So I get all that.

6        But, look, this -- we've had -- you've had -- we've

7    had years and years to figure that out.  I shouldn't be having

8    to tell you-all to focus on that in the last two months here.

9    But go ahead.  You're probably not going to get depositions

10   from a couple guys that are being prosecuted down in Colombia

11   on what Drummond claims -- and I have no judgement one way or

12   the other about this -- are charges instigated by the

13   defendants in this case based upon payments to witnesses who

14   tell the same narrative in the Colombia courts that they have

15   said that are subject to suit here.  I mean, that's -- seems

16   as tautological as I can think of what tautological means.

17       MR. PAULK:  Judge, I guess just a couple of

18   follow-ups.  As we understand it -- and Trey may correct me,

19   but -- it's our understanding that the key question being

20   presented in the Colombia criminal case is whether the

21   executives, in their role as executives for Drummond, provided

22   support to the AUC, the paramiliary group, and that is,

23   frankly, the key issue in both the defamation case and the

24   RICO case.  And so our view is that --

25       THE COURT:  All right.  So what's your best

1    understanding of what the evidence down in Colombia is to

2    support that they did?  It's that former AUC members claim

3    that they did; right?

4          MR. PAULK:  Well, we're at a bit of a disadvantage

5    because we don't know what evidence is in the record.  From

6    what we do understand is that there is both AUC testimony that

7    the prosecutor either independently obtained or obtained

8    through the justice and peace process.  There have been some

9    accounting reports that have been done which we don't have

10   that's independent of the testimony that we understand's

11   forming a substantial part of that prosecution.  But again,

12   I'm probably the least qualified because our firm doesn't have

13   access to the record there.

14         MR. SPOTSWOOD:  And, Your Honor, there's also another

15   separate issue, which is the admitted support by Drummond to

16   the tunes of tens of millions of dollars over, of course, a

17   long period of time of the Colombian military.  And over the

18   course of the last few years there's been a great deal of

19   information that suggests that the military was actively

20   collaborating with the AUC and the dollars into the military

21   were in part dollars out to the AUC.  And this is -- this is

22   something that Drummond knew or should have known and that

23   that alone supports the allegation or the truth of the

24   allegation that Drummond was involved in supporting the AUC in

25   this instance at least indirectly.  And that's an important

1    part of our defense in the case.

2          There was a truth commission report that came out a

3    couple of years ago that documented a lot of this.  It's a

4    massive report involving tens of thousands of documents.

5          THE COURT:  And do you have that?

6          MR. SPOTSWOOD:  We haven't -- we do not have that.  We

7    -- that is not something that we have yet been able to dig

8    into, but it is certainly part of the evidentiary background

9    here that's important.  And these executives that we're

10   talking about deposing were right in the middle of all of that

11   in terms of the support of the Colombian military.

12         THE COURT:  Well, again, though, you're telling me

13   that there's this report based upon all this evidence but

14   nobody knows what the evidence is; for example, is it these

15   handful of individuals who claim that Drummond was involved

16   directly or indirectly with AUC operatives.  And, you know,

17   again, this is anecdotal, not empirical, but, for example,

18   Drummond's pointed out that one of these folks was interviewed

19   by the authorities and said Drummond was not involved.  Then

20   there was a payment.  And then he told the justice and peace

21   process, Oh, no, Drummond was involved.

22         So you have to understand, I'm in -- I'm in -- I'm

23   sitting here in Birmingham, Alabama.  We have a case to try

24   here.  There's a good chance we're never going to get access

25   to any of that information, and that puts, actually, both

1   sides at a disadvantage, because Drummond could easily say,

2   You know what?  We think if we get this -- all this

3   information, it's going to be clear that all this traces back

4   to the people that got paid money to change their story or got

5   paid money to speak a certain narrative or got money to

6   cooperate with our efforts to pin this on Drummond; okay?

7        Defendants, on the other hand, are going to say, Oh,

8   no, no, if we get this information, it's going to show that

9   there are many other witnesses independent of these allegedly

10  improper payments.

11       The fact of the matter is we're not going to wait till

12  this case is 15 years old to try it; okay?  So we're going to

13  try this case, and I'm going to -- Mike, I want you to sit

14  down and ride herd and come up with the most aggressive

15  schedule that is within the realm of reason but barely within

16  the realm of reason, to give me some deadlines that will be

17  the final deadlines that we move toward to resolve this case.

18       MR. BROWN:  Your Honor, that includes, I guess --

19  you're wanting all deadlines, documents deadlines and

20  deposition deadlines?

