IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DRUMMOND COMPANY, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **CIVIL ACTION NUMBER:** |
| **TERRENCE P. COLLINGSWORTH,** ) | **CV- 2:11-CV-3695-RDP** |
| **individually and as the agent of Conrad** ) | |
| **& Scherer, LLP; and CONRAD &** ) | |
| **SCHERER, LLP,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## REPORT AND RECOMMENDATION REGARDING RELEVANCY SAMPLING OF "TAR" DOCUMENTS

1.  On May 28, 2014, T. Michael Brown was appointed as Special Master pursuant to the Order of the Honorable R. David Proctor. (Doc. 129). The Court ordered the Special Master to oversee discovery in this matter, including the resolution of all disputes between the Parties with respect to any aspect of discovery. The Court also ordered the Special Master to entertain all motions for relief brought by the Parties concerning discovery, as well as all issues in any pending discovery motions not yet fully adjudicated, and promptly issue written Reports & Recommendations thereon.

2.  On January 10, 2022, the Parties entered into a joint "Stipulation Regarding the Procedure for the Review and Production of Documents Pursuant to the Court's December 7, 2015 Order (Doc. 417)," or the "TAR Stipulation", which is in the record at Doc. 417 and attached hereto as **Exhibit A**. The Parties negotiated and agreed on searches to be applied to the database created by Defendant C&S, which resulted in a set of documents eligible for review as further set forth in the TAR Stipulation (the "Review Set"). The Stipulation then set forth a detailed

1

procedure for the Defendants' review, logging, and production of certain documents within the Review Set. C&S was permitted to use, and did use, iPro's Technology Assisted Review ("TAR") software in performing the review and predictive coding of the documents within the Review Set according to the Parties' stipulation.

3. According to Paragraph 2 of the TAR Stipulation, "'relevant' documents shall include any document falling within any of the following categories." The TAR Stipulation then goes on to set forth nine different categories of "relevant" documents. **Exhibit A**, Para. 2 a. – i.

4. On April 20, 2023, the Parties and the Special Master held a status conference discussed various issues involving the TAR review process. Specifically, the Parties and the Special Master discussed the sampling approach to the Special Master's *in camera* review of the documents tagged as privileged and/or non-responsive (either by an individual or by the TAR software) as set forth in the TAR Stipulation. During this status conference, both C&S and Drummond submitted alternative proposals with respect to, among other things, how the parameters of the sampling would be established and how the Special Master was to proceed, including how the sample documents to be review were to be selected and what percentage of the documents should be sampled as part of the TAR review process.

5. On May 23, 2023, the Special Master informed the Parties of his proposal for sampling the Review Set for relevancy (or responsiveness) and for claims of privilege. For the relevancy sampling, which is the subject of this Report & Recommendation, the Special Master recommended a review of 10% of the approximately 22,000 documents to be selected at random, using a random selection process for choosing the documents to be sampled. Within the approximate 22,000 documents to be sampled for relevancy, C&S provided three categories of documents for the Special Master's relevancy review:

a. Category 1 included documents reviewed by external counsel for C&S in a manual review process, which were determined to be not relevant under the TAR Stipulation categories. There are 1,288 documents in this set.

b. Category 2 included documents which the TAR software predictively determined to be relevant, but which were then reviewed manually and determined to be irrelevant. There are 6,075 documents in this set.

c. Category 3 included documents predicted by the TAR software to be irrelevant. There are 14,681 documents in this set.

6. The Parties agreed and/or consented to the Special Master's recommendation on relevancy sampling. C&S subsequently performed a random 10% selection of documents (which included 10% of each of the three categories listed above) using a random sampling tool in iPro, which were then provided to the Special Master for his *in camera* review.

7. The Special Master reviewed a 10% sample within each of the categories, or 128 documents from Category 1; 607 documents from Category 2; and 1,468 documents from Category 3 (the "Sampling Documents").

8. The Special Master performed a document-by-document *in camera* review for relevancy (or responsiveness) of the Sampling Documents.

