IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC. <br><br> v. <br><br> TERRENCE P. COLLINGSWORTH, et al. | Case No. 2:11-cv-3596-RDP <br> (*Defamation*) |
| DRUMMOND COMPANY, INC., et al. <br><br> v. <br><br> TERRENCE P. COLLINGSWORTH, et al. | Case No. 2:15-cv-0506-RDP <br> (*RICO*) |

**PLAINTIFFS' BRIEF REGARDING
THE COMPLETION OF THE DEPOSITION OF TERRENCE P. COLLINGSWORTH**

William Anthony Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
Kropf Moseley PLLC
1001 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900

*Attorneys for Drummond Company, Inc. and Drummond Ltd*

1

COME NOW the Plaintiffs, Drummond Company, Inc. and Drummond Ltd. ("Drummond" or "Plaintiffs"), and pursuant to this Court's February 29, 2024 Orders, *RICO* Doc. 281 and *Defamation* Doc. 782, file this brief regarding the location of the final day of Terrence P. Collingsworth's ("Collingsworth") individual deposition.

## PROCEDURAL HISTORY

This Court previously ordered Mr. Collingsworth to appear for 16 hours of on-the-record deposition testimony at the Hugo L. Black United States Courthouse. *RICO* Doc. 270; *Defamation* Doc. 763. Pursuant to those orders, Mr. Collingsworth was deposed on February 20 and 21. Ex. 1 (Collingsworth Dep.). Over the course of two days, Mr. Collingsworth provided 13 hours and 46 minutes of on-the-record testimony. Ex. 2 (Feb. 27, 2024 Paige Byrd email).

The first day of Mr. Collingsworth's deposition started promptly at 9:01 a.m. and lasted until 5:15 p.m.[1] The total amount of break time taken for the entire first day, including lunch, was 1 hour and 23 minutes.[2] The second day of Mr. Collingsworth's deposition similarly started at 9:01 a.m. and lasted until 5:13 p.m.[3] The deposition was even more efficient on the second day, with 1 hour and 18 minutes of total break time, again including lunch, throughout the course of the entire day. Over the course of two days, Drummond marked 119 exhibits. *Id.* at 314:5.

At the end of the second day, Drummond offered to finish Mr. Collingsworth's deposition on the following day, February 22, having been informed by the Court that the judicial conference

---

[1] The courthouse closed each day at 5:30 p.m.

[2] Ex. 1 (Collingsworth Dep.) at 10:22-23 (9:01 a.m. start time); 70:5-11 (14 minute break); 114:13-18 (10 minute break); 165:14-21 (45 minute lunch break); 240:15-21 (8 minute break); 270:19-25 (6 minute break); 303:9-15 (5:15 p.m. end time).

[3] *Id.* at 315:23-25 (9:01 a.m. start time); 380:21-381:1 (9 minute break); 422:11-20 (5 minute break); 453:20-454:3 (47 minute lunch break); 503:6-11 (12 minute break); 555:15-22 (5 minute break); 602:8-9 (5:13 p.m. end time).

2

room was available. *Id.* at 588:8-25. Mr. Collingsworth refused, stating that he "scheduled this for two days" and "I have important conflicts that I must address starting tomorrow." *Id.* Mr. Collingsworth did not elaborate on what conflicts he had on February 22, *id.*, but Mr. Collingsworth's return flight to Washington, D.C. apparently did not depart Birmingham until 10:50 a.m. on February 22. Ex. 3 (Collingsworth Flight Receipt).

Notably, in scheduling Mr. Collingsworth's deposition, after the Court had provided potential dates, Drummond asked Mr. Collingsworth to provide all of his availability on those dates, and Mr. Collingsworth responded by identifying February 20, 21, 22, and 23. Ex. 4 (Jan. 3, 2024 Collingsworth email). While Drummond certainly hoped to complete Mr. Collingsworth's deposition in two days, Drummond never agreed to taking any less than the 16 hours provided by the Court's orders. In fact, the deposition notice sent to Defendants a week in advance of the deposition stated that the deposition would start on "Tuesday, February 20, 2024" at the Hugo L. Black United States Courthouse and further stated that "*this deposition will continue through at least February 21, 2024, pursuant to Court order*." Ex. 5 (Collingsworth Dep. Notice) (emphasis added). Based on Mr. Collingsworth's previously provided availability, Drummond did not have notice of any conflict in continuing the deposition through February 22 (or the 23rd for that matter).

