2024 Apr-26 AM 08:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DRUMMOND COMPANY, INC.

v.

TERRENCE P. COLLINGSWORTH, et al.

Case No. 2:11-cv-3596-RDP
(*Defamation*)

---

**OPPOSED**

DRUMMOND COMPANY, INC., et al.

v.

TERRENCE P. COLLINGSWORTH, et al.

Case No. 2:15-cv-0506-RDP
(*RICO*)

# DRUMMOND'S MOTION TO EXCLUDE JAIME BLANCO MAYA'S TESTIMONY

William Anthony Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
Kropf Moseley PLLC
1001 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900

*Attorneys for Drummond Company, Inc. and Drummond Ltd*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

INTRODUCTION AND BACKGROUND FACTS ..... 1

I. BLANCO'S TESTIMONY IN *BALCERO* ..... 1

II. BLANCO VOLUNTARILY APPEARED AT THE REQUEST OF DEFENDANTS ..... 2

III. DEFENDANTS HAVE NOT MADE BLANCO AVAILABLE FOR CROSS-EXAMINATION. ..... 6

ARGUMENT ..... 8

I. BLANCO'S TESTIMONY IS INADMISSIBLE ON DUE PROCESS GROUNDS. ..... 9

II. BLANCO'S TESTIMONY IS ALSO INADMISSIBLE HEARSAY. ..... 10

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
No. 97 CIV. 4978 (LMM), 2002 WL 31655323 (S.D.N.Y. Nov. 25, 2002)..........................12

*Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*,
No. CV 03-1064 (PAM/RLE), 2005 WL 8162788 (D. Minn. Feb. 4, 2005) ..........................11

*Claudia Balcero Giraldo, et al. v. Drummond Co.*,
No. 2:09-CV-1041-RDP, 2013 WL 3873960 (N.D. Ala. July 25, 2013), *aff'd sub nom. Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015), and *aff'd sub nom. Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015) ..........................................................................1, 2, 9, 10

*Cury v Philip Morris USA*
93 CIV. 2395(CSH), 1995 WL 594856 (S.D.N.Y. Oct. 6, 1995)....................................11, 12

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
No. 3:09CV58, 2011 WL 13079490 (E.D. Va. May 16, 2011)..........................................9 n.8

*Goldberg v. Kelly*,
397 U.S. 254 (1970).................................................................................................................9

*In re Oliver*,
333 U.S. 257 (1949).................................................................................................................9

*In re Reingold*,
157 F.3d 904 (5th Cir. 1998) ............................................................................................ 9 n.8

*Louisiana Power & Light v. Fischbach & Moore, Inc.*,
No. CIV. A. 86-0594, 1992 WL 202400 (E.D. La. Aug. 12, 1992) .......................................12

*McNeill v. Butz*,
480 F.2d 314 (4th Cir. 1973) ...................................................................................................9

*Midkiff v. 3M Co.*,
No. 4:08CV01219 ERW, 2011 WL 196310 (E.D. Mo. Jan. 20, 2011)..............................9 n.8

*Pillsbury Co. v. Conboy*,
459 U.S. 248 (1983)...............................................................................................................10

*United Realty Advisors, LP v. Verschleiser*,
No. 14-CV-5903, 2022 WL 2093416 (S.D.N.Y. June 10, 2022) ...........................................11

*United States v. Monaco*,
702 F.2d 860 (11th Cir. 1983) ....................2, 10

**Statutes and Rules**

Fed. R. Evid. 802 ....................1, 10, 12

Fed. R. Evid. 804(b)(1) ....................9, 10, 12

Plaintiffs, Drummond Company, Inc. and Drummond Ltd., (collectively Drummond), respectfully request that this Court exclude Jaime Blanco Maya's ("Blanco") deposition testimony on due process grounds and/or pursuant to Federal Rule of Evidence 802. In support of this motion, Drummond states as follows:

## INTRODUCTION AND BACKGROUND FACTS

### I. BLANCO'S TESTIMONY IN *BALCERO*

Jaime Blanco is Defendants' "star" witness, Ex. 1 (IRA 005342), and a former food services contractor for Drummond Ltd. in Colombia.

> On September 8, 2010 Blanco was arrested and testified before the Colombian Fiscalia that the allegation that Drummond paid the AUC through Blanco's food services company "is absolutely false and accounting-wise impossible." (PX 45 at 6). At the same time he testified that labor unions, NGOs "and a large amount of lawyers are offering money to these demobilized groups that are in precarious financial conditions so that they say what they want to hear or say." (PX 45 at 12).

