

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No 2:11-cv-3695-RDP |
| | ) | |
| TERRENCE P. COLLINGSWORTH, | ) | |
| individually and as an agent of Conrad & | ) | |
| Scherer, LLP; and CONRAD & SCHERER, | ) | |
| LLP, | ) | |
| | ) | |
| Defendants. | ) | |

**CONRAD & SCHERER, LLP'S MOTION FOR SUMMARY JUDGMENT**

Robert K. Spotswood
Michael T. Sansbury
William T. Paulk
SPOTSWOOD SANSOM & SANSBURY LLC
505 20th Street North, Suite 700
Birmingham, AL 35203
Phone (205) 986-3620
Fax (205) 986-3639
rks@spotswood.com
msansbury@spotswood.com
wpaulk@spotswood.com

*Attorneys for Defendant Conrad & Scherer, LLP*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................................ii

INTRODUCTION..................................................................................................................... 1

STATEMENT OF UNDISPUTED RELEVANT FACTS ("SUMF") .................................... 1

LEGAL STANDARD ............................................................................................................... 8

LEGAL ARGUMENT .............................................................................................................. 8

   I.   C&S cannot be liable for defamation absent a finding that Collingsworth is liable. ....... 9

   II.   C&S is entitled to summary judgment because Collingsworth acted outside the scope
      of his employment in publishing the allegedly defamatory letters................................ 11

CONCLUSION ....................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Allied World Surplus Lines Ins. Co. v. Lovette Properties, LLC*,
   2024 WL 1142257 (N.D. Ala. Mar. 15, 2024) ......................................................... 8

*Battles v. Ford Motor Credit Co.*,
   597 So. 2d 688 (Ala. 1992) ...................................................................................... 11

*Brackin v. Trimmier Law Firm*,
   897 So. 2d 207 (Ala. 2004) ...................................................................................... 10

*Calderone v. United States*,
   799 F.2d 254 (6th Cir. 1986) .................................................................................... 8

*Cantrell v. N. River Homes*,
   628 So. 2d 551 (Ala. 1993) ...................................................................................... 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................. 8

*Ex parte Atmore Cmty. Hosp.*,
   719 So. 2d 1190 (Ala. 1998) .................................................................................... 12

*Hoover v. Tuttle*,
   611 So. 2d 290 (Ala. 1992) ...................................................................................... 11

*Hulbert v. State Farm Mut. Auto. Ins. Co.*,
   723 So. 2d 22 (Ala. 1998) ........................................................................................ 14

*K-Mart Corp. v. Pendergrass*,
   494 So. 2d 600 (Ala. 1986) ...................................................................................... 12

*Shea v. Kohl's Dep't Stores, Inc.*,
   2019 WL 1452887 (N.D. Ala. Apr. 2, 2019) ........................................................... 11

*Solmica of Gulf Coast, Inc. v. Braggs*,
   232 So. 2d 638 (Ala. 1970) ................................................................................. 12, 14

*Wal-Mart Stores, Inv. v. Smitherman*,
   872 So. 2d 833 (Ala. 2003) ...................................................................................... 9

*Walton v. Bromberg & Co.*,
   514 So. 2d 1010 (Ala. 1987) .................................................................................... 12

*Weir v. Bhd. of R. Trainmen*,
   129 So. 267 (Ala. 1929) ..................................................................................................... 11

**Treatises**

Prosser & Keeton, *The Law of Torts* 503 (5th ed 1984) ............................................................. 11

## INTRODUCTION

Conrad & Scherer, LLP ("C&S") seeks summary judgment on Drummond Company, Inc.'s ("Drummond") single-count defamation complaint. The Court should enter summary judgment against Drummond for two reasons. First, Defendant Terrence Collingsworth ("Collingsworth") is entitled to summary judgment on his separate motion for summary judgment because the statements at issue in this case were true or because the undisputed facts show he did not make them with actual malice. *See* Doc. 818 (Collingsworth Mot. Summ. J.). Second, Collingsworth was not acting within the line and scope of his employment when he made the statements at issue. Thus, even if the Court denies Collingsworth's motion, C&S is still entitled to summary judgment.

