FILED
2025 Feb-19 PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DRUMMOND COMPANY, INC. et al.,** | }<br>} |
| Plaintiffs, | }<br>} |
| v. | }     Case No.: 2:11-cv-3695-RDP |
| **TERRENCE P. COLLINGSWORTH, et al.,** | }<br>}<br>}<br>} |
| Defendants. | } |

| | |
|---|---|
| **DRUMMOND COMPANY, INC., et al.,** | }<br>} |
| Plaintiffs, | }<br>} |
| v. | }     Case No.: 2:15-cv-506-RDP |
| **TERRENCE P. COLLINGSWORTH, et al.,** | }<br>}<br>}<br>} |
| Defendants. | } |

## **ORDER**

This matter is before the court on Defendants Terrence P. Collingsworth's and IRAdvocates' Motion to Recuse Judge R. David Proctor based on 28 U.S.C. §§ 144 and 455. (Case No.: 2:11-cv-3695-RDP, Doc. # 848).[1] The Motion has been fully briefed (Docs. # 850, 851, 852), and is ripe for decision.

Collingsworth's and IRAdvocates' Motion seek the disqualification of the undersigned based on what Collingsworth contends are statements indicating "personal bias or prejudice"

---

[1] The Motion was filed in both cases listed above, but the court's citations to the record will be to the earlier Defamation case (Case No.: 2:11-cv-3695-RDP) unless otherwise indicated.

toward him, personally, rather than displeasure with his litigation conduct. (Doc. # 848 at 2-5, Doc. # 848-1).

Defendants Conrad & Scherer, LLP ("C&S") and William R. Scherer, Jr. filed a response to the Motion stating merely that they "are concerned that the comments made on the record about Mr. Collingsworth do not color decisions made about them. Beyond that, Mr. Scherer and C&S take no position on the Motion." (Doc. # 850 at 1-2).

Plaintiffs Drummond Company, Inc. and Drummond Ltd. ("Drummond") oppose the Motion. (Doc. # 851 at 28). Drummond asserts that the Motion has no merit and is a delay tactic. First, Drummond reiterates that Collingsworth and IRAdvocates "acknowledge in the opening sentence of their statement of facts that Collingsworth 'falsely' responded to a direct question from the Court." (*Id.* at 7 (citing Doc. # 848 at 1 ("I falsely told the Court that we had only provided security assistance to the families of Charris, Halcon, Albarracin, and Duarte."))). Second, Drummond points out that a week before filing the Motion for Sanctions, Collingsworth had joined in C&S and Scherer's request that the court set the case for a status conference to discuss a trial date. (Docs. # 844, 845). Third, and on the merits, Drummond argues that the Motion should be denied because it is untimely and legally insufficient. (Doc. # 851).

Collingsworth and IRAdvocates filed a Reply Brief and two additional exhibits, a Supplemental Declaration from Collingsworth and the court's April 8, 2021 Invited Response to Collingsworth's Petition for Writ of Mandamus regarding the court's Order to produce privilege documents under the "crime-fraud exception." (Doc. # 852). They argue that the Motion is not untimely because it was filed shortly after the court's December 10, 2024 decisions denying the parties' respective motions for summary judgment. They contend this was the "**first**

**manifestation**" of the court's bias against Collingsworth. (Doc. # 852 at 3) (emphasis in original). Collingsworth characterizes words used in the court's summary judgment decisions as "explicitly stating that I violated the law and paid witnesses to change their stories" and "explicit[ly] stat[ing] that I had bribed witnesses to change their testimonies." (*Id.*).[2] Collingsworth and IRAdvocates also argue that bias does not have to stem from an "extrajudicial source" when the court's statements demonstrate pervasive bias and prejudice. (*Id.* at 7). They assert that the court's alleged "explicit statements" demonstrate the type of bias warranting recusal. (*Id.*).

After careful review, and for the reasons explained below, the Motion is due to be denied.

## I. Applicable Legal Standards

"Recusal is governed by two statutes—28 U.S.C. §§ 144 and 455." *Matthews v. State Farm Fire & Cas. Co.*, 817 F. App'x 731, 735 (11th Cir. 2020).

Section 144 requires the filing of an affidavit, which must be timely and sufficient. 28 U.S.C. § 144. "Before a judge recuses [him]self, a § 144 affidavit must be 'strictly scrutinized for form, timeliness, and sufficiency.'" *United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015) (quoting *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972)). *See also Young v. Smith*, 2015 WL 1541686, at *1 (S.D. Ga. Mar. 31, 2015) ("Because the statute 'is heavily weighted in favor of recusal,' [the] requirements are to be strictly construed to prevent abuse.") (citation omitted). "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir.

