IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY, INC.<br><br>v.<br><br>TERRENCE P. COLLINGSWORTH, et al. | Case No. 2:11-cv-3695-RDP<br>(*Defamation*) |
| DRUMMOND COMPANY, INC., et al.<br><br>v.<br><br>TERRENCE P. COLLINGSWORTH, et al. | Case No. 2:15-cv-0506-RDP<br>(*RICO*) |

**DEFENDANTS COLLINGSWORTH AND IRADVOCATES' SUPPLEMENTAL RESPONSE TO DRUMMOND'S MOTION FOR JUDICIAL NOTICE AND FOR A LIMITING INSTRUCTION TO THE JURY**

On November 24, 2025, Drummond filed a motion asking the Court to take judicial notice of the jury verdict for Drummond in *Romero v. Drummond, Co., Inc.*, *et al.*, Case no. 7:03-CV-575, and issue an instruction to the jury that "Drummond was not liable for the Union Leaders' murders." (Doc. 637 (RICO) at p. 1). Drummond cites the recent Eleventh Circuit decision on issue preclusion, *Brown v. Zabala*, 2025 U.S. App. LEXIS 11646, *8 (11th Cir. 2025), to argue the issue of Drummond's liability for the murder of the union leaders was completely resolved by the *Romero* verdict. Drummond then argues that, assuming issue preclusion then applies, based on *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1274-75 (11th Cir. 2020), Mr. Collingsworth was bound by the *Romero* judgement because he was converted to party status because of his complete control over the actual parties in *Romero*. (Doc. 637 at pp. 3-5).

As an initial matter, Drummond ignores that issue preclusion cannot be applied in this case because Drummond must meet the higher burden of proof of "clear and convincing evidence," while the lower preponderance of evidence standard applied in *Romero*. There can be no preclusive effect if the second case has a higher burden of proof. Further, Drummond does not get past step one of the issue precision analysis because the issues being litigated in this case are not identical to those litigated in *Romero*. Finally, even if Drummond could satisfy the first three elements of issue preclusion, it cannot meet the fourth requirement of showing Mr. Collingsworth had a full and fair opportunity to litigate the issue in the earlier proceeding because Mr. Collingsworth was not a party to the *Romero* action and did not have "complete control" over its litigation. Mr. Collingsworth was not lead counsel in the *Romero* trial and an entire team of lawyers shared responsibility for litigating the actual party Plaintiffs' case. As such, Drummond's issue preclusion argument necessarily fails and its motion for judicial notice and for a jury instruction that Drummond's liability for the murder of the union leaders was completely resolved by the *Romero* verdict is due to be denied.

**A.  Issue Preclusion Is Inapplicable Because a Higher Burden of Proof Applies in This Case than Applied in *Romero*.**

Before reaching the issue preclusion analysis, an important procedural factor prevents the application of issue preclusion – the higher burden of proof applicable in this case. The plaintiffs in *Romero* had the burden of proving, by a *preponderance of the evidence*, that (1) the murders of the union leaders were war crimes and, (2) that Drummond aided and abetted others in killing the union leaders. (*See* Exhibit "A," *Romero* Pretrial Order, ¶ 6.d.ii.) Here, Drummond must prove by "***clear and convincing evidence***," (Doc. 767 at p. 6, November 30, 2023 Order), the falsity of the statement Drummond financed the AUC's murder of innocent civilians. The fact that the *Romero*

jury ruled the plaintiffs did not muster sufficient evidence to show Drummond had the AUC murder the union leaders in furtherance of a civil conflict under a preponderance of the evidence standard, does not unquestionably establish that Drummond can now show, by clear and convincing evidence, that it did not finance the union leaders' murders. *Grogan v. Garner*, 498 U.S. 279 (1991) (explaining a prior judgment rendered under a preponderance of the evidence standard cannot be given collateral estoppel effect in a subsequent matter litigated under a clear and convincing evidence standard); *Bates v. Harvey*, 518 F.3d 1233, 1240-41 (11th Cir. 2008) ("A court may give preclusive effect to a matter in dispute only when . . . the burden of proof in the earlier proceeding is at least as stringent as the burden of proof in the current proceeding."). As such, issue preclusion unequivocally does not apply.

