FILED

2026 Apr-27  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| TERRENCE P. COLLINGSWORTH, | ) | Case No. 2:11-cv-3695-RDP |
| individually and as agent of Conrad & Scherer, | ) | |
| LLP; and CONRAD & SCHERER, LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DRUMMOND COMPANY, INC.'S MOTION TO REINSTATE ITS RENEWED MOTION FOR SANCTIONS AND SUPPLEMENTAL BRIEF IN SUPPORT THEREOF

William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL  35209
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
KROPF MOSELEY SCHMITT PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900

*Attorneys for Drummond Company, Inc.*

3557728.6

**TABLE OF CONTENTS**

INTRODUCTION......................................................................................................................1

PROCEDURAL HISTORY .....................................................................................................3

LEGAL ARGUMENT .............................................................................................................6

    I.      SANCTIONS ARE REQUIRED AND NECESSARY.................................................................6

        A.  Sanctions protect the integrity of the Northern District of Alabama and deter others from abusing the judicial process.................................................................6

        B.  Recent caselaw further illustrates the necessity of sanctions.................................8

        C.  Collingsworth's conduct at trial reinforces the need for sanctions........................14

        D.  Collingsworth is an officer of the court. ...............................................................17

    II.     SANCTIONS REQUESTED BY DRUMMOND.........................................................................18

        A.  Drummond's attorneys' fees and costs ..................................................................18

        B.  Dismissal of *Melo* .................................................................................................19

        C.  Contempt...............................................................................................................23

        D.  Revocation of *pro hac vice* admission in the Northern District of Alabama.........23

        E.  Notification to Other Courts, Bar Associations, and Disciplinary Authorities......24

        F.  Referral to the U.S. Attorney .................................................................................24

CONCLUSION ......................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Beck v. Bassett (In re Southeast Banking Corp.)*,
  204 F.3d 1322 (11th Cir. 2000) ........................................................................................20

*Boe v. Marshall*,
  767 F. Supp. 3d 1226 (M.D. Ala. 2025) ...........................................8, 12, 13, 14, 24

*Bradley v. Fisher*,
  80 U.S. (13 Wall.) 335 (1871) ..........................................................................................23

*Buchanan v. Bowman*,
  820 F.2d 359 (11th Cir. 1987) ............................................................................................6

*Carlucci v. Piper Aircraft Corp.*,
  775 F.2d 1440 (11th Cir. 1985) ........................................................................................20

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 111 S. Ct. 2123 (1991)...........................................................................19, 20

*Cook v. Ochsner Found. Hosp.*,
  559 F.2d 270 (5th Cir. 1977)............................................................................................19

*Drummond Company, Inc. v. Conrad & Scherer, LLP*,
  885 F.3d 1324 (11th Cir. 2018) ..........................................................................................3

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,
  561 F.3d 1298 (11th Cir. 2009) .....................................................................................2, 6

*Heimkes v. Fairhope Motorcoach Resort Condo. Owners Ass'n*,
  1:22-cv-448-TFM-N, 1:22-cv-496-TFM-N, 2026 U.S. Dist. LEXIS 70410 (S.D. Ala. March
  31, 2026) .................................................................................................................13, 14

*Hornady v. Outokumpu Stainless USA, LLC*,
  118 F.4th 1367 (11th Cir. 2024), *rehearing denied* 2024 U.S. App. LEXIS 30959 (11th Cir.
  Dec. 6, 2024)...................................................................................................................8, 9, 14

*In re Engle Cases*,
  283 F. Supp. 3d 1174 (M.D. Fla. 2017)........................................................................17, 18

*Johnson v. Dunn*,
  792 F. Supp. 3d 1241 (N.D. Ala. 2025)..................................................................11, 12, 14

ii

*Link v. Wabash R. Co.*,
     370 U.S. 626, 82 S. Ct. 1386 (1962)................................................................................22, 23

*Malautea v. Suzuki Motor Co.*,
     987 F.2d 1536 (11th Cir. 1993) ...........................................................................................6, 11

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
     427 U.S. 639, 96 S. Ct. 2778 (1976)....................................................................................6, 11

*Peer v. Lewis*,
     606 F.3d 1306 (11th Cir. 2010) ................................................................................................17

*Penaloza v. Drummond Co., Inc.*,
     662 F. App'x 673 (11th Cir. 2016) ...........................................................................................21

*Reed v. Pediatric Servs. of Am. Inc.*,
     No. 21-10159, 2022 U.S. App. LEXIS 10435 (11th Cir. Apr. 18, 2022)................................24

*Rivera v. Triad Props. Corp.*,
     2:24-cv-01802-AMM, 2026 U.S. Dist. LEXIS 74689 (N.D. Ala. March 31, 2026)...............12

*United States v. Donziger*,
     No. 19-CR-561 (LAP); No. 11-CV-691 (LAK), 2021 U.S. Dist. LEXIS 138923 (S.D.N.Y. July 26, 2021), *aff'd* 38 F.4th 290 (2d Cir. 2022), *cert. denied* 143 S. Ct. 868 (2023) .......... 18

*Young v. United States ex rel. Vuitton Et Fils S.A.*,
     481 U.S. 787 (1987)..................................................................................................................23

*Zocaras v. Castro*,
     465 F.3d 479 (11th Cir. 2006) ...............................................................................................2, 6

**Statutes and Rules**                                                                                          **Page(s)**

18 U.S.C. § 401(1) ...........................................................................................................................23

28 U.S.C. § 1927..............................................................................................................................19

Fed. R. Civ. P. 26(g)(3)....................................................................................................................18

Fed. R. Civ. P. 37(b)(2)(C) ..............................................................................................................18

N.D. Ala. Local Rule 83.1(f) ...........................................................................................................23

3557728.6

N.D. Ala. Local Rule 83.1(h)(1)(F) ............................................................................24

N.D. Ala. Local Rule 83.1(h)(6)(B)............................................................................24

iv

Drummond Company, Inc. ("Drummond") requests that the Court reinstate its Renewed Motion for Sanctions (*Defamation* Docs. 775, 779 (*sealed*)) and submits this supplemental brief in support thereof.  Drummond adopts and incorporates herein its prior sanctions motions, briefs, and exhibits which set forth, in detail, Collingsworth's fraud on the court.  *Defamation* Docs. 101, 104, 118, 174, 180, 190, 193, 775, 803.

