## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC. et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | |
| | } | **Case No.: 2:11-cv-3695-RDP** |
| TERRENCE P. COLLINGSWORTH, et al., | } | |
| | } | |
| Defendants. | } | |
| | } | |

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | |
| | } | **Case No.: 2:15-cv-506-RDP** |
| TERRENCE P. COLLINGSWORTH, et al., | } | |
| | } | |
| Defendants. | } | |
| | } | |

## <u>AMENDED MEMORANDUM OPINION</u>

This memorandum opinion amends the court's prior opinions in both the Defamation and RICO cases. (*Defamation Case*, Doc. # 1258; *RICO Case*, Docs. # 769). The amendment adds a footnote agreed to by the parties clarifying that neither the opinion nor the jury's verdict constitutes a finding of RICO liability against former defendants Conrad & Scherer, LLP and William R. Scherer, Jr. (*See RICO Case,* Docs. # 774, 781).

Before the court are Defendants Terrence P. Collingsworth and International Rights Advocates Inc.'s Motions for Judgment as a Matter of Law (*Defamation Case*, Doc. # 1243; *RICO Case*, Docs. # 754, 755).[1] The Motions have been fully briefed, (*Defamation* Doc. # 1248, 1251; *RICO* Docs. # 758, 759, 762, 763), and are ripe for decision. After careful review, and for the reasons explained below, Defendants' Motions are due to be denied.

## I.    Standards of Review

In reviewing a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, the court draws all reasonable inferences in favor of the non-moving party, does not re-weigh the evidence presented to the jury or make any credibility determinations, and disregards any "evidence that the jury need not have believed." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.") (cleaned up).

The "court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). In considering the sufficiency of the evidence, "'the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)). A court should only "'render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Progressive Emu Inc. v. Nutrition & Fitness*

---

[1] For brevity and ease of citation, the court refers to documents filed in Case No.: 2:11-cv-3695-RDP as *Defamation* and Case No.: 2:15-cv-506-RDP as *RICO*.

2

*Inc.*, 787 F. App'x 549, 556 (11th Cir. 2019) (first quoting *Gowski v. Peake*, 682 F.3d 1299, 1310-11 (11th Cir. 2012), in turn citing Fed. R. Civ. P. 50)); *see also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) ("Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate only if the facts and inferences point [so] overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict."); *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006) (holding that the court must deny a motion for judgment as a matter of law "if there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.").

"District courts seldom enter a judgment as a matter of law, for it is appropriate only when there can be but one reasonable conclusion as to the verdict." *Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023) (cleaned up). That is, "[j]udgment as a matter of law is appropriate only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Luxottica Group, S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1310 (11th Cir. 2019) (cleaned up). The court may "not second-guess the jury or substitute [its] judgment for [the jury's] judgment if [the jury's] verdict is supported by sufficient evidence." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 811 (11th Cir. 2020) (cleaned up). With these legal standards in mind, the court considers the merits of each of Defendants' motions below.

## II.    Analysis

The court separately addresses the respective Rule 50 Motions filed by Collingsworth and IRAdvocates. After careful review, the court concludes each motion is due to be denied.

### A.    Defendant Terrence P. Collingsworth's Rule 50 Motion for Judgment as a Matter of Law

Collingsworth argues he is entitled to judgment as a matter of law because (1) Drummond

3

failed to present sufficient evidence from which a jury could find that he acted with actual malice, a required element of Drummond's defamation claim, and (2) Drummond failed to present sufficient evidence to support the jury's finding that he violated RICO. (*Defamation* Doc. # 1243; *RICO* Doc. # 754). The court considers each argument, in turn. Neither succeeds.

### 1. Drummond presented more than sufficient evidence of actual malice

Collingsworth first argues he is entitled to judgment as a matter of law because Drummond failed to present sufficient evidence – that is, clear and convincing evidence – from which a jury could find that Collingsworth acted with actual malice. (*Defamation* Doc. # 1243). To determine whether Collingsworth is entitled to Judgment as a Matter of Law, the court must determine whether the jury's verdict against Collingsworth is "supported by sufficient evidence." *Chaney*, 483 F.3d at 1227.