21       THE COURT:  Document, deposition, and then we're going

22  to have a dispositive motion 30 days after the discovery

23  cutoff.  And I know everybody is going to say, Well, Judge,

24  that's a lot of work to do a summary judgement motion within

25  30 days of discovery cutoff.  And my answer to that is, Yeah,

1   well, you should have thought about that when we twiddled our

2   thumbs for 15 years -- or not 15 years, 12 years.

3           MR. SPOTSWOOD:  Your Honor, I know -- I understand the

4   frustration here, Your Honor, but I do want to say that over

5   the course of these several years since the entry of the crime

6   fraud order, we have had a laser focus in our firm and with

7   the support of the Conrad &  Scherer staff on compliance with

8   that order, and that effort continues to this day.  We are a

9   team of three here that work on this case, and I just want to

10  be clear it's not been twiddling our thumbs.  We have been

11  focused on this.

12          THE COURT:  Well, I'm not saying you've twiddled your

13  thumbs.  What I'm saying is there's thumbs that have been

14  twiddled, because you know what?  Otherwise, there's no reason

15  why a case doesn't get done within 12 years.  Sorry.  I'm

16  entitled to have that view.  You can try to change my mind,

17  but my view right now is that we've had too many delays.

18          And twiddling thumbs isn't fair.  I think -- let me

19  put it this way.  I think we have -- and I'm putting Drummond

20  in this category, too -- we have majored on the minors.

21  There's a lot of majors that we still haven't tackled, and

22  it's time for you-all to put the big rocks in.  If you get

23  time to put some small rocks in, great.  But you better start

24  putting some big rocks in.

25          And, William, my sense is that you thought I was

1   talking just about the defendants there.  I was not.

2        MR. PAULK:  Understood, Judge.

3        THE COURT:  Okay?  Look, we could talk about it all we

4   want.  That's part of our problem is we're sitting around

5   talking about it.  It's time to start doing something about

6   it.

7        So I've outlined some things that I want you-all to

8   do.  Any discovery that the defendants need that doesn't

9   involve witnesses down in South America?  I take it there's

10  some depositions of Drummond people here locally that you need

11  to take; is that right?

12       MR. PAULK:  That's correct, Judge.  There are a

13  handful of local witnesses and -- as well as the document

14  discovery, some additional damages discovery we need.

15       THE COURT:  Okay.  Well, let's -- Mike -- Mike, let's

16  make sure we give full ear to what they need to get done in

17  this schedule, too.

18       MR. BROWN:  Yes.  Yes, Your Honor.

19       THE COURT:  All right.  Guys, I am accused by -- I sit

20  accused of being impatient.  I plead guilty.  We're -- but

21  we're going to get this moving and we're going to get this

22  done.  Everyone understand that?

23       MR. PAULK:  Yes, sir.

24       MR. WELLS:  Yes, Your Honor.

25       MR. BROWN:  Yes, Your Honor.

1    THE COURT:  And, look, part of this is -- actually,

2  most of this is my fault.  I have not managed this case the

3  way I should have.  I have not managed these cases the way I

4  should have.  That changes today.

5    All right.  What else?

6    MR. MUJUMDAR:  Your Honor, this is Anil Mujumdar.  I

7  have a positive update that I wanted to put on record.  While

8  we've been on this hearing with the Court, I did receive the

9  signed declaration with today's date from my client, and

10  that'll be filed today.  And I'll comply with the Court's

11  order to file a report about this issue by 4:30 tomorrow as

12  well.

13    THE COURT:  Thankful for small victories.

14    MR. MUJUMDAR:  As am I, Your Honor.

15    THE COURT:  Okay.  All right.  What else?

16    MR. WELLS:  Nothing from Drummond, Your Honor.

17    THE COURT:  All right.  If there's nothing else, Mike,

18  you got your work cut out for you.

19    MR. BROWN:  Yes, sir, Your Honor.

20    THE COURT:  When are you going to get me something?

21    MR. BROWN:  I will talk to the parties as soon as I

22  can and -- how about Tuesday?

23    THE COURT:  Okay.  That works.  But we are in

24  overdrive.  Everybody understand that?

25    IN UNISON:  Yes, Your Honor.

1              THE COURT:  Okay.  We will be adjourned.

2              (Adjourned accordingly at 9:50 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5                         Dated:  August 21, 2023

6

7

8    *Pamela G. Weyant*
     Pamela G. Weyant, RDR, CRR, CCR
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25