## **RECOMMENDATIONS**

9. After having reviewed the Sampling Documents, the Special Master finds that the Defendants' claims of relevancy pursuant to the TAR Stipulation and TAR review process are within an acceptable range of reasonableness and accuracy such that the Parties should move forward with continued use of the TAR review process, to the extent not already completed, for the purposes of determining relevancy of the Review Set.

10. In Category 1, there were six (6) documents out of the 128 on which the Special Master disagreed with the determination of relevancy. This is around a 5% discrepancy rate. The Special Master believes this to be within an acceptance range of reasonableness.

11. In Category 2, there were thirty-seven (37) documents out of the 607 on which the Special Master disagreed with the determination of relevancy. This is around a 6% discrepancy rate. The Special Master believes this to be within an acceptable range of reasonableness.

12. In Category 3, there were twenty-seven (27) documents out of the 1,468 on which the Special Master disagreed with the determination of relevancy. This is around a 2% discrepancy rate. The Special Master believes this to be within an acceptable range of reasonableness.

13. In total, there are seventy (70) documents out of the 2203 total documents reviewed upon which there was a determination of discrepancy by the Special Master. This is around a 3% discrepancy rate. The Special Master believes this to be within an acceptable range of reasonableness and accuracy.

14. For the reasons outlined in this Report & Recommendation and in light of upcoming deadlines under the amended scheduling order, the Special Master recommends that the Parties be ORDERED to file any Objections to this Report & Recommendation within five (5) business days and any Responses to Objections within two (2) business days.

DATED: November 22, 2023

/s/ T. Michael Brown_____
T. Michael Brown
Special Master

# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No 2:11-cv-3695-RDP |
| ) | |
| TERRENCE P. COLLINGSWORTH, et al., ) | |
| ) | |
| Defendants. ) | |

**STIPULATION REGARDING THE PROCEDURE FOR THE REVIEW AND PRODUCTION OF DOCUMENTS PURSUANT TO THE COURT'S DECEMBER 7, 2015 ORDER (DOC. 417)**

The Plaintiff, Drummond Company, Inc. ("Drummond"), and the Defendants, Terrence P. Collingsworth ("Mr. Collingsworth") and Conrad & Scherer, LLP ("C&S") (collectively the "parties"), hereby stipulate to the following procedure for the review and production of documents pursuant to the Court's December 7, 2015 Order (Doc. 417):

1. The parties have negotiated and agreed on searches.[1] Those searches shall be applied to the database created by C&S (the "Review Database"),[2] and the resulting set of documents (the "Review Set") shall be subject to the following review procedure.[3]

---

[1] Those searches are attached hereto as Appendix A.

[2] The Review Database refers to the centralized database created by C&S which consists of emails, documents and other data sources collected by Defendants and recovered by the parties' computer forensic experts. *See* Doc. 602 (Oct. 16, 2019 R&R); Doc. 607 at 2. *See also* Doc. 619 (Parties' Joint Motion for Entry of an Amended Scheduling Order) at ¶ 11.

[3] The Review Set will not include approximately 34,000 non-inclusive emails that were removed because their contents are fully included in another email thread that will remain in the Review Set (the "Non-Inclusive Emails"), or documents for which TAR cannot be applied because, for example, they contain no substantive data (*e.g.*, system files) or contain data structured in a manner that TAR cannot analyze and make a relevancy prediction (*e.g.*, native Excel files). C&S will produce to the Special Master the Non-Inclusive Emails with documentation correlating them to inclusive emails in the Review Set, as well as any documents or files that do not contain substantive data. C&S will manually review any

{B4209497}    1

2. As it relates to the review of documents in the Review Set, "relevant" documents shall include any document falling within any of the following categories[4]:

   a. All documents which fall within the categories set forth in Paragraphs 4 and 9 of the Court's October 15, 2014 Order (Doc. 151).

   b. All documents which fall within the categories set forth in Paragraph 5 of the Court's October 15, 2014 Order (Doc. 151), with the following clause modified as indicated: "[A]ll communications with any investigators on any Drummond-related litigation relating to obtaining testimony from, or access to, 'Colombian Witnesses.'"