## ARGUMENT

Because Mr. Collingsworth has already been ordered to be deposed at the Hugo L. Black United States Courthouse, his refusal to come to the courthouse and finish his deposition is, in substance, a request that this Court reconsider its prior orders requiring him to do so. This Court recently set forth the legal standard applicable to a motion for reconsideration:

> Motions for reconsideration are within "the sound discretion of the district judge." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000). However, a moving party must do more than merely ask the court for a

3

reevaluation of an unfavorable ruling. "A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *see also Fox v. Tyson Food, Inc*., 2007 WL 6477624, at *1 (N.D. Ala. Aug. 31, 2007) (same). However, reconsideration is "an extraordinary remedy which must be used sparingly." *Jackson v. Wesley*, 2011 WL 2144696, *1 (M.D. Fla. May 31, 2011); *see also Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. 2010) (quoting *Gougler v. Sirius Products, Inc*., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005) ("In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly.")). While a court may reconsider a prior order, "courts should be loath to do so in the absence of extraordinary circumstances." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003) (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)).

*Defamation* Doc. 767 at 2-3 (denying C&S's motion to reconsider the "public figure" issue). For the reasons that follow, there are no "extraordinary circumstances" that justify reconsideration.

When this Court ordered that Mr. Collingsworth's deposition take place at the Hugo L. Black United States Courthouse, it explained its rationale for doing so:

> As to the location of the deposition, Defendants appear to have concerns about Drummond asking cumulative questions (*see* Docs. # 758 at 3, 762 at 3), and Plaintiffs appear to have (historically-based) concerns regarding Collingsworth's credibility and also concerns about privilege objections (despite the Stipulation Regarding Privilege Objections During Depositions (Doc. # 755-1). The court has its own concerns, which are also historically-based. To alleviate all of those concerns, and because the cases are pending in this court in Birmingham, Alabama, the court concludes that Collingsworth's deposition should take place in a conference or jury room in the Hugo L. Black United States Courthouse in Birmingham, Alabama.

*RICO* Doc. 270 at 3-4; *Defamation* Doc. 763 at 3-4. Mr. Collingsworth's credibility is still very much a concern. As explained in Drummond's recently filed renewed motion for sanctions, *Defamation* Doc. 775, the crime-fraud discovery has confirmed that concern and shows that Mr. Collingsworth repeatedly and knowingly lied to Drummond and this Court.

The transcript of Mr. Collingsworth's deposition reinforces this Court's concerns. As the transcript reflects, Mr. Collingsworth repeatedly engaged in obstructive behavior during his

4

deposition, providing non-responsive and argumentative answers to questions that called for a simple yes or no answer. One such exchange was as follows:

> Q Have you even attempted to subpoena Drummond's bank records to see if you could develop a paper trail of money that is unexplained or, say, $10,000 transactions by a man you said was regularly flying down with $10,000?
>
> A Object to the form. And I -- I have some recollection that some years ago some of our team went to look at bank records. And Drummond performed the classic fill a room with documents and tell people to find a document. And after exhausting themselves for several days, I believe that the team decided that it was more fruitful to pursue other avenues to gather that information and/or that it was not likely that Drummond made blatant illegal transactions transparent. For example –
>
> Q Let's stop you there because you haven't even started to answer my question. My question is: Have you even tried to subpoena, meaning Drummond's lawyers are not in the middle. They have no control over what the bank turns over to you. Have you tried to do that to see if you could find any documentation that supports these wild allegations you've been making?
>
> MR. PAULK: Object to the form.
>
> A Object to the form. And I do believe I answered the question. I don't think that Drummond's transactions involving illegal payments are going to be transparent; nor were they in Chiquita as far as I know.
>
> Q (By Mr. Wells) So you haven't tried to send a subpoena; you're just assuming they're not transparent?
>
> A We looked at the bank records that Drummond produced. I guess they're coming from the same bank. And we would not have had any less difficult a time trying to identify illegal transactions amidst the room full of documents that the bank would produce or Drummond will produce. I will say, though, that one of the interesting things about Drummond's choice of a head of security down there, Jim Adkins, the CIA guy –
>
> Q I'm going to stop you right there.
>
> A He -- he was found –
>
> Q That's so – that's ridiculous.
>
> A Oh, it's not ridiculous.
>
> Q No. No. That is –

A Chairman Walsh –

Q The question is –

A -- found him to be lying to Congress about –

Q -- not about that.

A -- those transactions. And he was in charge of your security down there.

MR. WELLS: All right. We're shutting down the deposition. We're going to have the rest of the conversations with Judge Proctor.  Can I get printouts of that question and then the one before the last one?

A I'm not refusing to answer your question.

Q You're not answering the question. If there were a judge here, they would tell you to answer the question and –

A All right. Try me again.

Q -- stop editorializing.

A Try me again. I want to finish this.

Q Have you sent a subpoena –

 A You've got to put your mic on.

Q -- to any of Drummond's banks to try to see if you could determine -- let me start over.  Have you sent a subpoena to any of Drummond's banks to see if you could determine whether any of these allegations you're making are supported by actual documentary evidence?

A I'm not aware of any subpoena being sent by us, our team, to a bank seeking Drummond's records.

Q And you're aware we have been subpoenaing many third parties in this case; correct?

A I'm aware of some. Yeah.