*Defamation* Doc. 417 (Crime-Fraud Op.) at 23. Almost exactly one year later, Collingsworth made the first of a series of large payments to Blanco totaling at least $120,000, and Blanco signed a declaration that indeed said "what [Defendants] want to hear" and was completely irreconcilable with his prior sworn testimony to Colombian authorities. *Id.*; *Defamation* Doc. 775 (Drummond's Renewed Motion for Sanctions) at 15-22.

In 2012, Blanco gave letters rogatory testimony in Colombia in the *Balcero* case.[1] After Collingsworth and C&S knowingly elicited false testimony from Blanco regarding whether he had been paid, *Defamation* Doc. 417 (Crime-Fraud Op.) at 24, Blanco selectively refused to answer certain questions asked by Drummond's counsel on cross-examination. This Court subsequently

[1] The "*Balcero* case" refers to *Claudia Balcero Giraldo, et al. v. Drummond Company, Inc., et al.*, 2:09-cv-01041-RDP (N.D. Ala.).

excluded Blanco's testimony, citing fundamental due process concerns and explaining that Drummond's "inability to cross examine a witness 'created substantial danger of prejudice by depriving [Drummond] of the ability to test the truth of the witness' direct testimony.'" *Claudia Balcero Giraldo, et al. v. Drummond Co.*, No. 2:09-CV-1041-RDP, 2013 WL 3873960, at *6 (N.D. Ala. July 25, 2013), *aff'd sub nom. Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015), and *aff'd sub nom. Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015) (quoting *United States v. Monaco*, 702 F.2d 860, 871 (11th Cir. 1983)).

## II. Blanco Voluntarily Appeared at the Request of Defendants

On June 20, 2023, C&S and William R. Scherer, Jr. (collectively "C&S") filed a motion requesting the issuance of letters rogatory to take the depositions of eight (8) Colombian witnesses. *RICO* Doc. 212.[2] Blanco—who is still in Colombia but no longer in prison—was ***not*** included in C&S's motion. *Id.* Once the parties began to discuss a date for Blanco's deposition, it quickly became clear why. Defendants were—and to this day still are—in regular contact with Blanco and knew they could secure his voluntary appearance at a deposition in Colombia.

In September 2023, C&S made clear it wanted to "prioritize" Blanco's deposition: "With respect to Jaime Blanco's deposition, we are checking his availability to be deposed in October and November. If he has only limited availability during those months, we intend to prioritize the scheduling of his deposition over witnesses who have more availability." Ex. 2 (Sept. 22, 2023

[2] Those witnesses were Jhon Jairo Esquivel Cuadrado ("El Tigre"), Alcides Manuel Mattos Tabares ("Samario"), Jairo Jesús Charris Castro ("Charris"), José Arístides Peinado Martínez ("Peinado"), Oscar David Pérez Bertel ("Yuca"), Óscar José Ospino Pacheco ("Tolemeida"), Javier Ernesto Ochoa Quiñonez ("El Mecanico"), and José Del Carmen Gélvez Albarracín ("El Canoso").

Paulk Ltr.).[3] On October 2, 2023, the parties in the *RICO* case filed a joint report regarding deposition scheduling. The very first deposition listed by the Defendants was Blanco, with the dates of "November 7 or 8, 2023." *RICO* Doc. 253 at 2.

On October 18, 2023, C&S disclosed to Drummond that "With respect to Jaime Blanco, we have been holding November 7 and 8 open for taking his deposition in Colombia. I just learned, however, that one of the Fiscalia prosecutors has scheduled an interview with him (the details of which I do not have) on November 9. As a result, he would like to reschedule his deposition until after November 9." Ex. 4 (Oct. 18, 2023 Paulk Ltr.).

Defendants secured Blanco's appearance at a deposition in Bogota, Colombia, on December 11, 2023. Ex. 5 (Blanco Dep.).[4] Blanco met with both Collingsworth and Otero in preparation for his deposition, and he regularly meets with Ivan Otero, whom he described as a "friend[] for quite a long time":

> Q. Did you meet with anyone in preparation for your deposition today?
>
> A. Well, yes. Yes, I reviewed some documents. I was trying to ask and figure out how this process was going to proceed. So I met with Ivan Otero and that second name that was just mentioned. I met with Terry Collingsworth and Ivan Otero.
>
> Q. When did you meet with Mr. Otero?
>
> A. Well, we are friends from the same town, so we have been friends for quite a long time. Whenever we meet up, we play dominos, we have a beer, we have a drink. So ever since I have been released, I visit Valledupar at least every three months after I was released from prison in order to meet with him and see him and greet him.