## STATEMENT OF UNDISPUTED RELEVANT FACTS ("SUMF")

1.      C&S is a litigation law firm based in Fort Lauderdale, Florida. It has been in business since 1974.  Doc. 816-1 (DX 1 – Scherer Decl.) ¶ 2.

2.      Until Drummond filed this case, C&S had never been sued for defamation. Doc. 816-1 (DX 1) ¶ 4.

3.      C&S hired Terrence Collingsworth in February 2008. Doc. 779-1 (William R. Scherer, Jr. Dep. Tr. (Sept. 28, 2022)), at 36:17–24; Doc. 390 (Sept. 2, 2015 Hr'g Tr.), at 387:9–13.

4.      When Collingsworth joined C&S in 2008, C&S opened an office in Washington, D.C., for Collingsworth and the team he was bringing over from his non-profit law firm, International Rights Advocates. Doc. 816-1 (DX 1) ¶ 11; Doc. 390, at 386:23–391:20.

5.      C&S hired Collingsworth to start and lead a human rights litigation practice group at C&S. Doc. 816-1 (DX 1) ¶ 12; Doc. 390, at 386:23–391:20.

6.      Before C&S hired Collingsworth, Mr. Scherer knew of his reputation as a defender of human rights and his expertise in litigating human rights cases. Doc. 779-1, at 42:15–22, 48:10–49; Doc. 390, at 386:23–387:10.

7.      Before it hired Collingsworth, C&S had served as co-counsel with Collingsworth on one or more human rights cases. Doc. 779-1, at 36:25–37:7; Doc. 390, at 384:18–385:19.

8.      Before C&S hired Collingsworth, Mr. Scherer knew Collingsworth had sued Drummond in U.S. District Court for the Northern District of Alabama in *Romero v. Drummond Co.*, No.: 7:03-cv-00575-KOB (N.D. Ala.). Doc. 779-1, at 45:8–46:6.

9.      "The [*Romero*] complaint alleged that the president of Drummond Ltd., the Colombian subsidiary of Drummond, with the knowledge of executives in the United States, hired Colombian paramilitaries to kill and torture union members at a Drummond coal mine in Colombia." *Romero v. Drummond Co.*, 480 F.3d 1234, 1237 (11th Cir. 2007).

10.     Before C&S hired Collingsworth, Mr. Scherer knew Collingsworth had tried *Romero* to a jury, which returned a verdict in Drummond's favor. Doc. 779-1, at 45:8–46:6.

11.     In March 2009, after joining C&S, Collingsworth filed a second lawsuit against Drummond, *Freddy Locarno Baloco et al. v. Drummond Co. Inc. et al.*, No. 09-00557-CV-RDP (N.D. Ala.) ("*Baloco*"). *Baloco* Doc. 1.

12.     The Eleventh Circuit summarized the claims in *Baloco* as follows:

Plaintiffs/Appellants (hereinafter "Plaintiffs") are the children and heirs of three men (Valmore Locarno Rodriguez, Victor Hugo Orcasita Amaya, and Gustavo Soler Mora) who worked for Defendant Drummond Ltd. at Drummond's coal mining operation in Colombia, South America. The three men were officials of a union, Sintramienergetica. They were murdered in 2001 in Colombia. The central thrust of Plaintiffs' case is that the murders were committed by paramilitaries of the AUC, an organization affiliated with Colombia's military and which, together with the military, provided security against guerilla attacks for Drummond's coal mining facility and operations. Plaintiffs claim that the murders occurred in the context of a violent armed conflict between the AUC and the FARC, a leftist guerilla organization; hence, they classify the murders as war crimes. Plaintiffs

allege that Drummond aided and abetted or conspired with the AUC by directly funding some of its operations and that it collaborated with the AUC to commit these murders. Plaintiffs' claims were brought under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 (Counts One and Two), the Torture Victim Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note § 2(a) (Count Three), and the wrongful death law of Colombia (Count Four).

*Baloco v. Drummond Co.*, 767 F.3d 1229, 1233 (11th Cir. 2014).

13.     In May 2009, after joining C&S, Collingsworth filed a third lawsuit against

Drummond, *Claudia Balcero Giraldo et al. v. Drummond Co. et al.*, No.: 2:09-CV-1041-RDP

(N.D. Ala.) ("*Balcero*"). *Balcero* Doc. 1.