---

[2] Of course, even a cursory review of the memorandum opinions shows the court did no such thing. On the contrary, after reviewing the Rule 56 evidence, the court concluded there were questions of fact for a jury to decide. For example, the court noted that "*A reasonable jury could conclude* from these facts that Defendants engaged in multiple instances of witness bribery" and "there is ample evidence in the record *from which a reasonable juror could conclude* that all Defendants, including particularly Collingsworth, intended to, among other things, bribe witnesses". (Case 2:15-cv-00506-RDP, Doc. # 363 at 20, 23) (emphasis added).

2000) (citation omitted).

The standard for recusal under § 455(a) "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)).

Even more to the point, however, "[u]nder either §§ 144 or 455, the nature of the alleged bias must be personal, rather than judicial." *Matthews*, 817 F. App'x at 735 (citing *United States v. Meester*, 762 F.2d 867, 884 (11th Cir. 1985)). As the Eleventh Circuit has explained:

> It is well settled that under either Section 144 or Section 455 an allegation of bias sufficient to require disqualification must demonstrate that the bias is personal as distinguished from judicial in nature. The alleged bias and prejudice, in order to be personal and therefore disqualifying, "must stem from an *extrajudicial* source and result in an opinion on the merits on some *basis other than what the judge learned from his participation in the case*."

*Jaffe v. Grant*, 793 F.2d 1182, 1188-89 (11th Cir. 1986) (citation omitted, emphasis added). (quoting *United States v. Phillips*, 664 F.2d 971, 1002-03 (5th Cir., Unit B 1981) (in turn quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966))).

"[O]pinions held by judges as a result of what they learned in earlier proceedings are not subject to deprecatory characterization as 'bias' or 'prejudice'." *Liteky v. United States*, 510 U.S. 540, 551 (1994). The Supreme Court elaborated on this point:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. [] *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal

4

judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Liteky*, 510 U.S. at 555-56 (emphasis in original). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* A motion to recuse is properly denied where the movant has "presented no evidence that the district court judge's alleged bias stemmed from personal or extrajudicial sources." *United States v. Gelin*, 2022 WL 10220112, at *2 (11th Cir. Oct. 18, 2022) (citing *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000)).

Moreover, and this is one key point here, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014). "Indeed, a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *In re Moody*, 755 F.3d at 895 (citations and quotation marks omitted). This court's colleagues, quite understandably, would look none to favorably on the undersigned if he ducked his obligation to manage these cases that have such a long and tortuous history.

**II.    Analysis**

Before a judge recuses himself, a § 144 affidavit must be "strictly scrutinized for form, timeliness, and sufficiency." *United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015) (quoting *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir.1972)); *see also Guthrie v. United States*, 2013 WL 5536117, at *2 (S.D. Fla. Oct. 7, 2013) ("In determining whether recusal is appropriate, therefore, the Court must first determine whether the following three elements have been met: (1) whether a party has made and timely filed an affidavit; (2) whether the affidavit is accompanied by a good faith certificate of counsel; and (3) whether the affidavit is legally sufficient.").

5

### A. Form - Whether the affidavit is accompanied by a good faith certificate of counsel

The Motion was accompanied by Collingsworth's initial Declaration. (Doc. # 848-1). That Declaration contains the following statement: "I believe in good faith that there is a reasonable likelihood that IRAdvocates and I will not be treated fairly and impartially in these cases." (*Id*. at 1). Collingsworth is a party who also happens to be an attorney representing himself. Because the Motion was accompanied by a good faith certificate of one of the moving parties, the court concludes is sufficient in form.