**B. Issue Preclusion Does Not Apply Because the *Romero* Issues Were Not *Identical* to Those in this Case.**

Drummond's contention that the issue of whether "Drummond was responsible for the Union Leaders' murders" in the *Romero* trial is identical to the issue in this case, is inaccurate. (Doc. 637 at p. 2). The four issue preclusion elements are: "(1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Brown*, 2025 U.S. App. LEXIS at *7-8. There is absolutely no debate, and Drummond, in citing *Brown,* agrees,[1] all four elements must be satisfied for issue preclusion to apply. Drummond analyzes none of the factors and merely assumes that because the *Romero* jury ruled for Drummond, the matter is closed. (*See* Doc. 637 at p. 2). As

---

[1] (ECF No. 637 at 4).

an initial matter, the jury never ruled on any claims asserted against Drummond Company, as the Judge dismissed Drummond Company at the summary judgment stage. (*See* Doc. 655-1, p. 4). In any event, adding facts and analysis to the equation establishes Drummond cannot move beyond the first factor: "the issue at stake is identical to the one involved in the prior litigation."[2] *Brown*, 2025 U.S. App. LEXIS at *7-8. It is impossible to discern whether the *Romero* court considered and determined the precise issue at play in the present case and Plaintiff cannot retroactively insert its own understanding of the court's holding. Even if the *Romero* court had provided a more detailed analysis, it would only serve to illustrate how the legal and factual issues in this case are vastly different than in *Romero*.

The plaintiffs in *Romero* asserted ten causes of action in total against Drummond Company: (1) torture under the Alien Tort Claims Act ("ATCA"); (2) torture under the Torture Victims Protection Act ("TVPA"); (3) denial of fundamental rights to associate and organize under the ATCA; (4) assault; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligent supervision; (8) extrajudicial killing under the ATCA; (9) extrajudicial killing under the TVPA; and (10) wrongful death. (*See* Doc. 655-1 at pp. 1-4; n. 2). In a concise two-sentence explanation, the Court held "Plaintiffs had failed to put forward sufficient evidence to establish direct liability of Defendant Drummond Company, Inc." for the claim of extrajudicial killings under the ATCA. (*Id.* at p. 4). "Plaintiffs also have not convinced that court that it should pierce the corporate veil, or that any other theory of corporate liability exists for asserting these claims against Drummond Company, Inc." (*Id.*) Pursuant to this

---

[2] As Defendants demonstrate in section C, *infra*, Drummond also cannot meet the fourth factor of *Brown*, "the **party** against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." Mr. Collingsworth, as a member of the *Romero* trial team, was not elevated to the status of a "party."

reasoning, Judge Bowdre granted summary judgment on all claims against Drummond Company. (*Id.*)

The court's ruling as to Drummond Company's dismissal in *Romero* is not sufficiently detailed to allow the parties, or this Honorable Court, to determine what precise issue it decided and whether that is the same issue before this Court in the present case. Judge Bowdre simply states there is not sufficient evidence of "direct liability" on Drummond Company's behalf and that she is unwilling to pierce the corporate veil to establish such liability. The parties cannot retroactively implant our own understanding of what elements the court determined plaintiffs lacked sufficient evidence to prove. Without knowledge of what those elements or issues were, no party can say it is "identical" to the issue in this case.