## INTRODUCTION

When Drummond asked to reinstate its Renewed Sanctions Motion in early 2024, Collingsworth and Conrad & Scherer, LLP ("C&S") told this Court that it should defer its decision on sanctions until after "the crystallizing process of letting a jury resolve all factual disputes and the merits of Drummond's claims."  *Defamation* Doc. 844, ¶ 5; *Defamation* Doc. 845 (Collingsworth's response adopting and incorporating C&S's response).  This Court accepted Defendants' proposal.  *Defamation* Doc. 847 (Jan. 9, 2025 Order) at 3-4 (deferring ruling on sanctions until after trial to "allow a jury to consider the merits of the defamation case before addressing potential sanctions for Defendants' litigation conduct" because "sanctions (1) may appropriately be decided at a later date, and (2) may implicate more than just the outcome of the defamation case.").  That "crystallizing process" is now complete, with a jury unanimously finding that Collingsworth—while litigating cases as a lawyer admitted *pro hac vice* in this Court— engaged in witness bribery, witness tampering, obstruction of justice, money laundering, wire fraud, and extortion.  *Defamation* Doc. 1194; *RICO* Doc. 706.[1]

Although one sanction Drummond sought (a default judgment on liability in the defamation case) is now moot, Drummond's other requested sanctions are still very much at issue,

---

[1] "*RICO*" refers to *Drummond Company, Inc., et al. v. Terrence P. Collingsworth, et al.*, 2:15-cv-0506-RDP (N.D. Ala.).

1

3557728.6

and the jury's verdict removes any doubt that sanctions are appropriate. More importantly, the integrity of the judicial process in the Northern District of Alabama is squarely at stake. Collingsworth's fraud on the court "raise[s] concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties that appear before this Court[.]" *Zocaras v. Castro*, 465 F.3d 479, 488 (11th Cir. 2006). If the only consequence for Collingsworth's egregious misconduct is losing a jury trial—something that he would have faced even if he had committed no misconduct, that "would be an open invitation to others to abuse the judicial process" in the Northern District of Alabama. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

Drummond requests that this Court reinstate Drummond's Renewed Motion for Sanctions and issue the following sanctions:

1. Order Collingsworth to pay legal fees and costs incurred by Drummond and related to Collingsworth's misconduct in this case (2:11-cv-3695-RDP). Should the Court deem such a sanction appropriate, Drummond will submit a separate submission on recoverable fees and costs;

2. Dismiss, with prejudice, the pending case styled *Marisol Melo Penaloza, et al., v. Drummond Company, Inc., et al.*, 2:13-cv-393-RDP (N.D. Ala.);

3. Hold Collingsworth in contempt;

4. Permanently revoke Collingsworth's *pro hac vice* admission in this Court;

5. Order Collingsworth, in every pending state or federal case in which he is counsel of record, to publicly file and serve a copy of this Court's sanctions order on his clients, opposing counsel, and the judge presiding over the matter, and require Collingsworth to provide sworn verification of his compliance with this sanction listing every proceeding in which he files this Court's sanctions order;

6. Consistent with this Court's Local Rules, direct the Clerk of this Court to serve a copy of this Court's sanctions order on the National Discipline Bank operated by the American Bar Association, the Alabama State Bar Association, the D.C. Bar Association, and any other applicable licensing authorities for further investigation and disciplinary action;

7. Refer this matter to the U.S. Attorney for the Northern District of Alabama for further

2

3557728.6

proceedings as the U.S. Attorney deems appropriate;

8.  Require Collingsworth to submit, under penalty of perjury, a listing of all proceedings, whether in the U.S. or elsewhere, where he is aware that the testimony of the following witnesses has been submitted and/or relied upon:   Jaime Blanco, Charris, El Tigre, Samario, Gelvez Albarracin, Libardo Duarte, Peinado, and Yuca; and

9.  Such other relief as the Court may deem appropriate to ensure future litigants in the Northern District of Alabama think long and hard before committing the type of egregious misconduct that occurred in this case.

## PROCEDURAL HISTORY

Drummond's first motion for sanctions, which it filed in 2014 after the Defendants' former co-counsel in *Balcero* produced documents that Collingsworth and C&S falsely represented did not exist, *see Defamation* Doc. 101, was denied without prejudice.  *Defamation* Doc. 123 (Apr. 21, 2014 Hrg. Tr.) at 50:19-25.  Drummond's second motion for sanctions, which it filed in 2015 after discovering Defendants paid every witness who gave letters rogatory testimony in *Balcero* and repeatedly lied about it, was administratively terminated with instructions that Drummond re-file its sanctions motion "following resolution of the crime-fraud issue to be addressed during the September 1, 2, and 3 evidentiary hearing."  *Defamation* Doc. 383 (Sept. 21, 2015 Text Order).

On December 7, 2015, this Court issued its crime-fraud opinion.  *Defamation* Doc. 417. This Court found, *inter alia*, that Collingsworth "repeatedly made knowingly false representations in pleadings, affidavits, correspondence, and open court.  The extent of these misrepresentations rises far above the level of mere discovery violations to evidence that, if believed by the trier of fact, would establish some ongoing fraudulent violation." *Id.* at 18 of 50.  This Court also "ha[d] no hesitation in finding that there is (at least) probable cause to believe that Collingsworth, while prosecuting lawsuits on behalf of his firm, engaged in witness bribery and suborning perjury[.]" *Id.* at 26 of 50.  The Eleventh Circuit affirmed in an interlocutory appeal.  *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324 (11th Cir. 2018).

3

After this Court's stay was lifted in mid-2018 following the appeal, Collingsworth engaged in extensive delay tactics designed to obstruct discovery which caused Drummond and the Court to expend an extraordinary amount of resources and time.  He filed blanket objections to the Special Master's R&Rs regarding the production of documents pursuant to the crime-fraud exception.  As a result, this Court ordered a recertification process for those objections. *Defamation* Doc. 620 (March 13, 2020 Recertification Order).  C&S withdrew many of its objections, and Drummond withdrew all its objections not yet ruled upon.  *Defamation* Doc. 666. Collingsworth, however, maintained his blanket objection.  Thus "the court and the Special Master were forced to undertake an extremely time-consuming review of many additional objections." That review showed Collingsworth's "wholesale objection was spurious" and his "objections were wholly without merit."  *Defamation* Doc. 694 (Jan. 7, 2022 Show Cause Order) at 1 of 2.

On March 18, 2021, this Court overruled Collingsworth's objections, *Defamation* Doc. 668, prompting him to file a petition for writ of mandamus with the Eleventh Circuit.  In this Court's invited response to that petition, this Court made clear that "Collingsworth secretly paid witnesses and lied about it," and that "Collingsworth lied in interrogatory responses, in pleadings filed with the court, in declarations filed with the court, and directly to the court during hearings." *Defamation* Doc. 676 at 4 & 34 of 34.  This Court further explained why Collingsworth's objections were "spurious," why his arguments were "frivolous," and why Collingsworth's mandamus petition was "an attempt to put a stick in the spokes of this litigation's wheels."  *Id.* at 10, 28, & 32 of 34.  The Eleventh Circuit summarily denied Collingsworth's mandamus petition on April 21, 2021.