The Supreme Court has explained that "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commun., Inc. v. Connaughton*, 491 U.S. 657, 666-67 (1989) (citing *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81 (1967) (per curiam); *Henry v. Collins*, 380 U.S. 356 (1965) (per curiam)). Rather, as one deemed a public figure for purposes of this litigation, Drummond was required to prove by clear and convincing evidence that Collingsworth acted with "reckless disregard" of the truth. *Id*. While the term "reckless disregard" "cannot be fully encompassed in one infallible definition," *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968), the Supreme Court has made clear that the defendant must have made the false publication with a "high degree of awareness of . . . probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964), or must have "entertained serious doubts as to the truth of his publication," *St. Amant*, 390 U.S. at 731.

Collingsworth's motion is focused on his subjective state of mind, specifically his "subjective belief that Drummond was collaborating with the AUC." (*Defamation* Doc. # 1243 at

11). But, as this court already explained in denying Collingsworth's first Rule 50 motion, "Drummond presented significant evidence from which a jury could conclude that [Collingsworth] acted with actual malice." (Defamation Doc. # 1188 at 2). That evidence was extensive. And, it was clear and convincing.

The jury heard that Collingsworth paid the very witnesses on whose testimony his defamatory letters were based (*see, e.g.*, PX 256; PX 632; PX 760; PX 2098), and that those witnesses had previously (*i.e.*, before Collingsworth made contact with and paid them) sworn that Drummond was *not* associated with the AUC – testimony they reversed only after receiving payments from Collingsworth (*see, e.g.*, PX 241; PX 395; PX 1563; PX 1922). The jury also heard evidence that Collingsworth did not believe, or had substantial reason to disbelieve, what his own witnesses were telling him. (*See, e.g.*, PX 874; PX 1482; PX 1515; PX 1931; PX 1946; PX 2166). For example, the evidence was sufficient to show that Collingsworth had serious doubts about his own witnesses' credibility yet used their testimony anyway. In an October 2010 email to Francisco Ramirez Cuellar and Lorraine Leete, Collingsworth noted that El Tigre had given a statement to a Colombian prosecutor "that directly contradict[ed] what he said to us." (PX 241). Collingsworth testified that he and his team concluded that witnesses Duarte and Mecanico were "insane" and "pathological liar[s]," but he submitted their testimony to PAX and/or the court. (*RICO* Doc. # 730 at 2025:9-25; *RICO* Doc. # 732 at 2068:16-2069:25). His own communications reflected the same doubts: in May 2011, he described Ivan Otero and his associates as "sleazy," "greedy," and "morally rudderless" (PX 1931); in April 2012, he told Leete he was "examin[ing] crazy Duarte without being able to prep him" (PX 1482); and in May 2013, he told Leete that Mecanico "should be lost" (PX 874). And, Collingsworth published his defamatory statements after a jury in *Romero* had already rejected his civil claims that Drummond supported the AUC. (*See* PX 28).

Drummond also presented evidence to support a financial motive for the defamatory letters. Just months before sending the first defamatory letter, Collingsworth entered an agreement with Albert Van Bilderbeek entitling him to 33% of any recovery associated with Colombian oil and gas rights that Collingsworth valued at "70 billion Euros." (*RICO* Doc. # 733 at 2194:5-2195:1). That agreement gave Collingsworth an incentive to follow Van Bilderbeek's directive to send the letters. (*See also* PX 21; PX 1460; PX 1461). Collingsworth also spoliated a significant portion of his emails predating March 2013. (*RICO* Doc. # 733 at 2343:2-19). This court found that his spoliation was a deliberate effort "to deprive Drummond of information and evidence in this case," and accordingly permitted the jury to presume that the missing emails were unfavorable to Collingsworth. (*RICO* Doc. # 704 at 11).

This is but a fraction of the evidence the jury heard and considered in reaching its verdict. And, while Collingsworth points to evidence that the jury was presented that it could have weighed and may have led it to a different conclusion, the point is that it was for the jury, not the court, to evaluate that competing evidence. The court may "not second-guess the jury or substitute [its] judgment for [the jury's] judgment if [the jury's] verdict is supported by sufficient evidence." *Tracy*, 980 F.3d at 811 (cleaned up); *see McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (holding that it is the jury's role at trial to weigh conflicting evidence and determine the credibility of witnesses). Here, the trial record evidence was more than sufficient to support the jury's finding that there was clear and convincing evidence that Collingsworth published the defamatory statements with actual malice (that is, with either a high degree of awareness of their probable falsity or serious doubts as to their truth). *See Garrison*, 379 U.S. at 74; *St. Amant*, 390 U.S. at 731. This is not a close question. Thus, Collingsworth's renewed motion on this ground is due to be denied.