   c. All documents which fall within the categories set forth on pages 28-38 and 48 of the Court's December 7, 2015 Order (Doc. 417).

   d. All documents which reflect or relate to "payments to witnesses, communications with the witnesses who received payments," as well as all documents which reflect or relate to "communications with the third parties down in Colombia" relating to payments to witnesses or obtaining testimony from, or access to, "Colombian Witnesses." Doc. 528 (Sept. 12, 2018 Hrg. Tr.) at 12:11-16.

   e. All "[d]rafts, revisions, attorney comments on draft declarations, as well as signed statements," Doc. 628 (April 17, 2020 Order) ¶ 10(b), by any "Colombian witness" as that term is defined in Footnote 1 of Doc. 151.

---

documents in the Review Set with substantive data for which TAR cannot be effectively applied, and such documents will be subject to the remaining provisions of this Stipulation.

[4] For purposes of these categories, the terms "witness payment" and "payments to witnesses" have the definition which appears in Footnote 2 of Doc. 151. The term "all documents" includes, without limitation, Defendants' internal communications and alleged work product, as well as Defendants' communications with any third parties, including their counsel in this case.

   f. All documents relating to sending, carrying, withdrawing, or using cash in Colombia or Panama.

   g. All documents which relate to pleadings, discovery responses, correspondence, representations in open court, or testimony (written or oral) in which Defendants discussed, or made any representation regarding, the purpose, scope, amount, existence, duration, or nature of any admitted or disputed payments to witnesses.

   h. All documents which relate to the search for, production of, or redactions to documents relating to payments to witnesses, or to Mr. Collingsworth's claim that he did not recall certain witness payments.

   i. All documents relating to the loss, deletion, disposal, preservation, search of, and/or examination of any of Mr. Collingsworth's electronic devices, emails, remote storage accounts (i.e., Dropbox and other cloud-based storage software/mechanisms), and/or email accounts.

3. C&S may use iPro's Technology Assisted Review ("TAR") software in reviewing the documents in the Review Set. The review procedure for the Review Set shall be as follows:

   a. C&S will upload to its TAR software a set of documents that have already been produced in this case (this set may include excerpts of documents) which the parties mutually agree are relevant for purposes of this review. C&S will code these documents as "relevant" in the TAR software, thereby helping to train the TAR software on relevancy.

   b. In addition to the agreed upon set of documents discussed above in Paragraph 3(a), counsel for C&S, Mr. William Paulk, shall perform a manual review of no less than 800 documents in the Review Set to train the TAR software on relevancy.

{B4209497}                                     3

      Documents in this manually-reviewed training set which are determined to be irrelevant will be provided to the Special Master who will perform a statistically reasonable spot check of those documents as outlined in paragraph 3(h) below. *See* Doc. 602 (October 16, 2019 R&R) ¶ 30(b).

  c. The training of the TAR software shall be deemed complete once the training procedures in Paragraphs 3(a) and 3(b) are complete *and* the TAR software's precision metric reaches at least 80%, the recall metric reaches at least 80%, and the active learning status metric is at least "good" (the "Training Metrics").[5] If necessary, Mr. Paulk will review additional documents from the Review Set until each of these metrics is met. C&S shall produce to Drummond and the Special Master verification that these metrics are satisfied.

  d. Once the Training Metrics are reached, C&S will prepare a report identifying the relevancy score the TAR software is utilizing to achieve the Training Metrics and identifying how many documents have scores above and below this relevancy score. C&S will provide this report to Drummond, and the parties will then meet and confer within 5 days in an effort to agree upon a relevancy score which produces a reasonable number of documents to undergo manual review by C&S (the "Threshold Relevancy Score"). If the parties cannot agree, the Special Master will set the Threshold Relevancy Score. C&S will perform a manual review of all documents with a relevancy score equal to or greater than the Threshold Relevancy

---

[5] The "precision" metric refers to the accuracy with which the software is coding documents as irrelevant or relevant. The "recall" metric refers to the percentage of documents found to be relevant compared to the estimated total number of relevant documents in the Review Set. The "active learning status" is a metric unique to the TAR software being utilized by C&S, with levels of "poor," "fair," "good," and "excellent."