Q And we have multiple $10,000 withdrawals by you within days of your trips down to Colombia. Now, you dispute what was done with it, and the bank records

> won't reflect that. But we can at least see that you did take out $10,000 right before you went to Colombia. You haven't tried to do that with Drummond?
>
> A  I think I at this time have answered your question. We have not issued any subpoenas to any banks.

Ex. 1 (Collingsworth Dep.) 289:19-293:19.  As the above testimony reflects, Mr. Collingsworth only provided an answer to this straightforward question after Drummond's counsel made clear it would seek this Court's intervention.[4]

In addition to facilitating responsive answers from Mr. Collingsworth, finishing Mr. Collingsworth's deposition at the Hugo L. Black United States Courthouse is more efficient for the parties and their counsel.  Pursuant to this Court's prior orders, *RICO* Doc. 277 and *Defamation* Doc. 770, Drummond is reimbursing Mr. Collingsworth for his travel and lodging expenses associated with the first two days of his deposition, and Drummond already made clear that it will reimburse Mr. Collingsworth for his reasonable travel and lodging expenses associated with finishing his deposition in Birmingham.  If, on the other hand, the final session of Mr. Collingsworth's individual deposition takes place in Washington, D.C., then counsel for Drummond, Conrad & Scherer, LLP, and Bill Scherer will be required to travel to Washington, D.C.  That will obviously require a greater expenditure of the parties' time and resources.[5]

---

[4] This exchange clearly shows the utility of deposing Mr. Collingsworth at the courthouse, but it is not the only instance in which Mr. Collingsworth gave argumentative and non-responsive answers to questions during his deposition.  *See, e.g., id.* at 148:17-149:18; 159:1-160:3; 179:23-180:20; 283:16-285:12; 286:18-289:18; 539:6-542:25.  Indeed, this Court previously observed firsthand Mr. Collingsworth giving non-responsive answers to questioning under oath.  *See Defamation* Doc. 389 (Crime-Fraud Hrg. Tr.) at 157:18-160:9 (reflecting an exchange wherein this Court asked Mr. Collingsworth "Why wouldn't protecting my family be a benefit or value to me if I can't do it myself? Why wouldn't that be value to me?" and admonishing Mr. Collingsworth "You're not answering my question").

[5] Drummond minimized the burden on other parties with respect to the depositions of Drummond witnesses.  For example, Drummond flew Jose Miguel Linares, Augusto Jimenez, and Alfredo Araujo from Colombia to Birmingham for their depositions rather than require Defendants

Finally, Mr. Collingsworth should not be heard to complain that traveling to Birmingham to finish his deposition is unfair or unwarranted. As this Court already explained, one of the reasons why Mr. Collingsworth should be deposed at the courthouse is "because the cases are pending in this court in Birmingham, Alabama." *RICO* Doc. 270 at 4; *Defamation* Doc. 763 at 4. In addition to being a defendant in the RICO and Defamation cases, Mr. Collingsworth has appeared *pro hac vice* in this Court both in this litigation and in the *Romero*, *Baloco*, *Balcero*, and *Melo* cases. He has litigated against Drummond in Birmingham for more than two decades, both as a party and as counsel of record. Over the course of 20+ years, he has repeatedly traveled to Birmingham for depositions, hearings, and a trial. Requiring him to travel to Birmingham to finish his deposition in this litigation—which is something this Court already ordered and Drummond is paying for—is reasonable in light of Mr. Collingsworth's extensive history as both a lawyer and litigant in this Court.

## CONCLUSION

Drummond respectfully requests that the Court deny Mr. Collingsworth's request for reconsideration and confirm that Mr. Collingsworth must appear for the completion of his individual deposition at the Hugo L. Black United States Courthouse.

---

and their counsel to travel to Colombia. Notably, Mr. Collingsworth did not attend any of those depositions (either virtually or in person).

8

2810321.1

Respectfully submitted,

| | |
|---|---|
| */s/ Benjamin T. Presley* | */s/ Sara E. Kropf* |
| William Anthony Davis, III (ASB-5657-D65W) | Sara E. Kropf |
| H. Thomas Wells, III (ASB-4318-H62W) | KROPF MOSELEY PLLC |
| Benjamin T. Presley (ASB-0136-I71P) | 1100 H. Street NW, Suite 1220 |
| STARNES DAVIS FLORIE LLP | Washington, DC 20005 |
| 100 Brookwood Place, 7th Floor | (202) 627-6900 |
| Birmingham, AL  35209 | |
| (205) 868-6000 | |
| fax: (205) 868-6099 | |

*Attorneys for Drummond Company, Inc. and Drummond Ltd.*

### CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record. In addition, a copy of this motion was sent, via electronic mail, to the following:

Albert Van Bilderbeek
albert@vanbilderbeek.com

Ivan Otero
oteromivan@hotmail.com

*/s/ Benjamin T. Presley*
Benjamin T. Presley (ASB-0136-I71P)

9

2810321.1