---

[3] Although C&S clearly is able get Blanco to appear for a deposition, it claimed not to control other important witnesses that had previously worked for C&S, such as Rebecca Pendleton and Lorraine Leete. Ex. 3 (Sept. 27, 2023 Paulk email).

[4] Drummond cross-noticed the deposition on December 7, 2023, Ex. 6 (Cross-notice), thereby entitling Drummond to four (4) hours of cross examination. *RICO* Doc. 242 (Am. Scheduling Order) ¶ 3.

> Q. Did you meet with Mr. Otero and Collingsworth together in preparation for your deposition?
>
> A. Well, as I told you before, when we met, it was somewhat of an informal meeting, it was to get him to explain to me the topics of this deposition. There was no need to prepare for this deposition because the statement that I gave to the JEP is the same thing that I'm going to say here. So it is clear in my mind and I just quickly reviewed the statements that I gave to the JEP.
>
> […]
>
> Q. Did you meet with Collingsworth yesterday?
>
> A. Yes, we had a burger together.
>
> Q. Who was at that meeting?
>
> A. Attorney Ivan Otero – I'm sorry, Ivan Otero and his son, they were present who happens to be here today.
>
> Q. How long did the four of you all meet yesterday?
>
> THE INTERPRETER: Sorry, the interpreter didn't get the phrase of what the witness said.
>
> A. Well, I went to their hotel and we had lunch in the a.m. and then after that, at about 1:00 p.m., we went across the street from where the hotel is and we had a burger. And then after that, I went to rest.

Ex. 5 (Blanco Dep.) at 16:7-17:13; 18:14-19:7.

Although Otero completely ignored this Court's September 26, 2023 Order (Doc. 252) order granting Drummond's motion to compel, Otero nevertheless attended Blanco's deposition and even brought his son to the deposition (for reasons not clear to Drummond). Ex. 5 (Blanco Dep.) at 6, 18:18-20.[5] Otero also consulted with Blanco during the first break of the deposition. *Id.* at 45:12-46:4. Notably, Blanco selectively refused to answer questions posed by C&S about

[5] For context, Valledupar—where Mr. Otero resides—is approximately 537 miles from Bogota—the location of Blanco's deposition. distance from bogota to valledupar - Search (bing.com) (last visited Apr. 26, 2024).

the payments he received from Collingsworth through Otero, stating that he was invoking his right against self-incrimination:

> Q. Hold on. What type of help did you get as it related to your defense from Mr. Collingsworth?
>
> A. It was money. I don't remember the number or the amount right now, but it was money.
>
> Q. Did that money go to you or to someone else?
>
> A. I abstain from answering right now telling who received the money because I'm not going to self-incriminate myself.
>
> Q. Did the money go to the lawyer that represented you?
>
> A. Yes, the money went to a few of the attorneys that I had at the time.
>
> Q. And can you tell us their names?
>
> A. I cannot.

*Id.* at 87:11-88:4.

C&S noticed Blanco's deposition for one day, Ex. 7 (Nov. 16, 2023 C&S Notice of Deposition), and the deposition began at 9:33 a.m. on December 11th. At 4:49 p.m., C&S concluded its direct examination of Blanco, and the parties took a short break. Following C&S's lengthy direct, Blanco expressed concern that the deposition would not be completed by the understood endpoint:

> MR. WELLS: Before we get going, was there a time the witness was wanting to stop?
>
> THE WITNESS: Well, the idea was to complete this deposition today. Well, my concern is the gentlemen from Drummond have not had an opportunity to testify, so I ask for Terry to please be as brief as possible in order to give them that opportunity. I am tired, but the idea was to conclude this deposition today.