14.     The Eleventh Circuit summarized the claims in *Balcero* as follows:

Plaintiffs, the legal heirs of the decedents, filed suit in federal court against numerous defendants-appellees, including a supranational coal mining company based in Alabama, its subsidiary, and several of its high-ranking corporate officers (collectively, Defendants). Averring that Defendants engaged the paramilitaries, known as the Autodefensas Unidas de Colombia (AUC), to eliminate suspected guerilla groups from around the company's mining operations in Colombia, Plaintiffs contend their innocent decedents were incidental casualties of Defendants' arrangement with the AUC. Specifically, Plaintiffs allege that the AUC, acting at the behest and on behalf of Defendants, committed a series of international law violations, including extrajudicial killings, war crimes, and crimes against humanity, against Plaintiffs' family members in Colombia. Claiming that Defendants aided and abetted, conspired with, and entered into an agency relationship with the AUC, Plaintiffs brought suit under the Alien Tort Statute (ATS), 28 U.S.C. § 1350; the Torture Victim Protection Act of 1991 (TVPA), Pub.L. No. 102–256, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note); and Colombia's wrongful death laws.

*Doe v. Drummond Co.*, 782 F.3d 576, 580 (11th Cir. 2015).

15.     In May 2010, Collingsworth purported to enter into an attorney-client relationship

with Albert van Bilderbeek on behalf of C&S. Doc. 816-2 (DX 2 – TC-AVB attorney-client

agreement).

16.     Collingsworth did not advise any partners in the firm of this engagement before

entering into it. Doc. 816-1 (DX 1) ¶ 41.

3

17.     Collingsworth did not use the firm's standard retention agreement or ask it to perform its standard conflicts analysis. Doc. 816-3 (DX 3 – Mantro Decl.) ¶¶ 4–5, 7.

18.     C&S was not asked to, and did not, open a matter for this representation. Doc. 816-3 (DX 3) ¶¶ 6, 8.

19.     C&S has not received any financial benefit from Collingsworth's representation of Bilderbeek. Doc. 816-1 (DX 1) ¶ 42.

20.     At the time, Bilderbeek had a dispute with Drummond about an oil rights concession that Bilderbeek contended Drummond stole from Bilderbeek's company, Llanos Oil. Doc. 73 ¶ 8.

21.     On August 24, 2010, Collingsworth corresponded with Bilderbeek regarding a meeting with "the finance people" and explained, "[W]e will be jumping full bore into the (very expensive) Drummond discovery process, so I'm quite anxious about this and want to be as prepared as possible so that the meeting has a good result." Doc. 816-4 (DX 4 – Aug. 2010 TC-AVB email).

22.     On December 14, 2010, Bilderbeek asked Collingsworth to "email me a letter (with letterhead and signed) addressed to" the Dutch Prime Minister and other Dutch officials for Albert to have hand-delivered. Doc. 816-5 (DX 5 – Dec. 2010 TC-AVB email) p.3[1] In the same correspondence, Bilderbeek instructed Collingsworth to email the letter he was preparing for the Dutch Prime Minister to four members of the House of Representatives of the Netherlands. *Id.* p.4.

23.     On January 18, 2011, Collingsworth sent his letter to the Dutch Prime Minister and emailed a copy of the letter to members of the House of Representatives of the Netherlands. Doc.

---

[1] Unless otherwise indicated, pinpoint citations reflect CM/ECF page numbers, not the exhibit page or Bates numbers, and are preceded by "p." or "pp."

816-6 (DX 6 – Jan. 2011 TC letter to Dutch Govt.); Doc. 816-7 (Jan. 2011 TC emails to Dutch Govt.).

24.     In this letter, Collingsworth stated that he had been "following the media coverage of Drummond in the Netherlands with great interest," that he did not want the Dutch government to "be misled into supporting a company that has an atrocious human rights record," generally described his ongoing lawsuits against Drummond, and urged the Dutch government "to terminate any business relationship with Drummond until it makes full amends for the atrocities it committed in Colombia." Doc. 816-6 (DX 6) pp.2–3.

25.     On February 4, 2011, Collingsworth sent another letter to the Dutch government. Doc. 816-8 (DX 8 – Feb. 2011 TC letter to Dutch Govt.).