### B. Timeliness - Whether a party has made and timely filed an affidavit

The Motion is untimely. Section 144 sets a deadline for filing an affidavit of recusal tied to the beginning of the term at which the proceeding is to be heard. 28 U.S.C. § 144. But, "[t]his clear deadline is complicated by the fact that 28 U.S.C. § 138, amended in 1963, ended formal terms for district courts." *Roussel v. Tidelands Cap. Corp*., 438 F. Supp. 684, 691 (N.D. Ala. 1977). Thus, courts in this circuit have adopted a requirement that parties act with due diligence in filing a Section 144 affidavit seeking recusal. *See Huff v. Standard Life Ins. Co*., 643 F. Supp. 705, 707 (S.D. Fla. 1986) ("A party must proceed with absolute diligence to raise the disqualification of a judge at the earliest possible moment after learning of facts giving rise to a belief of a demonstration of bias or prejudice indicating disqualification."); *United States v. Cerrella*, 529 F. Supp. 1373, 1377 (S.D. Fla. 1982) ("The reference in the statute to 'term of court' is now obsolete in districts where courts sit continually (as in this district), but the timeliness provision still applies, being construed to mean due diligence, or promptly upon receipt of the information that forms the basis of the allegations in the affidavit.").

Some courts have articulated the requirement this way: "A party must proceed with absolute diligence to raise the disqualification of a judge at the *earliest possible moment* after learning of facts giving rise to a belief of a demonstration of bias or prejudice indicating disqualification." *Huff*, 643 F. Supp. at 707 (citing *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976) (emphasis added)). "There are strong policy reasons for strictly construing the timeliness requirement." *Roussel*, 438 F. Supp. at 691.

Collingsworth and IRAdvocates filed their Motion and Collingsworth's initial Declaration on January 15, 2025. (Doc. 848). The remarks the Motion and the initial Declaration rely on were made many years ago. In fact, in his Declaration, Collingsworth references statements made at a hearing almost ten years ago: at a deposition taken on August 17, 2015 (Doc. # 848-1 ¶ 4); at a hearing on September 3, 2015 (*id*. ¶ 5); and at a hearing on April 19, 2016 (*id*. ¶ 6). So, the most recent of the comments he complains of in his initial Declaration was made nearly nine years ago. (*Id*. ¶ 6). It is crystal clear that Collingsworth and IRAdvocates have not diligently raised the issue of disqualification "at the earliest possible moment." *Huff*, 643 F. Supp. at 707.

Nor have Collingsworth and IRAdvocates shown good cause for their belated filing. "The statute clearly puts the burden on the affiant of showing good cause for failure to file in time." *Roussel*, 438 F. Supp. at 691; *see also* *Fowler v. United States*, 699 F. Supp. 925, 926 (M.D. Ga. 1988) (denying a motion to recuse in part because neither the movant nor his attorney tried to show good cause for untimely motion). Collingsworth's and IRAdvocates' initial justification for not raising these alleged concerns earlier was (1) "we were in the mi[d]st of discovery"; and (2) "I was optimistic that our demonstration of good faith discovery compliance after my erroneous assertion to the Court and the lack of any real evidence obtained by Drummond in the discovery process

that I did anything improper relating to the merits of Drummond's allegations in their SLAPP suits would compel the Court to address the merits fairly and impartially when we finally reached the summary judgement stage." (Doc. # 848-1 ¶ 8).

In his Supplemental Declaration, Collingsworth attempts to bolster his explanation for the decade-long delay in filing the Motion to Recuse by arguing that the Motion was filed after the court's summary judgment decisions, which he asserts were the "first manifestation" of the alleged bias. (Doc. # 852 at 3). Yet, the Motion was not even filed with diligence after this court's summary judgment rulings. Almost a month went by after those decisions were issued without any Motion filed.[3] Indeed, after those summary judgment decisions, Collingsworth and IRAdvocates joined in C&S and Scherer's request for a status conference to set a trial date. (Docs. # 844 at 3, 845 ("I join in and incorporate by reference as if fully set forth herein the Opposition to Drummond's Motions submitted by my Co-Defendants Conrad & Scherer, LLP and William R. Scherer, Jr., ECF Nos 844.").

So, the question is this: why did Collingsworth and IRAdvocates wait nearly a decade to file this motion? Perhaps it was due to the court granting in part Drummond's Motion to Reinstate Its Renewed Motion for Sanctions and Its Motions for Spoliation Sanctions, indicating that before

---

[3] And, as discussed in footnote 2 above, in their Motion, Collingsworth and IRAdvocates frequently misconstrue the court's actual statements. There is no need for the court to recount how this is a consistent pattern found in their bias arguments. Nevertheless, the court gives this single example. Collingsworth and IRAdvocates represent that the court stated "Mr. Collingsworth is wearing a target in this case now." (Doc. # 848 at 3). To be sure, that attribution is incomplete and taken entirely out of context. The statement at issue took place in a hearing after Collingsworth requested to represent both himself and IRAdvocates. The court questioned whether Collingsworth—who undoubtedly is a "target" of this litigation (after all, he is a defendant accused of defamation and various RICO violations)—would have a conflict in representing both himself and another defendant. This was what the court actually said: "I guess my question is this. If Mr. Collingsworth is wearing a target in this case now, how can he – I'm concerned there may be conflicts with his representation of IRA." (Doc. # 370-5 at 4).

trial it would resolve the spoliation issue. (Docs. # 843, 847).[4] After all, the Motion to Recuse was filed within a week of that decision. (*Id.*).