Even if Drummond could extrapolate from the court's ruling the exact elemental issue of which the plaintiffs failed to present sufficient evidence, each of those claims had significant legal hurdles that are not "identical" to the issue in this case – whether Drummond financed the AUC's murder of the union leaders. *See Brown*, 2025 U.S. App. LEXIS at *8 (reiterating the issue at stake must be "identical" to the one involved in the prior litigation). The war crimes issue has a very specific element that the *Romero* plaintiffs were required to prove – the murders of the Drummond union leaders had to be "***in the course of hostilities***." *Kadic v. Karadzic*, 70 F.3d 232, 242 (2nd Cir. 1995). This is often phrased as "in furtherance of the civil conflict." Resolving only this specific issue, the jury found that the murders of the union leaders could not be established as in furtherance of a civil conflict. Indeed, in post-verdict interviews, two of the jurors stated explicitly that the jury would have ruled for the plaintiffs but for the war crimes instruction. Responding to question 7 on the juror questionnaire, attached to TPC Decl. as **Exhibit B,** (this was Exhibit 3A to TPC Decl., Doc. 814 (Defamation)), Juror Amaryllis Kelly stated:

> I really didn't go for the defense because of the evidence in the case. I ruled because of the instructions only. War crimes was key. That's what made our decision go the other way. We said yes to everything on the board, but when it got down to D on war crimes, that's what went against y'all."

Likewise, also responding to question 7 on the questionnaire, attached to TPC Decl. as **Exhibit C,** (this was Exhibit 3B to TPC Decl., Doc. 814 (Defamation)), juror Rosie Hudson stated:

> Originally, the group was more in favor of the plaintiffs. But when we got to the war crimes instruction, that made the decision for us. We could not say that Drummond aiding and abetting in the murders was a war crime. We couldn't say it furthered the hostilities.

Thus, the sole issue of liability at the *Romero* trial was whether Drummond aided and abetted the AUC's execution of the union leaders that was done in furtherance of the civil conflict in Colombia. The jury ruled that the AUC did not murder the union leaders in furtherance of the civil conflict. The issue in this case is the much broader question of whether the union leaders were murdered because Drummond simply paid the AUC to eliminate them, not in furtherance of any civil conflict, but because they were costing Drummond money and time in the midst of hotly contested contract negotiations. This issue was not presented to or decided by the *Romero* jury.

Indeed, Mr. Collingsworth's statements at issue in the defamation case – that hundreds of family members of Colombian nationals were "murdered by paramilitary forces working on behalf of Drummond," that Drummond "has an atrocious human rights record," "made an alliance with the United Self Defense Forces of Colombia (AUC)," and is able to "get away with murder," Complaint ¶¶ 10,14, 18 – include the *Romero* union leaders among the innocent civilian victims murdered, and is not limited by whether any of the victims were killed in furtherance of the civil conflict. To show his subjective belief in the truth of these statements, and to rebut Drummond's burden of proving falsity, Mr. Collingsworth is entitled to introduce any evidence to support that Drummond financed the AUC's murderous rampage that included the murders of the union leaders.

### C. Mr. Collingsworth and IRAdvocates Cannot Be Considered Parties to the *Romero* case.

Mr. Collingsworth and IRAdvocates were not parties to the Romero action. Drummond nonetheless argues "Federal law recognizes 'six categories of exceptions to nonparty preclusion under federal common law: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) ***the nonparty assumed control over the litigation in which the judgment was issued***; (5) a party attempted to relitigate the issues through a proxy; and (6) a statutory scheme foreclosed successive litigation by nonlitigants.' *Sellers*, 968 F.3d at 1274- 75." (Doc. 637 at 4) (emphasis added). In attempting to classify Mr. Collingsworth and IRAdvocates as parties to the *Romero* litigation, Drummond focuses solely on the fourth factor. (*See id*. at p. 4-5.)[3]

With no evidence whatsoever, Drummond bases its entire argument on the bald assertion that "Collingsworth was the lead attorney, with a contingency fee interest, and had complete control over 'the legal theories and proofs,' advanced in *Romero*." (*Id.* at p. 4.) In its Notice of Supplement Authority, Drummond further asserts "Drummond's Motion argues that Collingsworth and IRAdvocates—who were counsel of record for the *Romero* plaintiffs—are bound by the jury's verdict and final judgment in *Romero* and therefore are '"precluded from