Drummond filed a Renewed Motion for Sanctions (*Defamation* Doc. 775) on February 15, 2024, consistent with this Court's order that Drummond re-file its sanctions motion after the crime-

4

3557728.6

fraud discovery was complete. *Defamation* Doc. 383.  On July 5, 2024, this Court administratively terminated Drummond's Renewed Sanctions Motions and instructed that "[t]he sanctions motions may be reinstated, as appropriate, following the court's resolution of the motions for summary judgment." *Defamation* Doc. 824 at 2; *RICO* Doc. 334 at 2.

On January 7, 2025, Drummond moved to reinstate its Renewed Motion for Sanctions following this Court's rulings on the parties' summary judgment motions.  *Defamation* Doc. 843. In response, Collingsworth and C&S urged this Court to defer ruling on sanctions until after trial, arguing that "[t]he Court and the parties will be better served by the crystallizing process of letting a jury resolve all factual disputes and the merits of Drummond's claims before further considering Drummond's request for sanctions."  *Defamation* Doc. 844 (C&S Response), ¶ 5; *Defamation* Doc. 845 (Collingsworth Response).  On January 9, 2025, this Court held it would "allow a jury to consider the merits of the defamation case before addressing potential sanctions for Defendants' litigation conduct" because "sanctions (1) may appropriately be decided at a later date, and (2) may implicate more than just the outcome of the defamation case." *Defamation* Doc. 847 (Jan. 9, 2025 Order) at 3-4.[2]

On January 15, 2026, a jury returned a verdict in Drummond's favor and against Collingsworth on Drummond's defamation and RICO claims.  The jury unanimously found that Collingsworth's allegations that Drummond collaborated with the AUC were not only false, but in pressing those allegations Collingsworth either knew or recklessly disregarded they were false. *Defamation* Doc. 1194.  The jury further found Collingsworth and IRAdvocates—in their effort to prosecute those allegations in this Court—committed the criminal acts of witness bribery, witness

---

[2] Drummond withdrew its request for sanctions only as to C&S following its pro tanto settlement with C&S and Bill Scherer.  *See Defamation* Doc. 1038.

tampering, obstruction of justice, money laundering, wire fraud, and extortion. *RICO* Doc. 706. By Collingsworth's own admission, the issue of sanctions is ripe for decision. *Defamation* Doc. 844, ¶ 5.

## LEGAL ARGUMENT

I.     SANCTIONS ARE REQUIRED AND NECESSARY.

    **A. Sanctions protect the integrity of the Northern District of Alabama and deter others from abusing the judicial process.**

"[T]he most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, **but to deter those who might be tempted to such conduct in the absence of such a deterrent**." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976) (per curiam) (emphasis added). The Eleventh Circuit has repeatedly emphasized the importance of sanctions in cases involving egregious misconduct. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (affirming default judgment sanction due to repeated discovery abuses while noting "the need for strict adherence to Rule 37 so as to prevent parties from 'flouting discovery orders'"); *Eagle Hosp.*, 561 F.3d at 1306 (affirming a sanction striking a defendant's answer and counterclaims which "was necessary 'to act as a deterrent to other litigants contemplating improper interception of communications between clients and their attorneys' because permitting this case to continue would be an open invitation to others to abuse the judicial process") (citation omitted); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993) (sanctions "justly punished the defendants and their attorneys and, hopefully, will deter other litigants from engaging in similar activity"); *Zocaras*, 465 F.3d at 488 (affirming the dismissal of an action as a sanction pursuant to the court's inherent power and quoting the district court's findings that the sanctioned party's misrepresentations "raise such concerns about the

3557728.6

integrity and credibility of the civil justice system that transcends the interests of the parties that appear before this Court" and that sanctions were necessary "not *only* to reprimand the offender, but to deter future parties from trampling upon the integrity of the Court.").

Collingsworth repeatedly and knowingly misrepresented the facts to Drummond, to this Court, and to other courts across the country.  He did so in declarations signed under penalty of perjury, in sworn interrogatory responses, in court filings, and in open court in response to direct questions from this Court.  *Defamation* Doc. 417 (Crime-Fraud Op.) at 8-18.  He removed documents from privilege logs he produced to Drummond **and the Court** that would have proved he was lying.  *Defamation* Doc. 775 at Argument § III.  He instructed his former counsel to redact documents to hide payments to witnesses.  *Defamation* Doc. 775 at Argument § III-B.  Even as his fraud on the court was unraveling, Collingsworth continued lying about his reasons for lying in the first place.  *Id.* at Argument §§ I-A, I-B, and IV.  At the same time he was lying to this Court (and other federal courts), Collingsworth demanded that *Drummond* be sanctioned for seeking discovery of documents that would have proved he was lying.  *See, e.g., Defamation* Doc. 282, ¶¶ 150, 213.  And while all this egregious misconduct was happening, Collingsworth continually and repeatedly denigrated Drummond's claim as "frivolous," "false," "pointless," and "baseless."  *See, e.g., Defamation* Doc. 47 (Collingsworth Decl.) ¶ 2; *Defamation* Doc. 789 at 19 of 50; *Defamation* Doc. 836 at 5, 24 of 26.  Simply put, a jury has now unanimously concluded otherwise.

Even after researching this issue for now over 12 years, Drummond's research is still yet to uncover any case with a fact pattern that even approaches the egregiousness of what transpired here.  Sanctions in this case are necessary to put other litigants and lawyers on notice that the Northern District of Alabama will not tolerate conduct which subverts the justice system.

**B.  Recent caselaw further illustrates the necessity of sanctions.**

Recent cases from the Northern, Middle, and Southern Districts of Alabama, as well as the Eleventh Circuit, further support the imposition of sanctions against Collingsworth and illustrate why sanctions are "not just warranted; they're imperative." *Boe v. Marshall*, 767 F. Supp. 3d 1226, 1294 (M.D. Ala. 2025).

In October 2024, the Eleventh Circuit issued its decision in *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367 (11th Cir. 2024), *rehearing denied* 2024 U.S. App. LEXIS 30959 (11th Cir. Dec. 6, 2024).  Similar to this case, the sanctionable conduct in *Hornady* was the defendant's repeated failure to comply with court orders to produce relevant documents and, "[t]o cap it all off, Outokumpu followed up on these discovery violations with outrageous misrepresentations to both the plaintiffs and the court." *Id.* at 1374.  Like Collingsworth, "Outokumpu maintained that all of the previous 'issues with production,' were inadvertent 'errors or oversight,' insisting that there was 'clearly not any willful or bad faith conduct.'" *Id.* at 1375.