### 2.     Drummond presented sufficient evidence of RICO violations as to Collingsworth

Collingsworth next argues he is entitled to judgment as a matter of law because Drummond failed to present sufficient evidence from which a jury could find that Collingsworth violated RICO. (*Defamation* Doc. # 1243; *RICO* Doc. # 754). To determine whether Collingsworth is entitled to judgment as a matter of law, the court must determine whether the jury's verdict against Collingsworth is "supported by sufficient evidence." *Chaney*, 483 F.3d at 1227.

In this motion, Collingsworth incorporated the arguments made in his earlier Rule 50(a) motion by reference. (*RICO* Doc. # 754 at 14). In its response, Drummond likewise incorporated its response to Collingsworth's Rule 50(a) motion by reference. (*RICO* Doc. # 758 at 21–22). Because the parties have both incorporated their Rule 50(a) arguments, the court also incorporates the reasoning of its previous ruling denying that motion. (*See generally RICO* Doc. # 700).

#### a.     Substantive RICO Claim

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Under § 1961(1)(B), "racketeering activity" includes "any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery [of witnesses]), [] section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), [] section 1503 (relating to obstruction of justice), [] section 1512 18 (relating to tampering with a witness, victim, or an informant), [and] section 1956 (relating to the laundering of monetary instruments)." *Id*. § 1961(1)(B).

To establish a civil RICO claim, a plaintiff must prove "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least

two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016)); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (holding that "'to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself"). The court's jury instruction tracked these elements. And, the jury's findings were made after being so instructed.

First, Drummond presented more than sufficient evidence that Collingsworth's conduct satisfies the operation-or-management element. *See Reves*, 507 U.S. at 185. Collingsworth directed the payment of witnesses, personally authorized individual disbursements (*see, e.g.*, PX 1927; PX 2098), and coordinated with co-conspirators regarding the structure and timing of those payments. His own emails confirm his central role in orchestrating the scheme. For example, in a February 2009 email, Collingsworth stated that "I am just getting started with Drummond. . . This time, we will have the witnesses." (PX 86). Also, he explicitly approved monthly payments to keep witnesses available until their depositions were secured. (PX 2098).

Second, Drummond presented more than sufficient evidence that Collingsworth was a member of the RICO enterprise. RICO broadly defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise must share three structural features: a common purpose, relationships among those associated with the enterprise, and longevity sufficient to pursue the enterprise's purpose. *Cisneros*, 972 F.3d at 1211. Importantly, "proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." *Boyle v. United States*, 556 U.S. 938, 951 (2009).

As this court found in denying Collingsworth's Rule 50(a) motion, the record contains ample evidence that Collingsworth, IRAdvocates, Ivan Otero, Albert Van Bilderbeek, Francisco Ramirez Cuellar, Conrad & Scherer, and Bill Scherer[2] associated with the common purpose of making illicit witness payments to build cases against Drummond. The enterprise's structure and common purpose are plainly reflected throughout the trial record.

Collingsworth formalized his relationship with Otero as early as December 2008 through an Attorney Cooperation Agreement (PX 63; PX 2082), and later described Otero as his on-the-ground intermediary for the paramilitary witnesses. His relationship with Van Bilderbeek was similarly formalized through a series of loan and cooperation agreements (PX 1460; PX 1461; PX 1462), and Collingsworth openly acknowledged that he and Van Bilderbeek had been "working together on Drummond issues for several years." (PX 399). The coded communications between Collingsworth and Van Bilderbeek (*i.e.*, using "books" as a substitute for "payments" when discussing funds requested by Otero for paramilitary witnesses) further reflect both the existence of the enterprise and the participants' awareness of its illicit nature. (*RICO* Doc. # 743 at 3548:9-3549:24; PX 1331). Collingsworth also admitted that the financial documents structuring Van Bilderbeek's loan for case expenses were, by his own account, "bizarre," and claimed that he could neither identify the parties to the transaction nor produce documentation showing how the funds were used. (*See RICO* Doc. # 732 at 2085:6-9). The common purpose animating the enterprise is perhaps best captured by Collingsworth's own words: in June 2010, he wrote to Van Bilderbeek that he looked "forward to meeting and together closing down Drummond." (PX 214).