Score. Although the manual review may be performed by C&S personnel, Spotswood Sansom & Sansbury LLC will have "an active role in supervising and in quality control over the review, logging, and production process." Doc. 602 (October 16, 2019 R&R) ¶ 30(a).

e. After C&S has manually reviewed the documents with a relevancy score equal to or greater than the Threshold Relevancy Score, it will provide Mr. Collingsworth with the documents C&S is prepared to produce in full or in part for his review. If Mr. Collingsworth disagrees with C&S's recommendations for production, he will note his disagreement with respect to each such document on a separate privilege log.

f. After Mr. Collingsworth completes his manual review, Defendants will produce to Drummond all documents that both Defendants agree are relevant and not privileged, or that are relevant and privileged but are due to be produced in full or in part under the crime-fraud exception.

g. For documents that C&S and/or Mr. Collingsworth determine should be withheld in full or in part as privileged, C&S and/or Mr. Collingsworth will prepare a privilege log identifying such documents. That log shall clearly identify documents that C&S is willing to produce, in whole or in part, but for Mr. Collingsworth's objection.

h. All documents with a relevancy score less than the Threshold Relevancy Score, and all documents determined to be irrelevant by C&S and/or Mr. Collingsworth during their manual review, will be provided to the Special Master. After all these documents are provided to the Special Master, the Special Master will perform a

{B4209497}                                       5

statistically reasonable spot check of those documents. *See* Doc. 602 (October 16, 2019 R&R) ¶ 30(b). In performing this spot check, the Special Master shall prioritize (1) documents C&S or Mr. Collingsworth determined were not relevant during their manual review and (2) documents which the TAR software assigns a relevancy score in the 10% range below the Threshold Relevancy Score.[6]

    i. The Special Master shall issue an R&R containing his findings with respect to the spot check he performs pursuant to Paragraphs 3(b) and 3(h).

4. Defendants agree to proceed expeditiously with the review outlined above and will strive to meet the following timelines:

    a. The training of the TAR software discussed in Paragraphs 3(a) and 3(b) will be completed no later than three weeks after this Stipulation is fully executed, or by January 28, 2022.

    b. C&S will complete its manual review of documents determined to be relevant by the TAR software as discussed in Paragraph 3(d) no later than three months after the Threshold Relevancy Score is set.

    c. Because the potential number of documents Mr. Collingsworth must review following C&S's review cannot be reasonably estimated at this time, the parties will meet and confer on an agreed-upon timeline for Mr. Collingsworth to complete his review after C&S completes its review. If the parties are unable to agree, the Special Master will set the timeline.

---

[6] The TAR software assigns a relevancy score to each individual document, which is akin to a "confidence" rating in its relevancy determination. C&S shall provide to the Special Master and to Drummond a list of all documents, identified by document identifier number, that the TAR software assigns a relevancy score in this 10% range.

{B4209497}

6

    d. Within 14 days of Mr. Collingsworth finishing his review, Defendants will produce to Drummond documents which they determine are relevant and not privileged, or are relevant, privileged, and subject to production (in whole or in part) under the crime-fraud exception pursuant to the law of this case and the Eleventh Circuit.

    e. Within 14 days after production of documents to Drummond, C&S and/or Mr. Collingsworth will provide to Drummond and the Special Master a privilege log(s) of documents they determine are relevant and privileged (either in whole or in part). The Special Master will review some or all of those documents *in camera* and issue R&Rs stating whether these documents are properly withheld as privileged or are due to be produced pursuant to the crime-fraud exception, waiver, or because they are not privileged. The number or percentage of documents to be reviewed by the Special Master will be determined once the number of documents logged is certain.

5. The parties agree to work cooperatively in implementing the processes outlined in this Stipulation, including, for example, accommodating reasonable requests for extensions of deadlines and similar changes, and they agree to present any disputes arising under this Stipulation to the Special Master for resolution in the first instance.

By: _/s/_
For: Drummond Company, Inc.

By: _/s/_
For: Conrad & Scherer, LLP

By: _/s/_
For: Terrence P. Collingsworth

{B4209497}

7