Ex. 5 (Blanco Dep.). at 138:8-18. Collingsworth then questioned Blanco until 5:15 p.m. The parties then went off the record to discuss the completion of Blanco's deposition. At 5:26 p.m.,

the parties went back on the record and confirmed their agreement that Blanco would voluntarily appear at a subsequent date so that Drummond could have the opportunity to cross examine him:

> MR. WELLS: So we just had a discussion off the record. It is approaching 5:30 local time. **Our interpreter is tiring and is concerned about the accuracy throughout the entirety of the cross-examination [and] Mr. Blanco has raised some medical concerns about continuing as long as the cross-examination would take.**
>
> **I believe we have an agreement amongst counsel that we will find a new date for Mr. Blanco's cross-examination that we will work with everyone's schedules** to make sure that can be accomplished without inconvenience to anyone.
>
> MR. PAULK: Yes. I will say on the record that **defendants are in agreement with that, as well as any additional time for recross**.

*Id.* at 149:19-150:13 (emphasis added).

## III. DEFENDANTS HAVE NOT MADE BLANCO AVAILABLE FOR CROSS-EXAMINATION.

As the parties' correspondence leading up to Blanco's deposition reflects, Defendants are apparently in constant contact with Blanco and were able to secure his voluntary appearance for deposition (as well as a preparation session the day before). Since December 11, 2023, Drummond has repeatedly asked Defendants to provide Blanco's availability to complete his deposition.

On December 19, 2023, Drummond emailed the Defendants and stated, "With regard to completing Jaime Blanco's deposition, please let us know what dates he is available to finish his deposition." Ex. 8 (Dec. 19, 2023 Presley email).

On January 3, 2024, C&S told Drummond that "[i]f you are OK with defendants conferring with him about rescheduling, we will begin working on that." Ex. 9 (Jan. 3, 2024 Paulk email). The next day, Collingsworth represented to Drummond that "Ivan Otero will check with and confirm a date to finish Jaime Blanco's deposition. Due to Mr. Blanco's need to testify in Drummond's criminal trial in Colombia, I believe he was looking to February 6 or 7, but we will confirm this." Ex. 10 (Jan. 4, 2024 Collingsworth email).

Three weeks later, having heard nothing from Collingsworth or C&S, Drummond followed up and stated, "Defendants, please provide an update on the continuation of Jaime Blanco's deposition. Obviously with the travel involved, everyone will need as much advance notice as possible." Ex. 10 (Jan. 22, 2024 emails). Collingsworth responded, "We have made the inquiry. I was told Jaime was traveling and would get back to us soon." *Id.*

After another month went by without any dates or further response from the Defendants, Drummond followed up yet again, stating "Defendants, please provide an update on the completion of Blanco's deposition. We have not had an opportunity to cross-examine, and it is our position the testimony would be inadmissible without us having such an opportunity." Ex. 10 (Feb. 22, 2024 Wells email). Despite being put on notice that Drummond would seek to exclude Blanco's testimony if the deposition was not reconvened to allow Drummond an opportunity to cross-examine, Defendants did not respond to this email at all. After not hearing anything for two months, Drummond notified Defendants that it would be filing a motion to exclude Blanco's testimony. Ex. 10 (Apr. 22, 2024 Wells email). In that communication, Drummond made clear its intent to file this motion, but asked Defendants once again "if there was a proposed date [for Blanco's deposition] that had for some reason not been communicated to us." *Id.*

Only then did Defendants for the first time claim that Blanco was resistant to continuing the deposition due to purported (but completely unsubstantiated and vague) safety concerns. Defendants responded that they are "eager" to continue Blanco's deposition, but "[o]ur efforts to reschedule it … have been complicated by threats Blanco received after his December deposition.

He is hesitant to sit for another deposition in light of these threats.  I understand from Terry that Ivan Otero has asked Blanco for dates, and we will keep you posted." *Id.*[6]

Notwithstanding their repeated assurances, Defendants have never responded with a date to complete Blanco's deposition.  Nor can Drummond now issue letters rogatory to compel Blanco to appear for cross examination.  Fact discovery is closed, and even if it were not closed, prior experience shows that any letters rogatory issued today will not be executed prior to the trial ready date of November 2024.  In sum, Drummond has been deprived of its right to cross-examine Blanco.

## ARGUMENT

Blanco's deposition testimony should be excluded on multiple grounds.

*First*, Drummond's right to cross-examine Blanco was denied.  Fact discovery has now closed and Defendants never made Blanco available for cross-examination despite their express agreement to do so.  Fundamental due process concerns—which already justified the exclusion of Blanco's testimony in *Balcero*—require the exclusion of his testimony in this case.