26.     In this letter, Collingsworth sent the Dutch government copies of weblogs from Llanos Oil's website reflecting that the government participated in a conference call to discuss the January 18, 2011 letter with Drummond, Drummond's lawyers at Baker Boots, and Ecopetrol. Collingsworth added, "[I]t also appears that you are acting in concert against the interests of Llanos Oil and its two principals, the Dutch nationals Hendrik and Albert van Bilderbeek." Collingsworth concluded by providing the government with a copy of the Eleventh Circuit's then-recent decision in *Baloco*. *Id.* p.3.

27.     On or about June 16, 2011, the Japanese company Itochu Corporation announced it was acquiring a 20% interest in Drummond's Colombian mining operations and related infrastructure. Doc. 816-9 (DX 9 – Itochu Corp. Press Release); Doc. 816-10 (DX 10 – June 2011 TC-AVB email).

28.     On June 17, 2011, Albert van Bilderbeek sent Collingsworth an article regarding Itochu Corp.'s purchase of an interest in Drummond's Colombian mining operation and directed

Collingsworth to "have your office write Itochu Corp. to inform them of your lawsuit." Doc. 816-10 (DX 10).

29.     On September 9, 2011, Collingsworth entered into a series of agreements between and among Bilderbeek, NICOX BV, Herman de Leeuw, and James Ellwood (the "NICOX Agreements"). *See* Doc. 816-11 (DX 11 – NICOX Agreements).

30.     C&S was not a party to these agreements and did not know about them. *See id.*; *see also* Doc. 816-1 (DX 1) ¶ 43.

31.     As a result of these agreements, Collingsworth received $750,000. Doc. 783-1 (T. Collingsworth Dep. Tr. (Feb. 20, 2024)) 245:11–18; 246:19–24.

32.     C&S did not obtain any funds from the NICOX Agreements. Doc. 816-1 (DX 1) ¶ 43.

33.     On September 19, 2011, ten days after signing the NICOX Agreements, Collingsworth sent a letter to the President and CEO of Itochu Corporation. Doc. 816-12 (DX 12 – Sept. 2011 TC letter to Itochu).

34.     In this letter, Collingsworth expressed "dismay that the Itochu Corporation, with its public promise to respect the human rights of people working within its supply chain, has chosen to do business with Drummond, which as a record of major human rights crimes." After then describing the two cases pending against Drummond, Collingsworth encouraged Itochu to "commission an independent investigation to determine whether you are violating your own principles by doing business with Drummond." He also warned Itochu that "[b]y failing to take any steps to determine the truth now that you are on notice, Itochu Corporation would dishonor the principles it claims to stand for and should face strong scrutiny in the marketplace." *Id.*

35.     Some or all of the letters Collingsworth sent to the Dutch Government or Itochu were published on Llanos Oil's website. Doc. 816-13 (DX 13 – May 2012 Carroll memo) at 9. None of the letters were published on C&S's website. Doc. 816-1 (DX 1) ¶ 48.

36.     C&S management did not know Collingsworth sent the letters at issue until after he had done so. Doc. 816-1 (DX 1) ¶ 46; Doc. 816-14 (DX 14 – July 2013 TC email); Doc. 779-3 (William R. Scherer, III Dep. Tr. (Oct. 19, 2022)) ("Scherer, III Dep.") 189:18–24; 190:1–4, 10–12.

37.     C&S did not authorize or approve of Collingsworth sending the letters at issue. Doc. 816-1 (DX 1) ¶ 45; Doc. 779-3 (Scherer, III Dep.) 189:18–190:12.

38.     C&S did not receive any benefit from Collingsworth sending the letters at issue. Doc. 816-1 (DX 1) ¶ 47; Doc. 779-3 (Scherer, III Dep.) 189:18–190:12.

39.     Neither of the two pending cases against Drummond—*Baloco* and *Balcero*—related to Drummond's business dealings with the Dutch Government or Itochu. Doc. 73 ¶ 31; Doc. 816-15 (DX 15 – *Balcero* Doc. 125) at 9. *See generally Baloco* Doc. 1; *Balcero* Doc. 1.