In light of all of these circumstances, the court concludes that the Motion to Recuse was not filed "with absolute diligence." *Huff*, 643 F. Supp. at 707. It is untimely. This is not a close call.

### C. Substance - Whether the affidavit is legally sufficient

"'Factual knowledge gained during earlier participation in judicial proceedings involving the same party is not sufficient to require a judge's recusal.'" *Christo v. Padgett*, 223 F.3d 1324, 1334 (11th Cir. 2000) (quoting *Jaffe v. Grant*, 793 F.2d 1182, 1189 n. 4 (11th Cir. 1986)). However, this is precisely what Collingsworth and IRAdvocates rely on here.

The undersigned has handled both these cases since 2012 and 2015, respectively. Prior to these cases, the court handled underlying cases Collingsworth filed against Drummond alleging that Drummond collaborated with the AUC to murder Colombian union leaders. (*See, e.g.*, Case No. 7:09-cv-00557-RDP, Case No. 2:09-cv-01041-RDP). There is nothing in Collingsworth's Motion, Reply, or Declarations indicating that, in all these many years, there is any extrajudicial source of the alleged bias against him. (Doc. # 848 at 2-5, Doc. # 848-1, Doc. # 852, Doc. # 852-1). Nor is there any indication that there is any personal *source* for the alleged bias. (*Id.*).[5]

---

[4] The Motion for Spoliation Sanctions asks the court to either enter a default judgment against Defendants or give an adverse inference jury instruction at trial because of Defendant Collingsworth's missing emails, missing external hard drive, and missing MacBook computer. (Doc. # 776).

[5] In his Supplemental Declaration, Collingsworth references a comment made at a presentation recounting that the undersigned "once had a lawyer 'lie to his face'" and he "assumes" that the comment was about him. (Doc. # 852-1 ¶ 2). Candidly, the court has no recollection of such a comment and Collingsworth has not provided sufficient detail to help the court understand when any such remark was supposedly made. Having said that, the court has often counseled lawyers – particularly young ones – to always be honest with judges and juries. In over thirty-five years in practice and on the bench, there has been more than one occasion when an attorney made a false statement to the undersigned. It is therefore exceedingly likely that any remark the court offered was along the lines of this type of

Therefore, under the binding Eleventh Circuit precedent discussed above, the Motion is due to be denied for this reason alone. But there is more.

To the extent that Collingsworth "feels" this court has not approved of his conduct in and related to all of these cases, he is correct. And, there is a valid reason for that. There are consequences to conduct, and a court's "expressions of impatience, dissatisfaction, annoyance, and even anger," when based on counsel's litigation conduct, are neither inappropriate, nor grounds for recusal. *Liteky*, 510 U.S. at 555-56.

Next, Collingsworth accuses the court of having "explicitly" stated that he engaged in witness bribery. It did not. It reviewed the evidence presented by the parties and determined that there was sufficient *disputed* evidence from which *a jury* could so conclude.[6] At least some of this *disputed* evidence came from Collingsworth's old firm, Defendant C&S. By way of example, as the court explained in its summary judgment opinion in the RICO case, there was evidence that:

> In May 2012, Scherer asked C&S attorney Jim Carroll to evaluate the strengths and weaknesses of the *Balcero* case. (Doc. # 318-50 at 19). Carroll drafted a May 23, 2012 memorandum in which he stated "[t]he witnesses appear untrustworthy, and have changed their stories," "it appears [Collingsworth] made payments directly or indirectly to one of more witnesses, e.g. Jaime Blanco," and "the witnesses are criminals, convicts and poor people vulnerable to bribery and threats." (Doc. # 318-52)

(Case. No. 2:15-cv-00506-RDP, Doc. # 363 at 9). Also, the court highlighted an email Collingsworth sent to his firm stating that payments made to two witnesses – and these were witnesses who were not disclosed by Collingsworth – must continue until "the deps are in the can,"

---

advice. But, even if such a remark did anonymously refer to Collingsworth's false statement to the court in 2015, that still does not stand as a *source* for any alleged bias. At most, even if made in that context, it was an *expression* of consternation based on litigation conduct and a warning to lawyers, particularly young lawyers, to zealously guard their reputations.