---

[3] At the November 25, 2025 Status Conference, the Court also expressed an interest in the fifth *Sellers* factor, "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." Drummond did not raise this factor. It is inapplicable here because it only applies when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. *See Chicago, R.I. & P.R. Co. v. Schendel*, 270 U.S. 611, 620, 623 (1926). The principle of proxy relitigation thus specifically addresses situations where a party indirectly seeks to challenge a judgment by using another party as a stand-in; this is considered an abuse of the judicial process and undermines the finality of judgments. *See Peter Coppola Beauty, LLC v. Casaro Labs, Ltd.*, 108 F. Supp. 3d 1323, 1331 (S.D. Fla. 2015). Mr. Collingsworth is obviously participating in these cases directly and not through a proxy.

relitigating issues decided in *Romero*, including Drummond's responsibility for the union leader murders.'" (*Id.* at p. 2) (quoting *id.* at p. 5). Drummond's facts are objectively false and indicate only that Drummond confused *Romero* with *Balcero*.

First, the Drummond error simplest to correct – IRAdvocates was **not** counsel of record in *Romero*. **Exhibit D**, attached to TPC Decl., is the *Romero* Plaintiffs' July 2, 2007 Motion for Continuance, the last pleading filed by Plaintiffs before the start of the July 9, 2007 trial. Mr. Collingsworth signed the pleading as one of three attorneys with International Labor Rights Forum ("ILRF"), which was one of the counsels of record. IRAdvocates was formed roughly in June 2007, right before the *Romero* trial, but it never appeared in *Romero*, which was litigated by ILRF. *See* TPC Decl., ¶ 8. Thus, IRAdvocates cannot be bound by *Romero*.

Drummond also erroneously asserts Mr. Collingsworth was lead counsel in *Romero* and had "complete control" over all aspects of the litigation. This too is demonstrably false. During much of the discovery in the *Romero* case, Mr. Collingsworth was traveling constantly to Thailand conducting discovery and getting ready for a trial in *John Roe I v. Unocal*, an ATS case involving Unocal using forced labor to construct a national gas pipeline in Burma (Myanmar). *See* TPC Decl., ¶ 6. Many of the depositions of the *Romero* plaintiffs were handled by Derek Baxter because he was fluent in Spanish. He also took key Drummond depositions, including Jim Adkins. Robert Kerrigan and Mr. Baxter took Garry Drummond's and Augusto Jimenez's depositions. At trial, Rusty Johnson, Dennis Pantazis, and Robert Childs acted as lead counsel. *Id*. Mr. Johnson gave the opening statement and he and Mr. Pantazis gave the closing. Mr. Collingsworth handled a few witnesses at trial but was in a second chair role throughout the trial. *Id.*

Drummond concludes by stating "[m]ost of the plaintiffs in *Romero* were Colombian nationals who did not speak English or understand the United States' legal system. There could

not be a clearer example of a non-party controlling the litigation." Motion at 4-5. Well, Drummond's imagined facts might creatively construct a prototype example of complete control, but none of Drummond's assertions about Mr. Collingsworth and IRAdvocates' role in the *Romero* case are accurate. Regarding the twist of the Spanish-speaking *Romero* Plaintiffs being particularly susceptible to Mr. Collingsworth's control, Mr. Collingsworth does not speak Spanish. Attorneys Derek Baxter and Daniel Kovalik spoke Spanish and were almost entirely responsible for Plaintiff communications. *See* TPC Decl., ¶ 7.

None of Drummond's supplemental cases does anything to change the facts that in the *Romero* litigation Mr. Collingsworth was merely one lawyer on a team of nine lawyers, he was not lead counsel, and he certainly did not have anything remotely like complete control over "the legal theories and proofs."[4] Motion at 4. Drummond's three supplemental cases do not even address the *Sellers* "complete control" factor that Drummond argued elevated Mr. Collingsworth to party status in *Romero*. Motion at 4-5. In *Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958 (11th Cir. 2019), as an initial matter, defendant waived his res judicata defense by not raising it. *Id*. at 963. The Court considered it nonetheless and, unlike this case, found the issues were identical in both cases. *Id*. at 964. Finally, in finding "privity," the Court found that the subsequent "RICO claim arose out of actions that Akerman, Schwartz, and Heller took in the course of representing BONYM" in the first action. *Id*. There is absolutely no allegation by Drummond of any misconduct by any of the *Romero* attorneys on behalf of the *Romero* Plaintiffs, including Mr. Collingsworth, that gave rise to either of subsequent defamation or RICO cases.