The district court rejected Outokumpu's arguments and entered a default judgment of more than $13 million as a sanction, citing Outokumpu's "never-ending discovery violations" and "clear and convincing evidence that Outokumpu had acted in bad faith." *Id.* at 1377.  The evidence of bad faith in *Hornady* does not approach the magnitude of the evidence of bad faith by Collingsworth:

| *Hornady*, 118 F.4th at 1377-79 | This Case |
|---|---|
| "Outokumpu doctored and produced false records" | Collingsworth redacted documents to conceal witness payments. *Defamation* Doc. 775 at Argument § III-B.<br><br>Collingsworth removed documents from privilege logs and withheld them from production to both Drummond *and the Court* which would have proved witnesses were paid. |

8

| ***Hornady*, 118 F.4th at 1377-79** | **This Case** |
|---|---|
| | *Defamation* Doc. 775 at 15-19 of 67; *id.* at Argument § III-A. |
| Outokumpu "made substantial misrepresentations to the plaintiffs and the court in an attempt to foist the blame for its discovery failures on anyone but itself."<br><br>Outokumpu engaged in an "unrelenting campaign to obfuscate the truth." | "Collingsworth repeatedly made knowingly false representations in pleadings, affidavits, correspondence, and open court." *Defamation* Doc. 417 (Crime-Fraud Op.) at 17 of 50.<br><br>During the crime-fraud hearing in September 2015, and for years afterwards, Collingsworth continued to make false statements regarding the purported reasons for his initial false representations about witness payments. *Defamation* Doc. 775 at 10-22 of 67; *id.* at Argument §§ III and IV.<br><br>Collingsworth continued to make demonstrably false representations when opposing Drummond's Renewed Sanctions Motion. *See Defamation* Doc. 803 at Argument § II-B (explaining how Collingsworth's "categorical removal" excuse for the privilege logs is demonstrably false); § II-C (explaining how Collingsworth's story that he did not pay Jaime Blanco is demonstrably false); § II-D (detailing further evidence of witness payments that Collingsworth never produced to Drummond). |
| "Outokumpu has still failed to produce every missing piece of evidence. It has not provided the plaintiffs with the time and pay records from 2015 to 2017—the very years when its exposure was greatest. Those records no longer exist, and it was Outokumpu who failed to maintain them. The district court determined that this failure was spoliation, and we have no qualms about that conclusion." | "The court has no hesitation in drawing the conclusion that Collingsworth acted deliberately with the intent to deprive Drummond of not only the information on the MacBook (by only preserving some of it and then giving the computer to his niece in Brazil), but also did the same thing with respect to whatever information may have been on the iPad." *RICO* Doc. 377 (Spoliation Order) at 20 of 23.<br><br>The devices that Collingsworth disposed of were used between 2008 and 2013, *id.* at 22 of 23, the same time period during which Collingsworth was secretly bribing witnesses and lying about it. |

9

| *Hornady*, 118 F.4th at 1377-79 | This Case |
|---|---|
| | Nor did Collingsworth produce all documents relating to witness payments that he did not destroy. *Defamation* Doc. 803 at Argument § II-G (detailing witness payment emails never produced by Collingsworth). Moreover, there is a mountain of circumstantial evidence which suggests that Collingsworth was involved in numerous other witness payments that have never been disclosed. *Defamation* Doc. 775 at Argument § V-C (discussing coded messages between Van Bilderbeek and Collingsworth relating to additional payments). |

The Eleventh Circuit affirmed the district court's conclusion that the harshest of sanctions were necessary, finding that Outokumpu "intentionally sabotaged the judicial process." *Id.* at 1378. Notably, the Eleventh Circuit forcefully rejected Outokumpu's argument—which Collingsworth parroted in this case—that "the plaintiffs eventually received all the records they sought" because Outokumpu purportedly "cured any discovery violation," thereby "render[ing] the sanction of default unnecessarily severe." *Id.* As the Eleventh Circuit explained,

Outokumpu points to no authority supporting its argument that eventual production of the required discovery displaces sanctions for earlier noncompliance. That ask-for-forgiveness-rather-than-permission rule would strip sanctions of any deterrent effect—malicious actors could repeatedly violate court orders with peace of mind, knowing that any future sanction could be nullified after the fact by simple compliance with the initial order.

The record shows that the district court did not abuse its discretion by deciding that no sanction short of default judgment was appropriate. In fact, lesser sanctions had already been tried—and to no avail. After one of Outokumpu's many discovery violations, the magistrate judge struck five of Outokumpu's affirmative defenses. Neither this nor any of the many other orders against Outokumpu deterred Outokumpu's "unrelenting campaign to obfuscate the truth." *See id.* As the district court determined, Outokumpu's "deceitful, subversive and manipulative conduct"—set forth above in unflattering detail—would not have changed with a sanction less harsh than default judgment. The district court properly considered and rejected lesser sanctions. It did not abuse its discretion by resorting to the

10

3557728.6

sanction of last resort.

*Id.* at 1379 (quoting *Malautea*, 987 F.2d at 1542).  The Eleventh Circuit also acknowledged the possibility that "Outokumpu could have prevailed on the merits had it chosen to litigate this case," but explained that "Outokumpu gave up that right, thumbing its nose at the judicial process," *id.* at 1384, and concluded:

> The "most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).  It is hard to imagine a more appropriate case than this one. Years of abstinence, dozens of discovery violations, and unceasing attempts to blame others finally caught up with Outokumpu. Even on appeal, the company displays a remarkable lack of contrition.  The district court did not err when it entered default judgment, [or] when it refused to reconsider that decision[.]

*Id.* at 1386.  Of course, this Court afforded Collingsworth the opportunity to litigate this case and the jury unanimously found in Drummond's favor, which further supports the imposition of sanctions.

Recent Alabama federal district court cases reinforce that sanctions are necessary in this case.  In *Johnson v. Dunn*, Judge Manasco sanctioned lawyers who submitted court filings with "problematic citations" made up by ChatGPT.  792 F. Supp. 3d 1241, 1247 (N.D. Ala. 2025). Finding that those filings constituted "falsehoods" and "false statements," the *Johnson* court explained:

> [T]he public (whose taxpayer dollars pay the lawyers at issue here) is justifiably horrified and outraged when filings in a court of law substitute lazy, convenient fictions for the truth.