---

[2] Former defendants Conrad & Scherer, LLP and William R. Scherer, Jr. were dismissed with prejudice before trial following a settlement with Drummond. As a result of their dismissal, they did not participate in the ensuing trial, and neither the jury's verdict nor this opinion should be construed as a finding of RICO liability against them.

Third, Drummond presented more than sufficient evidence that Collinsworth, as a member of the RICO enterprise, engaged in a pattern of racketeering activity against Drummond. The record reflects dozens of separate payments to multiple witnesses, including Jaime Blanco, El Tigre, Samario, Charris, Halcon, and Duarte, spanning more than five years and constituting what the jury found were multiple instances of witness bribery, witness tampering, obstruction of justice, money laundering, wire fraud, and extortion. (*See, e.g.*, PX 101; PX 522; PX 583; PX 590; PX 775; PX 888; PX 1269; PX 1273; PX 1292; PX 1297).

The payments were not isolated transactions. Conrad & Scherer made monthly wire transfers to witnesses through IRAdvocates, which is controlled by Collingsworth, over several years (PX 1273; PX 1297), and Collingsworth personally directed and confirmed individual disbursements (PX 1927; PX 2164). The funds were covertly routed through a web of entities such as Nicox BV, Dellin Investments BV, and IRAdvocates in a manner consistent with money laundering. (*See* PX 843; PX 1206; PX 1213; PX 1215; PX 1461). Collingsworth then compounded this pattern of racketeering by, among other things, making numerous and material false statements and misrepresentations to this court and others during litigation. (*See RICO* Doc. # 727 at 1516:22-1558:6; *RICO* Doc. # 728 at 1588:23-1718:8; *RICO* Doc. # 730 at 1991:25-2027:5; *RICO* Doc. # 732 at 2068:14-2149:25; *RICO* Doc. # 733 at 2182:9-2320:11; *RICO* Doc. # 742 at 3335:4-3393:21) A jury could readily find that this extensive and prolonged course of conduct directed at different witnesses, carried out through different intermediaries, and concealed through clandestine means and affirmative misrepresentations to courts across the country constituted a continuing pattern of racketeering activity.

Fourth, Drummond presented more than sufficient evidence that Collinsworth, operating as a member of the RICO enterprise, caused injury to Drummond. Nathaniel Drummond, a Drummond coal executive, testified that customers stopped purchasing coal from Drummond as a

direct result of the allegations spread by the enterprise, forcing Drummond to sell its coal at reduced prices to other customers. (*RICO* Doc. # 722 at 678:8-681:6, 688:6-16; *RICO* Doc. # 720 at 599:8-609:11). Drummond's financial statements, which Defendants themselves introduced during cross-examination of Nathaniel Drummond, reflect that Drummond's coal sales revenue declined by approximately $1 billion between 2012 and 2015, and Mr. Drummond testified to that fact. (*RICO* Doc. # 722 at 692:18-694:2; DX 103). Thus, Drummond presented sufficient evidence for a reasonable jury to conclude that Collingsworth and the RICO enterprise caused substantial injury to Drummond.

The jury's RICO verdict is amply supported by the record evidence. This is not a close call. Accordingly, Collingsworth's renewed motion for judgment as a matter of law on this ground is due to be denied.

### b.     Conspiracy to Violate RICO

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the [RICO] provisions." 18 U.S.C. § 1962(d). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1344 (S.D. Fla. 2006), *aff'd sub nom. Shane v. Humana, Inc.*, 228 F. App'x 927 (11th Cir. 2007) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)). "In addition to predicate [acts], a RICO conspiracy . . . requires proof of an enterprise, of the continuity of racketeering activity, and of the defendant's knowledge of, agreement to, and participation in the conspiracy." *United States v. Gonzalez*, 921 F.2d 1530, 1546 (11th Cir. 1991).

As this court found in denying Defendants' previously filed Rule 50(a) motion, Drummond presented more than sufficient evidence that Collingsworth agreed with IRAdvocates, Ivan Otero,

Albert Van Bilderbeek, Francisco Ramirez Cuellar, Conrad & Scherer, and Bill Scherer that one or more co-conspirators would engage in multiple predicate acts constituting RICO violations. That agreement is reflected in the formal cooperation and loan agreements between the parties (*see, e.g.*, PX 63; PX 1461; PX 1462), in the coordinated payment activity spanning years, and in communications making plain that all participants understood the nature and purpose of what they were doing (*see, e.g.*, PX 86; PX 214; PX 2098). Again, this is not a close call.