---

[6] Drummond immediately asked C&S to provide details of the "threats" supposedly received by Blanco, including any reports made to Colombian authorities, since Defendants never once raised the issue of "threats" to Blanco in response to any of Drummond's numerous prior communications asking about Blanco's deposition.  *Id.*  C&S responded that it had no information regarding the source of any supposed threats, and C&S did not provide any evidence of supposed threats received by Blanco, including any reports to Colombian authorities.  *Id.*

As C&S's response reflects, C&S and Collingsworth selectively leverage Ivan Otero's relationship with Defendants' paid witnesses based on the exigencies of the moment. Otero has been working hand-in-glove with the Defendants with respect to Blanco's deposition since the subject of Blanco's deposition was first raised, and Otero continues to do so to this day.  During the same time period, Otero willfully refused to respond to Drummond's discovery requests, failed to comply with this Court's order on Drummond's motion to compel, and refused to submit a sworn declaration regarding payments to Samario.

*Second*, Blanco's deposition testimony is inadmissible hearsay because it does not fall within the hearsay exception for former testimony (Fed. R. Evid. 804(b)(1)) which requires that Drummond have an opportunity to develop Blanco's testimony by cross-examination.[7]

## I. BLANCO'S TESTIMONY IS INADMISSIBLE ON DUE PROCESS GROUNDS.

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *McNeill v. Butz*, 480 F.2d 314, 321 (4th Cir. 1973) (citing *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970)). Stated more succinctly by this Court: "The right to cross examination is a basic due process protection that is guaranteed by the Fourteenth Amendment." *Balcero*, 2013 WL 3873960, at *6 (citing *In re Oliver*, 333 U.S. 257, 273 (1949)). Because of this right's importance, a district court has significant discretion to strike, exclude, or bar testimony where a party's ability to cross was limited.[8] Pursuant to this authority, this Court correctly excluded Blanco's testimony in *Balcero* because he selectively invoked his privilege against self-incrimination and refused to answer certain questions from Drummond's counsel, effectively limiting Drummond's cross-examination. *Balcero*, 2013 WL 3873960, at *6.

---

[7] Blanco's testimony on direct examination was also rife with inadmissible statements, leading questions, and non-responsive answers. In the event Blanco's testimony is not excluded in its entirety, Drummond reserves the right to file a motion *in limine* to exclude the inadmissible or otherwise objectionable portions of Blanco's testimony.

[8] *See, e.g., E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09CV58, 2011 WL 13079490, at *1 (E.D. Va. May 16, 2011) (excluding deposition testimony when witness selectively invoked privilege against self-incrimination in response to topics on cross examination that he responded freely to on direct); *Midkiff v. 3M Co.*, No. 4:08CV01219 ERW, 2011 WL 196310, at *1 (E.D. Mo. Jan. 20, 2011) (testimony excluded where plaintiff was able to cross-examine the witness, but that examination was hampered by defendant's failure to produce documents that could have been used in the cross-examination); *In re Reingold*, 157 F.3d 904 (5th Cir. 1998) (recognizing that excluding deposition testimony because opponent did not have an adequate chance to cross-examine the witness can provide a legitimate basis for excluding the deposition).

In the present case, Drummond's right to cross-examine Blanco was not just limited in certain areas by Blanco's selective responses, Drummond's right was denied altogether given Drummond had *no* opportunity to cross-examine Blanco on any topic because Defendants failed to honor their agreement (memorialized on the record at Blanco's deposition) to arrange another date when Drummond could cross examine Blanco. The due process justifications for excluding Blanco's testimony in the instant cases are therefore stronger than in *Balcero*, wherein this Court held that Drummond's "inability to cross examine [Blanco] 'created substantial danger of prejudice by depriving [Drummond] of the ability to test the truth of [Blanco's] direct testimony.'" *Balcero*, 2013 WL 3873960, at *6 (quoting *Monaco*, 702 F.2d at 871). Simply put, the complete deprivation of Drummond's right to cross-examine Blanco requires the exclusion of his testimony under this Court's prior precedent and settled federal law. *Pillsbury Co. v. Conboy*, 459 U.S. 248, 259 n.18 (1983) (the "right of cross examination" is "relied upon expansively to test credibility as well as to seek the truth" and a deposition is "admissible if the party against whom the testimony is now offered in a civil action had an opportunity to develop testimony by cross examination") (citing Fed. R. Evid. 804(b)(1)).