40.     One of Conrad & Scherer's senior attorneys noted in an internal memorandum in May 2012 that Drummond's defamation case was "serious," that "[n]either letter reflects a copy to Bill, Billy, or Richard," that the "letters reflect extremely bad judgment," and that it was "hard to believe that the letters are still up" on Llanos Oil's website. Doc. 816-13 (DX 13) pp.4, 9.

41.     C&S had no advanced knowledge of Collingsworth's interview on Alternativa Latina radio in 2013, nor did it authorize or approve of that interview. Doc. 816-1 (DX 1) ¶ 49.

42.     C&S obtained no benefit from Collingsworth's 2013 interview. Doc. 816-1 (DX 1) ¶ 50.

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 56, summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allied World Surplus Lines Ins. Co. v. Lovette Properties, LLC*, 2024 WL 1142257, at *4 (N.D. Ala. Mar. 15, 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at *11-12. "Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial." *Id.* at *12. Because Drummond bears the burden of proof at trial, C&S "need show only that [Drummond] cannot sustain [its] burden at trial." *Id.* at *13 (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

## LEGAL ARGUMENT

C&S is entitled to summary judgment for two reasons. First, C&S is entitled to summary judgment because Collingsworth is entitled to summary judgment on his separate motion for. As established in that motion, either Collingsworth's statements in the allegedly defamatory letters were true, or he believed them to be true and did not make the statements with actual malice. Because Collingsworth is entitled to summary judgment, C&S is too.

Second, even if the Court does not grant Collingsworth's motion, C&S is still entitled to summary judgment because Collingsworth was not acting within the scope of his employment when he made the statements at issue.

I.      **C&S cannot be liable for defamation absent a finding that Collingsworth is liable.**

An entity cannot have direct liability for defamation without the defamatory acts of its agents. C&S has located no Alabama cases holding an entity liable for defamation without also finding that its employee or agent was also liable.[2] Additionally, several Alabama courts have automatically found an employer not liable for defamation after finding the employee's statements were not defamatory.

In *Wal-Mart Stores, Inc. v. Smitherman*, the Alabama Supreme Court reversed the lower court's finding that Wal-Mart was liable for slander for its employee's accusations to the plaintiff that the plaintiff was "stealing a loaf of bread." 872 So. 2d 833, 839 (Ala. 2003). The Court held that because the allegedly defamatory statement was true, there could not be liability for slander against the employee and Walmart. *Id.* at 840. The Court reasoned that the employer was "entitled to a JML on the slander claims" because the employee's statements were "true and therefore not actionable." *Id.*

Similarly, in *Cantrell v. North River Homes*, the Alabama Supreme Court held that the employer, North Rivers Homes, was not liable for defamation from the alleged statements made by its employee after the court found that there was "no substantial evidence that [the employee's] statements were attended by malice." 628 So. 2d 551, 554 (Ala. 1993). The court affirmed summary judgment in favor of the employer on the grounds that the employee's statements at issue did not rise to the level of defamation. *Id.*

---

[2] The Court has previously ruled that Alabama law governs Drummond's defamation claim. *See* Doc. 767 at 7 n.2 (noting that "Alabama law governs the merits of Drummond's defamation claim . . . .").

9

Finally, in *Brackin v. Trimmier Law Firm*, the court affirmed the lower court's judgment as a matter of law on the plaintiff's defamation claim against the employee and the employer. 897 So. 2d 207, 225 (Ala. 2004). The court found that the employee "properly performed her obligations as an agent of the [employer]." *Id.* Because there was no defamation on the part of the employee, the "trial court properly granted [the employer] and [the employee] a judgment as a matter of law on [the plaintiff's] defamation claim." *Id.*

The Court has previously set forth the factors under Alabama law Drummond must satisfy to recover on its defamation claim:

> To recover on a claim of defamation in Alabama, a plaintiff must prove: "1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989). "[F]alsity is a sine qua non of a [defamation] claim []." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016) (quotations omitted). Thus, whether or not Drummond is a public figure, "[t]he first element of a cause of action in defamation is a false statement." *Tidwell v. Winn-Dixie Inc.*, 502 So. 2d 747, 748 (Ala. 1987).

Doc. 767 at 4.

It has also held that because Drummond has voluntarily undertaken the burden of proving *Sullivan* actual malice, it must prove actual malice by "clear and convincing evidence" even at the summary judgment stage. Doc. 767 at 5–6.