[6] In a letter brief to another court, Collingsworth has acknowledged that this court made no such factual findings. (Doc. # 852-1 at 2).

*i.e.*, their depositions were taken. In both instances, the court was quoting from the actual documentary evidence found in the Rule 56 record. The court did not, as Collingsworth and IRAdvocates suggest, "explicitly" state that Collingsworth "bribed" witnesses. (Doc. # 852 at 6, 7). The court wrote, for example, that "*A reasonable jury could conclude* from these facts that Defendants engaged in multiple instances of witness bribery" and "there is ample evidence in the record *from which a reasonable juror could conclude* that all Defendants, including particularly Collingsworth, intended to, among other things, bribe witnesses". (Case 2:15-cv-00506-RDP, Doc. # 363 at 20, 23).[7]

It is undisputed in this case that Collingsworth made many, regular payments to witnesses. (Case 2:15-cv-00506-RDP, Doc. # 363 at 5-8). The *intent* of the payments is disputed. Collingsworth says they were made for the witnesses' security. Drummond has presented evidence that calls this explanation into question. (*Id*. at 7) (C&S's emails about setting up the monthly $2,700 payments to Otero indicate that $700 of those amounts was for Otero, and the remainder was support for the living expenses of the families of El Tigre and Samario); (Doc. # 335-7 at 2). Again, those emails make clear that the payments must continue until the payees' depositions are taken. In this email chain, Collingsworth instructed that "we can just call it security." (*Id*.)). In denying the parties respective dispositive motions, the court held that the *implications* of these facts, *was for a jury to decide*. (*Id*. at 20, 23, 32).

It is also undisputed that Collingsworth made false or at least incomplete or misleading statements about these payments to the court, in sworn discovery responses, and in pleadings.

---

[7] Collingsworth and IRAdvocates appear to contend that the fact that the court did not credit their disputed contentions in evaluating the Rule 56 record in this case indicates bias or prejudice. (*See, e.g.,* Doc. # 848 at 4-5). If that was the intention, the contention exhibits a misunderstanding of Federal Rule of Civil Procedure 56.

(Doc. # 417 at 8-17). Thus, in 2015, the court "ruled that [the] crime-fraud exception could defeat assertions of attorney-client privilege and attorney work-product protection during discovery," a ruling affirmed on appeal in 2018. *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1339 (11th Cir. 2018).

It is not at all surprising that this type of litigation conduct may cause a court some consternation. But, expressions of that consternation based on counsel's litigation conduct are neither inappropriate, nor grounds for recusal. *Liteky*, 510 U.S. at 555-56; *Christo*, 223 F.3d at 1334; *Jaffe*, 793 F.2d at 1189 n.4.

Nor are adverse rulings a valid basis for recusal. *In re Kunsman*, 752 F. App'x 938, 939 (11th Cir. 2018) ("Adverse rulings alone, either in the same or a related case, generally do not constitute a valid basis for recusal."). "The standard is 'whether an objective, disinterested, lay observer *fully informed of the facts underlying the grounds on which recusal was sought* would entertain a significant doubt about the judge's impartiality.'" *Bolin*, 225 F.3d at 1239. No reasonable person, *fully informed of the facts underlying the grounds on which recusal was sought,* would conclude that this court had treated Collingsworth and IRAdvocates anything other than fairly.

For these reasons, the substance of Collingsworth's and IRAdvocates' Motion to Recuse and Declarations are legally insufficient. This is not a close call.

### III. Conclusion

After scrutinizing Collingsworth's and IRAdvocates' Motion to Recuse and Declarations, the court concludes that the Motion was untimely and legally insufficient. *Perkins*, 787 F.3d at 1343. Therefore the Motion to Recuse (Case No.: 2:11-cv-3695-RDP, Doc. # 848; Case No.: 2:15-

cv-506-RDP, Doc. # 370) is **DENIED**.

    **DONE** and **ORDERED** this February 19, 2025.

                                                    */s/ R. David Proctor*
                                          **R. DAVID PROCTOR**
                                          CHIEF U.S. DISTRICT JUDGE