---

[4] Drummond is clearly confusing *Romero* with *Balcero* in making its accusations. Mr. Collingsworth brought *Balcero* after forming IRAdvocates. He was lead counsel in *Balcero*, but certainly had a team that shaped decisions on litigation strategy.

Likewise, *Mendelson v. Southeast Mortg. of Ga., Inc.*, 2012 U.S. Dist. LEXIS 116373, *5 (N.D. Ga. 2012), has no application in that the issues were the same in both cases, unlike here, and "TOKN was counsel to SEM in connection with the subject Loan at issue in both of Plaintiff's lawsuits and is alleged by Plaintiff to have been acting as counsel for SEM when the alleged wrong acts were committed." *Id*. *36. Again, there is no allegation by Drummond of any misconduct by any of the *Romero* attorneys on behalf of the *Romero* Plaintiffs, including Mr. Collingsworth, that gave rise to the subsequent defamation or RICO cases.

Finally, *Agha-Khan v. United States,* 2015 U.S. Dist. LEXIS 131944, *16-17 (E.D. Cal. 2015), does not apply for the same reasons as the others. Unlike here, the issues were the same in *Agha-Khan*. *Id*. at *12-13. And the Court found that "when a law firm defendant appears in a subsequent action 'by virtue of their activities as representatives' of a party in a prior action, privity exists." *Id*. at *17 (citation omitted). Once again, there is no allegation by Drummond that Mr. Collingsworth was sued in these cases over any misconduct or activities while representing the *Romero* Plaintiffs. Mr. Collingsworth was merely one of nine lawyers representing the *Romero* Plaintiffs in a case that Drummond has never alleged involved any misconduct. Indeed, the first of the alleged defamatory statements was on January 18, 2011, Defamation Complaint ¶ 10, nearly four years after the *Romero* trial, and Drummond is clear that the alleged RICO "enterprise" did not form until 2008, after the completion of the *Romero* trial. RICO Complaint ¶ 1.

Not one of Drummond's cases even discusses the "complete control" factor that *Sellers* required. *See* 968 F.3d at 1274-75. Drummond's assertion of Mr. Collingsworth's complete control over the *Romero* case such that he and IRAdvocates should be considered parties to *Romero* fails on the facts. Being one second chair lawyer on a team of nine lawyers with others formally acting as lead counsel is nothing more than a simple representation, not a mastermind or puppeteer

stepping in to seize control of the case. It would be a dangerous precedent, one that clearly does not exist in any decision in any court, that merely representing parties in a lawsuit on a team of lawyers puts any one lawyer in privity with the actual parties and binds them to the judgment in *any* subsequent litigation, however unrelated.

    Respectfully submitted this 7th day of January 2026,

/s/ *Shauncey Hunter Ridgeway*
Priscilla K. Williams
Shauncey Hunter Ridgeway
Terrence P. Collingsworth (*Pro Hac Vice*)
J. Chase Bryan *(Pro Hac Vice)*
Kenneth O. Simon
Richard E. Smith
*Attorneys for Defendants, Terrence P. Collingsworth and International Rights Advocates*

**OF COUNSEL:**
**CHRISTIAN & SMALL, LLP**
505 20th Street North, Suite 1800
Birmingham, AL 35203
Telephone: (205) 795-6588
Facsimile: (205) 328-7234
shrdigeway@csattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on *November 24, 2025*, I electronically filed the foregoing with the United States District Court for the Northern District of Alabama by using the Pacer CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

/s/ *Shauncey Hunter Ridgeway*
OF COUNSEL

4704176.2