> Even in cases like this one, where lawyers who cite AI hallucinations accept responsibility and apologize profusely, much damage is done. The opposing party expends resources identifying and exposing the fabrication; the court spends time reviewing materials, holding hearings, deliberating about sanctions, and explaining its ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished.

11

*Id.* at 1257.  The court in *Johnson* sanctioned the responsible attorneys pursuant to the court's inherent authority.  The sanctions included (i) a public reprimand, (ii) an order that the sanctioned attorneys provide a copy of the sanction order to their clients, opposing counsel, and presiding judge in every pending state or federal case in which they are counsel of record, (iii) disqualification from participation in the case, and (iv) directing the Clerk of Court to serve a copy of the sanctions order on the General Counsel of the Alabama State Bar and all other licensing authorities where the sanctioned attorneys were admitted to practice law "for further proceedings as appropriate."  *Id.* at 1267-68.[3]

In *Boe v. Marshall*, Judge Burke sanctioned an attorney for "repeated, intentional, bad-faith misrepresentations of key facts."  767 F. Supp. 3d 1226, 1233 (M.D. Ala. 2025).  The sanctions included a (i) public reprimand, (ii) requiring him to provide a copy of the sanctions order to his clients, opposing counsel, and the judge presiding over every pending state or federal case in which he is counsel of record, (iii) monetary sanctions, and (iv) referral to the U.S. Attorney for the Middle District of Alabama for a criminal investigation and to the attorney's licensing bar organizations.  *Id.* at 1233, 1330-31.[4]

Like Collingsworth, who initially submitted sworn interrogatory responses stating that no witness payments had been made, the lawyer in *Boe* initially testified that he never called Judge Thompson's clerk.  *Id.* at 1252-53.  Like Collingsworth, who claimed he "forgot" about paying witnesses after a third party produced documents in response to a subpoena that left him no other

---

[3] *See also Rivera v. Triad Props. Corp.*, 2:24-cv-01802-AMM, 2026 U.S. Dist. LEXIS 74689, at *95, 97 (N.D. Ala. March 31, 2026) (monetary and suspension sanctions were "necessary to deter misconduct" and "lawyers should know that if they make false statements in court proceedings, they will no longer have the professional opportunity to participate in those proceedings.  Similarly, litigants should have assurance that false statements will not be allowed in their cases[.]").

[4] *Boe's* referral to the U.S. Attorney for the Middle District of Alabama resulted in a criminal indictment for perjury.  *United States v. Carl S. Charles*, 2:25-cr-00489-CMA-JTA-1 (M.D. Ala.).

12

choice than to admit witnesses were paid, the lawyer in *Boe* claimed he "couldn't recall" that he called Judge Thompson's clerk until his phone number was read out loud on the record. *Id.* at 1253; *see also id.* at 1281 ("[R]ather than take responsibility for those falsehoods, Charles claims that sanctions are unwarranted because the false testimony he gave to the Panel was not deliberately untruthful, just 'erroneous'—the fault not of deceit but of a 'lapse in memory.'."). Like this Court, which rejected Collingsworth's "I forgot" excuse as "uncreditable," *Defamation* Doc. 417 at 2 of 50, *Boe* rejected the "*ex post* assertion of an innocent lapse in memory [as] unworthy of belief." 767 F. Supp. 3d at 1283.

Notably, *Boe* explained why sanctions were "not just warranted; they're imperative." *Id.* at 1294. "After all, truth is so important to a well-functioning judicial system that willfully testifying to falsehoods—that is, perjury—can carry a criminal penalty." *Id.* at 1328. Sanctions therefore served to "both register the gravity of Charles's ethical and professional breach and deter him and others from intentionally misleading courts in the future." *Id.* at 1328.

The Southern District of Alabama also recently sanctioned a lawyer who misrepresented the facts and the law. *Heimkes v. Fairhope Motorcoach Resort Condo. Owners Ass'n*, 1:22-cv-448-TFM-N, 1:22-cv-496-TFM-N, 2026 U.S. Dist. LEXIS 70410 (S.D. Ala. March 31, 2026). Citing Rule 11, the Rules of Professional Conduct, and the court's inherent authority, Judge Moorer sanctioned an attorney who misrepresented the law and then "refused to take full responsibility" and "doubled down on misrepresentations to the Court[.]" *Id.* at *23. Like this Court, which rejected Collingsworth's "I forgot" excuse as "uncreditable," *Defamation* Doc. 417 at 2 of 50, Judge Moorer rejected the sanctioned lawyer's excuses for his misconduct and misrepresentations as "incredible" and "unbelievable." *Heimkes*, 2026 U.S. Dist. LEXIS at *32, 35. The sanctions in *Heimkes* included a public reprimand, a requirement that the lawyer file the

13

3557728.6

sanctions opinion in other cases in which he is counsel of record, an award of attorneys' fees to the opposing party, and a referral to the Alabama Bar with an accompanying recommendation that the attorney "be found incompetent to practice law." *Id.* at *53-55.

*Hornady*, *Johnson*, *Boe*, and *Heimkes*—all of which postdate Drummond's Renewed Motion for Sanctions in early 2024—involved sanctionable conduct far less egregious and pervasive than what Collingsworth perpetrated here.  Moreover, the public policy concerns supporting those courts' imposition of sanctions—including the "public confidence about the trustworthiness of legal proceedings," *Johnson*, the "importan[ce] [of] a well-functioning judicial system," *Boe*, the "deterrent effect" of sanctions on other litigants who may be tempted to perpetrate similar conduct, *Hornady*, and the need to "vindicate the lawful authority of federal courts to keep proceedings free from falsehoods," *Heimkes*—are more pronounced in this case. Indeed, none of those cases involved a massive fraud on the court intended to conceal the truth about bribery and witness tampering in cases before this Court.  Sanctions against Collingsworth "are not just warranted; they're imperative." *Boe*, 767 F. Supp. 3d at 1294.

### C.  Collingsworth's conduct at trial reinforces the need for sanctions.

Collingsworth's fraud on the court continued at trial, which further supports the imposition of sanctions against him.  For example, Drummond challenged Collingsworth to explain to the jury where the money from the Nicox BV transaction went, because it was not reflected in the U.S. bank records Drummond obtained pursuant to subpoena.  *Defamation* Doc. 1218 (Trial Tr. – Vol. VIII) 1632:12-1633:2.  Collingsworth testified under oath that he had not failed to disclose any bank accounts and that the only bank accounts he'd ever had were in the U.S.:

> MR. WELLS: Your Honor, we move in Plaintiffs' – well, before we do that, Blair, can we pull back up Plaintiffs' 1331A? And go to the second to last page and give me the second to last text. One up, please. Second to last. There you go.