For the same reasons the court denied Collingsworth's Rule 50(a) motion, and based now on the full trial record, the court concludes that Drummond presented more than sufficient evidence to support the jury's finding that Collingsworth violated RICO. Collingsworth's renewed motion for judgment as a matter of law is due to be denied.

> **B.      Defendant IRAdvocates's Rule 50 Motion for Judgment as a Matter of Law**

IRAdvocates moves for judgment as a matter of law on Drummond's RICO claims, arguing (1) that the court did not properly instruct the jury as to IRAdvocates's corporate liability and (2) that Drummond did not present sufficient evidence that IRAdvocates itself committed RICO predicate acts or that it bears vicarious liability for the conduct of its Executive Director, Terrence Collingsworth. The court addresses each of IRAdvocates's arguments, in turn. None of them has merit.

> **1.      The court properly instructed the jury on IRAdvocates's corporate liability**

As an initial matter, IRAdvocates argues that the jury was not instructed as to how a corporate employer may be held liable for the acts or omissions of an employee. (*RICO* Doc. # 755 at 9-10). However, a party may not seek judgment as a matter of law on a ground not raised in its Rule 50(a) motion. *See* Fed. R. Civ. P. 50(b); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004). Because Defendants did not object at trial to how the court instructed the

12

jury, this argument is waived.

But, even if IRAdvocates had not waived the argument, the court concludes it correctly instructed the jury. Here is the instruction the court gave the jury:

> A corporation is entitled to the same fair trial at your hands as are private individuals, and private individuals are entitled to the same fair trial at your hands as a corporation. All persons, including individuals and corporations, stand equal before the law and you must deal with them as equals in a court of justice.
>
> When a corporation is involved, of course, it may act only through natural persons as its agents or employees, and in general, any agent or employee of a corporation may bind the institution by his acts and declarations made while acting within the scope of his authority delegated to him by, or within the scope of his duties as an employee of, the corporation.

(*RICO* Doc. # 743 at 3436:24-3437:12). The court's instruction adequately instructed the jury on IRAdvocates's corporate liability. Accordingly, the court also finds that this argument is without merit.

### 2.    Drummond presented sufficient evidence of RICO violations as to IRAdvocates

IRAdvocates next argues it is entitled to judgment as a matter of law because Drummond failed to present sufficient evidence from which a jury could find that IRAdvocates violated RICO by a preponderance of the evidence. (*RICO* Doc. # 755 at 6-9). (*RICO* Doc. # 755). That argument fails.

As explained above, to establish a civil RICO claim under § 1962(c), a plaintiff must prove "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros*, 972 F.3d at 1211. And, a RICO conspiracy claim may be established by showing either that the defendant (1) agreed to the overall objective of the conspiracy or (2) agreed to commit two predicate acts. *In re Managed Care Litig.*, 430 F. Supp. 2d at 1344.

13

To determine whether IRAdvocates is entitled to judgment as a matter of law, the court must determine whether the jury's verdict against IRAdvocates is "supported by sufficient evidence." *Chaney*, 483 F.3d at 1227. The trial record amply supports the jury's finding that each of these elements was satisfied by the evidence presented against IRAdvocates related to both the substantive RICO claim and the RICO conspiracy claim.

First, Drummond presented more than sufficient evidence that IRAdvocates's conduct satisfies the operation-or-management element. To satisfy the operation-or-management element, a defendant must participate in the operation or management of the enterprise itself. *Reves*, 507 U.S. at 185. IRAdvocates, through its officers and agents, did precisely that. Acting as IRAdvocates's founder and Executive Director, Collingsworth directed the Enterprise's litigation strategy, oversaw the scheme to bribe witnesses, managed the flow of payments to witnesses, and orchestrated the Enterprise's international pressure campaign against Drummond. Collingsworth's primary activities at IRAdvocates included "directing litigation strategy," and he signed IRAdvocates's tax returns while maintaining custody and control over its records. (*RICO* Doc. # 733 at 2266:5-2267:5, 2300:19-2301:6; PX 2029 at 9-10). As discussed below, Christian Levesque, IRAdvocates's Deputy Director, and Lorraine Leete, a staff attorney, were also active participants in the enterprise as part of their respective roles at IRAdvocates. Moreover, IRAdvocates's knowing and sustained participation in the Enterprise's operations through its leadership and staff, over a period of years, using its own bank account and organizational infrastructure, also provides sufficient evidence that it agreed to the conspiracy's overall objective. *Gonzalez*, 921 F.2d at 1546.