## II. BLANCO'S TESTIMONY IS ALSO INADMISSIBLE HEARSAY.

Blanco's deposition transcript is also inadmissible hearsay unless it falls within an exception to Federal Rule of Evidence 802. The only applicable exception for Blanco's testimony here is found in Rule 804(b)(1), which provides that deposition testimony from an unavailable witness is admissible as an exception to the evidentiary hearsay exclusion only if the party against whom the testimony is offered had an opportunity to develop the testimony by cross-examination. Defendants cannot satisfy this exception because Drummond had no opportunity to cross-examine Blanco. Blanco's testimony is therefore inadmissible hearsay and should be excluded.

Other district courts considering similar factual scenarios have come to the same conclusion. For example, in *Cury v Philip Morris USA*, the witness, who was in South Korea, was deposed for approximately five hours, with defendant's examination taking up 27 pages and plaintiff's cross-examination spanning an additional 109 pages. Before the cross-examination was completed, however, the witness left the deposition in "large part" because it was represented to him that the deposition would only run two hours long. 93 CIV. 2395(CSH), 1995 WL 594856 at *6 (S.D.N.Y. Oct. 6, 1995). The District Court for the Southern District of New York found that "[t]he witness' departure from the deposition deprived the plaintiff of a meaningful opportunity to cross-examine the witness on certain critical aspects of [the] case" and excluded his deposition testimony from trial. *Id.* at *7.

The grounds for exclusion here are clearer than those in *Curry*. Plaintiff's counsel there at least had some ability to cross-examine, and the cross-examination consisted of the majority of the deposition. Here, Drummond had no ability to cross-examine Blanco.

In *Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, No. CV 03-1064 (PAM/RLE), 2005 WL 8162788 (D. Minn. Feb. 4, 2005), the plaintiff scheduled the deposition of a third-party witness, but after completing its direct examination, informed the defendant that it only had one hour to conduct its cross-examination due to a scheduling conflict of the witness. The court found that the defendant did not have a meaningful opportunity to cross-examine. *Id.* at *17-18. The court rejected plaintiff's argument that the deponent was a third-party not under plaintiff's control, finding that plaintiff "orchestrated the occurrence, and timing of the deposition, and failed to inform [defendant] of the limited opportunity for cross-examination." *Id. See also United Realty Advisors, LP v. Verschleiser*, No. 14-CV-5903, 2022 WL 2093416, at *2–3 (S.D.N.Y. June 10, 2022) (precluding witness's testimony from trial when plaintiffs and their counsel ended the

deposition 40 minutes early depriving defendants of their right to cross-examine the deponent with the remaining time); *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 CIV. 4978 (LMM), 2002 WL 31655323, at *1 (S.D.N.Y. Nov. 25, 2002) (explaining that the opportunity to cross examine under Rule 804(b)(1) is not "an empty formality; it must be 'full, substantial and meaningful in view of the realities of the situation'" and excluding testimony of volunteer third-party witness when he failed to appear for the second day of his deposition due to purported safety concerns); *Louisiana Power & Light v. Fischbach & Moore, Inc.*, No. CIV. A. 86-0594, 1992 WL 202400, at *2 (E.D. La. Aug. 12, 1992) (excluding deposition testimony under Rule 804(b)(1) when party it was being offered against did not have an opportunity to perform an effective cross-examination).

Under this settled law, Blanco's deposition testimony is inadmissible hearsay and therefore should be excluded.

**CONCLUSION**

"[D]eposition testimony not subject to the crucible of cross-examination [i]s inadmissible." *Cury*, 1995 WL 594856, at *2 (internal quotation marks and citations omitted). Drummond respectfully requests that this Court exclude the entirety of Blanco's deposition testimony in this matter on due process grounds and/or pursuant to Federal Rule of Evidence 802.

Respectfully submitted,

*/s/ Benjamin T. Presley*
William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
(205) 868-6000
fax: (205) 868-6099

*/s/ Sara E. Kropf*
Sara E. Kropf
KROPF MOSELEY PLLC
1100 H. Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900

*Attorneys for Drummond Company, Inc. and Drummond Ltd.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 26, 2024, I electronically filed the foregoing via the CM/ECF system which will provide electronic service to all counsel of record.

      */s/ Benjamin T. Presley*
      Benjamin T. Presley (ASB-0136-I71P)