C&S respectfully submits that Drummond cannot carry this high burden at the summary judgment stage and that Collingsworth's motion for summary judgment, Doc. 818, is due to be granted. If it is granted, C&S's motion should also be granted based on the authority outlined above.

## II.    C&S is entitled to summary judgment because Collingsworth acted outside the scope of his employment in publishing the allegedly defamatory letters.

Even if the Court does not grant Collingsworth's motion, C&S is still entitled to summary judgment because Collingsworth acted outside the scope of his employment when he published the allegedly defamatory statements.

Under Alabama law, a corporation cannot be held liable for defamatory statements made by an agent acting outside the scope of his employment. *Shea v. Kohl's Dep't Stores, Inc.*, 2019 WL 1452887, at *10 (N.D. Ala. Apr. 2, 2019) ("A corporation can be liable for defamation based upon the statements made by its agents that damage a third-party. However, congruent with the basic principles of agency law, the agent must be acting within the scope of his or her employment at the time the statement is made.") (citing *Hoover v. Tuttle*, 611 So. 2d 290, 294 (Ala. 1992)); *Weir v. Bhd. of R. Trainmen*, 129 So. 267, 270 (Ala. 1929) (defamatory statement made by an agent "does not bind the principal as a publication, unless the act of such agent was within the line and scope of the agent so acting or employed"). Accordingly, C&S cannot be held liable for defamation if Collingsworth acted outside the scope of his employment when he published the three letters at issue.[3]

To determine whether Collingsworth acted within the scope of his employment in drafting and publishing the allegedly defamatory letters, the court must assess whether his actions were so

---

[3] Drummond bears the burden of proving Collingsworth was acting within the line and scope of his employment in publishing the letters. *See Battles v. Ford Motor Credit Co.*, 597 So. 2d 688, 689–692 (Ala. 1992) ("When a defendant's liability is based on the theory of agency, agency may not be presumed, and [] to defeat a defendant's properly supported summary judgment motion, the plaintiff must present substantial evidence of an agency relationship," and upholding summary judgment where the plaintiff failed to demonstrate that the individual making the alleged misrepresentations acted as the defendant's agent). *See also Walton v. Bromberg & Co.*, 514 So. 2d 1010, 1012 (Ala. 1987) ("There is one other element that the [plaintiff] must establish in order to prove that Bromberg's itself had published the alleged defamation. This element was set forth in *K–Mart Corp., Inc. v. Pendergrass*, 494 So.2d 600 (Ala.1986)[:] … 'if 'publication is sought to be shown by an agent, it does not bind the principal as a publication ..., unless the act of such agent was within the line and scope of the agent so acting or employed.'").

"closely connected" with his employment that they may be "regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (quoting Prosser & Keeton, *The Law of Torts* 503 (5th ed 1984)). *Cf. Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642–43 (Ala. 1970) (where an agent's tortious acts are the result of, or "impelled by motives that are wholly personal," they fall outside the scope of his employment). Two inquiries are critical: (1) whether C&S authorized the letters, and (2) whether the letters furthered C&S's business objectives.

For example, in *K-Mart Corp. v. Pendergrass*, a former K-Mart employee sued the company for defamation, alleging that a K-Mart manager told another K-Mart employee that the plaintiff had been fired for stealing. 494 So. 2d 600, 605 (Ala. 1986). The Alabama Supreme Court held that the statement did "not constitute a publication by K-Mart which would support an action for defamation against the corporation" because the manager made the statement "outside the uncontroverted line and scope of her employment." *Id.* The court reasoned that (1) the manager "was not authorized by K-Mart to release this kind of information to anyone" and (2) the statement "could not have been in furtherance of any conceivable corporate business." *Id*.