14

Q. (By Mr. Wells) So this is you writing to Albert van Bilderbeek, your uncle – he's not your uncle, is he, just to be clear?

A. I'm sorry. I was reading. What?

Q. Albert van Bilderbeek is not actually your uncle?

A. No.

Q. Just so our record is clear. So you're telling Albert van Bilderbeek in this text, My sole U.S. account is now blocked. Right?

A. That's what it says.

Q. So that's an odd way to say my only account is blocked. Do you have an offshore account that you have not disclosed to us?

A. No, I do not.

Q. So your sole U.S. account, you really meant your only account?

A. Yes.

Q. Anywhere in the world?

A. Anywhere.

*Defamation* Doc. 1223 (Trial Tr. – Vol. XII) 2245:1-24.  *See also Defamation* Doc. 1200-123 (PX 1331A) (Collingsworth text to Van Bilderbeek stating "My sole US account is now blocked."). According to emails produced by Frank Van Lint in response to a subpoena, however, Collingsworth had an "account in Zurich" where the funds from the Nicox BV loan arrangement that Collingsworth used to bribe Jaime Blanco could be deposited.  Ex. 1 (FVL000001).  That account has never been disclosed.

Collingsworth also repeatedly testified at the crime-fraud hearing in September 2015— including in response to direct questions by the Court—that the reason he did not disclose the payments to El Tigre and Samario was because he "forgot" about them.  *Defamation* Doc. 389 (Crime-Fraud Hrg. Tr.) at 166:15-168:10; 168:20-169:5; 171:22-172:7.  At trial, however,

15

Collingsworth testified that he did not disclose these payments until he was ordered to do so by the Court:

> Q. … And you never disclosed to Drummond or the Court prior to El Tigre giving his trial testimony, or Samario for that matter, that either one of their families were receiving payments, did you?
>
> A. We did not disclose our security plans to Drummond at that time.
>
> Q. And you also did not disclose it all the way up until November of 2014. Do you remember that?
>
> A. Yes. We disclosed it in response to an order of the Court and we fully complied.  I don't – that's enough.
>
> [ … ]
>
> Q. And, Mr. Collingsworth, El Tigre and Samario were leaders of a Front of the AUC that you allege killed hundreds and hundreds of people, right?
>
> A. Yes.
>
> Q. Including close to 100 of your clients, correct?
>
> A. That's correct.
>
> Q. And you didn't disclose to your clients, either, that you were paying for the support of the families of their husbands', brothers', family members' murderers, did you?
>
> A. We didn't disclose our security plans to anybody until I was ordered to do so.

*Defamation* Doc. 1223 (Trial Tr. – Vol. XII) 2234:13-22; 2235:12-22.  Only after Collingsworth was impeached with his prior sworn testimony from the crime-fraud hearing did he change his testimony in front of the jury and admit that his excuse for not disclosing the El Tigre and Samario payments was that he "forgot."  *See id*. at 2263:7-2264:20.  Simply put, Collingsworth's fraud on the court continued at trial.[5]

---

[5] As this Court recognized at the crime-fraud hearing, if Collingsworth's "I forgot" excuse is not credited, then that excuse is itself a continuation of his fraud on the court.  *Defamation* Doc. 391 (Crime-Fraud Hrg. Tr.) at 767:8-21 ("THE COURT: … He said the reason I didn't disclose this is I forgot. Why isn't that a continuing fraud on

16

### D. Collingsworth is an officer of the court

Collingsworth is no ordinary litigant.  He is a lawyer that was granted the privilege of being admitted to practice *pro hac vice* in this Court for decades.  In 2015, "Collingsworth [wa]s the Managing Partner of [C&S]'s Washington, D.C. office[.]"  Collingsworth "has more than 30 years of experience as a litigator, 'with most of his cases involving international human rights issues;' he 'conducts factual research on international issues;' he lectures on international human rights law at law schools and in other forums around the world; he graduated *Order of the Coif* from Duke University Law School in 1982.'" *Defamation* Doc. 417 at 42-43 of 50.

The Eleventh Circuit has made clear that "district court[s] should keep in mind that attorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process.  Most parties do not know what legal ethics apply or what facts give rise to a legitimate claim." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) (reversing the district court's refusal to award sanctions under inherent authority because the district court clearly erred in finding that an attorney did not act in bad faith).  As one district court acknowledged, "[i]mposing sanctions on members of the Bar of this Court is an unpleasant task." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1258 (M.D. Fla. 2017) (imposing $9+ million monetary sanction against plaintiffs' attorneys who filed invalid tobacco claims and lied about it).

But if this Court does not sanction Collingsworth "for unprofessional conduct committed on such a grand scale, how could we continue to insist upon professionalism in our other cases? If this egregious conduct went unchecked, what deterrent would there be for other lawyers in future

---

the Court if I discredit that testimony and say there is no way he forgot.  MR. McNEIL: Because it's not continuing. THE COURT: Sure it is. It's continuing right now.  He is misrepresenting to me in this hearing the basis for nondisclosing in the first place.  He presumably will get on the stand at trial and give exactly the same testimony under oath, and if he is asked why he didn't disclose these payments or why he misrepresented information about these payments: I simply forgot about those two payments; I would have made the disclosures if I had remembered. Why isn't that continuing all the way to trial?").

17

cases from taking the same approach?" *Id.* "'[A] lawyer, of all people, should know that in the face of a perceived injustice, one may not take the law into his own hands.' By repeatedly and willfully defying [this Court's] orders, that is precisely what Mr. [Collingsworth] did. It's time to pay the piper." *United States v. Donziger*, No. 19-CR-561 (LAP); No. 11-CV-691 (LAK), 2021 U.S. Dist. LEXIS 138923, *187-188 (S.D.N.Y. July 26, 2021), *aff'd* 38 F.4th 290 (2d Cir. 2022), *cert. denied* 143 S. Ct. 868 (2023) (citation omitted).

## II.    SANCTIONS REQUESTED BY DRUMMOND

Drummond's requested sanction of a default judgment is moot. Drummond's other requested sanctions, however, are not, and Drummond adopts and incorporates its prior briefing which explains the legal and factual bases supporting its sanctions requests. *Defamation* Docs. 775, 803. As explained both above and in Drummond's prior sanctions briefing, this Court should enter sanctions which appropriately punish Collingsworth, and—more importantly—deter other litigants from engaging in similar misconduct and vindicate the authority of this Court. *See* Argument § I-A *supra*. Drummond briefly explains below the legal authority which empowers this Court to enter each of Drummond's requested sanctions against Collingsworth.

### A.  Drummond's attorneys' fees and costs

An award of Drummond's attorneys' fees and costs is appropriate under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."); Fed. R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the

18

3557728.6

signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.").