Second, Drummond presented more than sufficient evidence that IRAdvocates was a member of the RICO enterprise. The RICO statute broadly defines "enterprise" to include any corporation, association, or group of individuals associated in fact. 18 U.S.C. § 1961(4). An

14

association-in-fact enterprise requires a common purpose, relationships among the associates, and sufficient longevity to pursue that purpose. *Cisneros*, 972 F.3d at 1211. And, as the Supreme Court has held for RICO purposes an individual defendant is legally distinct from a closely held corporation he owns and controls. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160, 164-65 (2001) ("[A] corporate employee who conducts the corporation's affairs through an unlawful RICO pattern of activity uses that corporation as a vehicle whether he is, or is not, its sole owner.").

All three features of an association-in-fact enterprise were established by the evidence here. IRAdvocates was Collingsworth's organization, which he founded for the stated purpose of suing and applying public pressure on multinational corporations. These were precisely the objectives the Enterprise unlawfully pursued against Drummond. (*RICO* Doc. # 729 at 1767:8-10, 1770:2-4, 1771:14-15, 1772:20-1773:24). Further, the relationships among the Enterprise's members (Collingsworth, IRAdvocates, Otero, Van Bilderbeek, Ramirez, Conrad & Scherer, and Bill Scherer) were documented throughout years of correspondence and financial transactions, as discussed below. The Enterprise's conduct, spanning from at least 2009 through 2015, clearly reflects the longevity required. *See, e.g.*, *United States v. Eiland*, 738 F.3d 338, 360 (D.C. Cir. 2013) (finding two years satisfies the longevity requirement); *Brand Energy & Infrastructure Services, Inc. v. Irex Contracting Grp.*, No. 16-2499, 2017 WL 1105648, at *11 (E.D. Pa. March 24, 2017) (same). Moreover, the Supreme Court has recognized that proof of a pattern of racketeering activity may itself be sufficient to permit a jury to infer the existence of an association-in-fact enterprise. *Boyle*, 556 U.S. at 951. The evidence here easily satisfies that standard many times over. And, these same structural features also satisfy the enterprise element of the conspiracy claim, which similarly requires proof of an enterprise and the continuity of racketeering activity. *Gonzalez*, 921 F.2d at 1546.

15

Third, Drummond presented more than sufficient evidence that IRAdvocates, as a member of the RICO enterprise, engaged in a pattern of racketeering activity against Drummond. The evidence connecting IRAdvocates to the scheme spans several years and multiple forms of conduct. As early as March 2009, Collingsworth discussed "running [the Otero contingency fee agreement] through IRAdvocates," as recounted by Richard Drath, the functional CFO of Conrad & Scherer. (*RICO* Doc. # 725 at 1086:14-22). By September 2011, Collingsworth was directing Drath to wire $5,000 to IRAdvocates for purported "service charges" related to the prison depositions of El Tigre, Samario, Charris, and Duarte, noting that he "[w]on't get a lot of receipts so [he] will run this out of IRAdvocates." (*RICO* Doc. # 725 at 1111:1-20; PX 483; PX 2170).

The conduct escalated into a sustained pattern of payments routed through IRAdvocates's bank account. The parties stipulated that beginning in 2012, Defendants wired money from C&S's operating account in Florida to IRAdvocates's account in Washington, D.C., which was then forwarded to a Colombian bank account held by Francisco Ramirez Cuellar, where the funds were withdrawn and delivered to Charris's wife. (*RICO* Doc. # 732 at 2065:19-2066:14; *RICO* Doc. # 708 ¶ 4). One email expressly identifies the "IRAdvocates Suntrust account" as the destination for wires sent to benefit both Halcon and Charris. (PX 2163). Bank records confirm that multiple monthly bribery payments for those witnesses were routed through IRAdvocates's account from 2012 through 2015. (PX 1273). A compilation exhibit demonstrates the regular monthly flow of funds from Conrad & Scherer to IRAdvocates (and then onward to Halcon and Charris, as described by other email exhibits and the parties' stipulations). (PX 1297).

Beyond IRAdvocates's direct liability, Drummond presented more than sufficient evidence to independently establish IRAdvocates's vicarious liability for the acts of its agents and employees. As the court instructed the jury, a corporation may act only through its agents or employees and is bound by acts taken within the scope of their delegated authority or duties. (*RICO*

16

Doc. # 743 at 3437:6-12). Collingsworth's conduct as IRAdvocates's founder and Executive Director alone would establish that liability.