Similarly, in *Walton v. Bromberg & Co.*, a former employee of a jewelry store sued the company for defamation based a co-employee's statement to a third party that the plaintiff had stolen two diamond rings. 514 So. 2d 1010, 1011 (Ala. 1987). The Alabama Supreme Court affirmed summary judgment in favor of the company because the plaintiff "failed to produce a scintilla of evidence that [the co-employee] was acting within the scope of authority given to her by Bromberg's when the allegedly defamatory communication was made." *Id.* at 1012. The court reasoned that (1) the co-employee "was not authorized by Bromberg's to release this information to anyone" and (2) the statement did not further "any conceivable corporate business." *Id.*

Here, Collingsworth's actions in drafting and publishing the subject letters were entirely disconnected from his employment with C&S. Like the agents in *K-Mart* and *Bromberg*, Collingsworth did not seek or receive authorization from C&S to publish the subject letters. *See* SUMF ¶ 37. Rather, Collingsworth published the subject letters in response to a request from Albert van Bilderbeek, not anyone from C&S. SUMF ¶¶ 22, 28, 36–37.

And like the agents in *K-Mart* and *Bromberg*, Collingsworth was not acting in furtherance of any conceivable C&S business when he published the letters:

- Collingsworth was hired to lead a human rights litigation practice group. SUMF ¶ 5.

- C&S did not know about Collingsworth's representation of Bilderbeek until after the fact.  SUMF ¶ 16.

- Collingsworth did not use C&S's standard retention agreement or ask the firm to perform its standard conflicts analysis in connection with his representation of Bilderbeek. SUMF ¶ 17.

- C&S was not asked to, and did not, open a matter for Collingsworth's representation of Bilderbeek. SUMF ¶ 18.

- C&S did not know about the financial relationship between Collingsworth and Bilderbeek, nor did it receive any financial benefit from that relationship. SUMF ¶ 16, 19, 32.

- Collingsworth sent the letters at issue in response to requests from Bilderbeek, not anyone at C&S. SUMF ¶ 22, 28, 36–37.

- C&S was not a party to the NICOX agreements, did not know about them, and received no financial benefit from them. SUMF ¶¶ 30, 32.

- C&S did not know Collingsworth sent the letters until after he did so. SUMF ¶ 36.

- C&S did not approve or authorize Collingsworth to send the letters. SUMF ¶ 37.

- C&S received no benefit from the letters. SUMF ¶ 38.

- C&S had no advanced knowledge of Collingsworth's interview on Alternativa Latina radio in 2013, did not authorize or approve of that interview, and received no financial benefit from it. SUMF ¶¶ 41–42.

Finally, and most importantly, the letters at issue did not relate to or further the claims of the two lawsuits C&S and Collingsworth had pending against Drummond, which involved allegations of human rights violations in Colombia, not Drummond's larger business interests with the Dutch government or Itochu. SUMF ¶ 39. Drummond has admitted as much in this case and *Balcero*. *See* Doc. 73 ¶ 31 ("None of the recipients of the above letters have any connection to any litigation filed by Collingsworth against Drummond. The letters were not written in furtherance of any legitimate legal proceeding. . . ."); Doc. 816-15 (DX 15) p.9 (Drummond motion arguing, with respect to the January 18, 2011 letter, "It is difficult to discern any legitimate purpose for Plaintiff's counsel to attempt to influence the views of the Government of the Netherlands toward Drummond or toward this lawsuit.").

Because Collingsworth did not publish the letters "as part of the duties [he] was hired to perform," *Hulbert v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 22, 23 (Ala. 1998), but instead acted on "wholly personal motives", *Braggs*, 232 So. 2d at 642, his allegedly tortious conduct falls outside the scope of his employment. Consequently, C&S cannot be held liable for publication of the defamatory letters at issue and is entitled to summary judgment on Drummond's claim, regardless of the Court's ruling on Collingsworth's motion for summary judgment.

## CONCLUSION

For the reasons stated above, C&S respectfully requests entry of summary judgment in its favor on Drummond's single-count defamation complaint.

Dated: June 17, 2024

Respectfully submitted,

/s/ *William T. Paulk*
Robert K. Spotswood
Michael T. Sansbury
William T. Paulk
SPOTSWOOD SANSOM & SANSBURY LLC
505 20th Street North, Suite 700
Birmingham, AL 35203
Phone (205) 986-3620
Fax (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
wpaulk@spotswoodllc.com

*Attorneys for Defendant Conrad & Scherer, LLP*

CERTIFICATE OF SERVICE

     I certify that on June 17, 2024, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record and all *pro se* parties.

                                 */s/ William T. Paulk*
                                 William T. Paulk