An award of attorneys' fees and costs is also "undoubtedly within" this Court's inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Id.* at 46 (citations omitted). *See also Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 273 (5th Cir. 1977) (a court has "inherent authority . . . to award attorney's fees in a civil contempt proceeding.").

28 U.S.C. § 1927 provides an additional basis for awarding Drummond its attorneys' fees and costs. That code section provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

### B. Dismissal of *Melo*

The dismissal, with prejudice, of *Marisol Melo Penaloza, et al., v. Drummond Company, Inc., et al.*, 2:13-cv-393-RDP (N.D. Ala.) ("*Melo*") is also an appropriate sanction.[6] As the Supreme Court has recognized, a court has the power to sanction conduct which occurs in other proceedings:

> Chambers challenges the District Court's imposition of sanctions for conduct before other tribunals, including the FCC, the Court of Appeals, and this Court, asserting that a court may sanction only conduct occurring in its presence. Our

---

[6] The sole remaining defendant in *Melo* is the Estate of Garry N. Drummond. *See Melo* Docs. 93 (Order on Motion to Dismiss 2nd Amended Complaint), 95-1 (3rd Amended Complaint). During the pendency of the *Defamation* and *RICO* cases, this Court stayed *Melo*. *See Melo* Doc. 98 (June 15, 2021 Order) ("On the court's own motion, this case is **STAYED** pending the outcome of *Drummond Company, Inc. v. Collingsworth, et al*, Case # 2:11-cv-3695-RDP.").

19

cases are to the contrary, however. As long as a party receives an appropriate hearing, as did Chambers, see 124 F.R.D. at 141, n. 11, the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders.

*Chambers*, 501 U.S. at 57. *See also Beck v. Bassett (In re Southeast Banking Corp.)*, 204 F.3d 1322, 1333 (11th Cir. 2000) (citing *Chambers*, 501 U.S. at 57) ("We find that it is not error for a district court to consider violation of an order from a separate case where that wrongdoing is related to the case at hand."); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1451 (11th Cir. 1985) (sanctions is "an area where the Supreme Court has ruled we should promote maximum flexibility").

Sanctions are particularly appropriate here because *Melo* is not an "unrelated" case. *Cf. Beck*, 204 F.3d at 1333. This Court, which observed firsthand all of Collingsworth's egregious misconduct, is also presiding over the *Melo* case. The jury in this case found that Collingsworth—the *Melo* plaintiffs' counsel of record—committed numerous criminal acts including witness bribery, witness tampering, obstruction of justice, and extortion during his serial litigation against Drummond in this Court, which includes the *Melo* case. *RICO* Doc. 706 (Jury Verdict Form) at 2 of 3. The jury further found that Collingsworth's allegations that Drummond collaborated with the AUC—which is the foundation of the *Melo* case—were not only false, but also that Collingsworth knew or recklessly disregarded that they were false. *Defamation* Doc. 1194.

As this Court recognized, "the two [cases] are connected" and "all of this is related to the same ball of string." *Melo* Doc. 68 (March 19, 2018 Hrg. Tr.) 5:21-6:3.[7] Indeed, the *Defamation* and *RICO* cases "implicate the behavior of attorneys in [*Melo*]." *Melo* Doc. 59 (Partial Withdrawal Order) at 1-2. Tacitly acknowledging the interrelatedness of *Melo* with the *Defamation* and *RICO*

---

[7] In fact, this Court held hearings in which substantive issues in all three cases were discussed. *See, e.g., Defamation* Doc. 507/*RICO* Doc. 143/*Melo* Doc. 71 (March 27, 2018 Hrg. Tr.).

20

cases, Collingsworth urged the Court to stay *Melo* until stays in the *RICO* and *Defamation* cases were lifted. *Melo* Doc. 72 (Parties' Joint Report) ¶ 1. On June 15, 2021, this Court stayed the *Melo* case pending the outcome of this case in recognition of the fact that the outcome of this litigation—including resolution of Drummond's sanctions motion—would likely affect the *Melo* case. *Melo* Doc. 98.

Moreover, Collingsworth "conceded that the Amended Complaint in [*Melo*] was nearly identical to the complaints in *Doe/Balcero* and *Baloco II*." *Melo* Doc. 92 (Mem. Op.) at 6 of 35 (citing *Penaloza v. Drummond Co., Inc.*, 662 F. App'x 673, 677 (11th Cir. 2016)). *See also id.* at 32 of 35 ("In 2009, … this court saw numerous claims brought by Colombians (who were represented by the same counsel) for the same wrongs asserted in the instant complaint."). The operative 3rd Amended Complaint in *Melo* relies on the same witnesses that Collingsworth relied on in *Balcero* and that the jury in this case found were bribed. *See Melo* Doc. 95-1 (3rd Am. Compl.) ¶ 104 (citing Jaime Blanco's declaration for the proposition that Drummond paid the AUC), ¶ 115 (citing El Tigre's declaration for the proposition that Drummond provided financial support to the AUC), ¶ 116 (citing Samario's declaration for the proposition that Drummond orchestrated the union leader murders), ¶ 143 (citing Gelvez's declaration), ¶ 146 (citing Charris' declaration for the proposition that Drummond coordinated with the AUC to commit killings near Drummond's rail line), ¶ 145 (citing Peinado's declaration from the same proposition), ¶ 147 (citing Yuca's declaration for the same proposition). The Eleventh Circuit held that *Baloco, Balcero,* and *Melo* were "related cases" and that Collingsworth filed *Melo* "with the benefit of ten years of evidence obtained from the preceding related cases." *Penaloza*, 662 F. App'x at 675, 678. *See also id.* at 680 (this Court "has grown intimately familiar with the allegations in this case").

Collingsworth's bribery of witnesses was *ongoing* when he filed *Melo* on April 26, 2013.

21

3557728.6

*Melo* Doc. 1.  Not only were the bribes ongoing, but Collingsworth was fraudulently concealing them.  *See, e.g., Defamation* Doc. 417 (Crime-Fraud Op.) at 10 of 50 (sworn declaration submitted by Collingsworth in July 2013 "*was false*" because it "did not disclose any payments to Blanco, El Tigre, or Samario").   After he filed *Melo*, Collingsworth spoliated evidence and "acted deliberately with the intent to deprive Drummond of not only information on the MacBook (by only preserving some of it and then giving the computer to his niece in Brazil), but also did the same thing with respect to whatever information may have been on the iPad." *Defamation* Doc. 855 (Spoliation Op.) at 19 of 23.  Thus, the sanctionable conduct perpetrated by Collingsworth directly affects—and was committed during the course of—the *Melo* case.  This Court's inherent sanctions authority is therefore directly implicated.

Despite the fact that a jury has now found the allegations underlying *Melo* to be false and based on witness testimony produced through bribery, witness tampering, and subornation of perjury, Collingsworth has recently told the Colombian media the *Melo* case "is far from over" and that he intends to continue pursuing it.[8]

Any argument that the *Melo* plaintiffs' claims should not be impacted by Collingsworth's misconduct is meritless.  As the United States Supreme Court has made clear, "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation[.]" *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).[9]

---

[8] *Available at* https://rutasdelconflicto.com/notas/hay-detras-la-absolucion-drummond.

[9] As the Court noted in *Link*, "[i]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.  But [failing to impose sanctions]

22

3557728.6

## C.  Contempt

A contempt sanction is appropriate under both this Court's inherent authority and federal statutory law.  18 U.S.C. § 401(1) ("[a] court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as . . . [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice"); *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 795-96 (1987) (citations omitted) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice. The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once became possessed of the power. … '[T]here could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience'") (citation omitted).

## D.  Revocation of *pro hac vice* admission in the Northern District of Alabama

Permanent revocation of Collingsworth's *pro hac vice* admission in the Northern District of Alabama is expressly contemplated as a potential sanction by this Court's Local Rules.  N.D. Ala. Local Rule 83.1(f) ("Discipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case, ineligibility for appointment as court-appointed counsel, ineligibility to appear [*pro hac vice*], monetary sanctions, or any other sanction the court may deem appropriate.").  It is also inherent in this Court's authority.  *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 354 (1871) ("This power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice.").

---

merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."  370 U.S. at 634, n.10.

23

### E.  Notification to Other Courts, Bar Associations, and Disciplinary Authorities

Notification to other courts, associations, and disciplinary authorities is also expressly contemplated and required by this Court's Local Rules.  N.D. Ala. Local Rule 83.1(h)(1)(F) ("In lieu of, or in addition to, referring a matter involving possible misconduct to the Grievance Committee, the court or a judge thereof may refer such matter to any other court or to any professional disciplinary agency for such investigation and action as that court or agency may deem appropriate."); N.D. Ala. Local Rule 83.1(h)(6)(B) ("Whenever any attorney has been convicted in this court of any serious crime or has been disbarred, suspended, censured, or otherwise publicly disciplined by this court, the Clerk of this court shall, within ten days thereafter, transmit a certified or exemplified copy of the conviction or of the order of disbarment, suspension, censure, or disciplinary action (i) to the National Discipline Bank operated by the American Bar Association and (ii) to any jurisdiction or court which, to the Clerk's knowledge, has previously admitted such person to the practice of law.").  *See also Johnson*, *Boe*, and *Heimkes*, *supra*.

### F.  Referral to the U.S. Attorney

Referral of Collingsworth to the U.S. Attorney's office is also an appropriate sanction and one within this Court's power.  *See Reed v. Pediatric Servs. of Am. Inc.*, 2022 U.S. App. LEXIS 10435, at *7 (11th Cir. Apr. 18, 2022) ("we leave to [the district court's] determination whether to sanction any party, and whether to refer anyone involved in this case—party or otherwise—to the U.S. Attorney's Office for an investigation into whether any crime, including perjury, has been committed."); *Boe*, 767 F. Supp. 3d at 1331.[10]

---

[10] Notably, Collingsworth's former counsel suggested in the crime-fraud hearing that this matter should be referred to the U.S. Attorney. *Defamation* Doc. 391 (Crime-Fraud Hrg. Tr.) 782:2-6 ("[Collingsworth's counsel]:  If that is sufficient to get to a criminal barrier as opposed to a fraud on the court barrier, it should be turned over to the U.S. attorney.  I'm saying that – THE COURT:  Well, we're not saying it won't be.").

24

**CONCLUSION**

The facts of this case warrant, and the integrity of the judicial system demands, the imposition of sanctions. Drummond requests that the Court reinstate Drummond's Renewed Sanctions Motion (*Defamation* Docs. 775, 803) and sanction Collingsworth as follows:

1. Order Collingsworth to pay legal fees and costs incurred by Drummond and related to Collingsworth's misconduct in this case (2:11-cv-3695-RDP). Should the Court deem such a sanction appropriate, Drummond will submit a separate submission on recoverable fees and costs;

2. Dismiss, with prejudice, the pending case styled *Marisol Melo Penaloza, et al., v. Drummond Company, Inc., et al.*, 2:13-cv-393-RDP (N.D. Ala.);

3. Hold Collingsworth in contempt;

4. Permanently revoke Collingsworth's *pro hac vice* admission in this Court;

5. Order Collingsworth, in every pending state or federal case in which he is counsel of record, to publicly file and serve a copy of this Court's sanctions order to his clients, opposing counsel, and the judge presiding over the matter, and require Collingsworth to provide sworn verification of his compliance with this sanction listing every proceeding in which he files this Court's sanctions order;

6. Serve a copy of this Court's sanctions order on the National Discipline Bank operated by the American Bar Association, the Alabama State Bar Association, the D.C. Bar Association, and any other applicable licensing authorities for further investigation and disciplinary action;

7. Refer this matter to the U.S. Attorney for the Northern District of Alabama for further proceedings as the U.S. Attorney deems appropriate;

8. Require Collingsworth to submit, under penalty of perjury, a listing of all proceedings, whether in the U.S. or elsewhere, where he is aware that the testimony of the following witnesses has been submitted and/or relied upon: Jaime Blanco, Charris, El Tigre, Samario, Gelvez Albarracin, Libardo Duarte, Peinado, and Yuca; and

9. Such other relief as the Court may deem appropriate to ensure future litigants in the Northern District of Alabama think long and hard before committing the type of egregious misconduct that occurred in this case.

3557728.6

Respectfully submitted,

*/s/ H. Thomas Wells, III*                    */s/ Sara E. Kropf*

William Anthony Davis, III (ASB-5657-D65W)    Sara E. Kropf
H. Thomas Wells, III (ASB-4318-H62W)          KROPF MOSELEY SCHMITT PLLC
Benjamin T. Presley (ASB-0136-I71P)           1100 H. Street NW, Suite 1220
STARNES DAVIS FLORIE LLP                       Washington, DC 20005
100 Brookwood Place, 7th Floor                (202) 627-6900
Birmingham, AL 35209
(205) 868-6000
fax: (205) 868-6099

*Attorneys for Drummond Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **April 27, 2026**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Benjamin T. Presley*
Benjamin T. Presley (ASB-0136-I71P)

26

3557728.6