IRAdvocates was Collingsworth's organization, founded by him. Again, it was created for the stated purpose of suing and applying public pressure to multinational corporations, and he signed IRAdvocates's tax returns while maintaining custody and control over its records. (*RICO* Doc. # 729 at 1767:8-10, 1770:2-4, 1771:14-15, 1772:20-1773:24; *RICO* Doc. # 733 at 2266:5-2267:5, 2300:19-2301:6). Collingsworth used his IRAdvocates email address to send numerous emails relating to witness payments, the fraudulent concealment of those payments, and the Enterprise's international pressure campaign against Drummond. (*See, e.g.*, PX 98; PX 101; PX 104; PX 109; PX 328; PX 569). His acts therefore were committed within the course of his employment with IRAdvocates, in furtherance of IRAdvocates's business, and directly benefited IRAdvocates. *Quick v. Peoples Bank of Cullman Cnty.*, 993 F.2d 793, 797 (11th Cir. 1993) (citing *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987)).[3]

IRAdvocates's liability need not – and, indeed, does not – rest on Collingsworth's conduct alone. Christian Levesque, IRAdvocates's Deputy Director, and Lorraine Leete, a staff attorney, were also implicated in the Enterprise's conduct. As an entity employee, Levesque served as Collingsworth's primary partner in the cases filed against Drummond and was responsible for developing litigation strategies in her role at IRAdvocates. (*RICO* Doc. # 730 at 2018:24-2019:8; PX 2029 at 12-13). The trial record includes emails in which Levesque participated in

---

[3] IRAdvocates argues that the jury's mid-deliberation question – "When evaluating IRA, who does that include?" – reveals that Drummond failed to introduce sufficient evidence about IRAdvocates' structure and role in the Enterprise. The court disagrees. First, the jury's question is not evidence of anything; it is simply a question. Second, courts encourage juries to seek clarification when they have a question, and a jury that asks a question and then returns a verdict has done precisely what the system asks of it. Finally, there is ample evidence supporting the jury's verdict, and this court may not second-guess the jury or substitute its judgment for a jury's judgment when its verdict is supported by sufficient evidence. *Tracy*, 980 F.3d at 811 (quoting *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018)). It is here.

communications concerning witness bribery, the concealment of those bribes, and discussions about the testimony of bribed witnesses. (*See, e.g.*, PX 1498; PX 1514; PX 1932; PX 1935; PX 1940; PX 1964). Similarly, evidence about Leete is found throughout the record related to witness bribery, its concealment, and the Enterprise's international pressure campaign against Drummond. (*RICO* Doc. # 722 at 702:22-703:3; PX 2029 at 13; *see, e.g.*, PX 2158; PX 1964; PX 1956; PX 1965; PX 1944; PX 1957). To be sure, these are nonexhaustive examples. But, this evidence definitively shows that the acts and omissions of both Levesque and Leete, committed within the line and scope of their duties with IRAdvocates, provide an independent basis for IRAdvocates's RICO liability. *Quick*, 993 F.2d at 797.

Taken as a whole, Drummond presented more than sufficient evidence to support the jury's finding that IRAdvocates participated in multiple predicate acts, including witness bribery, witness tampering, obstruction of justice, money laundering, wire fraud, and extortion. And, these predicate acts occurred (and were repeated) over the course of several years. A pattern of racketeering activity requires proof that a defendant committed at least two distinct but related predicate acts. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1292, (11th Cir. 2010) (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006)). The jury found that Defendants, including IRAdvocates, committed five. The evidence here far exceeds the threshold for establishing that IRAdvocates participated and conspired to participate in the RICO enterprise's pattern of racketeering activity.

For all of these reasons, the evidence was more than sufficient for a reasonable jury to find that IRAdvocates violated RICO and damaged Drummond. Accordingly, IRAdvocates's renewed motion for judgment as a matter of law is due to be denied.

## III.    Conclusion

Each of Defendants' arguments miss the mark. The evidence in these cases supporting the

defamation claim and the RICO claim was overwhelming. For all the reasons explained above, Defendants' Motions (*Defamation*, Doc. # 1243; *RICO*, Docs. # 754, 755) are due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this June 15, 2026.

**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE